In re:                                              Case No. 16-10389-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,                   Chapter 11

      Debtor,

_____/

LIZA HAZAN a/k/a ELIZABETH HAZAN,
and SELECTIVE ADVISORS GROUP, LLC,                  Adv. No. 16-01439-AJC

      Plaintiffs,

v.

NLG, LLC,
a Delaware limited liability company,

      Defendant.

_____/

NLG, LLC,

      Counterclaim Plaintiff,

v.

SELECTIVE ADVISORS GROUP, LLC, and
LIZA HAZAN a/k/a ELIZABETH HAZAN,

      Counterclaim Defendants.

_____/

## NOTICE OF FILING AND REQUEST FOR JUDICIAL NOTICE

Please take notice that Defendant/Counterclaim Plaintiff, NLG, LLC ("NLG"), through

undersigned counsel, hereby files the attached in accordance with Rule 201, Federal Rules of

Evidence, and hereby requests the Court take judicial notice of the following:

1.      May 7, 2015, Certification of Judgment for Registration in Another District under case number 15-00101-AJC, which is a Final and non-appealable judgment from the United States Bankruptcy Eastern District of Pennsylvania in favor of Chris Kosachuk against 9197-5904 Quebec, Inc. (Debtor's Hazan's Company), in the amount of $1,153,142.26 in compensatory and punitive damages for wrongfully filing a bad faith involuntary bankruptcy petition against Mr. Kosachuk, NLG's manager.

2.      April 26, 2016 Third District Court of Appeals Order granting sanctions in NLG's favor against Debtor Hazan and her attorneys in the Foreclosure Action.

3.      March 6, 2017, Certificate of Defaulted Status of Selective Advisors Group LLC from the Delaware Secretary of State.

4.      October 1, 2014, Debtor Hazan's Motion for Rehearing and Rehearing en Banc of the 3DCA Opinion Granting Foreclosure to NLG in the Foreclosure Action.

5.      November 3, 2014, Order Denying Debtor Hazan's Motion for Rehearing and Rehearing en Banc in the Foreclosure Action.

6.      April 4, 2014, Deposition Transcript of Raymond Houle.

7.      January 15, 2015, Debtor Hazan's 65-page Verified Motion to Dismiss in the Foreclosure Action.

8.      January 15, 2015, Debtor Hazan's 64 page Verified Memo in Opposition to NLG's Motion for Entry of Foreclosure Judgment in the Foreclosure Action.

9.      March 3, 2015, Order Denying Debtor Hazan's Motion to Dismiss in the Foreclosure Action.

10.      April 15, 2015, Debtor Hazan's Motion for Leave to File Amended Answer in NLG Foreclosure Action.

11.     May 1, 2015, Order Denying Debtor Hazan's Motion for Leave to File Amended Answer in the NLG Foreclosure Action.

12.     May 18, 2015, Bad faith voluntary bankruptcy petition for Selective Advisors Group LLC ("Selective") filed by Debtor's husband, Sean Meehan.

13.     July 1, 2015, 341 Hearing from Selective bankruptcy.

14.     August 6, 2015, Trustee Marc Pergament Affirmation And Motion to Dismiss Selective bankruptcy petition.

15.     August 28, 2015, Order dismissing with prejudice the Selective Bankruptcy.

16.     October 2, 2015, Notice of Appearance of counsel for Selective in the NLG Foreclosure Action.

17.     October 14, 2015, Transcript in the NLG Foreclosure Action where Selective was represented by two attorneys and argued before Judge Gordo.

18.     January 11, 2016, Transcript where Selective was represented by three attorneys and argued before Judge Lopez asking him to stop the foreclosure sale ordered by Judge Gordo. Judge Lopez properly declined to intervene in his colleague's case.

19.     August 4, 2016, Order Denying Sanctions against NLG by Judge McMahon in New York.

20.     February 21, 2012, Sham satisfaction of NLG's Mortgage (executed by Raymond Houle falsely claiming to be a manager of NLG).

21.     February 21, 2012, Sham Satisfaction of NLG Judgment (executed by Raymond Houle falsely claiming to be a manager of NLG).

22.     January 2, 2013, Foreclosure Action Order striking the sham satisfactions of NLG's Mortgage nunc pro tunc.

23.     January 2, 2013, Foreclosure Action Order striking the sham satisfactions of NLG's Judgment nunc pro tunc.

Dated:  May 14, 2017

Respectfully submitted,

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed the foregoing with the Clerk of the Court and a true and correct copy of foregoing was served via U.S. mail or email and EFC system to the parties on the attached service list as indicated on this 14th day of May, 2017.

Respectfully submitted,

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com

*Attorneys for NLG, LLC*

## SERVICE LIST

**Via Email and ECF**

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com; mg197ecfbox@gmail.com;sleary@msglaw.com

David W. Langley on behalf of Plaintiff and Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                                    Chapter 7

Christopher Kosachuk A/K/A Chris Kosachuk
            Debtor                                       Bankruptcy No. 12-16438-JKF

## CERTIFICATION OF JUDGMENT FOR
## REGISTRATION IN ANOTHER DISTRICT

I, Timothy B. McGrath, Clerk of the Bankruptcy Court of this district do certify that the attached judgment is a true and correct copy of the original judgment entered in the above entitled proceeding on March 24, 2015  as it appears of record in my office, and that:

(X)        No notice of appeal from this judgment has been filed, and no motion of the kind set forth in Federal Rule of Civil Procedure 60, as made applicable by Bankruptcy Rule 9024, has been filed.

(  )        No notice of appeal from this judgment has been filed, and any motions of the kind set forth in Federal Rule of Civil Procedure 60, as made applicable by Bankruptcy Rule 9024, have been disposed of, the latest order disposing of such a motion having been entered on .

(  )        An appeal was taken from this judgment, and the judgment was affirmed by mandate of the issued on .

(  )        An appeal was taken from this judgment, and the appeal was dismissed by order entered on .

                                                Timothy B. McGrath
                                                CLERK

_____5/5/15_____               By:  Freda Ford
Date                                            Deputy Clerk

EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | : DISMISSED CHAPTER 7 INVOLUNTARY |
| | : |
| | : CASE NO. 12-16438(JKF) *SEALED* |
| CHRISTOPHER    KOSACHUK,    a.k.a. | : |
| CHRIS KOSACHUK | : |
| | : |
| | : |

A TRUE COPY CERTIFIED
TO FROM THE RECORD
DATED: _____
ATTEST: _____
Deputy Clerk
U. S. Bankruptcy Court

**ORDER AND FINAL JUDGMENT**

Upon consideration of the Motion of Christopher Kosachuk to Declare this Involuntary

Bankruptcy Petition a Bad Faith Filing, for Costs, Compensatory and Punitive Damages, to Seal

the Records and Sanctions (the "Motion") with respect to 9197-5904 Quebec, Inc. and the

arguments of counsel and evidence admitted at the trial conducted before this Court on March

18, 2015, it is **ORDERED, ADJUDGED AND DECREED**:

1.      The Motion is **GRANTED** as to 9197-5904 Quebec, Inc. without effect on the

Motion as to the claims asserted and relief sought in the Motion against Darius A. Marzec, Esq.

2.      Final Judgment for monetary sanctions in the amount of $192,173.71 pursuant to

11 U.S.C. §§ 105(a) and 303(i)(1), representing the reasonable costs and attorneys' fees incurred

by Mr. Kosachuk in this matter, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc.,

plus prejudgment interest and post judgment interest at the federal judgment rate of interest.

3.      Final Judgment for monetary sanctions in the amount of $960,968.55 pursuant to

11 U.S.C. § 303(i)(2)(B) and this Court's inherent powers, representing punitive damages, is

awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post

judgment interest at the federal judgment rate.

118113055_1

# EXHIBIT 1

4.       Final Judgment pursuant to 11 U.S.C. § 105(a) and this Court's inherent powers, is awarded to Chris Kosachuk that the indebtedness of Chris Kosachuk with respect to that certain judgment issued by the Supreme Court, County of New York, under Index No. 103896/2004 in favor of Eugenia Lorret and against Chris Kosachuk in the sum of $150,732.45 accounting for $108,293.54, plus interest of $41,388.91 from November 25, 2002, plus costs of $1,050, and which judgment was thereafter modified and reduced on May 12, 2008 to the sum amount of $48,293.54, plus costs of $1,050, plus interest from November 25, 2002, and which judgment was assigned to 9197-5904 Quebec, Inc. on December 15, 2009 by Assignment of Judgment, and which judgment was further assigned to SRS Techonologies Professionals, LLC by Assignment of Judgment, dated February 10, 2014, Index No. 103896/2004, and Corrected Assignment of Judgment, dated February 10, 2014, is hereby cancelled nunc pro tunc to July 6, 2012.

5.       This Final Judgment may be recorded as a matter of public record.

6.       This Final Judgment is effective immediately upon entry and this Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and Final Judgment.

7.       Chris Kosachuk shall be entitled to writs of execution and all other legal process to enforce this Final Judgment permitted by Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and applicable law.

March 24th 2015

BY THE COURT:

The Honorable Jean K. Fitzsimon
United States Bankruptcy Judge

118113055_1

# EXHIBIT 1

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

THIRD DISTRICT

APRIL 26, 2016

ELIZABETH HAZAN,                           CASE NO.:   3D**16-0315**
Appellant(s)/Petitioner(s),
vs.                                        L.T. NO.:      11-42770
NLG, LLC, etc.,
Appellee(s)/Respondent(s),

      Upon consideration of the motion for attorney's fees pursuant to

section 57.105, Florida Statutes and Rule 9.410 Fla. R. App. P. filed by appellee, it

is ordered that said motion is granted and remanded to the trial court to fix amount.

      SUAREZ, C.J., and SHEPHERD and SALTER, JJ., concur.



cc:      Robert P. Lithman          Juan Ramirez, Jr.          Hon. Monica Gordo
         Miami-Dade Clerk

la

EXHIBIT 2



# Delaware

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THAT THE CERTIFICATE OF FORMATION OF "SELECTIVE ADVISORS GROUP LLC", WAS RECEIVED AND FILED IN THIS OFFICE THE FOURTH DAY OF APRIL, A.D. 2014.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID LIMITED LIABILITY COMPANY IS NO LONGER IN EXISTENCE AND GOOD STANDING UNDER THE LAWS OF THE STATE OF DELAWARE HAVING BECOME FORFEITED THE SIXTH DAY OF DECEMBER, A.D. 2015, FOR FAILURE TO OBTAIN AND DESIGNATE A REGISTERED AGENT.

Jeffrey W. Bullock, Secretary of State

5511303  8425
SR# 20171608241

Authentication: 202146468
Date: 03-06-17

You may verify this certificate online at corp.delaware.gov/authver.shtml

# EXHIBIT 3



IN THE DISTRICT COURT OF APPEAL
THIRD DISTRICT OF FLORIDA

---

_____

APPELLATE CASE NO.: 3D13-0684
L.T. CASE NO.: 11-42770

---

_____

NLG, LLC, etc.,

Appellant/Petitioner,

vs.

ELIZABETH HAZAN,

Appellee/Respondent,

---

ON APPEAL FROM THE HONORABLE CIRCUIT COURT JUDGE,
SPENCER EIG

---

**APPELLEE'S MOTION FOR REHEARING AND *REHEARING EN BANC***

---

**DANIEL S. NATHAN, P.A.**
12805 SW 84th Avenue Rd
Miami, FL 33156
Tel.: (786) 701-2420
Email:  dnathan@danielsnathan.com


BY:___/s/ *Daniel S. Nathan*_____
        Daniel S. Nathan, Esq.
        Fla Bar No. 100329
        dnathan@danielsnathan.com

1

# EXHIBIT 4

<u>APPELLEE ELIZABETH HAZAN'S MOTION FOR REHEARING AND REHEARING EN BANC TO RULE 9.330 AND 9.331 FLORIDA RULES OF APPELLATE PROCEDURE</u>

**COMES NOW,** Appellee, ELIZABETH HAZAN, pursuant to Rule 9.330 and Rule 9.331, Florida Rules of Appellate Procedure, hereby respectfully moves this Honorable Court for rehearing and for rehearing en banc in this case, and in support thereof, states as follows:

This Honorable Court, by and through a panel of three judges, considered this cause and issued a non-final opinion on September 3, 2014 on the issues raised in the instant appeal from which all three judges unanimously concurred. Consequently, this Court reversed a final judgment of mortgage foreclosure entered in the lower court by the Honorable Judge Spencer Eig in favor of Appellee Elizabeth Hazan and against NLG,LLC, and remanded the case for further proceedings.

The Opinion raises significant questions regarding Florida's rules concerning completeness of appellate record, Florida rules of evidence, and injects calamitous confusion into the hundreds of thousands pending foreclosure cases in Florida, as well as cases in virtually every other legal context.

Through the Opinion, this Court may have inadvertently and unknowingly undermined Florida's long-standing rules for the admission of complete records and affected all types of civil and

EXHIBIT 4

criminal cases, not just mortgage foreclosures. This Court should take the opportunity to clarify its holding and quell the widespread uncertainty and confusion that exists today.

This case and the issues raised therein are of exceptional importance. As is fully described below, the panel's decision in reversing a final judgment was without complete records and without the Appellant providing a copy of the two day Trial Transcript. The decision also relies on incomplete records as an untrue and incorrect copy of Hazan's emergency motion to vacate the sheriff's sale and sheriff's deed was submitted to this Court.

As such, this Court does not have all the facts about the total three lawsuits and prior termination of lawsuits with prejudice. Further, it is necessary for this Court, in order to maintain uniformity of its own decisions, to rehear *en banc* the decision of the majority as to the standard for reversing the lower court decision in favor of Elizabeth Hazan potentially affecting all Florida foreclosure suits and appellate procedure in general.

### OVERVIEW AND RELIEF REQUESTED

Pursuant to Rule 9.330(a) and 9.331(d), Florida Rules of Appellate Procedure, Appellee has timely filed this Motion for Rehearing and Rehearing En Banc, and respectfully asserts that the Court has overlooked or misapprehended

EXHIBIT 4

points of law and facts that would have given rise to the Court finding in her favor and against NLG, LLC.

Rehearing is appropriate where "in the opinion of the movant, the court has overlooked or misapprehended in its decision, and shall not present issues not previously raised in the proceeding." See Fla. R. App. P. 9.330(a). The First DCA decision in State ex rel Jaytex Realty Co. v. Green, 105 So. 2d 817, 818 (Fla. 1st DCA 1958), which many other appellate decisions have cited with approval, reads in pertinent part:

> "The sole and only purpose of a petition for rehearing is to call to the attention of the court some fact, precedent or rule of law which the court has overlooked in rendering its decision. Judges are human and subject to the frailties of humans. It follows that there will be occasions when a fact, a controlling decision or a principle of law even though discussed in the brief or pointed out in oral argument will be inadvertently overlooked in rendering the judgment of the court."

Additionally, and in the alternative, Appellee moves this Court for rehearing *en banc* because: this "case is of exceptional importance or...necessary to maintain uniformity in the court's decisions". See Fla. R. App. P. 9.331(a). Since this case is of "exceptional importance or that such consideration is necessary to maintain uniformity in the court's decisions", this Court should hear it *en banc*. Id. at 9.331(d).

4

EXHIBIT 4

**<u>CERTIFICATION UNDER RULE 9.331</u>**

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is of exceptional importance. Moreover, I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decision(s) of this court and that a consideration by the full court is necessary to maintain uniformity of decisions in this court. The case law authority is cited herein is as cited in the argument below and listed herein:

<u>Singer v. Borbua</u>, 497 So.2d 279 (Fla. 3d DCA 1986);

<u>Bradley III v. Health Coalition, Inc.</u>, 687 So.2d 329, 333 (Fla. 3d DCA 1997);

<u>Okun  v. Stuart House Condominium Association, Inc.</u>, 362 So. 2d 713 (Fla. 3d DCA 1978);

<u>Miami Automotive Retailing v. Baldwin</u>, 990 So.2d 1139 (Fla. 3d DCA 2008);

<u>State Office of Attorney General Dept. of Legal Affairs v. Wyndham International, Inc.</u>, 869 So.2d 592 (Fla. 3d DCA 2004);

<u>Latman v. Costa Cruise Lines, N. V.</u>, 758 So.2d 699 (Fla. 3d DCA 2000).

EXHIBIT 4

## ARGUMENT

**I. THIS COURT SHOULD GRANT THE INSTANT MOTION BECAUSE IT OVERLOOKED THE INCOMPLETENESS OF THE RECORD AND THUS MISAPPREHENDED THE ACTUAL LEGAL ARGUMENTS ADVANCED BY APPELLEE, AND MOREOVER APPELLEE NEVER ARGUED THAT NLG'S PRIOR SUIT ON A PROMISSORY NOTE THAT RESULTED IN AN UNSATISFIED JUDGMENT BARRED THE FORECLOSURE SUIT.**

Contrary to this Court's analysis, Appellee never argued that the prior suit on the promissory note barred NLG, LLC from seeking to foreclose on her home. This Court's September 3, 2014 opinion ("Opinion") noted that: (i) "First NLG's prior suit on the promissory note and recordation of a judgment on the note was not an election of remedies precluding the later enforcement of the mortgage. Junction Bit & Tool Co. v. village Apartments, Inc., 262 So. 2d 659 (Fla. 1972) (unsatisfied judgment on a promissory note secured by a mortgage did not constitute a remedy or a bar to a suit to foreclose the mortgage)". Op. at 4.

A closer look at the record, including the oral argument, unmistakably shows that Hazan's former counsel never argued that NLG, LLC's prior suit on the promissory note and recordation of entry for a monetary judgment bars a later suit to foreclose on the mortgage. Rather, Hazan's former counsel argued that following the earlier decisions and orders, the stipulation of dismissal of a 2008 quiet title action titled Elizabeth Hazan v. NLG, LLC and Chris Kosachuk, case number 2008-31657-CA-01(27) and NLG's waiver of claims, counterclaims, and potential counterclaims, and two resulting orders of dismissal with prejudice, cumulatively forever

6

EXHIBIT 4

precluded NLG's right to sue for foreclosure. In fact, Hazan's former counsel argued that the case titled <u>Elizabeth Hazan V. NLG, LLC and Chris Kosachuk</u>, case number 2008-31657-CA-01(27) and NLG's waiver of claims forever bars NLG, LLC from bringing a foreclosure suit against Appellee Elizabeth Hazan. <u>See</u> Ans. Br., Alan Reiss pgs. 16-17. This Court's misapprehension of Hazan's former counsel's argument and its ultimate arrival at rejecting all positions it deemed to be advanced by Appellee stems from this Court being deprived of a complete and accurate record. The incomplete Motion to Set Aside Sheriff's Deed and Vacate Sheriff's Sale in this Court's record exemplifies this point best.

The Stipulation of Dismissal for the 2008 quiet title action against NLG, LLC clearly states that the parties "hereby stipulate to the dismissal, with prejudice, of all claims and any counterclaims asserted or which may have been asserted in this action between these parties". <u>See</u> Exhibit 3 to the actual, true and correct copy of the Emergency Motion to Set Aside Sheriff's Deed and Vacate Sheriff's Sale, annexed as **Exhibit A** (Actual motion to Vacate, not including Affidavit of Hazan). Based on this Stipulation, a November 4, 2008 and a November 6, 2008 Orders by Honorable Circuit Court Judge Maria Espinosa Dennis read in relevant part:

> THIS MATTER having come on before the court upon the Stipulation for Dismissal with Prejudice of the Complaint and Counterclaim, the court having reviewed the stipulation, and

EXHIBIT 4

> being otherwise duly advised in the premises, hereby
>
> ORDERS AND ADJUDGES that the stipulation is hereby approved and this action including all claims or counterclaims asserted or which may have been asserted, is hereby dismissed, with prejudice, with each party to bear its own attorney's fees and costs.

See **Exhibit B.** The motion in its entirety also included a 72 page affidavit of Elizabeth Hazan, which was not included in this Court's record. It is attached as **Exhibit C.** The Orders annexed as **Exhibit B** were entered after the alleged second settlement agreement was signed. In 2008, Elizabeth Hazan sued NLG, LLC and Chris Kosachuk in the action case 2008-31657-CA-01(27)seeking to quiet title subject to the purported mortgage in this case. NLG's Chris Kosachuk initially issued a "gift of equity letter" "stating that he was a cousin of Hazan and that he did not expect her to pay back the $1,275,000.00 to NLG". It is attached as **Exhibit D.** As the quiet title action progressed, both Elizabeth Hazan and NLG, LLC agreed to dismiss, with prejudice, all their claims and counterclaims, both asserted and those of which may have been asserted. The claims included precisely NLG, LLC's claim or counterclaim for foreclosure, a claim that was forever terminated by the parties with prejudice, barring NLG, LLC from seeking foreclosure relief against Hazan. The 2008 quiet title action Stipulation and the order dismissing with prejudice the claim and counterclaims (including counterclaims that could have been asserted) were not in the record of this case because

8

EXHIBIT 4

Appellant supplemented the record with an incomplete motion that was one of several key documents relied on by Judge Eig in denying foreclosure to NLG.

In its second motion seeking to supplement the record, Appellant stated precisely:

> Appellant now files its Second Motion to Supplement the Record to include the corresponding "Emergency Motion to Set Aside Sheriff's Deed and Vacate Sheriff's Sale" filed by Hazan on November 21, 2008 which resulted in Judge Scola's December 18, 2008 Order. **A true and correct copy of the Emergency Motion to Set Aside Sheriff's Deed and Vacate Sheriff's Sale filed by Defendant Hazan on November 21, 2008 is attached hereto as Exhibit 1.**

See NLG's Second Motion to Amend Record annexed herein as **Exhibit E.** Despite language to the contrary, said motion was not the true and correct copy of the motion filed in the Court below. In fact, the document was missing 24 pages of the motion, to wit.: crucial exhibits. It was also missing a 72 page affidavit filed by Ms. Hazan (Exhibit C). Filing an incomplete motion and incorrectly representing it as the true and correct copy of the motion filed below prejudiced the Appellee because the missing 24 pages included crucial documents that go to the epicenter of the single issue before this Court. The missing affidavit, too, was crucial to Judge Eig's ruling. It is undisputed that the Stipulation of Dismissal of Claims and counterclaims in a prior terminated quiet title action was withheld from this Court.

EXHIBIT 4

In the Judgment appealed from by NLG, Judge Spencer Eig denied NLG foreclosure because of "[i]t is all procedural and that the earlier decisions, and . . . [s]tipulations ......

have precluded the ability to move forward for a closure of the mortgage and instead the money judgments are the remedy because of ..., because of failure to seek foreclosure at appropriate times, because of .... and because of . . . various things." <u>See</u> Tr. Of Post-trial Proceedings, pg. 6, ln. 16 to pg. 7, ln 5.

This court completely misapprehended that a voluntary dismissal with prejudice operates as an adjudication on the merits, barring a subsequent action on the same claim, a basis for Judge Eig's judgment in favor of Hazan. According to <u>Singer v. Borbua</u>, 497 So.2d 279, 281 (Fla. 3d DCA 1986), "[i]t is well settled that, in order to obtain appellate review, alleged errors relied upon for reversal must be raised clearly, concisely and separately as points on appeal."

Here, where the Appellant states the issue as singly referring to a denial of mortgage foreclosure subsequent to an unsatisfied final judgment on a breach of a promissory note, the Court misapprehended and overlooked the facts and law by failing to recognize that Judge Eig's decision is based on the res judicata and preclusive effect of the termination of the 2008 Quiet Title action case titled <u>Elizabeth Hazan V. NLG, LLC and Chris Kosachuk</u>, case number 2008-31657-CA-01(27), where both Hazan

EXHIBIT 4

and NLG "stipulated to the dismissal, with prejudice, of all claims and any counterclaims asserted or which may have been asserted in this action between these parties". <u>See</u> Stipulation of Dismissal, Oct. 29, 2008 (**Exhibit F**); Orders of Dismissal, Hon. Maria Espinosa Dennis, November 4, 2008 and November 6, 2008 (**Exhibit B**).

Elizabeth Hazan's Homestead exemption was only one of her arguments to vacate the sheriff's sale which resulted in the Judge Scola order. Hazan and NLG terminated the claims against each other relating to the mortgage in the 2008 quiet title action case titled <u>Elizabeth Hazan V. NLG, LLC and Chris Kosachuk</u>, case number 2008-31657-CA-01(27), by stipulating to dismiss with prejudice. Judge Eig also based his ruling upon the same stipulation of dismissal and the two orders entered by Honorable Judge Maria Espinosa Dennis on November 4, 2008 and November 6, 2008.

Despite this being argued by the Appellee in her brief, and despite the Appellant not addressing the matter notwithstanding that "alleged errors relied upon for reversal must be raised clearly, concisely and separately as points on appeal" <u>Singer</u>, 497 So.2d at 281, the Court improperly disposed of the proper basis of Judge Eig's ruling by simply holding that "there is no legal basis for such relief in Ms. Hazan's pleadings." <u>See</u> Op. at 4. Res judicata barred NLG from asserting the mortgage as defense to the quiet title action because the parties' stipulation constitutes

EXHIBIT 4

adjudication of the claims on their merits. This includes any counterclaims that could have been asserted by NLG, to wit.: foreclosure of its mortgage. The term "with prejudice" expressed in a judgment of dismissal, has a well-recognized legal import of concluding the rights of action and future re-litigation.

"[T]he burden is on Appellant in all proceedings before the reviewing Court to make error clearly appear". <u>Mitchell v. Morse Operations</u>, Inc. 276 So.2d 248, 249 (Fla. 3d DCA 1973). The judgment rendered in a nonjury trial is presumed correct and  . . . upon appeal it comes to this Court clothed with a presumption of correctness . . . ". <u>Id.</u> at 249. Given the appellate standard and presumptions, and the final adjudication of claims between the parties fully considered by Judge Eig during the two day trial, this Court's misapprehended the facts and law when it reversed the court below and should therefore grant the instant motion.

**II. THIS COURT SHOULD GRANT THE INSTANT MOTION BECAUSE IT MISAPPREHENDED ESSENTIAL FACTUAL FINDINGS DUE TO AN INCOMPLETE RECORD BEFORE THIS COURT.**

By way of a complaint dated June 3, 2008, Elizabeth Hazan filed a legal action against NLG, LLC and its purported representative Chris Kosachuk seeking, among other counts, to "quiet title" on the property subject to the underlying foreclosure suit. Two documents concerning the dismissal did not make part of the appellate record. The Emergency Motion to Set Aside Sheriff's Deed and Vacate Sheriff's Sale as well as Judge

EXHIBIT 4

Scola's order "quieting title" to Hazan forever relied on the complete and truthful copy of Hazan's motion, including exhibits evidencing a prior adjudication on the merits of NLG's claims against Hazan- precisely the dismissal with prejudice of its counterclaims and potential counterclaims that necessarily affect the validity of its mortgage. The very counterclaims NLG terminated by agreeing with Hazan to dismiss the quiet title action with prejudice go directly to the issue of NLG's mortgage rights against Hazan's property.

This Court's Opinion makes findings of fact that NLG's final judgment against Hazan "was affirmed by this Court", where in fact, the parties Stipulated for Dismissal of Appeal on October 28, 2008. The opinion also finds that "the December 2008 order 'quieting title' did not extinguish the mortgage or its lien" because '[t]hat order quieted title in Ms. Hazan only to the extent it vacated the sheriff's deed obtained by NLG and disentitled anyone in possession (other than Ms. Hazan) to remain in possession". <u>See</u> Op. pgs. 3-4. This Court misapprehended the true facts of this case by relying on an incomplete supplemented record.

# EXHIBIT 4

**III. THIS COURT SHOULD GRANT THIS MOTION BECAUSE THE COURT MISAPPREHENDED THE FACTS IN THIS CASE BY FINDING THAT HAZAN BREACHED THE SECOND SETTLEMENT AGREEMENT, WHEN IN FACT, NO SUCH FINDING WAS MADE BELOW, IMPERMISSIBLY ACTING AS TRIER OF FACT.**

This Court should grant the instant motion because it relied on a finding that does not exist in any Court order or judgment. In its Opinion, this Court stated that "[t]he parties nevertheless entered into a second settlement agreement, and Ms. Hazan made three of the specified payments before defaulting again in February 2009." Op. at 3. Honorable Scola's order specifically states that Ms. Hazan did not default of the second settlement agreement. See Scola Or. Essentially, this Court has engaged in a *de novo* review of the trial court's order, ignoring facts from two days of trial testimony, the determination of credibility of witnesses, and ultimately deciding that Hazan breached the second settlement agreement. This Court has substituted its own opinion for the opinion of the fact finder, in contravention of the applicable abuse of discretion standard of review. As such, this motion should be granted.

EXHIBIT 4

**IV. THIS COURT SHOULD GRANT THIS MOTION BECAUSE THE COURT MISAPPREHENDED THE FACTS AND LAW IN THIS CASE BY FAILING TO RECOGNIZE NLG'S UNCLEAN HANDS AND WELL ESTABLISHED BINDING LAW THAT HOLDS THAT A MATERIAL BREACH OF AN AGREEMENT DISCHARGES THE NON-BREACHING PARTY FROM CONTRACTUAL LIABILITY.**

This Court should grant the instant motion as the Court misapprehended facts and law in this case by failing to recognize NLG's unclean hands and binding case law concerning discharge of contractual liability when a material breach is committed by the other party. The Honorable Scola previously held that NLG's conduct with regard to Hazan was "unconscionable". (Scola Or.). Established binding case law, states that "having committed the first breach, the general rule is that a material breach of the agreement allows a non-breaching party to treat the breach as a discharge of its contractual liability". See Bradley III v. Health Coalition, Inc., 687 So.2d 329, 333 (Fla. 3d DCA 1997). Binding case law disallows pursuit of mortgage foreclosure, an equitable remedy, based upon the doctrine of unclean hands. See e.g. Carroll & Associates, P.A. v. Galindo, 864 So. 2d 24, 28 (Fla. 3d DCA 2004). Despite this argument was made by Ms. Hazan, this Court completely misapprehended it and ruled against her. As such, this Court should grant the instant motion for rehearing.

EXHIBIT 4

**V. THIS COURT SHOULD GRANT THE INSTANT MOTION BECAUSE THE APPEAL IS MOOT, WITH THE UNDERLYING JUDGMENT AND MORTGAGE HAVING BEEN SATISFIED PIOR TO THIS COURT'S SEPTEMBER 3, 2014 Opinion.**

This Court should grant the instant motion as this appeal was moot when the Court issued its opinion on September 3, 2014. The Florida Supreme Court has held that "[a]n issue is moot when the controversy has been so fully resolved that a judicial determination can have no actual effect . . . A case is "moot" when it presents no actual controversy or when the issues have ceased to exist." See Godwin v. State, 593 So. 2d 211, 212 (Fla. 1992), citing Dehoff v. Imeson, 153 Fla. 553, 15 So.2d 258 (Fla. 1943) and Black's Law Dictionary 1008 (6th ed.1990). "An issue is moot when the controversy has been so fully resolved that a judicial determination can have no actual effect. A case is "moot" when it presents no actual controversy or when the issues have ceased to exist." Merkle v. Guardianship of Jacoby, 912 So.2d 595, 600 (Fla. 2d DCA 2005)(internal citations omitted). "A case becomes moot, for purposes of appeal, where, by a change of circumstances prior to the appellate decision, an intervening event makes it impossible for the court to grant a party any effectual relief." Montgomery v. Dept. of Health & Rehab. Servs., 468 So.2d 1014, 1016 (Fla. 1st DCA 1985) citing 3 Fla.Jur.2d, Appellate Review, § 287, p. 337. "The rule discouraging review of moot cases is derived from the requirement of the United States Constitution, Article III, under which the existence of judicial

EXHIBIT 4

power depends upon the existence of a case or controversy." 468 So.2d at 1016–17, citing Liner v. Jafco, Inc., 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964). "It is the function of a judicial tribunal to decide actual controversies by a judgment which can be carried into effect, and not to give opinions on moot questions, or to declare principles or rules of law which cannot affect the matter in issue." Id. at 1016 citing 2 Am.Jur.2d, Administrative Law, § 572, p. 389. See also Carlin v. State, 939 So. 2d 245 (Fla. 1st DCA 2006); A.G. v. Department of Children and Family Services, 932 So. 2d 311 (Fla. 2d DCA 2006); Antar v. Seamiles, LLC, 960 So. 2d 802 (Fla. 3d DCA 2007); Paul Jacquin & Sons, Inc. v. City of Port St. Lucie, 69 So. 3d 306 (Fla. 4th DCA 2011); Kincaid v. State, 910 So. 2d 301 (Fla. 5th DCA 2005). The limitation on the exercise of judicial power to the decision of justiciable controversies is attributed to judicial adherence to the doctrine of separation of powers. Ervin v. City of N. Miami Beach, 66 So.2d 235, 236 (Fla. 1953). "A moot case generally will be dismissed." Godwin, 593 So.2d at 212. See also Young v. State, 167 So.2d 622, 623 (Fla. 1st DCA 1964)(holding that a challenge to a sentence that has been served is moot, requiring dismissal).

An appeal will also be rendered moot by settlement between the parties. Where the parties settled a declaratory judgment action, yet continued with the appeal, the Florida Supreme Court

# EXHIBIT 4

held that "there was no longer a bona fide, actual, or present need for a declaration as to the constitutionality of those statutes or rules being applied to the county. Therefore, the circuit court lacked jurisdiction to grant declaratory and injunctive relief." See Santa Rosa County v. Administration Com'n, Div. of Administrative Hearings, 661 So. 2d 1190, 1193 (Fla. 1995). In fact, Rule 9.350(a) of Appellate Procedure, demands that in case of settlement, "parties shall immediately notify the court by filing a signed stipulation for dismissal." See Fla. R. App. P. 9.350(a). The Court has also the power to sanction a party to an appeal for failing to notify the Court of a settlement. Merkle v. Guardianship of Jacoby, 912 So. 2d 595 (Fla. 2d DCA 2005).

In addition to the rule requiring counsel to inform the court of settlement, "[c]ounsel have a duty of candor to the court." Merkle, 912 So. 2d at 600 (citing R. Regulating Fla. Bar 4-3.3). "During the pendency of an appeal, the duty of candor imposes an obligation on counsel to notify the court of any development that may conceivably affect the outcome of the litigation, including facts that may raise a question of mootness." Id.

There are several exceptions to mootness, including: (1) when the issue is a matter of great public importance; (2) when the issue would otherwise evade review; or (3) when an order under review would have collateral consequences. See Godwin, 593 So.2d

EXHIBIT 4

at 212.

The Court retains jurisdiction "when the questions raised are of great public importance, are likely to recur, or if collateral legal consequences that affect the rights of a party flow from the issue to be determined." Holly v. Auld, 450 So.2d 217, 218 n.1 (Fla.1984).

Courts have previously considered constitutionality of a statute prohibiting a public defender from withdrawing from representation based on excessive caseload due to great public importance considerations. See Eleventh Judicial Circuit of Fla. v. State, 115 So. 3d 261 (Fla. 2013). Same great public importance was assigned to the constitutionality of a ballot initiative despite an election having taken place. Cook v. City of Jacksonville, 823 So. 2d 86 (Fla. 2002). See also Matter of Dubreuil, 629 So. 2d 819 (Fla. 1993) (whether the right of privacy is a basis to refuse a blood transfusion is a question of public importance); In re Byrne, 402 So. 2d 383 (Fla. 1981) (issue regarding involuntary commitment proceedings even though the petitioner had died was deemed of great public importance); Sadowski v. Shevin, 345 So. 2d 330 (Fla. 1977)(a challenge to election law even though the election had taken place).

Courts may also retain jurisdiction in a case that would otherwise evade review; for example, a matter involving the right to refuse a blood transfusion. See Matter of Dubreuil, 629 So. 2d

EXHIBIT 4

819. The legality of submitting a pregnant woman to forced medical treatment to protect the life of the fetus was also deemed an issue that could evade review. <u>Burton v. State</u>, 49 So. 3d 263 (Fla. 1st DCA 2010).

Finally, the court may retain jurisdiction if an order under review is one that would have collateral legal consequences. In <u>Keezel v. State</u>, 358 So. 2d 247, 248 (Fla. 4th DCA 1978), the Court held that "[i]n light of possibility of definite adverse legal consequences flowing from adjudication finding criminal defense attorney guilty of two instances of criminal contempt, issue of propriety of adjudication was not moot on appeal even though attorney had already paid $200 fine levied against him upon adjudication and might not be able to effect its return."

In the instant matter, the appeal is moot and should be dismissed as so. There exists no dispute that the August 20, 2014 order of Honorable Lopez judicially assigned NLG, LLC's "Final judgment . . . and all of NLG, LLC's rights, claims and benefits held against Elizabeth Hazan" to Selective Advisors Group, LLC ("Selective"), a judgment creditor of NLG. See **Exhibit G**. Neither is there any dispute that Honorable Lopez's final order ordered that the judgment creditor Selective "shall stand in the shoes of NLG, LLC with respect to all claims, rights and benefits held by NLG, LLC, so as to entitle it to recover all proceeds attributable to said judgment against additional defendant, Elizabeth Hazan,

EXHIBIT 4

with NLG, LLC receiving credit for all sums so received." Id.

Given this Order, Elizabeth Hazan and Selective had an absolute right to settle the matter amongst themselves as Selective stood in the shoes of all of NLG's rights as against Hazan. While the parties are generally required to notify the court of a settlement, this must be done by filing a "Stipulation of Dismissal". See Fla. R. App. P. 9.350(a). Since NLG's rights were judicially assigned to Selective to offset NLG, LLC's $5,000,210.00 debt (without interest) to Selective, NLG, LLC would not sign a stipulation of dismissal, and Selective is not a party to this appeal and could not have signed a Stipulation of Dismissal. Neither did any of the then appearing Counsel act to inform the Court of the Settlement. The record with the Miami-Dade Clerk of Courts reflects that the underlying judgment and mortgage are satisfied. See **Exhibit H** and **I** are true copies of the satisfaction pieces for the judgment and mortgage, respectively.

Counsel for a party has "an obligation . . . to notify the court of any development that may conceivably affect the outcome of the litigation, including facts that may raise a question of mootness." Merkle, 912 So. 2d at 600. The rule derives from bar members' duty of candor to the court. See R. Regulating Fla. Bar 4-3.3. No attorney contacted the court to advise of the matter being moot before the Court's ruling.

Given that the judgment and mortgage had been satisfied, "the

# EXHIBIT 4

controversy has been so fully resolved that a judicial determination can have no actual effect". <u>Godwin</u>, 593 So. 2d at 212. Given NLG, LLC's loss of any interest in Hazan's obligations, this Court is without judicial power as such power cannot extend to non-justiciable controversies. <u>Ervin</u>, 66 So. 2d at 236. This appeal is moot as of September 3, 2014 and continuing until today, NLG, LLC has no mortgage to foreclose on. Neither does NLG, LLC have a money judgment against Hazan to collect.

There is not an applicable exception to mootness here. The question raised in the appeal is not of great importance to call for further exercise of jurisdiction. This matter has nothing to do with the public defender system and rights of counsel to withdraw as in <u>Eleventh Judicial Circuit of Fla.</u>, 115 So. 3d 261, and it does not address the constitutionality of the election law as in <u>Cook</u>, 823 So. 2d 86.

This matter is also not one that would otherwise evade review. It contains no obscure issue of a right to refuse a blood transfusion as in <u>Matter of Dubreuil</u>, 629 So. 2d 819, or the legality of forced medical treatment of a woman to protect the life of a fetus inside her as in <u>Burton</u>, 49 So. 3d 263. There exist no collateral consequences such as the "definite adverse legal consequences flowing from . . . [findings] of criminal contempt" against a criminal defense attorney as in <u>Keezel</u>, 358 So. 2d at 248.

EXHIBIT 4

In <u>Swyers v. State</u>, Appellant sought post-conviction relief relating to the calculation of his sentence. 483 So.2d 520, 521-22 (Fla. 4th DCA 1986). The issue of mootness was brought up on a motion for rehearing. It was argued that the appeal was moot as the Appellant's sentence had already been recalculated. <u>Id.</u> The Court held that:

> We agree with appellee that the issue is moot and that the appeal should be dismissed. **We do so and vacate the original opinion, which provides for what we now know to be a useless act.** The fact that we have learned the true state of the facts at this late date does not preclude our action. <u>See</u> <u>Barnes v. Lincoln National Life Insurance Company</u>, 330 So.2d 119 (Fla. 1st DCA 1975); <u>Harrington v. State</u>, 455 So.2d 1317 (Fla. 2d DCA 1984). As said, "Better late..."

<u>Id.</u> at 521-22 (emphasis added).

This Court's September 3, 2014 opinion "provides for what [the Court] now know[s] to be a useless act." <u>Id.</u> at 521-22.

Given the judicial assignment on August 20, 2014, NLG lacks standing to maintain this appeal. A foreclosing mortgagor must show that it acquired the right to enforce the note before it filed suit. <u>See</u> <u>Gonzalez v. Deutsche Bank Nat'l Trust Co.</u>, 95 So.3d 251, 253-54 (Fla. 2d DCA 2012); <u>Venture Holdings & Acquisitions Group, LLC v. A.I.M. Funding Group, LLC</u>, 75 So.3d 773, 776 (Fla. 4th DCA 2011). "To satisfy the requirement of standing, the plaintiff must show that a case or controversy exists between the plaintiff and the defendant, and that such case

# EXHIBIT 4

or controversy continues from the commencement through the existence of the litigation." See Ferreiro v. Phila. Indem. Ins. Co., 928 So.2d 374, 377 (Fla. 3d DCA 2006); see also Collins v. Gov't Emp. Ins. Co., 922 So.2d 353, 353 (Fla. 3d DCA 2006).

Given that this appeal was moot when this Court rendered its opinion, and because there is no justiciable controversy before the Court, with NLG having no standing to pursue this appeal as of September 3, 2014, this Court should grant the motion for a rehearing and affirm the lower court's judgment.


## Conclusion

This Court's opinion conflicts with what this Court's prior opinion in Bardley III, 687 So. 2d 329 and Singer, 497 So.2d 279, and Okun  v. Stuart House Condominium Association, Inc., 362 So. 2d 713 (Fla. 3d DCA 1978).

I express the belief, based on the reasons and studied professional judgment, that the panel decision is contrary to the following decisions of this court and that a consideration by the full court is necessary to maintain uniformity of decisions in this Court: Miami Automotive Retailing v. Baldwin, 990 So.2d 1139 (Fla. 3d DCA 2008); State Office of Attorney General Dept. of Legal Affairs v. Wyndham International, Inc., 869 So.2d 592 (Fla. 3d DCA 2004); Latman v. Costa Cruise Lines, N. V., 758 So.2d 699 (Fla. 3d DCA 2000).

EXHIBIT 4

For that reason, Appellee prays this Court to hear the matter *en banc* and affirm the circuit Court.

Based on the foregoing, the Appellee requests that her motion for rehearing and rehearing en banc be granted in all respects, and the Judgment below, Affirmed.

Respectfully submitted,

/s/ *Daniel S. Nathan*
Daniel S. Nathan, Esq.
12805 SW 84th Avenue Rd
Miami, FL 33156
Tel.: (786) 701-2420
Fla Bar No. 100329
dnathan@danielsnathan.com
Counsel for Appelee Elizabeth Hazan

EXHIBIT 4

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

THIRD DISTRICT

NOVEMBER 03, 2014

NLG, LLC, etc.,  
Appellant(s)/Petitioner(s),  
vs.  
ELIZABETH HAZAN,  
Appellee(s)/Respondent(s),

CASE NO.:  3D**13-0684**

L.T. NO.:  11-42770

Upon consideration, appellee's motion for rehearing is hereby denied.

SUAREZ, SALTER and LOGUE, JJ., concur.  Appellee's motion for rehearing en

banc is denied.



cc:    Mark D. Cohen         Nicole R. Moskowitz      Daniel S. Nathan  
        Juan Ramirez, Jr.       Elizabeth Hazan         Christopher Kosachuk

la

EXHIBIT 5

COURT OF COMMON PLEAS

PHILADELPHIA COUNTY, PENNSYLVANIA


NLG, LLC,                              )
                                      )
            Plaintiff,                )
                                      )
                                      )  AUGUST TERM, 2012
VS.                                   )  NO. 02514
                                      )
DARIUS A. MARZEC, MARZEC LAW          )
FIRM, P.C., GUY A. DONATELLI,         )
LAMB McERLANE, P.C., and              )
9197-5904 Quebec, Inc.,               )
                                      )
            Defendants.               )
_____)


- - -

FRIDAY, APRIL 4, 2014

- - -


          Telephonic deposition of RAYMOND HOULE, taken

at the LAW OFFICES OF EDWIN P. SMITH, 1528 Walnut Street,

Suite 702, Philadelphia, Pennsylvania, beginning at

approximately 11:15 a.m., on the above date, before Carol L.

Shearer, Registered Professional Reporter and Notary Public.

CENTER CITY REPORTING, INC.
1315 Walnut Street - Suite 601
Philadelphia, Pennsylvania  19107
215-732-4882

EXHIBIT 6

```
1    A P P E A R A N C E S:

2

3         EDWIN P. SMITH & ASSOCIATES, P.C.
          BY:   EDWIN P. SMITH, ESQUIRE
4             1528 Walnut Street
              Suite 702
5             Philadelphia, Pennsylvania  19102
              (215) 864-7300
6             edwinsmith.attorney@yahoo.com

7

          --  Representing the Plaintiff
8

9

          KANE, PUGH, KNOELL, TROY & KRAMER, LLP
10        BY:   PETER ROGERS, ESQUIRE
              (Appearing Via Telephone)
11            510 Swede Street
              Norristown, Pennsylvania  19401
12            (610) 275-2000
              progers@kanepugh.com
13

14        --  Representing the Defendants
              Darius A. Marzec and Marzec Law Firm, P.C.
15

16

          LAMB McERLANE, P.C.
17        BY:   GUY A. DONATELLI, ESQUIRE
              (Appearing Via Telephone)
18            24 East Market Street
              West Chester, Pennsylvania  19382
19            (610) 430-8000
              gdonatelli@lambmcerlane.com
20

          --  Representing the Defendants
21            Guy A. Donatelli and Lamb McErlane, P.C.

22

23

24
```

EXHIBIT 6

1    A P P E A R A N C E S (cont'd.):

2

3        MARZEC LAW FIRM
         BY:   DARIUS A. MARZEC, ESQUIRE
4              (Appearing Via Telephone)
               225 Broadway
5              Suite 3000
               New York, New York  10007
6              (212) 267-0200
               dmarzec@marzeclaw.com

7

8              --  Representing the Defendant 9197-5904 Quebec,
                   Inc.

9

10

11

12   ALSO PRESENT:  JUDITH P. MEYER, DISCOVERY MASTER

13

14

15

16

17

18

19

20

21

22

23

24

EXHIBIT 6

1                          I N D E X

2

3                                                      Page

4

5    Examination by Mr. Smith                        5, 66

6    Examination by Mr. Marzec                          61

7    Examination by Mr. Rogers                          74

8    Court Reporter's Certificate                       76

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

EXHIBIT 6

1           (It is hereby stipulated, by and among counsel

2      for the respective parties, that signing, sealing,

3      certification and filing are waived; and that all

4      objections, except as to form of the question, are

5      waived until the time of trial.)

6                RAYMOND HOULE,

7     the Witness herein, having been first duly sworn,

8     was examined and testified as follows:

9               EXAMINATION

10  BY MR. SMITH:

11    Q.   State your name.

12    **A.   Raymond Houle.**

13    Q.   And what is your home address, Mr. Houle?

14    **A.   What is what?**

15    Q.   What is your home address?  Where do you live?

16    **A.   Where I am?  In Montreal.**

17    Q.   Give me your address, please, you street number and

18  the street name.

19    **A.   My home is 552 -- 5552 Queen Mary Road -- Avenue --**

20  **Road -- Queen Mary Road, Apartment 4, in Hampstead.**

21    Q.   She cannot hear you.  You have to turn the

22  microphone off on the computer because there's feedback.

23    **A.   One moment.  Yes.**

24    Q.   That's better.  Okay.  Give the rest of your address

EXHIBIT 6

1  after Quebec.

2      **A.   I didn't hear.   Sorry.**

3      Q.   You have to turn the microphone off on your computer

4  and hold the phone up closer to your mouth, please.

5      **A.   (Inaudible.)**

6      Q.   Hold the phone closer to your mouth.

7      **A.   Okay.**

8      Q.   Pick up the phone and hold it near your mouth.

9      **A.   Okay.**

10     Q.   Now, what was your address after Montreal?

11     **A.   552 Road -- Queen Mary, Apartment 4, Hampstead,**

12  **Quebec H3X 1G9.**

13     Q.   Where's all the laughing coming from?   Mr. Houle,

14  hold the phone up to your mouth, please.

15     **A.   Okay.**

16     Q.   That's better.   That's better.

17         MR. SMITH:   Yes, Guy?

18         MR. DONATELLI:   My screen shows that Peter

19     Rogers is no longer on the phone.

20         (Whereupon, a discussion was held off the

21     Record.)

22  BY MR. SMITH:

23     Q.   Mr. Houle, are you employed?

24     **A.   Are you what?**

EXHIBIT 6

1    Q.    Employed.  Do you work?

2    **A.    I'm working for myself.**

3    Q.    What is your business?

4    **A.    My what?**

5    Q.    What is your business?

6    **A.    I'm a businessman.**

7    Q.    Say again.  What business are you in?

8    **A.    Business.**

9    Q.    What kind of work do you do?

10   **A.    Accounting.**

11   Q.    How long have you been involved in accounting?

12   **A.    35 years.**

13   Q.    35 years.

14   **A.    I am a CPA.**

15   Q.    And where did you obtain your license or

16   certification?

17   **A.    CPA is here in Quebec, the new form of CPA**

18   **(inaudible).**

19        COURT REPORTER:  I'm sorry.  I didn't get that.

20   BY MR. SMITH:

21   Q.    You have to hold the phone closer to your mouth, Mr.

22   Houle.

23        COURT REPORTER:  Say it again, please.  "Where

24   did you obtain your license or certification?"

EXHIBIT 6

1          THE WITNESS:  Pardon?

2     BY MR. SMITH:

3          Q.   Where did you obtain your certification?  Where did

4     you get your CPA?

5          **A.   Montreal.**

6          Q.   What is your physical problem that prevents you from

7     coming to Philadelphia?

8          **A.   I am on medication.**

9          Q.   And why can you not travel?

10         **A.   (Inaudible.)**

11         Q.   Why can you not travel to Philadelphia?

12         MR. MARZEC:  I'm sorry.  This is Darius Marzec.

13    I just have to lodge an objection only to the extent

14    that we do not want Mr. Houle to discuss his

15    confidential health information.  And I'm not sure if

16    it's going that way, but as a precaution, I would

17    like to object to that line of questioning.  We are

18    on Skype at this time.  Mr. Houle is here.  I would

19    prefer to get to the merits.

20         MR. SMITH:  I would like to ask the questions --

21         MS. MEYER:  Mr. Marzec, the Discovery Master,

22    Judith Meyer.  The objection is premature.

23    Additionally, the Skype connection is very tortured,

24    and if Mr. Houle could possibly come to Philadelphia,

EXHIBIT 6

1     that is a proper question that may be asked by

2     counsel.

3  BY MR. SMITH:

4     Q.  Mr. Houle, what is your medical problem that

5  prevents you from traveling to Philadelphia?

6     **A.  Severe, severe depression last year, and I'm still**

7  **on medication for that.**

8     Q.  You appeared in Philadelphia in December for

9  depositions; is that correct?

10     **A.  Well, yes, it was correct, but it was very difficult**

11  **for me to come back.**

12     Q.  What is the difficulty?

13     **A.  The difficulty because in my state -- my --**

14     COURT REPORTER:  I'm having trouble hearing you.

15  BY MR. SMITH:

16     Q.  Say that again, please.  And hold the phone close to

17  your mouth.

18     **A.  Okay.  I have (unintelligible) --**

19     COURT REPORTER:  "I have" what?

20     THE WITNESS:  I have (unintelligible)

21     COURT REPORTER:  I'm not --

22  BY MR. SMITH:

23     Q.  The court reporter cannot understand what you're

24  saying.  Please repeat it?

EXHIBIT 6

1    COURT REPORTER: I'm not understanding most of

2    the answers. I'm starting to be very uncomfortable

3    with this.

4    MS. MEYER: Counsel, Judith Meyer, discovery

5    master. It might be fruitful to ask Mr. Houle if he

6    ever leaves his house and, if so, if he could go to a

7    video conferencing center where we would not have to

8    deal with these technical problems.

9  BY MR. SMITH:

10   Q.   Mr. Houle, can you travel inside Montreal?

11   **A.   No, I don't have a car.**

12   Q.   How do you get around?

13   **A.   By my friends.**

14   Q.   You have people that drive you?

15   **A.   No.**

16   Q.   Are there taxicabs in Montreal?

17   **A.   Yes.**

18   Q.   Can you take taxicabs?

19   **A.   Take what?**

20   Q.   Taxicabs, taxis?

21   **A.   Taxi, yes, I can take.**

22   MR. SMITH: Ms. Meyer, may I suggest that we

23   comply with your suggestion and let him take a

24   taxicab to some conference center, and Mr. Marzec can

EXHIBIT 6

1    set that up.  This is torturous.

2        MS. MEYER:  We have been 45 minutes at this, and

3    we barely have the occupation of the witness down.

4        MR. MARZEC:  Ms. Meyer, Darius Marzec.  I hear

5    Mr. Houle.  There is a language issue.  He's a native

6    French speaker, and I hear everybody.  So Our

7    position is try this.  Let's continue with the

8    question and give Mr. Houle an opportunity to answer

9    the questions now that we're set up.

10       MS. MEYER:  Mr. Marzec, the problem is if the

11   court reporter cannot hear Mr. Houle, we have no

12   transcript.

13       (Unintelligible cross-talk)

14       MR. ROGERS:  May I make one suggestion.  If

15   there's no concern now whether it is or is not

16   Mr. Houle who is testifying, could we just go to a

17   telephone deposition at this point?

18       MR. SMITH:  This is Ed Smith.  He is on the

19   telephone and the court reporter cannot understand

20   what he's saying, and it's very hard to hear him.

21       MR. MARZEC:  Because his computer is on, I

22   believe.  That's why.  There's static because of

23   that.

24       MR. SMITH:  Well, I've asked him several times

EXHIBIT 6

1    to turn it off, and it's still on then, apparently.

2        MR. ROGERS:  Well, can we try that?  Can we try

3    to have Mr. Houle turn off his computer entirely?

4        MR. MARZEC:  Let's try that.

5        MR. SMITH:  We're off the Record now.

6        (Whereupon, a discussion was held off the

7    Record.)

8  BY MR. SMITH:

9    Q.  Mr. Houle, do you have the exhibits in front of you

10  1 through 14?

11    **A.  1 what?**

12    Q.  There are papers that were supposed to be provided

13  to you.  There are exhibits --

14    **A.  Yes.**

15    Q.  -- and they're marked --

16    **A.  I have exhibits 1 to 13.**

17    Q.  Yes.

18    **A.  14.  Yes, I have it.**

19    Q.  You have to speak up and speak loudly, please.

20    **A.  Yes.**

21    Q.  Please pick up Exhibit H-14.

22    **A.  14.  What does it indicate on the paper?**

23    MR. MARZEC:  I don't have H-14.  Darius Marzec.

24    MR. SMITH:  I sent an e-mail saying that your

EXHIBIT 6

1    motion to withdraw as counsel should be marked as

2    H-14 and provided to the witness.

3         MR. MARZEC:  Which motion?  Which case?

4         MR. SMITH:  Your motion to withdraw in this

5    case.

6         MR. MARZEC:  I did not receive that as an

7    exhibit in this case.

8         MR. SMITH:  No.  I sent you an e-mail asking you

9    to provide him with a copy of your Motion to Withdraw

10   as his counsel and mark it H-14.

11   BY MR. SMITH:

12   Q.   Mr. Houle --

13        MR. MARZEC:  I don't recall such an e-mail.

14   BY MR. SMITH:

15   Q.   Mr. Houle, do you know that Mr. Marzec is quitting

16   as your attorney, or trying to quit as your attorney?

17   **A.   No.**

18   Q.   You didn't know that?

19   **A.   (No response.)**

20   Q.   When I say "your", I'm talking about Quebec.

21   **A.   Yes, Quebec.**

22   Q.   Did you know --

23   **A.   (Inaudible).**

24        COURT REPORTER:  What did you just --

EXHIBIT 6

1    BY MR. SMITH:

2         Q.   Say that again?

3              MR. MARZEC:  Mr. Houle, please speak loud, slow

4         and wait for the person asking the question to

5         finish.  Just pause and then answer.

6              THE WITNESS:  Okay.

7    BY MR. SMITH:

8         Q.   Did you ever receive papers saying that Mr. Marzec

9    is trying to quit as Quebec's attorneys?

10        **A.   No.**

11        Q.   Did you know that Mr. Marzec is saying that you do

12   not cooperate with him?

13        **A.   Yes, I do cooperate.**

14             COURT REPORTER:  You do what?

15             MR. SMITH:  Cooperate.

16             THE WITNESS:  I do cooperate.

17   BY MR. SMITH:

18        Q.   Did you ever not cooperate with Mr. Marzec?

19             MR. MARZEC:  This is Darius Marzec.  I have to

20        lodge an objection --

21             THE WITNESS:  No, never.

22             MR. MARZEC:  -- because this line of questioning

23        gets into confidential client/attorney

24        communications, and information that Mr. Smith is

EXHIBIT 6

1  seeking is privileged, not subject to disclosure,

2  specifically, communication between client and the

3  attorney.

4      MR. SMITH:  May I respond?  This is Ed Smith.

5      MS. MEYER:  Yes.

6      MR. SMITH:  In his motion, paragraph 4, he says

7  Quebec has failed to cooperate in the strategy,

8  advice and counsel provided to it.  In paragraph 5 he

9  says neither has Quebec agreed with counsel

10  concerning the strategy, defense and the direction of

11  the pending action.  And paragraph 6 says

12  additionally, shareholder of Quebec, Mr. Raymond

13  Houle, maintains a residence in Canada, does not

14  communicate with counsel as required for effective

15  representation.  Now I'm just questioning him as to

16  those averments by Mr. Marzec.

17      MS. MEYER:  Those are public averments -- I'm

18  sorry.  Mr. Marzec, respond.

19      MR. MARZEC:  Briefly, my response is that the

20  question is -- I worry that Mr. Houle may respond

21  with information that should not be made part of this

22  record, meaning any communication and discussions and

23  the strategy.  I don't want this to go there, because

24  it would not be proper for this deposition.

EXHIBIT 6

1        MS. MEYER:  Let me make this ruling then.  Did

2    you serve this on your client, Mr. Marzec?

3        MR. MARZEC:  Yes, of course.

4        MS. MEYER:  Okay.  To the extent that you raised

5    these issues in your motion, Mr. Smith can inquire on

6    a yes/no basis whether these things are correct,

7    because I'm troubled that the Court may not know or

8    believe that Mr. Houle has been served, and if

9    Mr. Houle is in disagreement with your allegation, I

10    think the Court needs to know that.  We will not get

11    into the substance of your communications or any

12    advice you have given Mr. Houle.

13  BY MR. SMITH:

14    Q.   Mr. Houle, have you failed to cooperate in the

15  strategy or advice of Mr. Marzec?

16    **A.   No, never.**

17    Q.   Have you ever disagreed with Mr. Marzec concerning

18  your strategy or defense or anything to do with the lawsuit?

19    **A.   I always agree.**

20    Q.   Have you ever refused to talk to Mr. Marzec when

21  he's contacted you?

22    **A.   Never.  I always talk to my lawyer.**

23    Q.   Have you ever had any discussions with Guy

24  Donatelli?

EXHIBIT 6

1    MR. MARZEC:  I have to object.  Again, it's the

2    same objection that Mr. Smith is inquiring about

3    privileged and confidential statements between

4    counsel and clients.

5        MR. SMITH:  It just requires a yes or no.

6        MS. MEYER:  He asked as to Mr. Donatelli, not as

7    to you.

8        MR. MARZEC:  But the privilege is held with

9    Quebec, the company that I represent.

10       MR. SMITH:  My question just requires a yes or

11   no answer, Ms. Meyer.

12       MS. MEYER:  Yes.  It does require just a yes or

13   no answer.

14       THE WITNESS:  Could you repeat your question.

15   BY MR. SMITH:

16   Q.   Did you ever have conversations with Guy Donatelli?

17   **A.   Yes.**

18   Q.   Where was Quebec incorporated?  I'm saying Quebec

19   instead of the full name.  I'm sorry.  Where was it

20   incorporated?

21   **A.   In Quebec, in Montreal.**

22   Q.   And was there a lawyer who assisted you in creating

23   that corporation?

24   **A.   I was not the creator.**

EXHIBIT 6

1      Q.    Who created it?

2      **A.    I don't know.**

3      Q.    Well, how did you come to be an officer of that

4    corporation or a shareholder of that corporation?

5      **A.    (No audible response.)**

6           COURT REPORTER:  I'm sorry?

7    BY MR. SMITH:

8      Q.    Your answer?

9      **A.    Yes.  I had a friend -- I had Elia Hazan, who has**

10   **transferred me the company --**

11          COURT REPORTER:  Who what?

12   BY MR. SMITH:

13     Q.    Wait.  Start over, please, and speak slowly and

14   loudly.

15     **A.    Elia Hazan, who transferred me the company, in**

16   **September, 2011.**

17     Q.    That's Elia Hazan; is that right?

18     **A.    Yes.**

19     Q.    And how is he related to Elizabeth Hazan?

20     **A.    Yes.**

21          MR. MARZEC:  I have to object.  I don't believe

22          that this line of questioning will lead to discovery

23          of admissible evidence in this case.  It's not

24          reasonably calculated to lead to that.

EXHIBIT 6

1        MS. MEYER: Overruled.

2 BY MR. SMITH:

3    Q.   Is he related to Elizabeth Hazan?

4    **A.   Yes.  He is her brother.**

5    Q.   Were you ever asked by Elizabeth Hazan to do

6 anything using the Quebec Corporation?

7    **A.   No, never.**

8    Q.   Did Elia Hazan ask you to use the corporation to do

9 anything?

10    **A.   No, never.**

11    Q.   Were you promised anything by either Hazan for being

12 involved with the Quebec Corporation?

13    **A.   No.**

14    Q.   Weren't you promised $200,000 by Ms. Hazan?

15    **A.   Yes.**

16    Q.   And what was that for?

17    **A.   For satisfying some judgment she has with NLG.**

18    Q.   Did she pay you that money?

19    **A.   No.  It is a --**

20    COURT REPORTER: I'm sorry?

21 BY MR. SMITH:

22    Q.   What did you say after "no"?

23    **A.   It is a promise.**

24    Q.   It is a promise?  She promised to pay?

EXHIBIT 6

1     **A.    P-R-O-M-I-S-E.**

2     Q.    Promise.  And when is she to pay you that money?

3     **A.    (Unintelligible.**

4           COURT REPORTER:  I'm sorry?

5     BY MR. SMITH:

6     Q.    Say that again.

7     **A.    One moment, please.**

8           MR. MARZEC:  I think he said "depending".

9     BY MR. SMITH:

10    Q.    When is she to pay you that money?

11    **A.    When I ask -- one moment, please.  Could you repeat**

12    **the question.**

13    Q.    Who is with you, Mr. Houle?

14    **A.    She has 24 months to pay me.**

15    Q.    Mr. Houle, who is with you in the room?

16    **A.    Nobody.**

17    Q.    Who?

18    **A.    Nobody.**

19    Q.    Weren't you just talking to somebody?

20    **A.    No.**

21    Q.    Do you know that, under the law of Pennsylvania, you

22    could be personally responsible for the debts of Quebec

23    Corporation under certain circumstances?

24          MR. MARZEC:  This is Darius Marzec.  I object.

EXHIBIT 6

1    I think the question calls for a legal conclusion,

2    which my client is not equipped to give.

3        MR. SMITH:  I just asked him if he knows.  It's

4    a yes or no answer.

5        MS. MEYER:  You can ask him if he knows, but it

6    is a legal question, and -- well, ask him if he

7    knows.

8    BY MR. SMITH:

9    Q.    Do you know that?

10        MR. MARZEC:  Is my objection overruled?

11        THE WITNESS:  No.

12        MS. MEYER:  Yes.  For the purposes of yes or no,

13    it is.

14        MR. MARZEC:  His answer was no.

15        MS. MEYER:  We will treat it as a fact question.

16    BY MR. SMITH:

17    Q.    What business was Quebec in?

18        MS. MEYER:  Was there an answer to the question?

19        MR. SMITH:  Yes.  He said "no."

20        MS. MEYER:  Okay.

21    BY MR. SMITH:

22    Q.    What is the business of the Quebec Corporation?

23    **A.    (Unintelligible).**

24        COURT REPORTER:  I'm sorry?

EXHIBIT 6

1  BY MR. SMITH:

2      Q.   We didn't hear that.

3      **A.   One moment, please.  Yes.  Could I respond?**

4      Q.   What is the business of the Quebec Corporation?

5      **A.   Quebec uses the company to own judgment.**

6  **(Unintelligible).**

7      COURT REPORTER:  I'm sorry.  You'll have to

8  repeat that.

9      THE WITNESS:  Yes.  Quebec uses the company to

10  own a judgment against Chris Kosachuk.  That was the

11  main purpose that it was used for.

12  BY MR. SMITH:

13      Q.   Did the corporation have any other business other

14  than that?

15      **A.   Pardon?**

16      Q.   Did Quebec have any other business other than owning

17  the judgment against Mr. Kosachuk?

18      **A.   No.**

19      Q.   Does Quebec -- has Quebec paid attorneys fees to

20  Mr. Marzec or Mr. Donatelli?

21      MR. MARZEC:  I have to object on the basis that

22  the question calls for privileged and confidential

23  information that should not be disclosed here.  I

24  believe the same objection was made in response to

EXHIBIT 6

1    paper discovery, and the objection was sustained.

2         MR. SMITH:  I don't know what he's referring to,

3    but this is not a privileged matter.  I'm not asking

4    for communication.  I'm just asking whether or not he

5    paid the bills, his corporation paid the bills.

6         MS. MEYER:  The objection is overruled.  This is

7    not getting into privileged material.

8         THE WITNESS:  Okay.  I can respond.  I don't

9    recall.

10   BY MR. SMITH:

11        Q.   Does Quebec Corporation have a checkbook, a checking

12   account?

13        **A.   No.**

14        Q.   You are the only shareholder of Quebec Corporation;

15   is that correct?

16        **A.   Yes.**

17        Q.   And you are the only officer of Quebec Corporation;

18   is that correct?

19        **A.   Yes.**

20        Q.   Then how did you pay attorneys fees?

21        **A.   I don't have to respond to that question.**

22        Q.   Yes, you do, sir.  How did Quebec pay its attorneys

23   fees?

24        **A.   I don't recall.**

EXHIBIT 6

1    Q.    Have you ever received a bill for attorneys fees to

2  Quebec Corporation from Mr. Marzec or Mr. Donatelli?

3    **A.    I don't recall.**

4    Q.    Is there anything wrong with you that affects your

5  memory?

6    **A.    Sometimes, yes, because of my medication.**

7    Q.    What is the medication?

8    **A.    I have my medication over here.**

9        MR. MARZEC:  I object to the extent that this

10   calls for Mr. Houle to respond about his medical

11   conditions and medicines that he's taking.  I think

12   that's delving too deep into his personal life.

13   Again, he's here as a representative of 9197-5904

14   Quebec, Inc., that is a Defendant in this case.

15       MR. SMITH:  If I may respond, he's saying his

16   memory may be affected by the medication.  I'm

17   entitled to know what the medication is.

18       MS. MEYER:  You have a witness who doesn't

19   recall whether the company of which he is sole the

20   shareholder and officer has paid attorneys fees.  On

21   behalf of the corporation, he doesn't recall if he

22   ever received bills for attorneys fees.  If this

23   witness is impaired in any way, and he is saying his

24   memory is impaired, then the question is proper as to

EXHIBIT 6

1     what the hindrances are that are affecting his

2     ability to recall answers to questions.  Overruled.

3         MR. MARZEC:  Mr. Houle, please answer the

4     question.

5         THE WITNESS:  Okay.  I was treated for

6     depression, the main purpose that could affect my

7     memory.  I have good memory.  On pressure, I have

8     difficulty to remember.  That's the main thing.

9  BY MR. SMITH:

10     Q.  What is the medication that you're taking?

11     **A.  My medication is Venlafaxine.**

12     Q.  Would you spell that, please.

13     **A.  V-E-N-L-A-F-A-X-I-N-E.  It's for anxiety,**

14  **depression.**

15     Q.  Did you select the attorneys to represent the

16  corporation in matters involving Mr. Kosachuk?

17     **A.  Yes, I did.**

18     Q.  Had Mr. Marzec ever represented you before any

19  matter involving Mr. Kosachuk?

20     **A.  Yes, I did.  Yes, I do.**

21     Q.  And was that representing you personally or

22  representing some other corporation?

23     **A.  Personally.**

24     Q.  Did you ever pay any attorneys fees in cash on

EXHIBIT 6

1     behalf of the Quebec?

2     **A.    Yes.**

3     Q.    Yes?  Where did the cash come from?

4     **A.    From my money.**

5     Q.    Your personal money or the corporation's money?

6     **A.    My personal.**

7     Q.    And why did you pay in cash?

8     **A.    (No response.)**

9     Q.    Did you understand my question?

10     **A.    Yeah.  That's my right.**

11     Q.    Why did you pay --

12     MR. MARZEC:  He said "that's my right".

13     THE WITNESS:  That's my right.

14  BY MR. SMITH:

15     Q.    Did anybody ask you to pay in cash?

16     **A.    (Inaudible) cash if I want to do.**

17     Q.    What?

18     **A.    To pay cash if I want to.**

19     Q.    Did anyone ask you to pay in cash?

20     **A.    Yes.**

21     Q.    Who?

22     **A.    I don't remember.  I don't --**

23     MR. MARZEC:  I don't think he understood the

24     question.

EXHIBIT 6

1      MR. SMITH:  Excuse me, sir.  Mr. Marzec, please

2  don't interrupt.

3  BY MR. SMITH:

4      Q.  Sir, who asked you to pay in cash?

5      **A.  I don't remember.**

6      Q.  Was it Elizabeth Hazan that asked you to pay in

7  cash?

8      **A.  No.**

9      Q.  Was it Mr. Hazan that asked you to pay in cash?

10     **A.  No.**

11     Q.  Was it an attorney who asked you to pay in cash?

12     **A.  It was my choice.**

13     Q.  Did you receive a receipt for those payments?

14     **A.  That's my right.**

15     Q.  Sir, did you receive --

16     **A.  I don't recall.  I don't recall if I have a**

17  **receipt.**

18     Q.  Do you file tax returns for the corporation?

19     **A.  Yes.**

20     Q.  And in the tax returns in Canada, do you have to

21  list the corporation's expenses?

22     MR. MARZEC:  I think I have to object to this

23     question on the basis that it calls for an answer

24     that a lay person, as Mr. Houle in this deposition,

EXHIBIT 6

1     is not equipped to give.

2         MR. SMITH:  He's not a lay person.  He's a CPA.

3         MS. MEYER:  He's a CPA, Mr. Marzec.

4         MR. MARZEC:  But he's not appearing in this

5     deposition as a CPA.

6         MS. MEYER:  But he has the knowledge of what

7     goes on tax returns, and he's the filing officer for

8     Quebec.

9         MR. MARZEC:  Okay.  Mr. Houle, please answer.

10        THE WITNESS:  Yes.  That is my business.

11  BY MR. SMITH:

12    Q.  Does the tax return for the corporation contain a

13  listing of expenses of the corporation?

14    **A.  Sure.**

15    Q.  And did you file a tax return for the year 2013 for

16  the corporation?

17    **A.  I don't recall.**

18    Q.  When does Canadian law require that you file the tax

19  return for 2013 for the corporation?

20        MR. MARZEC:  Objection.  Even if he's a CPA,

21     this is a question that asks about statement of the

22     law and not what happened, where it happened or what

23     he did or what he didn't do and so forth.

24        MR. SMITH:  Laymen understand when tax returns

EXHIBIT 6

1     are due here for April 15th.

2          MS. MEYER:  Overruled.

3          THE WITNESS:  (Inaudible).

4          MR. MARZEC:  I'm sorry, Mr. Houle.  Say again.

5          THE WITNESS:  I said I want this

6     (unintelligible) over.

7          COURT REPORTER:  I'm --

8  BY MR. SMITH:

9     Q.   Hold the phone up to your mouth, please.

10    **A.   Okay.**

11    Q.   When are tax returns due for filing for the

12 corporation for 2013?

13    **A.   June 23, 2014.**

14    Q.   And would that be true for the 2012 return that

15 would also be due in June of 2013?

16    **A.   Exactly.**

17    Q.   And the tax return that you filed for the

18 corporation for 2012, did you list any attorneys fees as

19 expenses to Mr. Marzec or Mr. Donatelli?

20    **A.   I don't recall.**

21    Q.   Have you ever had any discussions with Elizabeth

22 Hazan as to what you should do with regard to Mr. Kosachuk?

23    **A.   No.**

24    Q.   She's never discussed it with you and you've never

EXHIBIT 6

1  discussed it with her; is that correct?

2      **A.    Exactly.**

3      Q.    And how about with Mr. Hazan, have you discussed it

4  with him?

5      **A.    No.**

6      Q.    Then how did you know to enter a judgment against

7  Mr. Kosachuk for NLG pursuant to the charging order?  Who

8  told you to do that?

9          MR. MARZEC:  Objection.  Lack of foundation.

10          MS. MEYER:  Sustained.

11  BY MR. SMITH:

12      Q.    Did you enter a judgment against NLG as a result --

13  excuse me.  Did you enter a judgment against Mr. Kosachuk

14  because of the charging order you received?

15      **A.    No.**

16      Q.    Didn't you enter --

17          MS. MEYER:  Did he understand the question?

18          MR. SMITH:  I'll give him another question.

19  BY MR. SMITH:

20      Q.    Didn't you enter a $5 million judgment against Mr.

21  Kosachuk because of your charging order for NLG?

22      **A.    Yes.**

23          MR. MARZEC:  Objection to the form and lack of

24          foundation.

# EXHIBIT 6

1          MR. SMITH:  His answer was yes.

2          MS. MEYER:  Sustained.

3          MR. DONATELLI:  This is Guy Donatelli.  I'd also

4     like to object to that question because it

5     mischaracterizes the charges.

6     BY MR. SMITH:

7          Q.   Do you have the exhibits there, sir?

8          **A.   Yes.**

9          Q.   Would you please pick up Exhibit H-1.

10         **A.   H what?**

11         Q.   H-1.

12         **A.   Yes.**

13         Q.   That is a letter addressed to you by Guy Donatelli;

14    is that correct?

15         **A.   It is correct.**

16         Q.   Did you ever sign that letter and return it to Mr.

17    Donatelli?

18         **A.   No.  Yes.  I have signed.  I remember it now.**

19         Q.   That you remember signing and sending it back to

20    him; is that right?

21         **A.   Yeah.**

22         Q.   That letter says, quote, I will be transmitting to

23    you copies of correspondence and other papers in this case

24    which I believe have some significance.  Did you ever receive

EXHIBIT 6

1   such papers and correspondence from Mr. Donatelli?

2         MR. MARZEC:  Objection.  I think that was two

3   questions.  Objection to the form.

4         MS. MEYER:  Sustained.

5   BY MR. SMITH:

6     Q.  Did you ever receive copies of correspondence from

7   Mr. Donatelli?

8     **A.  Yes, I believe so.**

9     Q.  Did you ever receive copies of any other papers from

10  Mr. Donatelli?

11    **A.  No.**

12    Q.  Who selected --

13    **A.  I don't remember.**

14    Q.  Is your answer no or is it you don't remember?

15  Which one?

16    **A.  I don't remember.**

17    Q.  Who selected Mr. Donatelli to represent the

18  corporation?

19    **A.  Can you re-ask the question again.**

20    Q.  Who selected Mr. Donatelli to represent the

21  corporation?

22    **A.  I don't recall who.**

23    Q.  Did you know that a judgment was entered against NLG

24  in the Court of Common Pleas of Chester County, Pennsylvania?

EXHIBIT 6

1       MR. MARZEC:  Objection.  Lack of foundation.

2   And what judgment are we talking about here?

3       MS. MEYER:  Clarify the judgment.  Otherwise I

4   think there is foundation.

5   BY MR. SMITH:

6   Q.   In this case that we're here on, sir, your

7   corporation sued Christopher Kosachuk and NLG and recorded a

8   judgment against NLG.  Are you aware of that?

9   **A.   No.**

10  Q.   Did anyone ever tell you that a judgment in the case

11  in Chester County, Pennsylvania, was entered against NLG?

12  **A.   I don't recall.**

13  Q.   Did you learn that NLG was trying to have that

14  judgment removed in Chester County, Pennsylvania?

15  **A.   I don't recall.**

16  Q.   Did you retain attorneys to oppose the removal of

17  that judgment against NLG in Chester County, Pennsylvania?

18  **A.   I don't recall.**

19  Q.   Did you intend to enter a -- have a judgment entered

20  on behalf of the Quebec Corporation against NLG in Chester

21  County, Pennsylvania?

22  **A.   No, I don't recall.**

23  Q.   Would you please pick up Exhibit H-3.  I'm sorry.

24  H-2.

EXHIBIT 6

1    **A.   Yes.**

2    Q.   Did you ever see that document before it was

3 presented to you for this deposition?

4    **A.   Yes.**

5    Q.   When did you first see it?

6    **A.   I don't recall.**

7    Q.   How long ago did you see it?

8    MR. MARZEC:  Objection.  Asked and answered.

9    MS. MEYER:  Is that an objection?

10    MR. MARZEC:  Asked and answered.

11    MS. MEYER:  He said he'd seen it before.

12    MR. MARZEC:  Say again, please.

13    MS. MEYER:  His answer was I have seen this

14 before.  I thought that's what he -- --

15    THE WITNESS:  My response is I don't recall

16 seeing this document now.  Sorry.

17 BY MR. SMITH:

18    Q.   Would you turn to H-3, Exhibit H-3, please.

19    **A.   Yes.**

20    Q.   Would you look at the last page of that exhibit,

21 please.  It's entitled "verification".  Do you have that

22 there, sir?

23    **A.   Yes.**

24    Q.   It says "I, Raymond Houle, verify that the facts set

EXHIBIT 6

1   forth in the Answer to Motion to Vacate are true and correct

2   to the best of my knowledge, information and belief.  I

3   represent that I am an officer of the Plaintiff and am

4   authorized to take this verification on its behalf.  I

5   understand that false statements herein are made subject to

6   the penalties of the law relating to unsworn falsification to

7   authorities."  Did you sign that document, sir?  Is that your

8   signature there?

9       **A.   I think so.**

10      Q.   And did you sign it on March 15, 2012?

11      **A.   Yes.**

12      Q.   Did you read the document before you signed that

13  verification?

14      **A.   I don't remember.**

15      Q.   Do you remember ever seeing Exhibit H-3 before?

16          MR. MARZEC:  Objection.  Asked and answered.

17          MS. MEYER:  Overruled.

18          THE WITNESS:  Probably.

19  BY MR. SMITH:

20      Q.   Probably?

21      **A.   Yes.  But I'm not sure.**

22      Q.   Do you know who probably gave it to you to look at?

23      **A.   Yes.**

24      Q.   Who?

EXHIBIT 6

1     **A.    Probably I'm not sure.**

2          MR. MARZEC:  I'm sorry.  This is Darius Marzec.

3     I'm not sure what the question is.

4          MS. MEYER:  I'm not entirely sure, either.

5     BY MR. SMITH:

6          Q.    Who gave you -- who gave you Exhibit H-3 to look at,

7     if you can recall?

8          MR. MARZEC:  Objection.  That wasn't the answer

9     to the question.  He said that he probably saw it

10    before, but he didn't say that someone gave him the

11    document to look at it.  It's mischaracterizing the

12    testimony of the witness.

13         MS. MEYER:  I think it's a new question; who

14    gave it to him.

15    BY MR. SMITH:

16         Q.    From whom did you receive Exhibit H-3?

17    **A.    I don't recall.**

18         Q.    Would you look at H-4, please, Exhibit H-4.  Do you

19    have that in front of you, sir?

20    **A.    Yes.**

21         Q.    Have you ever seen that document before it was given

22    to you for this deposition?

23    **A.    No.  Sorry.**

24         Q.    Would you please look at H-5, Exhibit H-5.  Do you

EXHIBIT 6

1    have that in front of you?

2        **A.    Yes.**

3        Q.    Would you look through it, please.

4        **A.    H-5.    Okay, I got.**

5        Q.    It's an Order of Court from Chester County,

6    Pennsylvania.    Do you have that in front of you?

7        **A.    Yes, I have.**

8        Q.    Have you ever seen that document before?

9        **A.    No.**

10        Q.    Did you say no?

11        **A.    I don't recall.**

12        Q.    Did you know that a judge in Chester County took off

13    the judgment against NLG?

14        **A.    I don't know.**

15        MR. MARZEC:  I don't understand the question.

16    This is Darius Marzec.  The question is when and --

17    it's a little confusing.  What does to take off mean?

18        MR. SMITH:  Would you rather I use "vacate"?  Do

19    you think he'd understand that better?

20    BY MR. SMITH:

21        Q.    Did you know that a judge in Chester County vacated

22    the judgment against NLG?

23        **A.    (No response.)**

24        Q.    Are you there, sir?

EXHIBIT 6

1    **A.   I don't recall.**

2    Q.   You don't recall.  Would you please look at Exhibit

3    H-6.  It's a letter from Mr. Marzec to Judge Griffith in

4    Chester County dated May 10, 2012.  Have you ever seen that

5    letter before?

6    **A.   I don't recall.**

7    Q.   The document attached to that letter, which is a

8    motion to reconsider and to vacate prior order, have you ever

9    seen that before?

10   **A.   I don't recall.**

11   Q.   Did you authorize anyone to file either Exhibit H-4

12   H-5 -- I'm sorry.  H-4 or H-6, did you authorize anyone to

13   file those exhibits in court?

14   **A.   I don't recall.**

15   Q.   Would you look at H-7, please.

16       MR. DONATELLI:  Ed, H-5 is the judge's order.

17   Did you mean to include that in that question?

18       MR. SMITH:  I thought I corrected that and just

19   referred to H-4 -- I'm sorry -- H-4 and H-6.

20   BY MR. SMITH:

21   Q.   You're looking at H-7?

22   **A.   Yes.**

23   Q.   Have you ever seen that document before?

24   **A.   I don't recall.**

EXHIBIT 6

1    Q.    Did you ever authorize anyone to change the caption

2    of the case in Chester County and the name of the parties?

3    **A.    I don't recall.**

4    Q.    Would you look at H-8, please.  Do you have H-8 in

5    front of you?

6    **A.    Yes.**

7    Q.    That's a document from the 11th Judicial Circuit in

8    and for Miami-Dade County, Florida, and it's a Notice of

9    Voluntary Dismissal with Prejudice.  It says "Plaintiff NLG,

10   by and through undersigned counsel, pursuant to the certified

11   copy of the charging order attached hereto as Exhibit A

12   hereby voluntarily dismisses this action with prejudice."

13   Did you know that the action by NLG against Elizabeth Hazan

14   that I just referred to was being dismissed?

15   **A.    No.**

16   MR. MARZEC:  Objection.  Lack of foundation.

17   THE WITNESS:  I don't recall.

18   MR. MARZEC:  Objection.

19   MS. MEYER:  He doesn't recall anyway.  If

20   counsel wants to lay foundation that might help him

21   recall, that's fine.

22   BY MR. SMITH:

23   Q.    Did Mr. Rosenberg represent your corporation in

24   Florida?

EXHIBIT 6

1    **A.   Yes.**

2    Q.   And did you ask Mr. Rosenberg or did you instruct

3  Mr. Rosenberg to satisfy the judgment that NLG had against

4  Elizabeth Hazan?

5    **A.   Yes.**

6       MR. MARZEC:  Objection.  Lack of foundation.

7       MS. MEYER:  Does the witness understand the

8    question?

9       MR. SMITH:  He said yes.  I'll say it again.

10  BY MR. SMITH:

11    Q.   Did you authorize Mr. Rosenberg to have the judgment

12  by NLG against Hazan satisfied?

13    **A.   Would you repeat?**

14    Q.   Did you authorize Mr. Rosenberg to have the judgment

15  of NLG against Elizabeth Hazan satisfied?

16    **A.   Yes.**

17    Q.   Why?

18       MR. MARZEC:  Objection.  I believe that was

19    asked and answered, and the witness testified about

20    the $200,000.

21       MR. SMITH:  I'm going to object to counsel

22    suggesting answers.

23       MS. MEYER:  There was a payment of $200,000, but

24    it was not connected to this.  And the objection is

EXHIBIT 6

1    overruled.

2         MR. MARZEC:  Okay.  Mr. Houle, answer the

3    question, please.

4    BY MR. SMITH:

5         Q.   Why did you instruct the satisfaction of that

6    judgment against Elizabeth Hazan?

7         **A.   Because of the promise of the $200,000.**

8         Q.   Who were you just talking to?

9         **A.   Nobody.**

10        Q.   You turned your head and you said something quietly

11   to your left.  Are you saying you're not talking to anybody;

12   you were talking to yourself?

13        **A.   Exactly.**

14        MR. MARZEC:  I think he was answering the

15   question.  I don't know.

16        MS. MEYER:  I believe someone else is present,

17   because very early -- I no longer have video here,

18   but very early in the deposition, Mr. Houle was

19   waving away somebody with his hand and turned his

20   head to look at somebody.  But I don't know who that

21   person was.

22   BY MR. SMITH:

23        Q.   Has there been anybody with you at all during this

24   deposition?

EXHIBIT 6

1    **A.   No.**

2    Q.   Would you please look at H-9.  This is a document

3 from the Supreme Court of the State of New York, County of

4 New York, in which Quebec Corporation was the Plaintiff and

5 NLG was a Defendant.  Have you ever seen this document

6 before?

7    **A.   Yes, I did.**

8    Q.   When did you first see it?

9    **A.   I don't remember.**

10    Q.   Was it more than a month ago?

11    **A.   I don't remember.**

12    Q.   Was it last week, the first time you saw it?

13    **A.   No.**

14    Q.   Was it over a year ago that you first saw it?

15    **A.   I don't know.  I think was two years ago.**

16    Q.   Who prepared that document?  Who gave it to you?

17    **A.   Ten days -- ten days.**

18    Q.   Pardon me?

19    **A.   (Unintelligible)  Marzec.  It indicates on the**

20 **document.**

21    Q.   You have to say that again.  I don't understand what

22 you just said.  You said Mr. Marzec gave it to you, and then

23 what did you say?

24    **A.   It says on the paper Mr. Marzec.  (Inaudible)**

EXHIBIT 6

1    Q.    Who asked you to have this document filed?

2    **A.    Would you repeat.**

3    Q.    Who asked you to have this document filed with the

4    court?

5    **A.    I asked my lawyer, Mr. Marzec, to prepare -- to**

6    **prepare it.**

7    Q.    Who asked you to have this document filed?

8    MR. MARZEC:  Objection.  Asked and answered.  He

9    said, I asked my lawyer to prepare it.

10    MR. SMITH:  I didn't hear him say that.

11    THE WITNESS:  I asked my lawyer to prepare it.

12    Nobody else.

13    MR. SMITH:  Ms. Meyer, may I ask that Mr. Marzec

14    be instructed not to suggest answers as part of his

15    objections or intermeddle his answers.

16    MS. MEYER:  You are so instructed, Mr. Marzec.

17    BY MR. SMITH:

18    Q.    Why did you have this document filed?

19    **A.    Because for abuse (inaudible)**

20    COURT REPORTER:  I'm sorry.  Could you start

21    your answer again, please.

22    THE WITNESS:  (Inaudible.)

23    COURT REPORTER:  I can't hear you.

24    BY MR. SMITH:

EXHIBIT 6

1    Q.   Speak up, please.  Put the phone near your mouth.

2        COURT REPORTER:  Start your answer again.

3        THE WITNESS:  Sorry.

4  BY MR. SMITH:

5    Q.   Why did you have this document filed?

6    **A.   Yeah, it was filed for fraud and abuse of process**

7  **and to collect our judgment.**

8    Q.   What judgment --

9    **A.   Because of five years of process of fraud by Mr.**

10  **Kosachuk.**

11    Q.   And you filed that as -- and who -- strike that.

12        You filed this -- you allowed this to be filed as an

13  agreement on behalf of NLG; is that correct?

14    **A.   (No response.)**

15    Q.   You represented NLG in filing this document; didn't

16  you?

17    **A.   Are you referring to the charging order?**

18    Q.   Yes, and you represented NLG in filing this

19  document; is that correct?

20    **A.   Yes.  Indicated on it.**

21    Q.   And you indicated yourself as manager of NLG; is

22  that correct?

23    **A.   Indicated.  I don't --**

24    Q.   Okay.  Look at the third page, please.  It's an

EXHIBIT 6

1    Affidavit of Confession of Judgment signed by you -- that is

2    your signature at the bottom?

3         **A.    Which page?**

4         Q.    Third page.

5         **A.    I see it, yes.**

6         Q.    And it says manager of NLG.  Who appointed you as

7    manager of NLG?

8         **A.    By corporate resolution.**

9              COURT REPORTER:  I'm sorry?

10   BY MR. SMITH:

11        Q.    By corporate resolution?  What corporation?

12        **A.    That I did when Quebec took over NLG.**

13        Q.    What corporation issued the resolution?

14        **A.    You got a valid -- a valid charging order to do so.**

15   **It's the Quebec company who make that resolution.**

16        Q.    Before you filed this, did NLG owe Quebec anything?

17        **A.    I don't understand very well.**

18        Q.    Before you filed this Confession of Judgment against

19   NLG, did NLG owe Quebec Corporation any money?

20        **A.    No.**

21        Q.    Who selected the $5 million figure?

22        **A.    I did.**

23        Q.    Did anyone assist you in selecting that amount?

24        **A.    No.**

EXHIBIT 6

1    Q.   Now, if you'll look at the two pages past there,

2  please.

3    **A.   Which page?**

4    Q.   Two more pages past.

5    **A.   Okay.**

6    Q.   At the top it has what appears to be your signature.

7  I ask you if that is your signature.

8    **A.   I don't find the page.  I don't know.  Past or**

9  **before?**

10    Q.   It's the fifth page of that exhibit.

11    **A.   Yes.**

12    Q.   Is that your signature?

13    **A.   Yes.**

14    Q.   And the notary is Darius A. Marzec; is that correct?

15    **A.   Yes.**

16    Q.   Was he with you when you signed this?

17    **A.   Yes.**

18    Q.   And were you in New York when you signed this?

19    **A.   Of course.**

20    Q.   Where in New York were you?

21    **A.   In his office.**

22    Q.   And where was his office?

23    MR. MARZEC:  I have to object --

24    THE WITNESS:  In Brooklyn.

EXHIBIT 6

1       MR. MARZEC:  -- to this line of questioning.

2   Mr. Houle, hold on.  This line of questioning is not

3   reasonably calculated to lead to admissible evidence.

4   Let's not get away from the fact that this is the

5   Dragonetti action that alleges that a judgment was

6   entered against NLG.  This is too far afield, in my

7   opinion, for these questions to continue.

8       MS. MEYER:  The level of detail, where was your

9   office, I don't know where that's going, but I'll

10  allow that question.  Can we just stipulate where

11  your office was?  Does it matter?

12      MR. SMITH:  I just wanted to know if he actually

13  knows where it was and if he was really there when he

14  signed that affidavit.

15      MS. MEYER:  All right.  So where was

16  Mr. Marzec's office?

17      THE WITNESS:  It's in Brooklyn.

18  BY MR. SMITH:

19  Q.  How many times were you there?

20  **A.  I don't understand the question.  How many?**

21  Q.  How many times were you in Mr. Marzec's office in

22  Brooklyn?

23  **A.  That time, or how many times?**

24  Q.  I'm sorry.  I didn't understand.  Say that again.

EXHIBIT 6

1     **A.   Many times.**

2     Q.   More than five?

3     **A.   I don't understand.**

4     Q.   All right.  Strike the question.

5     MR. MARZEC:  I have to object.  Where is this

6  going?

7     MR. SMITH:  I said strike the question.

8     MS. MEYER:  Okay.  Counsel, move on.

9  BY MR. SMITH:

10    Q.   Would you please look at Exhibit, H-10, a document

11  from the Circuit Court of the 11th Judicial Circuit in and

12  for the Miami-Dade County in Florida.

13    **A.   H --**

14    Q.   H-10.

15    **A.   What does it indicate on the document, the title?**

16    Q.   It says Corrected Notice of Voluntary Dismissal.

17    **A.   Okay.  I see it.**

18    Q.   Have you ever seen that document before?

19    **A.   No, I don't recall seeing this document.**

20    Q.   Did you ever instruct an attorney to have this

21  document filed in Florida?

22    **A.   I don't recall.**

23    Q.   Did you ever speak with a Jonathan P. Cohen, an

24  attorney?

EXHIBIT 6

1    **A.   I think.**

2    Q.   Pardon me?

3    **A.   I think.**

4    Q.   You think what?

5    **A.   I think so.**

6    Q.   I didn't hear the rest of your answer.  Did you ever

7 speak with --

8    **A.   He worked with Mr. Rosenberg.**

9    Q.   You have to say that again, sir.  I didn't

10 understand what you said.

11    **A.   He worked with Mr. Rosenberg.**

12    Q.   Oh, he works with Mr. Rosenberg.  Okay.  Did you

13 ever authorize Mr. Rosenberg to file this document in court?

14    **A.   I don't recall.**

15    Q.   Would you look at H-11, please.  It's an Order of

16 Court in the 11th Circuit, Judicial Circuit, in and for the

17 Miami-Dade County, Florida.  Do you have that in front of

18 you?

19    **A.   Yes.**

20    Q.   Did you ever see that document before?

21    **A.   I don't recall.**

22    Q.   Did you know that the satisfaction of judgment,

23 which was H-10, was stricken by the Court, by this order

24 marked H-11?  Did you know that?

EXHIBIT 6

1      A.    I don't recall.

2           MR. MARZEC:  Objection.  Well, he answered that

3      question.

4  BY MR. SMITH:

5      Q.    Would you look at H-12, please.  There's several

6  pages.  Would you look through all of them, please.  Have you

7  done that?  Have you looked through all the pages?

8      A.    Which pages?

9      Q.    H-12.  All the pages, I want you to look through

10 them.

11     A.    Okay.  I'm looking.  Yes.

12     Q.    Have you ever seen that document before?

13     A.    Yes.

14     Q.    When did you first see it?

15     A.    When I became the owner of Quebec.

16     Q.    I'm sorry.  I didn't understand what answer.

17     A.    When I became the owner of Quebec company.

18     Q.    That's when you first saw this?

19     A.    Exactly.

20     Q.    Was there an owner of the Quebec Corporation before

21 you?

22          MR. MARZEC:  Objection.  Asked and answered.

23     And I can go into the details if I'm permitted.

24          MR. SMITH:  I don't believe I asked that

EXHIBIT 6

1        question.  I didn't ask that question before.

2              MS. MEYER:  I don't recall it.  Overruled.

3              MR. MARZEC:  Okay.

4    BY MR. SMITH:

5        Q.   Was there an owner of the Quebec Corporation before

6    you?

7        **A.   Yes.  I told it before.  It's Elia Hazan.**

8        Q.   He was the owner before you?

9        **A.   He was the owner of the 9197 Quebec company.**

10       Q.   This H-12, this is an assignment of a judgment

11   against Christopher Kosachuk and NLG for $108,000, did you

12   see that there in the second paragraph?

13       **A.   Sorry.  What paragraph?**

14       Q.   It says "Whereas on the 22nd day of February, 2007,

15   judgment was recovered in the Supreme Court, County of New

16   York, in favor of Evguenia Lorret and Nina Gogitidze" -- I'll

17   spell these for you later -- "and against Christopher

18   Kosachuk and NLG, LLC, in the sum of $108,293.54 plus costs."

19   Have you seen that before?

20       **A.   I've seen that document, but I told you, but it's**

21   **only against Chris Kosachuk, not NLG.**

22       Q.   Well, why does this say there was a judgment entered

23   against NLG?  Do you know why?

24             MR. MARZEC:  This calls for speculation.

EXHIBIT 6

1      MS. MEYER:  Ask if he knows why.

2      MR. SMITH:  That's what my question was.

3  BY MR. SMITH:

4    Q.   Do you know why it says it's a judgment entered

5  against NLG?

6      MR. MARZEC:  Okay.

7      THE WITNESS:  It's not against -- it's the name

8    of the caption.

9  BY MR. SMITH:

10   Q.   No, I'm not reading the caption.  I'm reading what I

11 just read, that the judgment of those two women and against

12 Christopher Kosachuk and NLG, in the sum of $108,000.  Do you

13 know why it says NLG?

14   **A.   I don't know.  I was not there at that time when it**

15 **was done.  I was not the owner of the Quebec company when it**

16 **was done.  So you're asking a question about a document**

17 **before I was owner of that judgment.**

18   Q.   When did you -- on what date did you become the

19 owner of the corporation?

20   **A.   Around September 2011.**

21   Q.   Would you look at the third page there, please.

22   **A.   What?**

23      MR. MARZEC:  Of H-12?

24 BY MR. SMITH:

EXHIBIT 6

1     Q.   Of H-12, the third page.  Strike that.  Strike that.

2  Don't go there.

3        Would you look at H-13, please.

4     **A.   Yes.  (Unintelligible).  Yes.**

5     Q.   Do you have H-13 in front of you?

6     **A.   Yes.**

7     Q.   That's a document from the Supreme Court of the

8  State of New York, County of New York, Quebec versus Kosachuk

9  and NLG and that's dated the 10th day of February, 2014.  You

10  were president of the corporation at that time; weren't you?

11        MR. MARZEC:  Objection to multiple questions in

12     that one question.

13        MS. MEYER:  Break down the questions.

14        MR. SMITH:  I thought I just asked him if he was

15     the president of the corporation at that time.

16        MR. MARZEC:  Is that a question or is it a

17     statement?

18        MS. MEYER:  It's a question.

19  BY MR. SMITH:

20     Q.   Do you understand the question, sir?

21     **A.   No.**

22     Q.   On February 10, 2014, did you have a position with

23  Quebec Corporation?

24     **A.   Yes.**

EXHIBIT 6

1   Q.   What was your position?

2   **A.   Owner.**

3   Q.   Pardon me?

4   **A.   I am president.**

5   Q.   Would you look at the second page of that document.

6   I'll ask you if that contains your signature.

7   **A.   Yes.   What's the question?**

8   Q.   Is that your signature on the second page?

9   **A.   Yes.**

10   Q.   And how about at the bottom, is that also your

11   signature?

12   **A.   Yes.**

13   Q.   You assigned this judgment for $10; didn't you?

14   **A.   Pardon?**

15   Q.   This is an assignment of the judgment to SRS

16   Technologies Professionals, LLC; is that correct?

17   **A.   That's correct.**

18   Q.   And why did you assign it?

19   **A.   I sold it.**

20   Q.   Pardon me?

21   **A.   I sold it.**

22   Q.   You have to hold the phone up to your mouth, sir.

23   **A.   Sorry.   I sold it.**

24   Q.   You sold it.   Why?

EXHIBIT 6

1    **A.   Because I need money.**

2    Q.   Well, this says you got $10.  Did that help you out

3  a lot, that $10?

4    **A.   No, it's not true.**

5    Q.   You mean it's not true that you got $10?

6    **A.   No.  I got the amount.  I got 49,000.  I was paid in**

7  **cash -- in check.  I'm sorry.  In check.  My memory is -- I**

8  **was paid 49,000, the amount of 48,000, plus 1,000 -- 1,050**

9  **paid that made it 49,000, and also -- also the company, SRS**

10  **agreed to pay all the pending legal bills I got for the**

11  **amount for recovering for the interest accrued.**

12    Q.   Are either of the Hazans involved with SRS

13  Technologies in any way?

14    **A.   No, never.**

15    Q.   Who did you negotiate this assignment with?

16    **A.   (No response.)**

17    Q.   Sir, why are you looking over to your left?

18    **A.   I'm not looking.  I'm just getting much tired.**

19    Q.   I'm sorry.  I didn't understand what you said.

20    **A.   I'm getting tired.  That's why.  I have a problem**

21  **with my neck.  That's why I'm doing that.  Okay.**

22    Q.   Who did you deal with at SRS Technologies?

23    **A.   Yes.**

24    Q.   Who?  Who is the person?

EXHIBIT 6

1    **A.    One moment, please.  It's a company from nearby.**

2    Q.    Who is the person that you negotiated this

3    arrangement with?

4    **A.    It's Mr. Alex Sarano.**

5    Q.    Spell that last name, please.

6    **A.    S-A-R-A-N-O.**

7          MR. DONATELLI:  Did the court reporter get that

8    last name?

9          COURT REPORTER:  Yes.

10   BY MR. SMITH:

11   Q.    What did you do with the money?  Did you deposit it

12   in an account for the Quebec Corporation?

13   **A.    I cashed the money.**

14   Q.    And did you put it in an account for the Quebec

15   Corporation?

16         MR. MARZEC:  Objection.  Asked and answered.

17         MS. MEYER:  No, it's not asked and answered.

18   It's overruled.

19         MR. MARZEC:  Mr. Houle, please answer.

20         THE WITNESS:  It was a check.  It was written in

21   the name of the company first.  I was able to turn it

22   and (inaudible).

23   BY MR. SMITH:

24   Q.    Turn it and what?  We couldn't hear what you last

EXHIBIT 6

1    said.

2       **A.    It was (inaudible) -- no, no.**

3       Q.    Hold the phone to your mouth, please.

4       **A.    Sorry.**

5           MR. MARZEC:  Mr. Houle, do you need a break?

6           THE WITNESS:  The check was in the name of the

7       company first, but then it was replaced my name,

8       Raymond Houle.

9    BY MR. SMITH:

10      Q.    Why?

11      **A.    It was easier to..**

12      Q.    Why wasn't the check given to the corporation?

13      **A.    That is what I decided.**

14      Q.    So you took the money for yourself; is that right?

15      **A.    This is my problem.**

16      Q.    Sir --

17      **A.    Yes.**

18      Q.    -- my question is did you take the money for

19   yourself?

20      **A.    Yes.  Yes.**

21      Q.    Does Quebec own any interest in SRS?

22      **A.    No.**

23      Q.    Do you own any interest in SRS?

24      **A.    No.**

EXHIBIT 6

1    Q.   Has Elizabeth Hazan or Mr. Hazan ever given you any

2 actual money?

3    **A.   No.**

4    Q.   Has Elizabeth Hazan or Mr. Hazan ever instructed you

5 to do anything with regard to Kosachuk or NLG?

6    **A.   No.**

7    MR. MARZEC:  I have to object.  This is Darius

8    Marzec.  I'm not sure when.  I'm not sure if we're

9    still talking about the assignment of the judgment.

10    I'm not -- I'm a little lost.  I don't think you have

11    a foundation there to be able to answer these

12    questions.

13    MR. SMITH:  I believe my question --

14    MS. MEYER:  The witness seems to be

15    understanding the questions and answering them.  If

16    you want to redepose him on cross examination -- not

17    cross examination, but on your questioning of the

18    witness, you may.

19 BY MR. SMITH:

20    Q.   Who paid the bill for Ms. Meyer's time recently?

21    **A.   What -- sorry.  would you repeat?**

22    Q.   Ms. Meyer had presented a bill for her time involved

23 in this case.  Who paid it on your behalf?

24    **A.   Repeat the question.  The service --**

EXHIBIT 6

1    Q.    Did you ever pay any money for the payment of

2    Ms. Meyer's bill?

3    **A.    Nobody paid.   Not yet.**

4    Q.    Sorry to hear that.   I'm just checking my notes.

5    I'll be with you in one second.   Did you know that Mr. Marzec

6    also represents Ms. Hazan?

7    **A.    Yes.   So what?**

8    Q.    Did you ever have any conversations of any kind with

9    Ms. Hazan other than with regards to the deposition you

10   appeared for in December in the bankruptcy matter?

11   **A.    No.**

12   Q.    Did you ever meet Ms. Hazan at any time other than

13   as a result of that bankruptcy deposition?

14   **A.    No.**

15   Q.    How about Mr. Hazan, did you ever meet with him, her

16   brother?

17   **A.    No.**

18   Q.    Then how did he ask you to take over the Quebec

19   Corporation?

20   **A.    It was a long time ago.   I meet him before.**

21   Q.    You did meet with him before.   How many times?

22   **A.    Yes.   Not recently, but --**

23   Q.    How many times?

24   **A.    Maybe five, ten times.   I don't remember.**

EXHIBIT 6

1    Q.  Are you related to either Mr. or Ms. Hazan in any

2  way, either by blood or marriage?

3    **A.  No.  No.  I'm -- they are Jewish and I'm Catholic.**

4    MR. MARZEC:  Mr. Houle, there's no question

5    before you.

6  BY MR. SMITH:

7    Q.  Are you willing to have Mr. Marzec no longer

8  represent your corporation?

9    MR. MARZEC:  Objection.  I think this calls for

10    Mr. Houle to address confidential and privileged

11    information.

12    MS. MEYER:  Mr. Houle has stated he's unaware

13    that Mr. Marzec is seeking to withdraw his

14    representation from Quebec.

15    MR. SMITH:  Yes.  I'm asking him if he's willing

16    to allow him to withdraw his representation.

17    MR. MARZEC:  And there's no foundation for this.

18    It's out of the blue.

19    THE WITNESS:  I could say if that is his wish

20    I fully --

21    MR. MARZEC:  I'm sorry.  Hold on one second for

22    the ruling.

23    MS. MEYER:  You can ask him if he wishes to have

24    Mr. Marzec continue representing Quebec.

EXHIBIT 6

1  BY MR. SMITH:

2    Q.  Do you, sir?

3    **A.**  **If that is his wish, I fully respect his wishes.**

4    MR. MARZEC:  I'm sorry.  Please ask the question

5  again and answer.

6  BY MR. SMITH:

7    Q.  Do you wish Mr. Marzec to continue to represent

8  Quebec Corporation?

9    **A.**  **If he doesn't want to represent Quebec any longer, I**

10  **will respect him.**

11    Q.  Do you understand that that means you have to get

12  another lawyer to represent the corporation?

13    **A.**  **He is a brilliant lawyer, but I understand.**

14    Q.  My question is, do you understand that you will have

15  to get another lawyer to represent the corporation?

16    **A.**  **Yes.**

17    MR. SMITH:  That's all I have.

18                EXAMINATION

19  BY MR. MARZEC:

20    Q.  Mr. Houle, this is Darius Marzec, your attorney.  I

21  just have a few questions.  Mr. Houle, do you know what a

22  Motion to Withdraw an Appearance is?

23    **A.**  **No.**

24    Q.  Do you know what a Notice of Appearance is?

EXHIBIT 6

1    **A.   No.**

2    Q.   Mr. Houle, are you aware that my law firm, Marzec

3 Law Firm, P.C., has filed a request before the Court in this

4 case to no longer represent 9197-5904 Quebec, Inc.

5    **A.   (No response.)**

6    Q.   Mr. Houle, did you understand?

7    **A.   It's very unfortunate.**

8    Q.   But are you aware of the application to withdraw

9 from representation filed by this firm?

10   **A.   If you want, what can I do?**

11   Q.   Mr. Houle, it's a yes or no question.  Do you know

12 that I want to leave this case and my firm wants to leave

13 this case?

14   **A.   (No response.)**

15   Q.   Mr. Houle?

16   **A.   I don't understand.**

17   Q.   Okay.  Mr. Houle, did you receive a letter from me

18 telling you -- withdrawn.

19       Mr. Houle, did you receive a motion in this case

20 filed by my law firm asking the Court for permission to no

21 longer be Quebec's attorney?

22   **A.   I didn't inspect my e-mail, but I will do it.**

23   Q.   Have you checked your mailbox?  Not e-mail, your

24 mailbox.

EXHIBIT 6

1    **A.   I got my mailbox -- (inaudible).**

2         COURT REPORTER:  I'm sorry?

3         THE WITNESS:  My e-mail.  My mailbox and

4    my e-mail, also.  My mailbox.

5    BY MR. MARZEC:

6    Q.   How long have you not checked your mailbox for?

7    **A.   Over a week.**

8    Q.   Mr. Houle, are you aware that this law firm has

9    withdrawn from representation of Quebec in other cases?

10   **A.   No, but I'm very sad.**

11   Q.   Mr. Houle, do you receive mail at the address that

12   you gave in the beginning of your testimony?

13   **A.   Which case?**

14   Q.   Mr. Houle, do you receive mail at --

15   **A.   No, I didn't.  No.**

16   Q.   Hold on one second, please.  I just need a minute.

17   Excuse me.  Mr. Houle, do you receive mail at 5552 Queen Mary

18   Road, Number 4, Montreal, Canada?

19   **A.   (No response.)**

20   Q.   Mr. Houle, do you receive mail at 5552 Queen Mary

21   Road address?

22   **A.   Yes, but I don't --**

23        COURT REPORTER:  "I don't" what?

24        MR. SMITH:  Say that again, Mr. Houle.

EXHIBIT 6

1          THE WITNESS:  Yes, but I don't check my mail all

2      the time.

3  BY MR. MARZEC:

4      Q.   But are you aware of my law firm's applications,

5  motions, to withdraw from representation of Quebec?

6          MR. SMITH:  Objection.  He's asked that several

7      times and gotten answers.

8          MS. MEYER:  I'll allow it.

9  BY MR. MARZEC:

10     Q.   Mr. Houle?

11     **A.   Okay.  I understand now.**

12     Q.   Okay.  Let's move on.  Mr. Houle, 9197-5904 Quebec,

13 Inc., as of January 2012 held a judgment against whom?

14     **A.   Mr. Kosachuk.**

15     Q.   And what, if anything, did Quebec do with that

16 judgment in Chester County, Pennsylvania?

17     **A.   Would you repeat.**

18     Q.   What, if anything, did Quebec do with that judgment

19 against Mr. Kosachuk in Chester County, Pennsylvania?

20     **A.   It say in the charging order, holding against**

21 **collection.**

22     Q.   And what did, if anything, the charging order permit

23 Quebec to do as far as you understand it?

24     **A.   (Unintelligible).**

EXHIBIT 6

1         COURT REPORTER: I'm sorry?

2         THE WITNESS: I'm sorry. I'm just taking time

3  to think about it. Take over the management and

4  the --

5         COURT REPORTER: I'm sorry? Sir, could you

6  start your answer again, please.

7  BY MR. MARZEC:

8    Q.  Slowly.

9    **A.  Take over the management and the (unintelligible).**

10        COURT REPORTER: I can't understand you. Could

11  you say it again, please.

12        THE WITNESS: The purpose is to take over the

13  management and the economics life of Mr. Kosachuk and

14  NLG as well as change what the charging order was

15  that was obtained in February 2012.

16  BY MR. MARZEC:

17    Q.  And Mr. Houle, did Quebec require a judgment against

18  NLG, LLC, in order to obtain a charging order against Mr.

19  Kosachuk --

20    **A.  No.**

21    Q.  -- as far as you know?

22        MR. MARZEC: I have no more questions. It's

23  very difficult to communicate with this witness.

24        MR. SMITH: I have one or two others. This is

EXHIBIT 6

1    Ed Smith.

2                         EXAMINATION

3  BY MR. SMITH:

4      Q.   How much did Mr. Kosachuk -- how much was the

5  judgment against Mr. Kosachuk that was obtained in New

6  York?

7      **A.   $95,000.**

8      Q.   And that was assigned to somebody else, wasn't it,

9  that judgment?

10             MR. DONATELLI:  Objection.  When?  Where?

11             MR. SMITH:  I'll withdraw that question.

12 BY MR. SMITH:

13     Q.   New question.  Why did you satisfy a judgment

14 against Ms. Hazan for over a million dollars when the debt of

15 Mr. Kosachuk was $95,000?

16     **A.   Hold on.**

17             MR. DONATELLI:  Hold on.  I have an objection to

18     that question.

19             MR. MARZEC:  I think this is a valid objection.

20             MS. MEYER:  I'm sorry.  I'm not hearing

21     somebody.

22             MR. MARZEC:  I'm sorry.  I spoke at the same

23     time.  I apologize.

24             MR. DONATELLI:  This is Guy.  I have an

EXHIBIT 6

1    objection to the form of that question.

2         MR. MARZEC:  And I second that objection.

3         MS. MEYER:  Restate the question.

4    BY MR. SMITH:

5    Q.   You obtained an assignment of the judgment against

6    Mr. Kosachuk for approximately $95,000; correct?

7    **A.   Yes.**

8         MR. MARZEC:  Objection.  That is

9    mischaracterizing the witness' testimony.

10        MR. SMITH:  That's exactly what he just said.

11        MS. MEYER:  I thought -- let the reporter read

12   back the answer to the prior question.

13        MR. MARZEC:  The objection is asked and

14   answered.

15   BY MR. SMITH:

16   Q.   After you obtained that judgment against Mr.

17   Kosachuk for approximately $95,000, you later, on behalf of

18   NLG, satisfied a judgment against Elizabeth Hazan for over a

19   million dollars; isn't that correct?

20   **A.   Yes.**

21   Q.   Why did you satisfy that judgment worth over a

22   million dollars for a $95,000 debt?

23   **A.   The promise to pay me $200,000 in exchange of**

24   **satisfying the judgment against her.**

EXHIBIT 6

1    Q.  The charging order permitted you to attach any

2  interest of Mr. Kosachuk in NLG in payment of the $95,000;

3  isn't that correct?

4    **A.  I don't --**

5    MR. MARZEC:  Objection.  The document speaks for

6  itself.

7    MS. MEYER:  This is his understanding of the

8  document.  Overruled.

9    MR. MARZEC:  Go ahead, Mr. Houle.

10    THE WITNESS:  I don't understand the question, I

11  think.

12  BY MR. SMITH:

13    Q.  You got a charging order, and that allowed you to

14  attach anything owned by Mr. Kosachuk and NLG in order to

15  satisfy his debt of $95,000; correct?

16    MR. MARZEC:  I have to object.  This

17  mischaracterizes the document and his testimony.  I

18  could explain it further.  I just don't want to --

19    MS. MEYER:  Overruled.  You can clarify with

20  questions of your own.

21  BY MR. SMITH:

22    Q.  Do you want me to repeat the question, sir?

23    **A.  Yes.**

24    Q.  What's your understanding as to what the charging

EXHIBIT 6

1    order allowed you to do?

2         **A.    Yes, to take over NLG.**

3         Q.    Take over NLG and then do what?

4         **A.    Replace Kosachuk and NLG.**

5         Q.    And was that for the purpose of getting payment of

6    the $95,000?

7         **A.    No.**

8         Q.    What was the purpose then?

9         **A.    (No response.)**

10        Q.    What was your purpose in taking over NLG?

11        **A.    Because I wanted to make the $200,000.**

12        Q.    Was that your only reason?

13        **A.    Yes, for my business decision.**

14        Q.    And it was Elizabeth Hazan who was going to pay you

15   the $200,000?

16        **A.    Yes.**

17        Q.    And she hasn't paid you that yet?

18        **A.    No.**

19        Q.    Has she agreed to pay you on a particular date?

20        **A.    I already respond to that.**

21        Q.    Well, would you please repeat it.

22             MR. MARZEC:  Objection.  Asked and answered.

23        Witness is right.

24             MS. MEYER:  I'm sorry.  What?

EXHIBIT 6

1    MR. SMITH:  I don't believe that question was

2    ever asked.

3    MR. MARZEC:  Objection.  Asked and answered.

4    The question is when is the payment due.

5    MS. MEYER:  Overruled.

6  BY MR. SMITH:

7    Q.    When is she going to pay you the $200,000?

8    **A.    Over the next two -- next 24 months.**

9    Q.    In a lump sum or in monthly payments?

10   **A.    (No response.)**

11   Q.    Is she going to pay you all at once, or is she going

12   to pay it over time?

13   **A.    Wait a moment.**

14   MR. MARZEC:  I didn't get that.

15   MS. MEYER:  "Wait a moment".

16   THE WITNESS:  She won't pay me any more since

17   the judgment's been cancelled by the --

18  BY MR. SMITH:

19   Q.    Hold the phone up to your mouth and answer the

20   question, please.  Go ahead.  Now say that again.

21   **A.    She won't pay me any more now.**

22   Q.    Why?

23   **A.    Because the action -- the judgment's been cancelled.**

24   Q.    What has been cancelled?

EXHIBIT 6

1    **A.   I don't -- because the judgment of NLG came back**

2  **against her.  Hear?**

3    Q.   I'm sorry.  You have to say that again.  I don't

4  understand your answer.

5    **A.   Because -- she won't pay any more because the**

6  **judgment of NLG came back against her.**

7    Q.   What do you mean it came back against her?

8    **A.   I mean, it was going and now it was no more.  You**

9  **have the document.  You know all these answers.**

10    Q.   Was there a written agreement between you and

11  Elizabeth Hazan with regard to that $200,000 payment?

12    **A.   Yes.**

13    Q.   Who prepared that agreement?  Was it prepared by a

14  lawyer?

15    **A.   I did.**

16    Q.   You prepared it?  And do you have it?

17    **A.   No, not with me.**

18    Q.   Where is it?

19    **A.   I don't remember where I put it.**

20    Q.   Did you prepare it on the computer?

21    **A.   No.**

22    Q.   How did you prepare it?

23    **A.   I don't remember.**

24    Q.   Did you handwrite it?

EXHIBIT 6

1    **A.    (No response.)**

2    Q.    Did you write it out longhand on a piece of paper?

3    MR. MARZEC:  I think I'm going to object.  The

4    witness already gave an answer that he -- well --

5    MS. MEYER:  I'm going to view these questions as

6    trying to refresh the witness' recollection.

7    MR. DONATELLI:  Why don't we have a little bit

8    of a break.  I have folks coming at 1:00 today.

9    They're in my conference room.  May I go out and tell

10    them that I'll be another 10 or 15 minutes?

11    MR. SMITH:  I'm almost done.

12    MS. MEYER:  How much longer do we have?

13    MR. SMITH:  One or two questions, and I'm done.

14    I just want to find out where the agreement is.

15    BY MR. SMITH:

16    Q.    Did you write the agreement in longhand on a piece

17    of paper with a pen or pencil?

18    **A.    No.  The computer -- I don't remember the place.**

19    Q.    I'm sorry.  I didn't understand what you said.  Hold

20    the phone up, please.

21    **A.    I think I prepare it on a computer.**

22    Q.    And you still have the same computer?

23    **A.    No.**

24    Q.    Where is that computer?

EXHIBIT 6

1    **A.   It broke.**

2    Q.   Did you give a copy of that agreement to any

3 attorney?

4    **A.   I don't recall.**

5    Q.   Did you give the agreement to Ms. Hazan?

6    **A.   I'm sure.**

7    Q.   Did she sign the agreement?

8    **A.   Yes.**

9    Q.   Will you ask her for a copy of it back?  Are you

10 willing to do that?

11      MR. MARZEC:  I have to object.  That's not a

12    proper request to the witness.  You can only ask

13    questions of the witness and not ask the witness to

14    do something.

15      MS. MEYER:  If you want to ask for a production

16    of it from -- I guess you'd have to ask for it from

17    Hazan or subpoena it from Hazan, unless the witness

18    is willing to ask for it.  If he is, it's a fair

19    question.  I don't know how you will enforce it.

20 BY MR. SMITH:

21    Q.   Are you willing to ask Ms. Hazan for a copy of it?

22    **A.   Yes.**

23    Q.   And will you give it to your attorney when you get

24 it?

EXHIBIT 6

1    **A.    Yes.**

2         MR. SMITH:  Thank you.  That's all I have.

3         MR. MARZEC:  I have no more questions.  Darius

4    Marzec here.

5         MS. MEYER:  Anyone else?

6         MR. ROGERS:  I have three very brief questions.

7    This is Peter Rogers.

8                        EXAMINATION

9    BY MR. ROGERS:

10    Q.   Mr. Houle, do you understand that Mr. Marzec has

11   asked the Court for permission to stop being Quebec's

12   attorney?

13        MR. SMITH:  Objection.

14        MS. MEYER:  Overruled.

15        MR. SMITH:  Is he still there?

16   BY MR. ROGERS:

17    Q.   Mr. Houle, are you still there?

18    **A.    Yes.**

19    Q.   Let me ask it again.  I'll try to make it as simple

20   as possible.  Do you understand that Mr. Marzec has asked the

21   Court for permission to stop being Quebec's attorney?

22    **A.    Yes.**

23    Q.   Do you understand that Quebec will need to get a new

24   attorney?

EXHIBIT 6

1  **A.** **Yes.**

2  Q. Do you give permission to Mr. Marzec to stop being

3 Quebec's attorney?

4  **A.** **Pardon?  Can you repeat?**

5  Q. Do you, as the shareholder of Quebec, give

6 permission to Mr. Marzec to stop being Quebec's attorney?

7  **A.** **Yes.**

8   MR. ROGERS:  I don't have any other questions.

9   MS. MEYER:  Anyone else?

10   MR. MARZEC:  No.

11   MR. SMITH:  Ed Smith has none.

12   MR. DONATELLI:  Mr. Donatelli has none.

13   (Whereupon, the deposition was concluded at

14  1:05 p.m.)

15

16

17

18

19

20

21

22

23

24

EXHIBIT 6

1        C E R T I F I C A T I O N.

2                I hereby certify that the

3 proceedings, evidence and objections noted are contained

4 fully and accurately in the notes taken by me in the hearing

5 of the foregoing matter, and that this is a true and correct

6 transcript of the same.

7

8

9

10

11

12

13

14

15

16              _Carol Shearer_

17             CAROL L. SHEARER, RPR

18             Stenographic Court Reporter

19             Notary Public.

20

21             (THE FOREGOING CERTIFICATION OF THIS

22 TRANSCRIPT DOES NOT APPLY TO ANY REPRODUCTION OF THE SAME BY

23 ANY MEANS, UNLESS UNDER THE DIRECT CONTROL AND/OR SUPERVISION

24 OF THE CERTIFYING REPORTER.)

EXHIBIT 6

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY, FLORIDA

NLG, LLC
        Plaintiff,

vs.                                CASE NO. 2011-CA-042770-CA-01

ELIZABETH HAZAN, et. al,
        Defendant (s)
_____/

## DEFENDANT, ELIZABETH HAZAN'S VERIFIED MOTION TO DISMISS

The Defendant, **ELIZABETH HAZAN,** (hereinafter referred to as "Defendant"), by and through his undersigned counsel, hereby file this, her Verified Motion to Dismiss the Plaintiff's **NLG, LLC's** (hereinafter referred to as the "Plaintiff") Complaint in support thereof says that:

1. The Defendant, Elizabeth Hazan moves for a Dismissal of this action and removal of the lis pendens based upon the subject matter note, mortgage and judgment have been satisfied. Thus, the Plaintiff has no cause of action in this matter.

2. This is an action by the Plaintiff to foreclose on its alleged mortgage on the property located at Lot 7, Block 2, Lindisfarne on Fisher island section 10, according to the Plat, thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County, Florida.

3. Said mortgage was recorded on April 24, 2007 in Book 25559 Page numbers 4266-4272 Document number CFN 2007R0410013.

1

EXHIBIT 7

4. On June 27, 2007, NLG, LLC sued Elizabeth Hazan on the promissory note in Case No. 07-19532 CA 11. On April 28, 2008, NLG, LLC obtained a final default judgment against Defendant for the amount of $1,618,071.29. (See Exhibit "1")

5. Said judgment was recorded by the Clerk of court of Miami-Dade in Book number 26357, Pages 3948-3949, Document number CFN 20080361591.

6. Said judgment was re-recorded on June 2, 2008 in Book number 26406 Pages 3259-3260, Document number CFN 2008R0446831.

7. On June 3, 2008, Elizabeth Hazan sued NLG, LLC and Christopher Kosachuk to quiet title and discharge of its alleged mortgage on her Fisher Island property in Case No. 2008-31657 CA(27). A true and correct copy of the Docket. (See Exhibit "2").

8. Defendant, Elizabeth Hazan and Plaintiff, NLG, LLC entered into a settlement agreement on October 28, 2008 (hereinafter referred to as "Settlement Agreement") and as a condition to settle, NLG, LLC agreed to waive with prejudice all claims and counterclaims asserted in the complaint case No. 2008-31657 CA (27) and which may have been asserted and the judge Maria Espinoza Dennis entered two orders of dismissal with prejudice. Those dismissals with prejudice forever barred NLG from suing to foreclose on the alleged mortgage of the Fisher island property. Attached is a true and correct copy of the Stipulation of dismissal of the case 2008-31657 CA(27). (See Exhibit "3")

9. True and correct copies of the orders of dismissals with prejudice of this case entered by Judge Espinoza Dennis are attached( See Exhibit "4").

2

EXHIBIT 7

10. Defendant, Elizabeth Hazan also agreed to dismiss her appeal of the 2008 NLG's judgment with prejudice. Hazan v. NLG, LLC, 3D 08-1402.

11. On December 21, 2011, NLG, LLC sued the Defendant in Case no. 11-42770 CA(11) to foreclose on an alleged mortgage on Defendant's Fisher Island property despite NLG having waived with prejudice all claims and counterclaims asserted and that could have been asserted in the 2008-31657 CA(27) case, including the right to sue for foreclosure. On February 12, 2013, after trial, the Circuit Court issued a judgment in favor of Elizabeth Hazan denying NLG LLC's foreclosure, and dissolved the filed lis pendens and amended Lis Pendens. A true and correct copy of Judge Eig's ruling in favor of Elizabeth Hazan and against NLG, LLC is attached. (See Exhibit "5")

12. On March 11, 2013, NLG, LLC filed an appeal. Plaintiff who was the Appellant raised only one issue on appeal. The issue on appeal presented by the Plaintiff was "whether the trial court erred in denying a mortgage foreclosure subsequent to a final judgment on a breach of the promissory note without satisfaction of payment because of the final judgment on the promissory note".

13. NLG, LLC's principal is a wanted man by each Sheriff of the State of Florida and any law enforcement as he has an outstanding bodily attachment order for his arrest on a $50,000.00 bond. Attached is a true and correct copy of the bodily attachment order against NLG, LLC's principal Chris Kosachuk arising out of civil conptempt in a matter arising out of a judgment against him personally. (See Exhibit "6")

14. On February 22, 2012, 9197-5904 QUEBEC, INC. ("Quebec") obtained a judgment against NLG, LLC in the Supreme Court in New York, New York State and

3

EXHIBIT 7

domesticated the Judgment in the State of Florida where NLG, LLC is believed to do business.

15. Thereafter, on April 30, 2014, the Judgment was assigned to SELECTIVE ADVISORS GROUP, LLC a Delaware Limited Liability Company ("Selective"). (See Exhibit "7").

16. After domesticating the judgment in Florida, NLG, LLC objected to the judgment and to its assignment. On May 21, 2014, filed a motion seeking a stay and vacate. Thereafter, Honorable Circuit Court Judge Peter Lopez ordered NLG, LLC to post a bond in the amount of $5,500,000.00 should NLG, LLC wish to stay the enforcement of the judgment, and entered an Order on Same. (See Exhibit "8").

17. After a hearing on the merits of the underlying judgment, the Florida court strongly disagreed. In fact, Circuit Court's decision dated June 16, 2014, held that "Plaintiff has all rights to enforce and collect this foreign judgment", rejecting NLG LLC's numerous wild claims of collusion. (See Exhibit "9").

18. It appears that Selective continued with its execution efforts in the State of Florida, and moved to have the NLG, LLC judgment as an asset of NLG, LLC assigned to Selective to provide full credit of said judgment amount against the outstanding obligation of NLG, LLC.

19. After filing a motion, NLG, LLC opposed. After two hearings on the merits (August 12, 2014 and August 15, 2014), the court entered an order on August 20, 2014. The Order contained findings of fact after the hearing concerning the respective

4

EXHIBIT 7

judgments against NLG, LLC and Hazan, as well as making conclusions of law, ordering the following:

a. The Court orders that the Hazan Final Judgment held by NLG, LLC against Elizabeth Hazan, ("Hazan Final Judgment") and all of NLG, LLC's rights, claims and benefits held against ELIZABETH HAZAN are hereby judicially assigned to the Plaintiff Assignee, SELECTIVE ADVISORS GROUP, LLC, a Delaware Limited Liability Company.

b. Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC, shall stand in the shoes of NLG, LLC with respect to all claims, rights, and benefits held by NLG, LLC, so as to entitle it to recover all proceeds attributable to said judgment against additional Defendant, ELIZABETH HAZAN, with NLG, LLC receiving credit for all sums so received.

c. Plaintiff, SELECTIVE ADVISORS GROUP, LLC, shall give a credit to Defendant, NLG, LLC, in the sum of $2,746,953.34, which amount includes principal and interest through August 31, 2014 at the 11% judgment amount without prejudice to Defendant establishing at further hearing why the credited amount should be greater.

5

EXHIBIT 7

(See Exhibit "10"), Order dated August 20, 2014.

20. Selective thereafter entered into a settlement with Hazan and filed a Satisfaction of Judgment and Satisfaction of Mortgage with the Miami-Dade Clerk.

21. As part of the settlement a Satisfaction of Judgment document was recorded with the Clerk of Courts in Miami-Dade, Florida. (See Exhibit "11") A Satisfaction of Mortgage was filed as well. (See Exhibit "12").

22. Thereafter, Selective filed documents with the Florida Department of State in Tallahassee, Florida to reflect an assignment of the judgment and to remove any judgment liens against Hazan by NLG, LLC. (See Exhibit "13") Exhibit "13" is a true and correct copy of the "Judgment Lien Document" showing, first assignment, then termination of the judgment liens. There exist two of each as apparently, NLG, LLC filed two judgment liens upon the same judgment. A judgment lien detail shows the judgment liens as "satisfied".[1]

23. Selective credited the entire value of Hazan's debt to NLG, LLC to reduce its $5,000,210.00 judgment against NLG, LLC (not including statutory interest). Attached is an amendment and partial release of the Selective's judgment Lien against NLG, LLC with the Florida Department of State in Tallahassee, FL after giving NLG, LLC the credit for NLG's entire value of its judgment against Elizabeth Hazan.

---

[1] On August 20, 2014, the Clerk of Miami-Dade County recorded the satisfaction of NLG's judgment against Elizabeth Hazan document number CFN 2014R0583475 Book number 29277 pages number 4388-4394. A satisfaction of mortgage was recorded in Document CFN2014R0585096 Book number 29278 Pages number 3967-3973 on August 21, 2014. A second corrective satisfaction of mortgage was recorded on September 9, 2014 in Document number CFN2014R0626102 Book number 29301 Pages number 4526-4532. On August 22, 2014, The Florida Department of State, Division of Corporations recorded the assignment of NLG, LLC's judgment liens against Elizabeth Hazan to Selective Advisors Group, LLC and the termination of NLG's liens against Hazan. This was done in full satisfaction of Elizabeth Hazan before this appellate Court had rendered its non-final opinion on September 3, 2014.

6

EXHIBIT 7

24. NLG, LLC moved for rehearing on August 29, 2014. After a hearing on the merits on September 16, 2014, Honorable Judge Peter R. Lopez denied all relief to NLG, LLC. The August 20, 2014, order eventually terminating, and extinguishing all of NLG, LLC's judgment, claims, rights, and benefits against Elizabeth Hazan, was never appealed and remains final. (See Exhibit "14").

25. NLG, LLC lost all of its interest in Hazan's judgment and purported mortgage after oral arguments were heard by the third district court of appeals, but before the appellate rendered its non final written opinion on September 3, 2014. The record demonstrates that the "issue on appeal" was moot as the NLG, LLC's judgment and purported mortgage have been satisfied after settlement. The controversy has been so fully resolved and NLG's motion for judgment is moot and without basis in law or fact.

## MOTION TO DISMISS STANDARD

In ruling on a motion to dismiss, all well-pled facts in the complaint are accepted as true; all reasonable inferences from those facts must be found in favor of the plaintiff; and exhibits to the complaint become part of the pleading. Blue Supply Corp. v. Novos Electro Mech., Inc.,990 So.2d 1157, 1159 (Fla. 3d DCA 2008); Thrasher v. First Nat'l Bank of Miami, 288 So.2d 288, 289 (Fla. 3d DCA 1974); Fla. R. Civ. P. 1.130(b) ("Any exhibit attached to a pleading shall be considered a part thereof for all purposes."). Xavier v. Leviev, Boymelgreen, Marquis Developers, LLC, 117 So.3d 773, 775 (Fla. 3d DCA 2012).

A motion to dismiss tests whether the Plaintiff has alleged a good cause of action, i.e., the sufficiency of the complaint. Visor v. Buhl, 760 So. 2d 274 (Fla. 4th DCA 2000); Barbado v. Green & Murphy, P.A., 758 So. 2d 1173 (Fla. 4th DCA 2000). All conclusions or inferences are required to be resolved in favor of the non-moving party. Taylor v. City of

7

EXHIBIT 7

Riviera Beach, 801 So. 2d 259 (Fla. 4th DCA 2001). The law is well established that in ruling on a motion to dismiss a complaint, a court must confine itself strictly to the allegations within the four corners of the complaint. Further, a court must accept all allegations in the complaint as true. See Londono v. Turkey Creek, Inc., 609 So. 2d 14 (Fla. 1992); Pizzi v. Central Bank and Trust Company, 250 So. 2d 895, 896 (Fla. 1971); Russell v. Sherwin-Williams Company, 767 So. 2d 592 (Fla. 4th DCA 2000); Salit v. Ruden, McClosky, Smith, Schoster & Rissell, P.A., 742 So. 2d 381 (Fla. 4th DCA 1999). However, the Court is not required to accept as true allegations which are inconsistent with law. Brown v. First Federal Savings and Loan, 160 So.2d 556, 563 (Fla. 1st DCA 1964).

For purposes of this Motion to Dismiss, it is also important to note that the Court also considers any exhibits attached to the complaint as true. Samuels v. King Motor Co. of Fort Lauderdale, 782 So. 2d 489, 494 (Fla. 4th DCA 2001). Inconsistencies between the allegations of the complaint and the exhibits appended thereto may serve as the basis for dismissal of the complaint:

When exhibits are attached to a complaint, the contents of the exhibits control over the allegations of the complaint. See, e.g., Hunt Ridge at Tall Pines, Inc. v. Hall, 766 So.2d 399, 401 (Fla. 2d DCA 2000) ("Where complaint allegations are contradicted by exhibits attached to the complaint, the plain meaning of the exhibits control[s] and may be the basis for a motion to dismiss."); Blue Supply Corp. v. Novos Electro Mech., Inc., 990 So.2d 1157, 1159 (Fla. 3d DCA 2008); Harry Pepper & Assocs., Inc. v. Lasseter, 247 So.2d 736, 736-37 (Fla. 3d DCA 1971) (holding that when there is an inconsistency between the allegations of material fact in a complaint and attachments to the complaint, the differing allegations "have the effect of neutralizing each allegation as against the other, thus rendering the pleading

8

EXHIBIT 7

objectionable"). Bac Funding Consortium, Inc. ISAOA/ATIMA v. Jean-Jacques, 28 So. 3d
936, 938 (Fla. 2d DCA 2010).

## MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION

Elizabeth Hazan and Selective had an absolute right to settle the matter amongst
themselves as Selective stood in the shoes of all of NLG LLC's rights as against Hazan.
While the parties are generally required to notify the court of a settlement, this must be
done by filing a "Stipulation of Dismissal". Since NLG LLC's rights were judicially
assigned to Selective to offset NLG, LLC's $5,000,210.00 debt (without interest) to
Selective, NLG, LLC would not sign a stipulation of dismissal, and Selective is not a
party to action or the appellate case and could not have signed a Stipulation of Dismissal.
The record with the Miami-Dade Clerk of Courts reflects that the underlying judgment
and mortgage are satisfied.

Both parties' counsels had "an obligation . . . to notify the court of any
development that may conceivably affect the outcome of the litigation, including facts
that may raise a question of mootness." Merkle, 912 So. 2d at 600. The rule derives
from bar members' duty of candor to the court. See R. Regulating Fla. Bar 4-3.3. On the
issue of Candor to the Court, the plaintiff in its recent filings with this Court has failed to
inform this Court that the Note and mortgage that they are attempting to foreclose on has
been satisfied. It is of out-most importance that the Plaintiff advise the Court of the true
facts of the matter, even if those facts are not beneficial to the Plaintiff. At a minimum,
the Plaintiff and Plaintiff's counsel needs to inform the Court of the existence of the
Satisfaction of the Note and Mortgage in this matter. Moreover, it is the undersigned's
duty to now advise this Court of the matter being moot as NLG, LLC has lost all of its

9

EXHIBIT 7

interest in the judgment or mortgage against Hazan on August 20, 2014, and that the NLG judgment and mortgage have been satisfied after settlement, before the Appeals Court issued its opinion.

Given that the judgment and mortgage have been satisfied, "the controversy has been so fully resolved that a judicial determination can have no actual effect". Godwin, 593 So. 2d at 212. Given NLG, LLC's loss of any interest in Hazan's obligations, this Court is without judicial power as such power cannot extend to non-justiciable controversies. Ervin, 66 So. 2d at 236. This action is moot as NLG, LLC has no mortgage on which to foreclose nor a money judgment against Hazan on which to collect.

This Court should dismiss the action by NLG, LLC because NLG, LLC has no standing to maintain this action. Foreclosing mortgagor's "submission of a post-filing assignment of the note[2] does not establish that it had standing when it filed the lawsuit." Focht v. Wells Fargo Bank, N.A., 124 So.3d 308 (Fla. 2d DCA 2013)(citations omitted). A foreclosing mortgagor must show that it acquired the right to enforce the note before it filed suit. See Gonzalez v. Deutsche Bank Nat'l Trust Co., 95 So.3d 251, 253–54 (Fla. 2d DCA 2012); Venture Holdings & Acquisitions Group, LLC v. A.I.M. Funding Group, LLC, 75 So.3d 773, 776 (Fla. 4th DCA 2011). "To satisfy the requirement of standing, the plaintiff must show that a case or controversy exists between the plaintiff and the defendant, and that such case or controversy continues from the commencement through the existence of the litigation." See Ferreiro v. Phila. Indem. Ins. Co., 928 So.2d 374,

---

[2] Case law focuses on standing to enforce the note, as opposed to the mortgage, because the mortgage generally passes as an incident to the debt. Cutler v. U.S. Bank Nat'l Ass'n, 109 So.3d 224, 225 (Fla. 2d DCA 2012).

10

377 (Fla. 3d DCA 2006); see also Collins v. Gov't Emp. Ins. Co., 922 So.2d 353, 353 (Fla. 3d DCA 2006).

There is no dispute that the August 20, 2014 Order of Judge Peter R. Lopez assigned all of NLG LLC's rights against Hazan to Selective. (See Exhibit "11'). Neither is there a dispute that the judgment and mortgage had been satisfied by Selective after settling with Hazan by virtue of the Satisfactions attached hereto as Exhibit "12", Exhibit "13" and Exhibit "14" respectively. As such, NLG has no standing to pursue this matter.

WHEREFORE, Defendant, Elizabeth Hazan respectfully moves this Honorable Court for an Order dismissing this action with prejudice for lack of jurisdiction on the above-mentioned grounds and award any other entitlement that this Court deems appropriate.

FURTHER AFFIANT SAYETH NOT.

ELIZABETH HAZAN

SWORN TO AND SUBSCRIBED that the foregoing instrument was acknowledged before me this _____ day of _____, 2015, by **ELIZABETH HAZAN**, who is personally known to me or produced _____ as identification.

JOE ROSS
Notary Public - State of Florida
My Comm. Expires Mar 1, 2018
Commission # FF 000415

Notary Public, State at Large
My Commission Expires:

11

EXHIBIT 7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via email to Juan Ramirez, Jr., Esq. at Diaz Reus & Targ, LLC, jramirez@diazreus.com on this 15th day of January 2015.

The Law Office of Ray Garcia, P.A.
14850 SW 26 Street, Suite 204
Miami, Florida 33185
Telephone: (305) 227-4030
Facsimile: (305) 223-9811
service@raygarcialaw.com


By: _____
Ray Garcia, Esq.
FBN: 115850
Melanie Klaskala, Esq.
FBN: 109502

EXHIBIT 7

# EXHIBIT "1"

EXHIBIT 7

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: 07-19532 CA 11

NLG, LLC, a Delaware Limited Liability Company,

    Plaintiff,

v.

ELIZABETH HAZAN,

    Defendant.

_____

## DEFAULT FINAL JUDGMENT

This Action was considered based upon a Motion for Default Final Judgment based upon a breach of the Parties February 9, 2008 Settlement Agreement. Based upon the Settlement Agreement, the Motion for Default Final Judgment and the Affidavit of Default of Settlement Agreement filed by the Plaintiff,

### IT IS ADJUDGED THAT:

1.    The Plaintiff, NLG, LLC, 854 Pheasant Run Road, West Chester, PA, 19382, shall recover from Defendant, Elizabeth Hazan whose address is 6913 Valencia Drive, Fisher Island, Florida 33109, the sum of $1,574,371.07 that shall bear interest at the rate of 11 percent per annum until paid, for which sum let execution issue.

2.    The Plaintiff, NLG, LLC, is the prevailing party in this action and is therefore awarded an entitlement to recover reasonable attorney's fees and court costs incurred in connection with this matter against the Defendant Elizabeth Hazan pursuant to the Promissory Note that forms

1

EXHIBIT 7

the subject matter of this action. The Court reserves jurisdiction over the subject matter of this action to adjudicate the amount of reasonable attorney's fees and court costs to be awarded to the Plaintiff, NLG, LLC.

3.    The Defendant, Elizabeth Hazan, whose address is 6913 Valencia Drive, Fisher Island, Florida 33109, shall take nothing by this action and shall go hence without day.

DONE AND ORDERED in Chambers at Miami Dade County, Florida this ____ day of February, 2008.

FEB 1 1 2008

_____
CIRCUIT COURT JUDGE

Robert N. Scola, Jr.
Circuit Court Judge

Conformed copies to:

    Christopher M. David, Esq.
    Michael W. Simon, Esq.

2

EXHIBIT 7

# EXHIBIT "2"

EXHIBIT 7



0 Item(s) in Basket                Home    Online Services    About us    Contact us

## Civil Court Online System - Docket Information

BACK TO SEARCH RESULTS                                          START A NEW SEARCH

ALL PARTIES
**HAZAN, ELIZABETH vs KOSACHUK, CHRISTOPHER**
\* Click on BOOK/PAGE of a particular docket to see the image if it is available \*

Case Number (LOCAL): 2008-31657-CA-01     Dockets Retrieved: 16     Filing Date: 06/04/2008
Case Number (STATE): 13-2008-CA-031657-0000-01               Judicial Section: 27

| Date | Book/Page | Docket Entry | Comments |
|------|-----------|--------------|----------|
| 05/19/2011 | | NOTICE OF CHANGE OF ADDRESS | |
| 11/19/2008 | 26664 / 4819 Pages: 1 | RECORDED DOCUMENT | BK:26664 PG:4819 STIPULATION |
| 11/19/2008 | 26664 / 4800 Pages: 1 | COURT ORDER | BK:26664 PG:4800 OF DISMISSAL OF COMPLAINT WITH PREJUDICE |
| 11/13/2008 | 26655 / 3913 Pages: 1 | ORDER OF DISMISSAL | BK:26655 PG:3913 DN01 DN02 |
| 10/07/2008 | | NOTICE OF HRG SPECIAL APPT | 11/05/2008 03:20 PM |
| 08/20/2008 | | NOTICE OF DEFAULT NOT ENTERED | DN02 E |
| 07/11/2008 | | SERVICE RETURNED | BADGE # 1028 P 07/08/2008 DN01 |
| 07/08/2008 | | MOTION FOR DEFAULT | |
| 07/08/2008 | | NOTICE OF HEARING- | MOTIONS 07/16/2008 09:30 AM |
| 07/08/2008 | | MOTION TO DISMISS | CHRISTOPHER KOSACHUK |
| 06/30/2008 | | NOTICE OF APPEARANCE | ATTORNEY: 00985163 DN01 |
| 06/23/2008 | | SERVICE RETURNED | BADGE # 555 P 06/09/2008 DN02 |
| 06/04/2008 | | DEMAND FOR JURY TRIAL | |
| 06/04/2008 | | CIVIL COVER | |
| 06/04/2008 | | COMPLAINT | |
| 06/04/2008 | | SUMMONS ISSUED | DN01 DN02 |

BACK TO SEARCH RESULTS                ALL PARTIES                START A NEW SEARCH

S0142976

# EXHIBIT 7

# EXHIBIT "3"

EXHIBIT 7

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

ELIZABETH HAZAN,

    Plaintiff,

v.

    CASE NO. 2008-31657-CA-01 (27)

CHRISTOPHER KOSACHUK, and
NLG, LLC, a Delaware limited liability
Company,

    Defendants. _____/

## STIPULATION AND ORDER FOR DISMISSAL OF COMPLAINT WITH PREJUDICE

Plaintiff, ELIZABETH HAZAN, and Defendants, CHRISTOPHER

KOSACHUK and NLG, LLC, by and through their respective undersigned counsel,

hereby stipulate to the dismissal, with prejudice, of all claims and any counterclaims

asserted or which may have been asserted in this action between these parties, with each

party to bear their own attorney's fees and costs.

Dated: October 29, 2008.            Dated: October 29, 2008.

SIMON, SIGALOS & SPYREDES, P.A.     DAVID AND JOSEPH, P.L.
Attorneys for Plaintiff               Attorneys for Defendant
3839 NW Boca Raton Blvd., Suite 100    1001 Brickell Bay Drive, Suite 2002
Boca Raton, FL 33431             Miami, Florida 33131
Tel: (561) 447-0017              Tel: 786-364-7990

By: _____            By: _____
Michael W. Simon Esq.           Christopher M. David
Florida Bar No.: 776394          Florida Bar No.: 985163

# EXHIBIT 7

# EXHIBIT "4"

EXHIBIT 7

*odis*
*1-2*

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

ELIZABETH HAZAN,
    Plaintiff,

v.                           CASE NO. 2008-31657-CA-01 (27)

CHRISTOPHER KOSACHUK, and
NLG, LLC, a Delaware limited liability
Company,
      Defendants.
_____/

2008 NOV 13 PM 4: 14

## ORDER OF DISMISSAL OF COMPLAINT WITH PREJUDICE

THIS MATTER having come on before the court upon the Stipulation for

Dismissal with Prejudice of the Complaint and Counterclaim, the court having reviewed

the stipulation, and being otherwise duly advised in the premises, hereby

ORDERS and ADJUDGES that the stipulation is hereby approved and this action,

including all claims or counterclaims asserted or which may have been asserted, is hereby

dismissed, with prejudice, with each party to bear its own attorney's fees and costs.

DONE and ORDERED in Chambers in Miami, Florida, this ____ day of

_____, 2008.

                            _____
                            Circuit Court Judge
                            Maria Espinosa Dennis
                            Circuit Court Judge

Copies furnished to :
Michael W. Simon, Esq., 3839 NW Boca Raton Blvd, Suite 100, Boca Raton, Florida 33431
Christopher M. David, Esq. 1001 Brickell Bay Drive, Suite 2002, Miami, Florida 33131
Y:\CRents\Hazan\adv. NLG\v. Kosachuk\Pleadings\Stipulation for Dismissal with Prejudice.doc

# EXHIBIT 7

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

ELIZABETH HAZAN,
    Plaintiff,

v.

CASE NO. 2008-31657-CA-01 (27)

CHRISTOPHER KOSACHUK, and
NLG, LLC, a Delaware limited liability
Company,
    Defendants.

_____/

## ORDER OF DISMISSAL OF COMPLAINT WITH PREJUDICE

THIS MATTER having come on before the court upon the Stipulation for Dismissal with Prejudice of the Complaint and Counterclaim, the court having reviewed the stipulation, and being otherwise duly advised in the premises, hereby

ORDERS and ADJUDGES that the stipulation is hereby approved and this action, including all claims or counterclaims asserted or which may have been asserted, is hereby dismissed, with prejudice, with each party to bear its own attorney's fees and costs.

DONE and ORDERED in Chambers in Miami, Florida, this _____ day of _____, 2008.

_____
Circuit Court Judge

MARIA ESPINOSA DENNIS
CIRCUIT COURT JUDGE .

Copies furnished to :
Michael W. Simon, Esq., 3839 NW Boca Raton Blvd, Suite 100, Boca Raton, Florida 33431
Christopher M. David, Esq. 1001 Brickell Bay Drive, Suite 2002, Miami, Florida 33131
Y:\Clients\Hazan\adv. NLG\v. Kosachuk\Pleadings\Stipulation for Dismissal with Prejudice.doc

2

# EXHIBIT 7

# EXHIBIT "5"

EXHIBIT 7

IN THE CIRCUIT COURT OF THE
11ᵀᴴ JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA

Case Number: 11-42770-CA-02

NLG, LLC. A Delaware
limited liability company

            Plaintiff(s),

vs.

Elizabeth Hazan,

            Defendant(s),

FINAL ORDERS AS TO ALL PARTIES
CAS DISPOSITION
NUMBER _____
THE CO-CT DISMISSES THIS CASE AGAINST
ANY PARTY NOT LISTED IN THIS FINAL ORDER
OR PREVIOUS ORDER(S). THIS CASE IS CLOSED
AS TO ALL PARTIES.
Judge's Initials ____

## FINAL JUDGMENT FOR DEFENDANT, ELIZABETH HAZAN

    This cause came to be heard for non-jury trial before this Honorable Court on December 26 and 27, 2012, on Plaintiff's Verified Complaint to Foreclose Mortgage; upon the argument of counsel, the pleadings on file, the answers and affirmative defenses of the Defendants; the testimony of witnesses called by the Plaintiff and Defendants; exhibits introduced into evidence; and the court being otherwise fully advised in the premises, the court hereby rules in favor of the Defendant, ELIZABETH HAZAN.

In addition, the Court finds as follows:

A.    The bench ruling expressed orally by the Honorable Judge Spencer Eig during the hearing held on January 2, 2013 in this matter, attached hereto as Exhibit "A", is hereby incorporated and adopted in its entirety into this Final Judgment as though set forth herein.

B.  The Court has jurisdiction over the parties and subject matter of this action and service of process has been properly obtained over the Defendants.

C. The sole count of Plaintiff's Verified Complaint was to foreclose a mortgage dated March 8, 2007, as to the following real property, to wit:

# EXHIBIT 7

Lot 7, Block 2, of LINDISFARNE ON FISHER
ISLAND SECTION 10, according to the Plat
thereof, as recorded in Plat Book 157, at
Page 64 of the Public Records of Miami-Dade
County, Florida, Folio Number 30-4209-016-0070,
a/k/a 6913 Valencia Drive, Fisher Island, Florida 33109.

1. In accordance with Rule 1.420(f), Florida Rules of Civil Procedure, any and all notices of lis pendens in this action by Plaintiff, NLG, LLC, including, but not limited to, the first notice of lis pendens recorded December 23, 2011, in Official Records book 27940, at Pages 2791-2792, amended notice of lis pendens dated June 15, 2012, if Official Records Book 28150, at Pages 4850, and a lis pendens recorded December 20, 2012 in Official Records Book 28409, at Pages 2080-2081, of the Public Records of Miami-Dade County, Florida are hereby discharged and dissolved at time of entry of final judgment.

2. The court reserves jurisdiction to award attorney's fees and costs, to make the determination as to the amount of reasonable attorney's fees, including a hearing to determine the amount of reasonable attorney's fees, should the parties be unable to agree and further reserves jurisdiction to enter such other and further relief as is appropriate in order to enforce this court's determination and/or award of costs and attorney's fees.

DONE AND ORDERED in Chambers at Miami, Miami-Dade County, Florida, this
_____ day of January, 2013.

THE HONORABLE SPENCER EIG
CIRCUIT JUDGE

SPENCER EIG
CIRCUIT COURT JUDGE

Copies Furnished to:

Rafael Recalde, Esquire
Attorney for Plaintiff
3250 NE 1 Avenue Suite 314
Miami, FL. 33137
Rafael@recaldelaw.com

NLG, LLC, Plaintiff
854 Pheasant Run Road
West Chester, PA 19382

# EXHIBIT 7

# EXHIBIT "6"

EXHIBIT 7

**DIVISION**
[ X ] CIVIL
[ ] OTHER

**CIVIL WRIT OF BODILY ATTACHMENT**
(Writ to Apprehend a Person)

PLAINTIFF(S)/
PETITIONER(S)
9197-5904 QUEBEC INC

DEFENDANT(S)/
RESPONDENT(S)
CHRIS KOSACHUK and
NLG, LLC

CASE NUMBER:  07-8365 CA 01 (13)

## TO EACH SHERIFF OF THE STATE OF FLORIDA:

You are hereby commanded to take into your custody:
CHRIS KOSACHUK                                                    and

[ X ] Place him/her in the Miami-Dade County Jail until such time as (s)he may be
brought before Judge    TRAWICK    located at:
73 WEST FLAGLER STREET, ROOM DDC1001, MIAMI, FL 33130

[ ] Bring him/her before Judge _____ located at _____

Instanter, for the following reason(s):
[ ] To answer the Defendant(s)/Respondent(s) failure to appear at a hearing for
contempt on: _____, 20 ____ of which
Defendant/Respondent was noticed: ____
and/or    FAILURE TO COMPLY WITH COURT ORDERS

CLOCK IN   FILED FOR RECORD
CLERK'S      14 MAY 15   PM 5: 06
MIAMI-DADE
CIVIL
CTS
YA/A

## DIRECTIONS TO SHERIFF

This Writ shall be promptly served and executed between the hours of 8:00 a.m. and 3:00 p.m., Monday through
Friday (legal holidays excluded), and shall expire and terminate if not served sixty (60) days from the date of this
Order. In rare instances when the Defendant/Respondent is taken into custody during normal Court hours but
cannot, after diligent effort be brought before a Judge on the same date this Writ is served, said
Defendant/Respondent may be confined in the Miami-Dade County Jail until the earliest possible time that he can be
brought before the Court. However, Defendant/Respondent may secure release pursuant to the conditions specified
below. (Check appropriate box).  This Writ shall not expire or be terminated pursuant to order attached

[ X ] Defendant/Respondent may be released upon the posting of a bond in the amount of $ __50,000.00__

_____ (SPECIFY OTHER CONDITIONS OF RECOGNIZANCE) _____

[ ] There is reason to believe that Defendant/Respondent is not subject to attachment during the above hours.
Accordingly, the Defendant/Respondent may be taken into custody at such time as he is located and apprehended
and may be confined in the Miami-Dade County Jail until the earliest possible time that Respondent/Defendant can
be brought before aforesaid Judge, or , in his absence, before any of the other Judges of the    CIRCUIT
Court, for the reasons specified herein. However, the Respondent/Defendant may secure release pursuant to the
foregoing conditions. Upon execution of this Writ, the sheriff shall promptly notify, by telephone, the following:

# EXHIBIT 7

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR DADE COUNTY, FLORIDA.

IN THE COUNTY COURT IN AND FOR DADE COUNTY, FLORIDA.

| | | CASE NUMBER |
|---|---|---|
| ___ION<br>CIVIL<br>OTHER | CIVIL WRIT OF BODILY ATTACHMENT<br>(Writ to Apprehend a Person) | 07-8365-CA-01 (13) |

## INFORMATION TO BE COMPLETED BY COUNSEL

___me address of Defendant/Respondent

165 N. HIBISCUS DRIVE, MAIMI BEACH, FL 33139 *

___ork address of Defendant/Respondent

| ___lephone #<br>305.490.5700 | Race<br>W | Sex<br>M | DOB<br>12/11/72 | SS# | | Eyes<br>B |
|---|---|---|---|---|---|---|

| ___ir<br>B | Height<br>5! 9" | Weight<br>170 | Nicknames |
|---|---|---|---|

Ordered in Dade County, Florida on the ____
day of    MAY    20 14

_____
COURT JUDGE

Name:  Arthur R. Rosenberg
Address  6499 N. Powerline Rd Suit 304
Telephone  Ft. Lauderdale, FL 33309
               954.772.5151

\* Such other locations he may be found

EXHIBIT 7

# EXHIBIT "7"

EXHIBIT 7

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY FLORIDA

9197-5904 QUEBEC INC

        Plaintiff,

CASE No.: 14-10475CA10

-against-

NLG, LLC

        Defendant,



### Assignment of Judgment

In exchange for Ten Dollars ($10.00) and other valuable consideration received, receipt of which is acknowledged, I, 9197-5904 Quebec, Inc., a foreign corporation, located at 5552 Queen Mary Road suite #4 Hampstead, Quebec, H3X 1V9, Canada ("Assignor"), assigns to Selective Advisors Group,LLC , of Delaware, ("Assignee"), located at 16192 Coastal Highway Lewes, DE 19958 County of Sussex, all of Assignor's rights, entitlements, title, interests, and remedies in and to that certain judgment entered in NYC Supreme Court on February 22nd 2012 index number 101875-2012 and which Judgment was recorded on April 21, 2014 in Miami-Dade County, State of Florida , under case number 2014-10475-CA-01,

Assignor represents and warrants that the Judgment is unsatisfied and it has not been assigned, transferred, hypothecated in whole or in part to any other party outside of this Assignment.

This assignment is without recourse, and Assignor does not guarantee payment of the judgment assigned. However, Assignor does agree that it will not release or discharge this judgment, and that in the event any payment under the judgment is made to it, it will promptly transmit it to Assignee.

Dated: 04/30/2014

Assignor
9197-5904 Quebec, Inc.

By: _____
RAYMOND HOULE, President

**EXHIBIT 7**

## ACKNOWLEDGMENT

*Province de Québec*

STATE OF )
) SS
COUNTY OF *Montréal d'Aug McGee*

On the 30th day of April 2014 before me personally appeared RAYMOND HOULE to be known and known to me to be the individual described in and who executed the foregoing Assignment of Judgment, and who duly acknowledged to me that he executed the same.

In Witness Thereof The Assignors Set Their Hand And Seal the day and year first written above:

Assignor:9197-5904 Quebec, Inc

By: RAYMOND HOULE, President

Witness:

Notary Public:

The foregoing instrument was acknowledged before me this 30 day of April 2014 by Raymond Houle, President of 9197-5904 Quebec, Inc, who is personally known to me or who presented _____ as identification, and who did execute the aforesaid Assignment of Judgment.

AFFIRMATION SOLENNELLE
SOLEMN AFFIRMATION
Signée à Montréal
Signed at Montreal
DATE: 30|04|2014

PIERRETTE TARDIF
Commissaire à l'assermentation
Commissioner of Oaths
No. 198936

# EXHIBIT 7

# EXHIBIT "8"

EXHIBIT 7

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

SECTION: 10
CASE NO: _14-10475_ CA(10)

SELECTIVE ADVISORS GROUP, LLC
AS ASSIGNEE OF 9197-5704 QUEBEC
        Plaintiff(s),

                                    ORDER
                            GRANTING/DENYING
vs.                         PLAINTIFF'S/DEFENDANT'S

    NLG, LLC

        Defendant(s).

_____/

        THIS CAUSE having come on to be heard on _PLAINTIFF'S EMERGENCY MOTION_
on Plaintiff's/Defendant's Motion _TO STRIKE MT TO QUASH NOTICE, MT TO STRIKE LIS PENDENS &_
_MT TO POST BOND_
and the Court having heard argument of counsel, and being otherwise advised in the premises, it is
hereupon

        ORDERED AND ADJUDGED that said Motion be, and the same is hereby

_GRANTED IN PART & DENIED IN PART. THE MT TO POST BOND_
_IS GRANTED & DEFENDANT SHALL POST A BOND IN THE_
_AMT OF ONE HUNDRED & NINE (1.09%) PER CENT OF THE_
_FAIR VALUE OF THE REQUIRED TERRITORY, LC_
_$5,450,100 (FIVE MILLION FOUR HUNDRED FIFTY THOUSAND DOLLARS._
_THE REMAINING PORTIONS OF THE MT IS DENIED W/O PREJUDICE TO RAISE_
_AS AFFIRMATIVE DEFENSES IF NECESSARY. A STATUS CONFERENCE IS SCHEDULED FOR_
        DONE AND ORDERED in Chambers at Miami-Dade County, Florida this _____ day of
_____, 2014.

_& STMS 16, 2014 AT NINE O'CLOCK (9:00 A.M.)_

                                    _____
                                    CIRCUIT COURT JUDGE
                                    JUDGE PETER R. LOPEZ

EXHIBIT 7

# EXHIBIT "9"

EXHIBIT 7

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

SECTION. 10
CASE NO: 14-10435 CA 10

SELECTIVE ADVISORS GROUP, LLC

AS ASSIGNEE

Plaintiff(s),

vs.

ORDER
GRANTING/DENYING
PLAINTIFF'S/DEFENDANT'S

NLG LLC.

Defendant(s).

_____/

THIS CAUSE having come on to be heard on ___JUNE 16, 2014___
on Plaintiff's/Defendant's Motion

THE COURT STATUS CONFERENCE PURSUANT TO ITS

ORDER DATED JUNE 3, 2013

and the Court having heard argument of counsel, and being otherwise advised in the premises, it is
hereupon

ORDERED AND ADJUDGED that said Motion be, and the same is hereby    AS FOLLOWS:

(1) THE ❒ ADVISED NO BOND WAS POSTED + THEREFORE THE

COURT STILL DENIES A. NLG's MT TO QUASH NOTICE

OF FILING OF FOREIGN JUDGMENT BY CONFESSION +

FURTHER STRIKE & DISMISSES NLG LLC'S NOTICE

OF LIS PENDENS DATED MAY 14, 2014 QUASH FOUND

FOREIGN JUDGT IN THIS ORDER. PLAINTIFF HAS ALL RIGHTS

TO ENFORCE THIS FOREIGN JUDGMENT.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida this 16 day of

___June___, 2014.

8 FOUR COPIES

COPIES furnished to
M. WELLS
M. Carter
Court furnished to Counsel of Record

CIRCUIT COURT JUDGE
JUDGE PETER R. LOPEZ

EXHIBIT 7

# EXHIBIT "10"

EXHIBIT 7

SELECTIVE ADVISORS GROUP, LLC.
AS ASSIGNEE OF 9197-5904
QUEBEC, INC.,

      Plaintiff,

vs.

NLG, LLC, a Delaware Limited
Liability Company,

      Defendant,

and

ELIZABETH HAZAN

      Additional Defendant.

_____/

## ORDER GRANTING
### PLAINTIFF'S MOTION FOR PROCEEDINGS SUPPLEMENTARY AND FOR ORDER IMPLEADING THIRD PARTY

THIS CAUSE having come on for hearing on August 12, 2014, and August 15, 2014, on the Plaintiff's Motion for Proceedings Supplementary, etc., and the court having examined the court file, including the unrebutted affidavit filed on behalf of the Plaintiff on July 2, 2014, having taken judicial notice of the judgments and lien certificates referenced below, and having heard arguments of counsel, makes the following finds of fact and conclusions of law:

### FINDINGS OF FACT

1. On April 28, 2008, a default final judgment was entered under Case No. 07-19532-CA-11 in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, in favor of NLG, LLC, and against ELIZABETH HAZAN in the amount of $1,618,071.29, plus interest at the statutory rate of 11 percent per annum. ("Hazan

# EXHIBIT 7

Final Judgment"). The judgment was recorded on May 2, 2008 at Book Number 26357, Pages 3948-3949, Document Number 20080361591 and re-recorded on June 2, 2008 at Book Number 26406, Pages 3259-3260, Document Number 2008R0446831.

2. A judgment lien certificate evidencing said judgment was filed with the Florida Secretary of State on May 27, 2008, under document filing number J08900007653.

3. A second judgment lien certificate evidencing said judgment was filed with the Florida Secretary of State on July 1, 2013, under document filing number J13001162651. The "money amount remaining unpaid" listed on the second judgment lien certificate is $3,749,569.51. Said amount seems to be based on an interest rate of 24 percent instead of the 11 percent judgment rate.

4. On February 22, 2012, 9197-5904 QUEBEC, INC., a foreign corporation, obtained a judgment against the Defendant, NLG, LLC, a Delaware Limited Liability Company, in New York State Supreme Court, County of New York, index number 101875-2012. Said judgment was domesticated and recorded on April 21, 2014, in Miami-Dade County, State of Florida, under the above-stated case number. Document number 2014R0298781, Book number 29124, pages 4766-4772.

5. On April 30, 2014, the subject judgment was assigned to the Plaintiff by 9197-5904 QUEBEC, INC., requiring the Defendant to pay the Plaintiff the sum of $5,000,225.00, plus statutory interest. The assignment was recorded at Book Number 29137, Pages 3128-3131, Document Number 2014R0322571.

6. A judgment lien certificate evidencing said judgment was filed with the Florida Secretary of State on June 16, 2014, under document filing number J14000718030.

7. The Plaintiff is entitled to step in the shoes of NLG, LLC with respect to the claims, rights, and benefits held by NLG, LLC, so as to be entitled to recover all proceeds attributable to the Hazan Final Judgment against ELIZABETH HAZAN, with

# EXHIBIT 7

NLG, LLC receiving a credit for all sums so received.

8. The execution is valid and remains outstanding.

## CONCLUSIONS OF LAW

1. The Court orders that the Hazan Final Judgment held by NLG, LLC against ELIZABETH HAZAN, ("Hazan Final Judgment") and all of NLG, LLC's rights, claims and benefits held against ELIZABETH HAZAN are hereby judicially assigned to the Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC, a Delaware Limited Liability Company.

2. Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC, shall stand in the shoes of NLG, LLC with respect to all claims, rights, and benefits held by NLG, LLC, so as to entitle it to recover all proceeds attributable to said judgment against additional Defendant, ELIZABETH HAZAN, with NLG, LLC receiving credit for all sums so received.

3. Plaintiff, SELECTIVE ADVISORS GROUP, LLC, shall give a credit to Defendant, NLG, LLC, in the sum of $2,746,953.34, which amount includes principal and interest through August 31, 2014 at the 11% judgment amount without prejudice to Defendant establishing at further hearing why the credited amount should be greater.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 08/20/14.

PETER R. LOPEZ
CIRCUIT COURT JUDGE

No Further Judicial Action Required on THIS
MOTION
CLERK TO RECLOSE CASE IF POST
JUDGMENT

# EXHIBIT 7

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter. The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed original order sent electronically to the Clerk of Courts for filing in the Court file.

Copies furnished to:
Mark D. Cohen, Esq.
Megan Wells, Esq.

# EXHIBIT 7

# EXHIBIT "11"

EXHIBIT 7

CFN 2014R0585475
OR Bk 29277 Pgs 4388 - 4394; (7pgs)
RECORDED 08/20/2014 15:34:59
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

# DOCUMENT COVER PAGE

For those documents not providing the _required_
space on the first page, this cover page must be attached.

It must describe the document in sufficient detail to
prohibit its transference to another document.

An additional recording fee for this page must be remitted.

(Space above this line reserved for recording office use)

**Document Title:** Satisfaction of Judgement
(Mortgage, Deed, Construction Lien, Etc.)

**Executing Party:** _____

_____

**Legal Description:** _____
(If Applicable)

As more fully described in above described document.

**Return Document To / Prepared By:**

_____

_____

_____

---

**F.S. 695.26 Requirements for recording instruments affecting real property—**

### (Relevant excerpts of statute)

(1) No instrument by which the title to real property or any interest therein is
conveyed, assigned, encumbered, or otherwise disposed of shall be recorded by the
clerk of the circuit court unless:

(e) A 3-inch by 3-inch space at the top right-hand corner on the first page
and a 1-inch by 3-inch space at the top right-hand corner on each subsequent page
are reserved for use by the clerk of the court ..

CVR-CVR 156 Rev. 04/11



EXHIBIT 7

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO: 07-19532 CA (11)

NLG, LLC, a Delaware Limited
Liability Company,
    Plaintiff,

vs.

ELIZABETH HAZAN,
    Defendant.

_____/

## SATISFACTION OF JUDGMENT

KNOW ALL MEN BY THESE PRESENTS that SELECTIVE ADVISORS GROUP, LLC, a

Delaware Limited Liability Company, as Assignee of NLG, LLC's judgment against Elizabeth Hazan in

this action, pursuant to the Court Order dated August 20, 2014 in case number 14-10475 CA(10) of the

Circuit Court of the 11th Judicial Circuit in and For Miami-Dade County, Florida, said judicial assignment

being recorded on August 20, 2014 in Official Records Book 29277 Pages 3289-3292 Document

number 2014R0563040 of the public records of Miami-Dade County, Florida, the Judgment-Assignee in

the above action, wherein a judgment was entered in the original amount of $1,618,071.29 against the

Defendant, ELIZABETH HAZAN, said judgment being recorded in the minutes of said court and a copy

thereof having been recorded on May 2, 2008 in Official Records Document Number 20080361591

Book 26357 Pages 3948-3949 of the public records of Miami-Dade County, Florida, and re-recorded on

June 2, 2008 at Book Number 26406, Pages 3259-3260, Document Number 2008R0446831 of the

public records of Miami-Dade County, Florida, does hereby acknowledge full payment and satisfaction

thereof and hereby consents that the same shall be satisfied of record.

Witness our hand and seal this 20th day of August 2014.

By: _____
SELECTIVE ADVISORS GROUP, LLC
AS PLAINTIFF NLG LLC'S JUDGMENT ASSIGNEE
Sean Neil Meehan, Manager

**EXHIBIT 7**

STATE OF FLORIDA )
                        : SS
COUNTY OF Miami Dade )

ON THIS DAY, before me, an officer duly authorized to administer oaths and take acknowledgments in the County and State aforesaid, personally appeared SEAN NEIL MEEHAN, a manager and duly authorized agent of SELECTIVE ADVISORS GROUP, LLC as Assignee of NLG,LLC's judgment against Elizabeth Hazan, who is personally known to me or who has produced her drivers' license as identification and who did take an oath. His wh

WITNESS my hand and official seal at Miami, County of Dade, Florida, on this 20th day of August 2014.

NOTARY PUBLIC

My commission expires: 01-25-17

WALDO LAURENCIO
Notary Public - State of Florida
My Comm. Expires Jan 25, 2017
Commission # EE 840728
Bonded Through National Notary Assn.

EXHIBIT

# EXHIBIT "12"

EXHIBIT 7

CFN 2014R0585096
Bk Pg 29278 Pgs 3967 - 3973; (7pgs)
RECORDED 08/21/2014 11:05:01
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

## DOCUMENT COVER PAGE

For those documents not providing the <u>required</u>
space on the first page, this cover page must be attached.

It must describe the document in sufficient detail to
prohibit its transference to another document.

An additional recording fee for this page must be remitted.

*(Space above this line reserved for recording office use)*

**Document Title:** <u>Satisfaction of Mortgage</u>
(Mortgage, Deed, Construction Lien, Etc.)

**Executing Party:**

**Legal Description:**
(If Applicable)

As more fully described in above described document.

**Return Document To / Prepared By:**

---

**F.S. 695.26 Requirements for recording instruments affecting real property—**

**(Relevant excerpts of statute)**

(1) No instrument by which the title to real property or any interest therein is
conveyed, assigned, encumbered, or otherwise disposed of shall be recorded by the
clerk of the circuit court unless:

(e) A 3-inch by 3-inch space at the top right-hand corner on the first page
and a 1-inch by 3-inch space at the top right-hand corner on each subsequent page
are reserved for use by the clerk of the court...



CLK/CT 155 Rev. 04/11

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

NLG,LLC, a Delaware Limited
Liability Company
          Plaintiff,

GENERAL JURISDICTION DIVISION

CASE NO: 02-19532 CA(11)

Vs.

SATISFACTION OF
MORTGAGE

ELIZABETH HAZAN,
          Defendant.

_____/

## SATISFACTION OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that SELECTIVE ADVISORS GROUP, LLC, a Delaware Limited Liability Company, as Assignee of NLG, LLC's Judgment and All Rights, Claims and Benefits against Elizabeth Hazan in this action, pursuant to the Court Order dated August 20, 2014 in Case number 14-10475 CA(10) of the Circuit Court of the 11th Judicial Circuit in and For Miami-Dade County, Florida, and attached herein, said judicial judgment and All Rights, Claims and Benefits assignment being recorded on August 20, 2014 in Official Book 29277 Pages 3289-3292 Document number 2014R0583040 of the Public records of Miami-Dade County, Florida, the judgment and All Rights, Claims and Benefits Assignee, wherein a Promissory Note and Mortgage in the face amount of $1,275,000.00 were dated March 8, 2007, signed by ELIZABETH HAZAN in the Favor of NLG,LLC and being recorded in the minutes of said court and a copy thereof having been recorded on April 24, 2007 in Official Records Document number CFN2007R0410013 Books 25559 Page 4266-4272 of the public records of Miami-Dade County, Florida, of the public records of Miami-Dade County, Florida, does hereby acknowledge full payment of the Promissory Note and mortgage and satisfaction thereof and hereby consents that the same shall be satisfied of record.

**EXHIBIT 7**

Witness our hand and seal this 21th day of August 2014.

By: _____

SELECTIVE ADVISORS GROUP, LLC
Judgment-All Rights,Claims and Benefits Assignee
Sean Neil Meehan, Manager

STATE OF FLORIDA
COUNTY OF _____ : SS
Miami-Dade

ON THIS DAY, before me, an officer duly authorized to administer oaths and take acknowledgments in the County and State aforesaid, personally appeared SEAN NEIL MEEHAN, a manager and duly authorized agent of SELECTIVE ADVISORS GROUP,LLC as PLAINTIFF NLG, LLC's Assignee who is personally known to me or who has produced his drivers' license as identification and who did take an oath.

WITNESS my hand and official seal at Miami , County of Dade , Florida, on this 21 th day of August 2014.

_____
NOTARY PUBLIC

My commission expires:

LINDA M. LALANI
Notary Public - State of Florida
My Comm. Expires Dec 2, 2016
Commission # EE 865068

**EXHIBIT 7**

CFN 2014R0626102
OR Bk 29301 Pgs 4526 - 4532 (7pgs)
RECORDED 09/09/2014 11:59:08
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

# DOCUMENT COVER PAGE

For those documents not providing the required
space on the first page, this cover page must be attached.

It must describe the document in sufficient detail to
prohibit its transference to another document.

An additional recording fee for this page must be remitted.

(Space above this line reserved for recording office use)

Document Title: _Satisfaction of Mortgage_
(Mortgage, Deed, Construction Lien, Etc.)

Executing Party:

Legal Description:
(If Applicable)

As more fully described in above described document.

Return Document To / Prepared By:

---

F.S. 695.26 Requirements for recording instruments affecting real property—

(Relevant excerpts of statute)

(1) No instrument by which the title to real property or any interest therein is
conveyed, assigned, encumbered, or otherwise disposed of shall be recorded by the
clerk of the circuit court unless:

(e) A 3-inch by 3-inch space at the top right-hand corner on the first page
and a 1-inch by 3 inch space at the top right-hand corner on each subsequent page
are reserved for use by the clerk of the court..



CLK/CT 555 Rev. 04/11

EXHIBIT 7

## SATISFACTION OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that SELECTIVE ADVISORS GROUP, LLC, a Delaware Limited Liability Company, as Assignee of NLG, LLC's Judgment, Mortgage, Promissory note and All Rights, Claims and Benefits against Elizabeth Hazan, pursuant to the Court Order dated August 20, 2014 in Case 14-10475 CA (10) of the Circuit Court of the 11th judicial Circuit in and For Miami-Dade County, Florida, and attached herein, said judicial judgment, promissory note, mortgage and All Rights, Claims and Benefits assignment being recorded on August 20, 2014 in Official Book 2977 Pages 3289-3292 Document number 2014R0583040 of the Public records of Miami-Dade county, Florida, wherein a Promissory note and Mortgage in the face amount of $1,275,000, signed by ELIZABETH HAZAN in the favor of NLG, LLC and being recorded in the minutes of said court and a copy thereof having been recorded in the minutes of said court and a copy of the said thereof having being recorded on April 24, 2007 in Official Records Document number CFN2007R0410013 Books 25559 Pages 4266-4272 of the public records of Miami-Dade County, Florida and satisfaction thereof and hereby consents shall be satisfied of record.

The undersigned owner(s) and holder(s) of a mortgage (and of the indebtedness secured by it) made by Elizabeth Hazan of 6913 Valencia Drive, Fisher Island, Florida 33109, to NLG, LLC, a Delaware Limited Liability Company with the address of 854 Pheasant Run Road, Westchester, PA 19382 securing the sum of One million Two Hundred Seventy Five Thousand ($1,275,000.00) Dollars on the 8th day of March 2007, which was recorded on April 24, 2007 in Official Records Document number 2007R0410013 Books 25559 Pages 4266-4272 of the public records of Miami-Dade County, Florida, of the public records of Miami-Dade County, Florida, of the Public Records of Miami-Dade County, Florida, covering the real property described below:

FOLIO NUMBER: 30-4209-016-0070, LOT 7, BLOCK 2, OF LINDISFARNE ON FISHER ISLAND    SECTION 10, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 157, AT PAGE 64 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA, which has the address of 6913 Valencia Drive, Fisher Island, Florida 33109.

The undersigned does hereby acknowledge full payment of the promissory Note and mortgage by Elizabeth Hazan of 6913 Valencia Drive, Miami FL 33109 and satisfaction thereof and hereby consents that the same shall be satisfied of record.

This document is being executed by Sean Neil Meehan as Manager of SELECTIVE ADVISORS GROUP, LLC Assignee and successor of interest of NLG,LLC's judgment, promissory note, mortgage and All NLG, LLC's rights, Benefits, Claims and rights against Elizabeth Hazan pursuant to the Court Order attached herein Court dated August 20, 2014.

The Undersigned acknowledges that the above-described indebtedness has been paid, and by this instrument cancel the above-described mortgage and the Promissory Note accompanying said Mortgage.

EXHIBIT 7

Witness our hand and seal this 21th day of August 2014.

By: _____
SELECTIVE ADVISORS GROUP, LLC
Judgment-All Rights,Claims and Benefits Assignee
Sean Neil Meehan, Manager

STATE OF FLORIDA )
                 ) SS
COUNTY OF _____ )
        Miami Dade

ON THIS DAY, before me, an officer duly authorized to administer oaths and take acknowledgments in the County and State aforesaid, personally appeared SEAN NEIL MEEHAN, a manager and duly authorized agent of SELECTIVE ADVISORS GROUP,LLC as _____ NLG, LLC's Assignee who is personally known to me or who has produced his drivers' license as identification and who did take an oath.

WITNESS my hand and official seal at _____, County of _____, Florida, on this 21 th day of August, 2014.

_____
NOTARY PUBLIC

My commission expires.

LINDA M. LALANI
Notary Public - State of Florida
My Comm. Expires Dec 2, 2016
Commission # EE 855058

EXHIBIT 7

# EXHIBIT "13"

EXHIBIT 7

## Judgment Lien Detail

Processed Thru 01/06/2015

To determine if a writ of execution on a final judgment was docketed with a sheriff prior to October 1, 2001, view the filing image.

### Filing Information

Document Number        J08000007853        View image in PDF format

| | |
|---|---|
| Status | TERMINATED |
| Case Number | 07-19532 CA 11 |
| Name of Court | 11 JUD CIR MIAMI DADE CTY |
| File Date | 05/27/2008 |
| Date of Entry | 04/28/2008 |
| Expiration Date | 05/27/2013 |
| Amount Due | $1618071.29 |
| Interest Rate | 11.00 % |

### Name And Address of Judgment Creditor (Plaintiff)

SELECTIVE ADVISORS GROUP, LLC
MARK D. COHEN
4000 HOLLYWOOD BLVD, SUITE 435 SO
HOLLYWOOD, FL 33021

### Name And Address of Judgment Debtor(s) (Defendant(s))

HAZAN , ELIZABETH
6913 VALENCIA DRIVE
FISHER ISLAND, FL 33109

### Events

| Document Number | Event Type | Date | |
|---|---|---|---|
| J14000385264 | Termination | 08/22/2014 | View image in PDF format |
| J14000385245 | Assignment | 08/22/2014 | View image in PDF format |

# EXHIBIT 7

EXHIBIT 7

# JUDGMENT LIEN CERTIFICATE

FOR PURPOSES OF FILING A JUDGMENT LIEN, THE FOLLOWING INFORMATION
IS SUBMITTED IN ACCORDANCE WITH s. 55.203, FLORIDA STATUTES.

1. JUDGMENT DEBTOR (DEFENDANT) NAME AS SHOWN ON JUDGMENT, IF AN INDIVIDUAL, IS:

   HAZAN / ELIZABETH
   LAST NAME / FIRST NAME / M.I.

   6913 VALENCIA DRIVE
   MAILING ADDRESS

   FISHER ISLAND / FL / 33109
   CITY / ST / ZIP

2. ADDITIONAL JUDGMENT DEBTOR, IF AN INDIVIDUAL, IS:

   ___ / ___ / ___
   LAST NAME / FIRST NAME / M.I.

   _____
   MAILING ADDRESS

   ___ / ___ / ___
   CITY / ST / ZIP

3. JUDGMENT DEBTOR (DEFENDANT) NAME AS SHOWN ON JUDGMENT, IF A BUSINESS ENTITY, IS:

   _____
   BUSINESS ENTITY NAME

   _____
   MAILING ADDRESS

   ___ / ___ / ___
   CITY / ST / ZIP

4. FEDERAL EMPLOYER IDENTIFICATION NUMBER: _____

5. DEPARTMENT OF STATE DOCUMENT FILE NUMBER: _____
   PLEASE CHECK BOX IF DOCUMENT NUMBER IS NOT APPLICABLE ☐

6. JUDGMENT CREDITOR (PLAINTIFF) NAME AS SHOWN ON JUDGMENT OR CURRENT OWNER OF JUDGMENT, IF ASSIGNED:

   NLG, LLC
   CREDITOR NAME(S)

   854 PHEASANT RUN RD
   MAILING ADDRESS

   WEST CHESTER / PA / 19382
   CITY / ST / ZIP

7. DEPARTMENT OF STATE DOCUMENT FILE NUMBER: _____
   PLEASE CHECK BOX IF DOCUMENT NUMBER IS NOT APPLICABLE ☒

8. OWNER'S ATTORNEY OR AUTHORIZED REPRESENTATIVE: (ACKNOWLEDGMENT OF FILING WILL BE SENT TO THIS ADDRESS):

   CHRISTOPHER DAVID OF DAVID & JOSEPH
   NAME

   1001 BRICKELL BAY DR SUITE 2002
   MAILING ADDRESS

   MIAMI / FL / 33131
   CITY / ST / ZIP

9. AMOUNT DUE ON MONEY JUDGMENT: $1,618,071.29

10. APPLICABLE STATUTORY INTEREST RATE 11%

UNDER PENALTY OF PERJURY, I hereby certify that: (1) The judgment above described has become final and there is no stay of the judgment or its enforcement in effect; (2) All of the information set forth above is true, correct, current and complete; (3) I have not previously filed a Judgment Lien Certificate regarding the above judgment with the Department of State; and, (4) I have complied with all applicable laws in submitting this Judgment Lien Certificate for filing.

_CHRIS KOSACHUK_
SIGNATURE OF OWNER OR AUTHORIZED REPRESENTATIVE

CHRIS KOSACHUK
PRINT NAME

NON-REFUNDABLE PROCESSING FEE:

JUDGMENT LIEN WITH ONE DEBTOR $20.00          EACH ADDITIONAL DEBTOR $5.00
EACH ATTACHED PAGE, IF NECESSARY $5.00         (NO CHARGE FOR CREDITOR AFFIDAVIT)

CERTIFIED COPY REQUESTED $10.00 ☒

Division of Corporations • P.O. Box 6250 • Tallahassee, Fl 32314 • 850-656-7463

CR2E061 (5/05)

---

DO NOT PHOTOCOPY THIS FORM. PRIOR TO USE
BAR CODE MUST BE LEGIBLE.

||||||||||||||

J08900007653
FILED
May 27, 2008 8:00 am
Secretary of State

05-01-2008 90160 051 ****40.00

THIS SPACE FOR USE BY FILING OFFICER

11. NAME OF COURT: 11TH JUDICIAL CIRCUIT
    MIAMI DADE COUNTY

12. CASE NUMBER: 07-17532 CA11

13. DATE OF ENTRY: 04-28-2008
    MONTH DAY YEAR

---

# EXHIBIT 7

# ELECTRONIC JUDGMENT LIEN AMENDMENT STATEMENT

FOR PURPOSES OF FILING AN AMENDMENT TO A FILED JUDGMENT LIEN, THE FOLLOWING INFORMATION IS SUBMITTED IN ACCORDANCE WITH s. 55.206, FLORIDA STATUTES.

JUDGMENT DEBTOR (DEFENDANT) NAME(S) AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

HAZAN, ELIZABETH
6913 VALENCIA DRIVE
FISHER ISLAND, FL 33109

**J14000885268**
**FILED**
**Aug 22, 2014 09:27 A.M.**
**Secretary of State**
MHCAIN

JUDGMENT CREDITOR (PLAINTIFF) NAME AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

NLG, LLC
854 PHEASANT RUN RD
WEST CHESTER, PA 19382
DOS DOCUMENT#: N/A

FILE NUMBER ASSIGNED TO ORIGINAL JUDGMENT LIEN BY DEPARTMENT OF STATE: J08900007853
DATE JUDGMENT LIEN FILED WITH DEPARTMENT OF STATE: 05/27/08

( ) AMENDMENT: The judgment lien bearing the file number indicated above is amended as set forth below.

( ) PARTIAL RELEASE: The judgment lien bearing the file number indicated above has been partially released and the value of the lien remaining unpaid as of the date of this statement is:

(X) ASSIGNMENT: All of the judgment creditor's rights under the judgment lien certificate indicated above have been assigned to the new judgment lienowner whose name and address are listed below.

( ) CONTINUATION: The judgment lien bearing the file number indicated above is for itemized property, a list of which was delivered prior to the lapse of the lien to the sheriff for levy in the county where the property is located. The lien is continued for 90 days after the lapse.

( ) TERMINATION: The judgment creditor no longer claims a lien on the personal property under the judgment lien bearing the number indicated above.

NAME AND ADDRESS OF ASSIGNEE AND/OR AMENDMENT INFORMATION HERE
SELECTIVE ADVISORS GROUP, LLC &.... MARK D COHEN    4000 HOLLYWOOD BLVD SUITE SUITE 435 SOUTH    HOLLYWOOD FL 33021

UNDER PENALTY OF PERJURY, I hereby certify that: (1) All of the information set forth above is true, correct, current and complete; and (2) I have complied with all applicable laws in submitting this Electronic Judgment Lien Amendment Statement for filing.

Electronic Signature of Creditor or Authorized Representative: SEAN NEIL MEEHAN

NAME AND ADDRESS TO WHOM ACKNOWLEDGMENT/CERTIFICATION IS TO BE MAILED:

SEAN NEIL MEEHAN
MRSEANMEEHAN@YAHOO.COM

# EXHIBIT 7

# ELECTRONIC JUDGMENT LIEN AMENDMENT STATEMENT

FOR PURPOSES OF FILING AN AMENDMENT TO A FILED JUDGMENT LIEN, THE FOLLOWING INFORMATION IS SUBMITTED IN ACCORDANCE WITH s. 55.206, FLORIDA STATUTES.

JUDGMENT DEBTOR (DEFENDANT) NAME(S) AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

HAZAN, ELIZABETH
6913 VALENCIA DRIVE
FISHER ISLAND, FL 33109

**J14000885284**
FILED
Aug 22, 2014 09:39 A.M.
Secretary of State
MHCAIN

JUDGMENT CREDITOR (PLAINTIFF) NAME AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

NLG, LLC
854 PHEASANT RUN RD
WEST CHESTER, PA 19382
DOS DOCUMENT#: N/A

FILE NUMBER ASSIGNED TO ORIGINAL JUDGMENT LIEN BY DEPARTMENT OF STATE. J08900007653
DATE JUDGMENT LIEN FILED WITH DEPARTMENT OF STATE: 05/27/08

( ) AMENDMENT:  The judgment lien bearing the file number indicated above is amended as set forth below.

( ) PARTIAL RELEASE:  The judgment lien bearing the file number indicated above has been partially released and the value of the lien remaining unpaid as of the date of this statement is:

( ) ASSIGNMENT:  All of the judgment creditor's rights under the judgment lien certificate indicated above have been assigned to the new judgment lienowner whose name and address are listed below.

( ) CONTINUATION:  The judgment lien bearing the file number indicated above is for itemized property, a list of which was delivered prior to the lapse of the lien to the sheriff for levy in the county where the property is located.  The lien is continued for 90 days after the lapse.

(X) TERMINATION,  The judgment creditor no longer claims a lien on the personal property under the judgment lien bearing the number indicated above.

NAME AND ADDRESS OF ASSIGNEE AND/OR AMENDMENT INFORMATION HERE:

SELECTIVE ADVISORS GROUP, LLC a ... MARK D. COHEN, P.A.    PRESIDENTIAL CIRCLE 4000 HOLLYWOOD BLVD SUITE # 435 SOUTH HOLLYWOOD FL 33021

UNDER PENALTY OF PERJURY, I hereby certify that: (1) All of the information set forth above is true, correct, current and complete; and (2) I have complied with all applicable laws in submitting this Electronic Judgment Lien Amendment Statement for filing.

Electronic Signature of Creditor or Authorized Representative: SEAN NEIL MEEHAN

NAME AND ADDRESS TO WHOM ACKNOWLEDGMENT/CERTIFICATION IS TO BE MAILED:

SEAN NEIL MEEHAN
MRSEANMEEHAN@YAHOO.COM

# EXHIBIT 7

## Judgment Lien Detail

Processed Thru 01/06/2015

To determine if a writ of execution on a final judgment was docketed with a sheriff prior to October 1, 2001, view the filing image.

## Filing Information

Document Number   J13001162651   [ View image in PDF format ]

| | |
|---|---|
| Status | TERMINATED |
| Case Number | 07-19532 CA 11 |
| Name of Court | 11 JUD CIR MIAMI DADE CTY |
| File Date | 07/01/2013 |
| Date of Entry | 04/28/2008 |
| Expiration Date | 07/01/2018 |
| Original Document | J08900007653 |
| Amount Remaining | $5,843,709.54 |
| Interest Rate | 24.00 % |

## Name And Address of Judgment Creditor (Plaintiff)

SELECTIVE ADVISORS GROUP, LLC
MARK D. COHEN, PA
PRESIDENTIAL CIR, SUITE #4000
HOLLYWOOD, FL 33021

## Name And Address of Judgment Debtor(s) (Defendant(s))

HAZAN , ELIZABETH
6913 VALENCIA DRIVE
FISHER ISLAND, FL 33109

## Events

| Document Number | Event Type | Date | |
|---|---|---|---|
| | Termination | 08/22/2014 | View image in PDF format |
| | Assignment | 08/22/2014 | View image in PDF format |
| | Amendment | 08/19/2014 | View image in PDF format |

# EXHIBIT 7

Previous on List    Next on List    Return to List

Debtor Name Search

Submit

EXHIBIT 7

# ELECTRONIC SECOND JUDGMENT LIEN CERTIFICATE

FOR PURPOSES OF FILING A SECOND JUDGMENT LIEN, THE FOLLOWING INFORMATION IS SUBMITTED IN ACCORDANCE WITH s. 55.204, FLORIDA STATUTES. THIS SECOND JUDGMENT LIEN IS A NEW LIEN AND NOT A CONTINUATION OF THE ORIGINAL LIEN.

FILE NUMBER ASSIGNED TO THE RECORD OF THE ORIGINAL JUDGMENT LIEN CERTIFICATE: J08900007653
DATE FILED WITH DEPARTMENT OF STATE: 05/27/08
JUDGMENT DEBTOR (DEFENDANT) NAME(S) AS SHOWN ON JUDGMENT LIEN:

    HAZAN, ELIZABETH
    6913 VALENCIA DRIVE
    FISHER ISLAND, FL 33109

                              **J13001162651**
                              **FILED**
                              Jul 01, 2013 10:29 A.M.
                              Secretary of State
                              MHCAIN

JUDGMENT CREDITOR (PLAINTIFF) NAME AS SHOWN ON JUDGMENT LIEN OR CURRENT OWNER OF JUDGMENT IF ASSIGNED:

    NLG, LLC
    854 PHEASANT RUN ROAD
    WEST CHESTER, PA 19382
    DOS DOCUMENT#: N/A

NAME AND ADDRESS TO WHOM ACKNOWLEDGMENT/CERTIFICATION IS TO BE MAILED:

    CHRIS KOSACHUK
    CHRISKOSACHUK@GMAIL.COM

MONEY AMOUNT REMAINING UNPAID: 3,749,569.51
INTEREST RATE: 24.00%
INTEREST ACCRUED AMOUNT: 2,011,905.41
NAME OF COURT: 11 JUD CIR MIAMI DADE CTY
CASE NUMBER: 07-19532 CA 11
DATE OF ENTRY: 04/28/08

UNDER PENALTY OF PERJURY, I hereby certify that: (1) The judgment above described has become final and there is no stay of the judgment or its enforcement in effect; (2) All of the information set forth above is true, correct, current and complete; (3) I have complied with all applicable laws in submitting this Electronic Second Judgment Lien Certificate for filing.

Electronic Signature of Creditor or Authorized Representative: CHRIS KOSACHUK

# EXHIBIT 7

# ELECTRONIC JUDGMENT LIEN AMENDMENT STATEMENT

FOR PURPOSES OF FILING AN AMENDMENT TO A FILED JUDGMENT LIEN, THE FOLLOWING INFORMATION IS SUBMITTED IN ACCORDANCE WITH s. 55.206, FLORIDA STATUTES.

JUDGMENT DEBTOR (DEFENDANT) NAME(S) AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

HAZAN, ELIZABETH
6913 VALENCIA DRIVE
FISHER ISLAND, FL 33109

**J14000883396**
**FILED**
Aug 19, 2014 11:01 A.M.
Secretary of State
MHCAIN

JUDGMENT CREDITOR (PLAINTIFF) NAME AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

NLG, LLC
854 PHEASANT RUN ROAD
WEST CHESTER, PA 19382
OOS DOCUMENT# N/A

FILE NUMBER ASSIGNED TO ORIGINAL JUDGMENT LIEN BY DEPARTMENT OF STATE: J12001162851
DATE JUDGMENT LIEN FILED WITH DEPARTMENT OF STATE: 07/01/13

(X) AMENDMENT: The judgment lien bearing the file number indicated above is amended as set forth below.

( ) PARTIAL RELEASE: The judgment lien bearing the file number indicated above has been partially released and the value of the lien remaining unpaid as of the date of this statement is:

( ) ASSIGNMENT: All of the judgment creditor's rights under the judgment lien certificate indicated above have been assigned to the new judgment lienowner whose name and address are listed below.

( ) CONTINUATION: The judgment lien bearing the file number indicated above is for itemized property, a list of which was delivered prior to the lapse of the lien to the sheriff for levy in the county where the property is located. The lien is continued for 90 days after the lapse

( ) TERMINATION: The judgment creditor no longer claims a lien on the personal property under the judgment lien bearing the number indicated above

NAME AND ADDRESS OF ASSIGNEE AND/OR AMENDMENT INFORMATION HERE:

The judgment amount remaining as of July 1, 2013 is amended to $5,843,709.64.

UNDER PENALTY OF PERJURY, I hereby certify that: (1) All of the information set forth above is true, correct, current and complete; and (2) I have complied with all applicable laws in submitting this Electronic Judgment Lien Amendment Statement for filing.

Electronic Signature of Creditor or Authorized Representative: CHRIS KOSACHUK

NAME AND ADDRESS TO WHOM ACKNOWLEDGMENT/CERTIFICATION IS TO BE MAILED

CHRIS KOSACHUK
CHRISKOSACHUK@GMAIL.COM

# EXHIBIT 7

# ELECTRONIC JUDGMENT LIEN AMENDMENT STATEMENT

FOR PURPOSES OF FILING AN AMENDMENT TO A FILED JUDGMENT LIEN, THE FOLLOWING INFORMATION IS SUBMITTED IN ACCORDANCE WITH s. 55.205, FLORIDA STATUTES.

JUDGMENT DEBTOR (DEFENDANT) NAME(S) AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

    HAZAN, ELIZABETH
    6913 VALENCIA DRIVE
    FISHER ISLAND, FL 33109

**J14000885250**
**FILED**
**Aug 22, 2014 09:14 A.M.**
**Secretary of State**
MHCAIN

JUDGMENT CREDITOR (PLAINTIFF) NAME AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

    NLG, LLC
    554 PHEASANT RUN ROAD
    WEST CHESTER, PA 19382
    DOS DOCUMENT#: N/A

FILE NUMBER ASSIGNED TO ORIGINAL JUDGMENT LIEN BY DEPARTMENT OF STATE: J13001162691
DATE JUDGMENT LIEN FILED WITH DEPARTMENT OF STATE: 07/01/13

( ) AMENDMENT:     The judgment lien bearing the file number indicated above is amended as set forth below.

( ) PARTIAL RELEASE:  The judgment lien bearing the file number indicated above has been partially released and the value of the lien remaining unpaid as of the date of this statement is:

(X) ASSIGNMENT:    All of the judgment creditor's rights under the judgment lien certificate indicated above have been assigned to the new judgment lienowner whose name and address are listed below.

( ) CONTINUATION:  The judgment lien bearing the file number indicated above is for itemized property, a list of which was delivered prior to the lapse of the lien to the sheriff for levy in the county where the property is located. The lien is continued for 90 days after the lapse.

( ) TERMINATION:   The judgment creditor no longer claims a lien on the personal property under the judgment lien bearing the number indicated above.

NAME AND ADDRESS OF ASSIGNEE AND/OR AMENDMENT INFORMATION HERE:

    SELECTIVE ADVISORS GROUP, LLC ä.... MARK O COHEN, PA   PRESIDENTIAL CIRCLE SUITE # 4000   HOLLYWOOD FL 33021

UNDER PENALTY OF PERJURY, I hereby certify that: (1) All of the information set forth above is true, correct, current and complete; and (2) I have complied with all applicable laws in submitting this Electronic Judgment Lien Amendment Statement for filing.

Electronic Signature of Creditor or Authorized Representative: SEAN NEIL MEEHAN

NAME AND ADDRESS TO WHOM ACKNOWLEDGMENT/CERTIFICATION IS TO BE MAILED:

    SEAN NEIL MEEHAN
    MRSEANMEEHAN@YAHOO.COM

# EXHIBIT 7

# ELECTRONIC JUDGMENT LIEN AMENDMENT STATEMENT

FOR PURPOSES OF FILING AN AMENDMENT TO A FILED JUDGMENT LIEN, THE FOLLOWING INFORMATION IS SUBMITTED IN ACCORDANCE WITH s. 55.206, FLORIDA STATUTES.

JUDGMENT DEBTOR (DEFENDANT) NAME(S) AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

HAZAN, ELIZABETH
6913 VALENCIA DRIVE
FISHER ISLAND, FL 33109

**J14000885318**
**FILED**
**Aug 22, 2014 09:47 A.M.**
**Secretary of State**
MHCAIN

JUDGMENT CREDITOR (PLAINTIFF) NAME AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

NLG, LLC
354 PHEASANT RUN ROAD
WEST CHESTER, PA 19382
DOS DOCUMENT#: N/A

FILE NUMBER ASSIGNED TO ORIGINAL JUDGMENT LIEN BY DEPARTMENT OF STATE: J13001162651
DATE JUDGMENT LIEN FILED WITH DEPARTMENT OF STATE: 07/01/13

( ) AMENDMENT:     The judgment lien bearing the file number indicated above is amended as set forth below.

( ) PARTIAL RELEASE:  The judgment lien bearing the file number indicated above has been partially released and the value of the lien remaining unpaid as of the date of this statement is:

( ) ASSIGNMENT:     All of the judgment creditor's rights under the judgment lien certificate indicated above have been assigned to the new judgment creditor whose name and address are listed below.

( ) CONTINUATION:   The judgment lien bearing the file number indicated above is for itemized property, a list of which was delivered prior to the lapse of the lien to the sheriff for levy in the county where the property is located.  The lien is continued for 90 days after the lapse.

(X) TERMINATION:    The judgment creditor no longer claims a lien on the personal property under the judgment lien bearing the number indicated above.

NAME AND ADDRESS OF ASSIGNEE AND/OR AMENDMENT INFORMATION HERE:

SELECTIVE ADVISORS GROUP, LLC C/MARK D. COHEN, P.A.   PRESIDENTIAL CIRCLE 4000 HOLLYWOOD BLVD SUITE # 435 SOUTH HOLLYWOOD FL 33021

UNDER PENALTY OF PERJURY, I hereby certify that: (1) All of the information set forth above is true, correct, current and complete; and (2) I have complied with all applicable laws in submitting this Electronic Judgment Lien Amendment Statement for filing.

Electronic Signature of Creditor or Authorized Representative: SEAN NEIL MEEHAN

NAME AND ADDRESS TO WHOM ACKNOWLEDGMENT/CERTIFICATION IS TO BE MAILED.

SEAN NEIL MEEHAN
MRSEANMEEHAN@YAHOO.COM

# EXHIBIT 7

# EXHIBIT "14"

EXHIBIT 7

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION
CASE NO. 14-10475 CA-10

SELECTIVE ADVISORS GROUP LLC

AS ASSIGNEE OF 9197-5904

QUEBEC INC

Plaintiff(s)

vs.

MEG, LLC, A DELAWARE
LTD. COMPANY

Defendant(s).

ORDER
GRANTING/DENYING
PLAINTIFF'S/DEFENDANT'S

MOTION FOR RATIFICATION

THIS CAUSE having come on to be heard on ___Sept 16, 2014___
on Plaintiff's/Defendant's Motion

FOR RATIFICATION, PURSUANT TO FLORIDA RULES 1.530 & RULE FROM CASE
1.540(b) FROM COPY SSTORY & MY POSITION & NOT ASKED JUDGE OF COMPLAINT &
and the Court having heard argument of counsel, and being otherwise advised in the premises, it is
hereupon

ORDERED AND ADJUDGED that said Motion be, and the same is hereby

ARE HEREBY DENIED.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida this ___11th___ day of,

___Sept___, 2014.

[handwritten notes]

CIRCUIT COURT JUDGE
JUDGE PETER R. LOPEZ

Copies furnished to Counsel of Record

EXHIBIT 7

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY, FLORIDA

NLG, LLC
      Plaintiff,

vs.                         CASE NO. 2011-CA-042770-CA-01

ELIZABETH HAZAN, et. al,
      Defendant (s)

_____/

## VERIFIED MEMORANDUM IN OPPOSITION TO PLAINTIFF MOTION FOR ENTRY OF FINAL JUDGMENT

The Defendant, **ELIZABETH HAZAN**, (hereinafter referred to as "Defendant"), by and through his undersigned counsel, hereby file this, her Opposition to the Plaintiff's **NLG, LLC's** (hereinafter referred to as the "Plaintiff") Motion for Entry of Final Judgment and in support thereof says that:

1. The Defendant, Elizabeth Hazan moves for a Dismissal of this action with prejudice and removal of the lis pendens based upon the fact that the subject matter note, mortgage and judgment have been satisfied. Thus, the Plaintiff has no cause of action in this matter.

2. This is an action by the Plaintiff to foreclose on its alleged mortgage on the property located at Lot 7, Block 2, Lindisfarne on Fisher island section 10, according to the Plat, thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County, Florida.

3. Said mortgage was recorded on April 24, 2007 in Book 25559 Page numbers 4266-4272 Document number CFN 2007R0410013.

1

EXHIBIT 8

4. On June 27, 2007, NLG, LLC sued Elizabeth Hazan on the promissory note in Case No. 07-19532 CA 11. On April 28, 2008, NLG, LLC obtained a final default judgment against Defendant for the amount of $1,618,071.29. (See Exhibit "1")

5. Said judgment was recorded by the Clerk of court of Miami-Dade in Book number 26357, Pages 3948-3949, Document number CFN 20080361591.

6. Said judgment was re-recorded on June 2, 2008 in Book number 26406 Pages 3259-3260, Document number CFN 2008R0446831.

7. On June 3, 2008, Elizabeth Hazan sued NLG, LLC and Christopher Kosachuk to quiet title and discharge of its alleged mortgage on her Fisher Island property in Case No. 2008-31657 CA(27). A true and correct copy of the Docket. (See Exhibit "2").

8. Defendant, Elizabeth Hazan and Plaintiff, NLG, LLC entered into a settlement agreement on October 28, 2008 and as a condition to settle, NLG, LLC agreed to waive with prejudice all claims and counterclaims asserted in the complaint case No. 2008-31657 CA (27) and which may have been asserted and the judge Maria Espinoza Dennis entered two orders of dismissal with prejudice. Those dismissals with prejudice forever barred NLG from suing to foreclose on the alleged mortgage of the Fisher island property. Attached is a true and correct copy of the Stipulation of dismissal of the case 2008-31657 CA(27). (See Exhibit "3")

9. A True and correct copies of the orders of dismissals with prejudice of this case entered by Judge Espinoza Dennis are attached( See Exhibit "4").

10. Defendant, Elizabeth Hazan also agreed to dismiss her appeal of the 2008 NLG's judgment with prejudice. Hazan v. NLG, LLC, 3D 08-1402.

2

EXHIBIT 8

11. On December 21, 2011, NLG, LLC sued the Defendant in Case no. 11-42770 CA(11) to foreclose on an alleged mortgage on Defendant's Fisher Island property despite NLG having waived with prejudice all claims and counterclaims asserted and that could have been asserted in the 2008-31657 CA(27) case, including the right to sue for foreclosure. On February 12, 2013, after trial, the Circuit Court issued a judgment in favor of Elizabeth Hazan denying NLG LLC's foreclosure, and dissolved the filed lis pendens and amended Lis Pendens. A true and correct copy of Judge Eig's ruling in favor of Elizabeth Hazan and against NLG, LLC is attached. (See Exhibit "5")

12. On March 11, 2013, NLG, LLC filed an appeal. Plaintiff who was the Appellant raised only one issue on appeal. The issue on appeal presented by the Plaintiff was "whether the trial court erred in denying a mortgage foreclosure subsequent to a final judgment on a breach of the promissory note without satisfaction of payment because of the final judgment on the promissory note".

13. NLG, LLC's alleged principal is a wanted man by each Sheriff of the State of Florida and any law enforcement given an outstanding bodily attachment order for his arrest on a $50,000.00 bond. Attached is a true and correct copy of the bodily attachment order against NLG, LLC's principal Chris Kosachuk arising out of a civil contempt in a matter arising out of a judgment against him personally. (See Exhibit "6")

14. On February 22, 2012, 9197-5904 QUEBEC, INC. ("Quebec") obtained a Judgment against NLG, LLC in the Supreme Court in New York, New York State and domesticated the Judgment in the State of Florida.

3

EXHIBIT 8

15. Thereafter, on April 30, 2014, the Judgment was assigned to SELECTIVE ADVISORS GROUP, LLC a Delaware Limited Liability Company ("Selective"). (See Exhibit "7").

16. After domesticating the Judgment in Florida, NLG, LLC objected to the Judgment and to its assignment. On May 21, 2014, filed a motion seeking a stay and vacate. Thereafter, Honorable Circuit Court Judge Peter Lopez ordered NLG, LLC to post a bond in the amount of $5,500,000.00 should NLG, LLC wish to stay the enforcement of the Judgment, and entered an Order on Same. (See Exhibit "8").

17. After a hearing on the merits of the underlying Judgment in front of Judge Peter R. Lopez, Judge Lopez strongly disagreed. In fact, Judge Lopez's decision dated June 16, 2014, held that "Plaintiff has all rights to enforce and collect this foreign judgment", rejecting NLG LLC's numerous wild claims of collusion. (See Exhibit "9").

18. It appears that Selective continued with its execution efforts in the State of Florida, and moved to have the NLG, LLC judgment as an asset of NLG, LLC assigned to Selective and Selective to provide full credit of said Judgment amount against the outstanding obligation of NLG, LLC.

19. After filing a motion, NLG, LLC opposed. After two hearings on the merits (August 12, 2014 and August 15, 2014), the court entered an order on August 20, 2014. The Order contained findings of fact after the hearing concerning the respective judgments against NLG, LLC and Hazan, as well as making conclusions of law, ordering the following:

4

EXHIBIT 8

a. The Court orders that the Hazan Final Judgment held by NLG, LLC against Elizabeth Hazan, ("Hazan Final Judgment") and all of NLG, LLC's rights, claims and benefits held against ELIZABETH HAZAN are hereby judicially assigned to the Plaintiff Assignee, SELECTIVE ADVISORS GROUP, LLC, a Delaware Limited Liability Company.

b. Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC, shall stand in the shoes of NLG, LLC with respect to all claims, rights, and benefits held by NLG, LLC, so as to entitle it to recover all proceeds attributable to said judgment against additional Defendant, ELIZABETH HAZAN, with NLG, LLC receiving credit for all sums so received.

c. Plaintiff, SELECTIVE ADVISORS GROUP, LLC, shall give a credit to Defendant, NLG, LLC, in the sum of $2,746,953.34, which amount includes principal and interest through August 31, 2014 at the 11% judgment amount without prejudice to Defendant establishing at further hearing why the credited amount should be greater.

(See Exhibit "10"), Order dated August 20, 2014.

5

EXHIBIT 8

20. Selective thereafter entered into a settlement with Hazan and filed a Satisfaction of Judgment and Satisfaction of Mortgage with the Miami-Dade Clerk.

21. As part of the settlement a Satisfaction of Judgment document was recorded with the Clerk of Courts in Miami-Dade, Florida. (See Exhibit "11"). A Satisfaction of Mortgage was filed as well. (See Exhibit "12").

22. Thereafter, Selective filed documents with the Florida Department of State in Tallahassee, Florida to reflect an assignment of the judgment and to remove any judgment liens against Hazan by NLG, LLC. (See Exhibit "13") Exhibit "13" is a true and correct copy of the "Judgment Lien Document" showing, first assignment, then termination of the judgment liens. There exist two of each as apparently, NLG, LLC filed two judgment liens upon the same judgment. A judgment lien detail shows the judgment liens as "satisfied".[1]

23. Selective credited the entire value of Hazan's debt to NLG, LLC to reduce its $5,000,210.00 judgment against NLG, LLC (not including statutory interest). Attached is an amendment and partial release of the Selective's judgment Lien against NLG, LLC with the Florida Department of State in Tallahassee, FL after giving NLG, LLC the credit for NLG's entire value of its judgment against Elizabeth Hazan.

---

[1]On August 20, 2014, the Clerk of Miami-Dade County recorded the satisfaction of NLG's judgment against Elizabeth Hazan document number CFN 2014R0583475 Book number 29277 pages number 4388-4394. A satisfaction of mortgage was recorded in Document CFN2014R0585096 Book number 29278 Pages number 3967-3973 on August 21, 2014. A second corrective satisfaction of mortgage was recorded on September 9, 2014 in Document number CFN2014R0626102 Book number 29301 Pages number 4526-4532. On August 22, 2014, The Florida Department of State, Division of Corporations recorded the assignment of NLG, LLC's judgment liens against Elizabeth Hazan to Selective Advisors Group, LLC and the termination of NLG's liens against Hazan. This was done in full satisfaction of Elizabeth Hazan before this appellate Court had rendered its non-final opinion on September 3, 2014.

EXHIBIT 8

24. NLG, LLC moved for rehearing on August 29, 2014. After a hearing on the merits on September 16, 2014, Honorable Judge Peter R. Lopez denied all relief to NLG, LLC. The August 20, 2014, order eventually terminating, and extinguishing all of NLG, LLC's judgment, claims, rights, and benefits against Elizabeth Hazan, was never appealed and remains final. (See Exhibit "14").

25. NLG, LLC lost all of its interest in Hazan's judgment and purported mortgage after oral arguments were heard by the third district court of appeals, but before the appellate court rendered its non final written opinion on September 3, 2014. The record demonstrates that the "issue on appeal" is moot as the NLG, LLC's judgment and purported mortgage have been satisfied after settlement. The controversy has been so fully resolved and NLG's motion for judgment is moot and without basis in law or fact.

### MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION

Elizabeth Hazan and Selective had an absolute right to settle the matter amongst themselves as Selective stood in the shoes of all of NLG LLC's rights as against Hazan. While the parties are generally required to notify the court of a settlement, this must be done by filing a "Stipulation of Dismissal". Since NLG LLC's rights were judicially assigned to Selective to offset NLG, LLC's $5,000,210.00 debt (without interest) to Selective, NLG, LLC would not sign a stipulation of dismissal, and Selective is not a party to action or the appellate case and could not have signed a Stipulation of Dismissal. The record with the Miami-Dade Clerk of Courts reflects that the underlying judgment and mortgage are satisfied.

Both parties' counsels had "an obligation . . . to notify the court of any

7

EXHIBIT 8

development that may conceivably affect the outcome of the litigation, including facts that may raise a question of mootness." Merkle, 912 So. 2d at 600. The rule derives from bar members' duty of candor to the court. See R. Regulating Fla. Bar 4-3.3. Moreover, it is the undersigned's duty to now advise this Court of the matter being moot as NLG, LLC has lost all of its interest in the judgment or mortgage against Hazan on August 20, 2014, and that the NLG judgment and mortgage have been satisfied after settlement, before the Appeals Court issued its opinion.

Given that the judgment and mortgage have been satisfied, "the controversy has been so fully resolved that a judicial determination can have no actual effect". Godwin, 593 So. 2d at 212. Given NLG, LLC's loss of any interest in Hazan's obligations, this Court is without judicial power as such power cannot extend to non-justiciable controversies. Ervin, 66 So. 2d at 236. This action is moot as NLG, LLC has no mortgage on which to foreclose nor a money judgment against Hazan on which to collect.

Not only should the Court deny the Plaintiff's Motion for Entry of Final Judgment, but this Court should dismiss the action by NLG, LLC because NLG, LLC has no standing to maintain this action. Foreclosing mortgagor's "submission of a post-filing assignment of the note[2] does not establish that it had standing when it filed the lawsuit." Focht v. Wells Fargo Bank, N.A., 124 So.3d 308 (Fla. 2d DCA 2013)(citations omitted). A foreclosing mortgagor must show that it acquired the right to enforce the note before it filed suit. See Gonzalez v. Deutsche Bank Nat'l Trust Co., 95 So.3d 251, 253–54 (Fla. 2d

---

[2] Case law focuses on standing to enforce the note, as opposed to the mortgage, because the mortgage generally passes as an incident to the debt. Cutler v. U.S. Bank Nat'l Ass'n, 109 So.3d 224, 225 (Fla. 2d DCA 2012).

EXHIBIT 8

DCA 2012); <u>Venture Holdings & Acquisitions Group, LLC v. A.I.M. Funding Group,</u> <u>LLC</u>, 75 So.3d 773, 776 (Fla. 4th DCA 2011). "To satisfy the requirement of standing, the plaintiff must show that a case or controversy exists between the plaintiff and the defendant, and that such case or controversy continues from the commencement through the existence of the litigation." <u>See</u> <u>Ferreiro v. Phila. Indem. Ins. Co.</u>, 928 So.2d 374, 377 (Fla. 3d DCA 2006); <u>see also</u> <u>Collins v. Gov't Emp. Ins. Co.</u>, 922 So.2d 353, 353 (Fla. 3d DCA 2006).

There is no dispute that the August 20, 2014 Order of Judge Peter R. Lopez assigned all of NLG LLC's rights against Hazan to Selective. (See Exhibit "11"). Neither is there a dispute that the judgment and mortgage had been satisfied by Selective after settling with Hazan by virtue of the Satisfactions attached hereto as Exhibit "12", Exhibit "13" and Exhibit "14" respectively.

As such, NLG has no standing to pursue this matter. As such, this Court should deny the Motion for Final Judgment and dismiss this action with prejudice.

WHEREFORE, Defendant, Elizabeth Hazan respectfully moves this Honorable Court for an Order denying the Motion for Entry of Final Judgment and dismissing this action with prejudice for lack of jurisdiction on the above-mentioned grounds and award any other entitlement that this Court deems appropriate.

9

EXHIBIT 8

FURTHER AFFIANT SAYETH NOT.

_____
ELIZABETH HAZAN

SWORN TO AND SUBSCRIBED that the foregoing instrument was acknowledged before me this ____ day of _____, 2015, by **ELIZABETH HAZAN**, who is personally known to me or produced _____ as identification.

JOE ROSS
Notary Public - State of Florida
My Comm. Expires Mar 1, 2018
Commission # FF 088415

_____
Notary Public, State at Large
My Commission Expires: _____

10

# EXHIBIT 8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via

email to Juan Ramirez, Jr., Esq. at Diaz Reus & Targ, LLC, jramirez@diazreus.com on

this 15th day of January 2015.

The Law Office of Ray Garcia, P.A.
14850 SW 26 Street, Suite 204
Miami, Florida 33185
Telephone: (305) 227-4030
Facsimile: (305) 223-9811
service@raygarcialaw.com


By: _____
Ray Garcia, Esq.
FBN: 115850
Melanie Klaskala, Esq.
FBN: 109502

EXHIBIT 8

# EXHIBIT "1"

EXHIBIT 8

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY, FLORIDA

### GENERAL JURISDICTION DIVISION

### CASE NO.: 07-19532 CA 11

NLG, LLC, a Delaware Limited Liability Company,

    Plaintiff,

v.

ELIZABETH HAZAN,

    Defendant.

_____

## DEFAULT FINAL JUDGMENT

    This Action was considered based upon a Motion for Default Final Judgment based upon a breach of the Parties February 9, 2008 Settlement Agreement. Based upon the Settlement Agreement, the Motion for Default Final Judgment and the Affidavit of Default of Settlement Agreement filed by the Plaintiff,

    *IT IS ADJUDGED THAT:*

    1.    The Plaintiff, NLG, LLC, 854 Pheasant Run Road, West Chester, PA, 19382, shall recover from Defendant, Elizabeth Hazan whose address is 6913 Valencia Drive, Fisher Island, Florida 33109, the sum of $1,574,371.07 that shall bear interest at the rate of 11 percent per annum until paid, for which sum let execution issue.

    2.    The Plaintiff, NLG, LLC, is the prevailing party in this action and is therefore awarded an entitlement to recover reasonable attorney's fees and court costs incurred in connection with this matter against the Defendant Elizabeth Hazan pursuant to the Promissory Note that forms

1

EXHIBIT 8

the subject matter of this action. The Court reserves jurisdiction over the subject matter of this action to adjudicate the amount of reasonable attorney's fees and court costs to be awarded to the Plaintiff, NLG, LLC.

3.     The Defendant, Elizabeth Hazan, whose address is 6913 Valencia Drive, Fisher Island, Florida 33109, shall take nothing by this action and shall go hence without day.

DONE AND ORDERED in Chambers at Miami Dade County, Florida this ____ day of February, 2008.

FEB 1 1 2008

_____
CIRCUIT COURT JUDGE

Robert N. Scola, Jr.
Circuit Court Judge

Conformed copies to:

    Christopher M. David, Esq.
    Michael W. Simon, Esq.

2

EXHIBIT 8

# EXHIBIT "2"

EXHIBIT 8



🛒 0 Item(s) in Basket          **Home**   **Online Services**   **About us**   **Contact us**

# Civil Court Online System - Docket Information

BACK TO SEARCH RESULTS          ALL PARTIES          START A NEW SEARCH
**HAZAN, ELIZABETH vs KOSACHUK, CHRISTOPHER**
\* Click on BOOK/PAGE of a particular docket to see the image if it is available \*

**Case Number (LOCAL):** 2008-31657-CA-01   **Dockets Retrieved:** 16   **Filing Date:** 06/04/2008
**Case Number (STATE):** 13-2008-CA-031657-0000-01   **Judicial Section:** 27

| Date | Book/Page | Docket Entry | Comments |
|---|---|---|---|
| 05/19/2011 | | NOTICE OF CHANGE OF ADDRESS | |
| 11/19/2008 | 26664 / 4819 Pages: 1 | RECORDED DOCUMENT | BK:26664 PG:4819 STIPULATION |
| 11/19/2008 | 26664 / 4800 Pages: 1 | COURT ORDER | BK:26664 PG:4800 OF DISMISSAL OF COMPLAINT WITH PREJUDICE |
| 11/13/2008 | 26655 / 3913 Pages: 1 | ORDER OF DISMISSAL | BK:26655 PG:3913 DN01 DN02 |
| 10/07/2008 | | NOTICE OF HRG SPECIAL APPT | 11/05/2008 03:20 PM |
| 08/20/2008 | | NOTICE OF DEFAULT NOT ENTERED | DN02 E |
| 07/11/2008 | | SERVICE RETURNED | BADGE # 1028 P 07/08/2008 DN01 |
| 07/08/2008 | | MOTION FOR DEFAULT | |
| 07/08/2008 | | NOTICE OF HEARING- | MOTIONS 07/16/2008 09:30 AM |
| 07/08/2008 | | MOTION TO DISMISS | CHRISTOPHER KOSACHUK |
| 06/30/2008 | | NOTICE OF APPEARANCE | ATTORNEY: 00985163 DN01 |
| 06/23/2008 | | SERVICE RETURNED | BADGE # 555 P 06/09/2008 DN02 |
| 06/04/2008 | | DEMAND FOR JURY TRIAL | |
| 06/04/2008 | | CIVIL COVER | |
| 06/04/2008 | | COMPLAINT | |
| 06/04/2008 | | SUMMONS ISSUED | DN01 DN02 |

BACK TO SEARCH RESULTS          ALL PARTIES          START A NEW SEARCH

Civil Search Home | Civil Court Information | Email | Login
Home | Privacy Statement | Disclaimer | Contact Us | About Us   
2008 Clerk of the Court. All Rights reserved.

S0142976

**EXHIBIT 8**
https://www2.miami-dadeclerk.com/civil/Search.aspx          1/12/2015

# EXHIBIT "3"

EXHIBIT 8

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

ELIZABETH HAZAN,

    Plaintiff,

v.                            CASE NO. 2008-31657-CA-01 (27)

CHRISTOPHER KOSACHUK, and
NLG, LLC, a Delaware limited liability
Company,

    Defendants.
_____/

## STIPULATION AND ORDER FOR DISMISSAL OF COMPLAINT WITH PREJUDICE

Plaintiff, **ELIZABETH HAZAN**, and Defendants, **CHRISTOPHER KOSACHUK and NLG, LLC**, by and through their respective undersigned counsel, hereby stipulate to the dismissal, with prejudice, of all claims and any counterclaims asserted or which may have been asserted in this action between these parties, with each party to bear their own attorney's fees and costs.

Dated: October 29, 2008.          Dated: October 29, 2008.

SIMON, SIGALOS & SPYREDES, P.A.    DAVID AND JOSEPH, P.L.
Attorneys for Plaintiff              Attorneys for Defendant
3839 NW Boca Raton Blvd., Suite 100    1001 Brickell Bay Drive, Suite 2002
Boca Raton, FL 33431             Miami, Florida 33131
Tel: (561) 447-0017               Tel: 786-364-7990

By: _____    By: _____
Michael W. Simon Esq.             Christopher M. David
Florida Bar No.: 776394          Florida Bar No.: 985163

EXHIBIT 8

# EXHIBIT "4"

EXHIBIT 8

odis
1 – 2

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

ELIZABETH HAZAN,
        Plaintiff,

v.                                          CASE NO. 2008-31657-CA-01 (27)

CHRISTOPHER KOSACHUK, and
NLG, LLC, a Delaware limited liability
Company,
        Defendants.
_____/

## ORDER OF DISMISSAL OF COMPLAINT WITH PREJUDICE

THIS MATTER having come on before the court upon the Stipulation for

Dismissal with Prejudice of the Complaint and Counterclaim, the court having reviewed

the stipulation, and being otherwise duly advised in the premises, hereby

ORDERS and ADJUDGES that the stipulation is hereby approved and this action,

including all claims or counterclaims asserted or which may have been asserted, is hereby

dismissed, with prejudice, with each party to bear its own attorney's fees and costs.

DONE and ORDERED in Chambers in Miami, Florida, this 4 day of

Nov. , 2008.

                                        _____
                                        Circuit Court Judge
                                        Maria Espinosa Dennis
                                        Circuit Court Judge

Copies furnished to :
Michael W. Simon, Esq., 3839 NW Boca Raton Blvd, Suite 100, Boca Raton, Florida 33431
Christopher M. David, Esq. 1001 Brickell Bay Drive, Suite 2002, Miami, Florida 33131
Y:\Client\Hazan\adv. NLG\w. Kosachuk\Pleadings\Stipulation for Dismissal with Prejudice.doc

2

EXHIBIT 8

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

ELIZABETH HAZAN,
　　　Plaintiff,

v.　　　　　　　　　　　　　　　　CASE NO. 2008-31657-CA-01 (27)

CHRISTOPHER KOSACHUK, and
NLG, LLC, a Delaware limited liability
Company,
　　　Defendants.　　　　　　　　　　/

## ORDER OF DISMISSAL OF COMPLAINT WITH PREJUDICE

THIS MATTER having come on before the court upon the Stipulation for
Dismissal with Prejudice of the Complaint and Counterclaim, the court having reviewed
the stipulation, and being otherwise duly advised in the premises, hereby

ORDERS and ADJUDGES that the stipulation is hereby approved and this action,
including all claims or counterclaims asserted or which may have been asserted, is hereby
dismissed, with prejudice, with each party to bear its own attorney's fees and costs.

DONE and ORDERED in Chambers in Miami, Florida, this _6_ day of
_Nov._, 2008.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　Circuit Court Judge

　　　　　　　　　　　　　　　　　MARIA ESPINOSA DENNIS
　　　　　　　　　　　　　　　　　CIRCUIT COURT JUDGE

Copies furnished to :
Michael W. Simon, Esq., 3839 NW Boca Raton Blvd, Suite 100, Boca Raton, Florida 33431
Christopher M. David, Esq. 1001 Brickell Bay Drive, Suite 2002, Miami, Florida 33131
Y:\Clients\Hazan\adv. NLG\v. Kosachuk\Pleadings\Stipulation for Dismissal with Prejudice.doc

2

EXHIBIT 8

# EXHIBIT "5"

EXHIBIT 8

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA

Case Number: 11-42770-CA-02

NLG, LLC. A Delaware
limited liability company

                    Plaintiff(s),

vs.

Elizabeth Hazan,

                    Defendant(s),
_____

FINAL ORDERS AS TO ALL PARTIES
OR DISPOSITION
NUMBER _____ 
THE COURT DISMISSES THIS CASE AGAINST
ANY PARTY NOT LISTED IN THIS FINAL ORDER
OR PREVIOUS ORDERS, SO THIS CASE IS CLOSED
AS TO ALL PARTIES.
          Judge's Initials ____

## FINAL JUDGMENT FOR DEFENDANT, ELIZABETH HAZAN

This cause came to be heard for non-jury trial before this Honorable Court on December 26 and 27, 2012, on Plaintiff's Verified Complaint to Foreclose Mortgage; upon the argument of counsel, the pleadings on file, the answers and affirmative defenses of the Defendants; the testimony of witnesses called by the Plaintiff and Defendants; exhibits introduced into evidence; and the court being otherwise fully advised in the premises, the court hereby rules in favor of the Defendant, ELIZABETH HAZAN.

In addition, the Court finds as follows:

A.      The bench ruling expressed orally by the Honorable Judge Spencer Eig during the hearing held on January 2, 2013 in this matter, attached hereto as Exhibit "A", is hereby incorporated and adopted in its entirety into this Final Judgment as though set forth herein.

B.  The Court has jurisdiction over the parties and subject matter of this action and service of process has been properly obtained over the Defendants.

C. The sole count of Plaintiff's Verified Complaint was to foreclose a mortgage dated March 8, 2007, as to the following real property, to wit:

EXHIBIT 8

Lot 7, Block 2, of LINDISFARNE ON FISHER
ISLAND SECTION 10, according to the Plat
thereof, as recorded in Plat Book 157, at
Page 64 of the Public Records of Miami-Dade
County, Florida, Folio Number 30-4209-016-0070,
a/k/a 6913 Valencia Drive, Fisher Island, Florida 33109.

1. In accordance with Rule 1.420(f), Florida Rules of Civil Procedure, any and all notices of lis pendens in this action by Plaintiff, NLG, LLC, including, but not limited to, the first notice of lis pendens recorded December 23, 2011, in Official Records book 27940, at Pages 2791-2792, amended notice of lis pendens dated June 15, 2012, if Official Records Book 28150, at Pages 4850, and a lis pendens recorded December 20, 2012 in Official Records Book 28409, at Pages 2080-2081, of the Public Records of Miami-Dade County, Florida are hereby discharged and dissolved at time of entry of final judgment.

2. The court reserves jurisdiction to award attorney's fees and costs, to make the determination as to the amount of reasonable attorney's fees, including a hearing to determine the amount of reasonable attorney's fees, should the parties be unable to agree and further reserves jurisdiction to enter such other and further relief as is appropriate in order to enforce this court's determination and/or award of costs and attorney's fees.

DONE AND ORDERED in Chambers at Miami, Miami-Dade County, Florida, this _____ day of January, 2013.

THE HONORABLE SPENCER EIG
CIRCUIT JUDGE

SPENCER EIG
CIRCUIT COURT JUDGE

Copies Furnished to:

Rafael Recalde, Esquire
Attorney for Plaintiff
3250 NE 1 Avenue Suite 314
Miami, FL. 33137
Rafael@recaldelaw.com

NLG, LLC, Plaintiff
854 Pheasant Run Road
West Chester, PA 19382

EXHIBIT 8

# EXHIBIT "6"

EXHIBIT 8

[ ] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
[ ] IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| DIVISION | |
|---|---|
| [X] CIVIL | **CIVIL WRIT OF BODILY ATTACHMENT** |
| [ ] OTHER | (Writ to Apprehend a Person) |

| PLAINTIFF(S)/ PETITIONER(S) | DEFENDANT(S)/ RESPONDENT(S) |
|---|---|
| 9197-5904 QUEBEC INC | CHRIS KOSACHUK and NLG, LLC |

CASE NUMBER: 07-8365 CA 01 (13)

## TO EACH SHERIFF OF THE STATE OF FLORIDA:

You are hereby commanded to take into your custody:
CHRIS KOSACHUK                                                  and

[X] Place him/her in the Miami-Dade County Jail until such time as (s)he may be brought before Judge TRAWICK located at:
73 WEST FLAGLER STREET, ROOM DDC1001, MIAMI, FL 33130

[ ] Bring him/her before Judge _____ located at _____

Instanter, for the following reason(s):

[ ] To answer the Defendant(s)/Respondent(s) failure to appear at a hearing for contempt on: _____, 20 _____, of which

Defendant/Respondent was noticed: _____

and/or    **FAILURE TO COMPLY WITH COURT ORDERS**

CLOCK IN FILED FOR RECORD
14 MAY 15 PM 5 06
CLERK COUNTY CTS
MIAMI DADE
CIVIL FLA

## DIRECTIONS TO SHERIFF

This Writ shall be promptly served and executed between the hours of 8:00 a.m. and 3:00 p.m., Monday through Friday (legal holidays excluded), ~~and shall expire and terminate if not served sixty (60) days from the date of this Order.~~ In rare instances when the Defendant/Respondent is taken into custody during normal Court hours but cannot, after diligent effort be brought before a Judge on the same date this Writ is served, said Defendant/Respondent may be confined in the Miami-Dade County Jail until the earliest possible time that he can be brought before the Court. However, Defendant/Respondent may secure release pursuant to the conditions specified below. (Check appropriate box). This Writ shall not expire or be terminated pursuant to order attached

[X] Defendant/Respondent may be released upon the posting of a bond in the amount of $ $50,000.00

(SPECIFY OTHER CONDITIONS OF RECOGNIZANCE)

[ ] There is reason to believe that Defendant/Respondent is not subject to attachment during the above hours. Accordingly, the Defendant/Respondent may be taken into custody at such time as he is located and apprehended and may be confined in the Miami-Dade County Jail until the earliest possible time that Respondent/Defendant can be brought before aforesaid Judge, or, in his absence, before any of the other Judges of the CIRCUIT Court, for the reasons specified herein. However, the Respondent/Defendant may secure release pursuant to the foregoing conditions. Upon execution of this Writ, the sheriff shall promptly notify, by telephone, the following:

# EXHIBIT 8

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR DADE COUNTY, FLORIDA.
IN THE COUNTY COURT IN AND FOR DADE COUNTY, FLORIDA.

| ...ION | | CASE NUMBER |
| CIVIL | CIVIL WRIT OF BODILY ATTACHMENT | 07-8365-CA-01 (13) |
| OTHER | (Writ to Apprehend a Person) | |

IFORMATION TO BE COMPLETED BY COUNSEL

me address of Defendant/Respondent

165 N. HIBISCUS DRIVE, MAIMI BEACH, FL 33139 *

ork address of Defendant/Respondent

| lephone # | | Race | Sex | DOB | SS# | | Eyes |
| 305.490.5700 | | W | M | 12/11/72 | | | B |

| ir | Height | Weight | Nicknames | | |
| B | 5' 9" | 170 | | | |



Ordered in Dade County, Florida on the
day of MAY 20 14

_____
COURT JUDGE

Name: Arthur R. Rosenberg
Address: 6499 N. Powerline Rd Suit 304
Telephone Ft. Lauderdale, FL 33309
954.772.5151

* Such other locations he may be found

EXHIBIT 8

# EXHIBIT "7"

EXHIBIT 8

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY FLORIDA

9197-5904 QUEBEC INC

        Plaintiff,

           -against-

NLG, LLC

               Defendant,

CASE No.: 14-10475CA10



### Assignment of Judgment

In exchange for Ten Dollars ($10.00) and other valuable consideration received, receipt of which is acknowledged, I, 9197-5904 Quebec, Inc., a foreign corporation, located at 5552 Queen Mary Road suite #4 Hampstead, Quebec, H3X IV9, Canada ("Assignor"), assigns to Selective Advisors Group, LLC , of Delaware, ("Assignee"), located at 16192 Coastal Highway Lewes, DE 19958 County of Sussex, all of Assignor's rights, entitlements, title, interests, and remedies in and to that certain judgment entered in NYC Supreme Court on February 22nd 2012 index number 101875-2012 and which Judgment was recorded on April 21, 2014 in Miami-Dade County, State of Florida , under case number 2014-10475-CA-01,

Assignor represents and warrants that the Judgment is unsatisfied and it has not been assigned, transferred, hypothecated in whole or in part to any other party outside of this Assignment.

This assignment is without recourse, and Assignor does not guarantee payment of the judgment assigned. However, Assignor does agree that it will not release or discharge this judgment, and that in the event any payment under the judgment is made to it, it will promptly transmit it to Assignee.

Dated: *04 / 30 / 2014*

Assignor
9197-5904 Quebec, Inc.

By: _____
      RAYMOND HOULE, President

# EXHIBIT 8

## ACKNOWLEDGMENT

Province de Québec

STATE OF )

comté d'Arcy McGee )ss

COUNTY OF )

On the 30th day of April 2014 before me personally appeared RAYMOND HOULE to be known and known to me to be the individual described in and who executed the foregoing Assignment of Judgment, and who duly acknowledged to me that he executed the same.

In Witness Thereof The Assignors Set Their Hand And Seal the day and year first written above:

Assignor:9197-5904 Quebec, Inc

By: RAYMOND HOULE, President          Witness:

Notary Public:

The foregoing instrument was acknowledged before me this 30 day of April 2014 by Raymond Houle, President of 9197-5904 Quebec, Inc, who is personally known to me or who presented _driver license_ as identification, and who did execute the aforesaid Assignment of Judgment.

AFFIRMATION SOLENNELLE
SOLEMN AFFIRMATION
Signée à Montréal
Signed at Montreal
DATE: 30/04/2014

PIERRETTE TARDIF
Commissaire à l'assermentation
Commissioner of Oaths
No. 198836

# EXHIBIT 8

# EXHIBIT "8"

EXHIBIT 8

IN THE CIRCUIT COURT OF THE
11ᵗʰ JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

SECTION: 10
CASE NO: _14 - 10475_ CA ( 10 )

SELECTIVE ADVISORS GROUP, LLC
AS ASSIGNEE OF 9197-5704 QUEBEC
                Plaintiff(s),

                                        ORDER
                                GRANTING/DENYING
                                PLAINTIFF'S/DEFENDANT'S

vs.

NLG, LLC
                Defendant(s).

_____/

THIS CAUSE having come on to be heard on _PLAINTIFF'S EMERGENCY MOTION_
on Plaintiff's/Defendant's Motion

_TO STRIKE MT TO QUASH NODECU, MT TO STRIKE LIS PENDENS &_
_MT TO POST BOND._
and the Court having heard argument of counsel, and being otherwise advised in the premises, it is
hereupon

ORDERED AND ADJUDGED that said Motion be, and the same is hereby

GRANTED IN PART & DENIED IN PART. THE MT TO POST BOND
IS GRANTED & DEFENDANT SHALL POST A BOND IN THE
AMT OF ONE HUNDRED & NINE ( 1.09 % ) PER CENT OF THE
FACE VALUE OF THE RECORDED JUDGMENT, I.E
5,450,100 ( FIVE MILLION FOUR HUNDRED FIFTY THOUSAND DOLLARS.
THE REMAINING PORTIONS OF THE MT IS DENIED W/O PREJUDICE TO RENEW
AS ARFIRMATIVE DEFENSES IF NECESSARY. A STATUS CONFERENCE IS SCHEDULED FOR

DONE AND ORDERED in Chambers at Miami-Dade County, Florida this _____ day of
_____, 2014.

ON JUNE 16, 2014 AT NINE O'CLOCK (9:00 AM)

                                        CIRCUIT COURT JUDGE
                                        JUDGE PETER R. LOPEZ

WELLS - 96546
CONLUS - 347345

Copies furnished to: Counsel of Record

**EXHIBIT 8**

# EXHIBIT "9"

EXHIBIT 8

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

SECTION: 10
CASE NO: 14-10435 CA 10

SELECTIVE ADVISORS GROUP, LLC

AS ASSIGNEE

           Plaintiff(s),

                                       ORDER
                                GRANTING/DENYING
vs.                                PLAINTIFF'S/DEFENDANT'S

N L G LLC

           Defendant(s).

        THIS CAUSE having come on to be heard on _____ JUNE 16, 2014 _____
on Plaintiff's/Defendant's Motion

THE COURTS STATUS CONFERENCE PURSUANT TO ITS
ORDER DATED JUNE 3, 2014
and the Court having heard argument of counsel, and being otherwise advised in the premises, it is
hereupon

                           AS FOLLOWS:
        ORDERED AND ADJUDGED that said Motion be, and the same is hereby

(1) THE D ADVISED NO BOND WAS POSTED + THEREFOR THE
COURT STATE DENIES S. NLG'S MT TO QUAY NOTICE
OF FILING OF FOREIGN JUDGMENT BY CONFESSION +
FURTHER STRIKE & DISMISS NLG LLC' NOTICE
OF LIS PENDENS DATED MAY 14, 2014 DEALING FOREIGN
FOREIGN JUDGS IN THIS ACTION. PLAINTIFF HAS ALL RIGHTS
TO ENFORCE THIS FOREIGN JUDGMENT.
        DONE AND ORDERED in Chambers at Miami-Dade County, Florida this 16 day of

June _____, 2014.

                                              JUDGE
# two courts
copies furnished to
M. Wells
M. Carlen
Copies furnished to: Counsel of Record
                          CIRCUIT COURT JUDGE
                          JUDGE PETER R. LOPEZ

# EXHIBIT 8

# EXHIBIT "10"

EXHIBIT 8

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 14-10475 CA (10)

SELECTIVE ADVISORS GROUP, LLC,
AS ASSIGNEE OF 9197-5904
QUEBEC, INC.,

      Plaintiff,

vs.

NLG, LLC, a Delaware Limited
Liability Company,

      Defendant,

and

ELIZABETH HAZAN

      Additional Defendant.

_____/

## ORDER GRANTING
## PLAINTIFF'S MOTION FOR PROCEEDINGS SUPPLEMENTARY
## AND FOR ORDER IMPLEADING THIRD PARTY

THIS CAUSE having come on for hearing on August 12, 2014, and August 15,

2014, on the Plaintiff's Motion for Proceedings Supplementary, etc., and the court

having examined the court file, including the unrebutted affidavit filed on behalf of the

Plaintiff on July 2, 2014, having taken judicial notice of the judgments and lien

certificates referenced below, and having heard arguments of counsel, makes the

following finds of fact and conclusions of law:

### FINDINGS OF FACT

1. On April 28, 2008, a default final judgment was entered under Case No. 07-

19532-CA-11 in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade

County, Florida, in favor of NLG, LLC, and against ELIZABETH HAZAN in the amount

of $1,618,071.29, plus interest at the statutory rate of 11 percent per annum. ("Hazan

[illegible diagonal clerk stamp]

# EXHIBIT 8

Final Judgment"). The judgment was recorded on May 2, 2008 at Book Number 26357, Pages 3948-3949, Document Number 20080361591 and re-recorded on June 2, 2008 at Book Number 26406, Pages 3259-3260, Document Number 2008R0446831.

2. A judgment lien certificate evidencing said judgment was filed with the Florida Secretary of State on May 27, 2008, under document filing number J08900007653.

3. A second judgment lien certificate evidencing said judgment was filed with the Florida Secretary of State on July 1, 2013, under document filing number J13001162651. The "money amount remaining unpaid" listed on the second judgment lien certificate is $3,749,569.51. Said amount seems to be based on an interest rate of 24 percent instead of the 11 percent judgment rate.

4. On February 22, 2012, 9197-5904 QUEBEC, INC., a foreign corporation, obtained a judgment against the Defendant, NLG, LLC, a Delaware Limited Liability Company, in New York State Supreme Court, County of New York, index number 101875-2012. Said judgment was domesticated and recorded on April 21, 2014, in Miami-Dade County, State of Florida, under the above-stated case number. Document number 2014R0298781, Book number 29124, pages 4766-4772.

5. On April 30, 2014, the subject judgment was assigned to the Plaintiff by 9197-5904 QUEBEC, INC., requiring the Defendant to pay the Plaintiff the sum of $5,000,225.00, plus statutory interest. The assignment was recorded at Book Number 29137, Pages 3128-3131, Document Number 2014R0322571.

6. A judgment lien certificate evidencing said judgment was filed with the Florida Secretary of State on June 16, 2014, under document filing number J14000718030.

7. The Plaintiff is entitled to step in the shoes of NLG, LLC with respect to the claims, rights, and benefits held by NLG, LLC, so as to be entitled to recover all proceeds attributable to the Hazan Final Judgment against ELIZABETH HAZAN, with

# EXHIBIT 8

NLG, LLC receiving a credit for all sums so received.

8. The execution is valid and remains outstanding.

## CONCLUSIONS OF LAW

1. The Court orders that the Hazan Final Judgment held by NLG, LLC against ELIZABETH HAZAN, ("Hazan Final Judgment") and all of NLG, LLC's rights, claims and benefits held against ELIZABETH HAZAN are hereby judicially assigned to the Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC, a Delaware Limited Liability Company.

2. Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC, shall stand in the shoes of NLG, LLC with respect to all claims, rights, and benefits held by NLG, LLC, so as to entitle it to recover all proceeds attributable to said judgment against additional Defendant, ELIZABETH HAZAN, with NLG, LLC receiving credit for all sums so received.

3. Plaintiff, SELECTIVE ADVISORS GROUP, LLC, shall give a credit to Defendant, NLG, LLC, in the sum of $2,746,953.34, which amount includes principal and interest through August 31, 2014 at the 11% judgment amount without prejudice to Defendant establishing at further hearing why the credited amount should be greater.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 08/20/14.

PETER R. LOPEZ
CIRCUIT COURT JUDGE

No Further Judicial Action Required on THIS MOTION
CLERK TO RECLOSE CASE IF POST JUDGMENT

# EXHIBIT 8

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter. The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed original order sent electronically to the Clerk of Courts for filing in the Court file.

Copies furnished to:
Mark D. Cohen, Esq.
Megan Wells, Esq.

# EXHIBIT 8

# EXHIBIT "11"

EXHIBIT 8

## DOCUMENT COVER PAGE

For those documents not providing the **required** space on the first page, this cover page must be attached.

It must describe the document in sufficient detail to prohibit its transference to another document.

An additional recording fee for this page must be remitted.

CFN 2014R0583475
OR BK 29277 Pgs 4388 - 4394; (7pgs)
RECORDED 08/20/2014 13:34:59
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

*(Space above this line reserved for recording office use)*

**Document Title:** Satisfaction of Judgement
(Mortgage, Deed, Construction Lien, Etc.)

**Executing Party:** _____

_____

_____

**Legal Description:** _____
(If Applicable)

_____

As more fully described in above described document.

**Return Document To / Prepared By:**

_____

_____

_____

---

**F.S. 695.26 Requirements for recording instruments affecting real property—**

**(Relevant excerpts of statute)**

(1) No instrument by which the title to real property or any interest therein is conveyed, assigned, encumbered, or otherwise disposed of shall be recorded by the clerk of the circuit court unless:

(e) A 3-inch by 3-inch space at the top right-hand corner on the first page and a 1-inch by 3-inch space at the top right-hand corner on each subsequent page are reserved for use by the clerk of the court..

---

CLK/CT 155 Rev. 04/11



# EXHIBIT 8

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO: 07-19532 CA (11)

NLG, LLC, a Delaware Limited
Liability Company,
     Plaintiff,

vs.

ELIZABETH HAZAN,
     Defendant.

_____/

## SATISFACTION OF JUDGMENT

KNOW ALL MEN BY THESE PRESENTS that SELECTIVE ADVISORS GROUP, LLC, a
Delaware Limited Liability Company, as Assignee of NLG, LLC's judgment against Elizabeth Hazan in
this action, pursuant to the Court Order dated August 20, 2014 in case number 14-10475 CA(10) of the
Circuit Court of the 11th Judicial Circuit in and For Miami-Dade County, Florida, said judicial assignment
being recorded on August 20, 2014 in Official Records Book 29277 Pages 3289-3292 **Document
number 2014R0583040** of the public records of Miami-Dade County, Florida, the Judgment-Assignee in
the above action, wherein a judgment was entered in the original amount of $1,618,071.29 against the
Defendant, ELIZABETH HAZAN, said judgment being recorded in the minutes of said court and a copy
thereof having been recorded on May 2, 2008 in Official Records **Document Number 20080361591
Book 26357 Pages 3948-3949** of the public records of Miami-Dade County, **Florida**, and re-recorded on
June 2, 2008 at **Book Number 26406, Pages 3259-3260, Document Number 2008R0446831** of the
public records of Miami-Dade County, Florida, does hereby acknowledge full payment and satisfaction
thereof and hereby consents that the same shall be satisfied of record.

Witness our hand and seal this 20th day of August 2014.

By: _____
SELECTIVE ADVISORS GROUP, LLC
As PLAINTIFF NLG LLC'S JUDGMENT ASSIGNEE
Sean Neil Meehan, Manager

STATE OF FLORIDA )
: SS
COUNTY OF Miami Dade )

ON THIS DAY, before me, an officer duly authorized to administer oaths and take acknowledgments in the County and State aforesaid, personally appeared SEAN NEIL MEEHAN, a manager and duly authorized agent of SELECTIVE ADVISORS GROUP, LLC as Assignee of NLG,LLC's judgment against Elizabeth Hazan, who is personally known to me or who has produced her drivers' license as identification and who did take an oath.

WITNESS my hand and official seal at Miami , County of Dade , Florida, on this 20th day of August 2014.

NOTARY PUBLIC

My commission expires: 01-25-17

WALDO LAURENCIO
Notary Public - State of Florida
My Comm. Expires Jan 25, 2017
Commission # EE 840276
Bonded Through National Notary Assn.

EXHIBIT 8

# EXHIBIT "12"

EXHIBIT 8

CFN 2014R0585096
OR Bk 29278 Pgs 3967 - 3973 (7pgs)
RECORDED 08/21/2014 11:00:01
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

## DOCUMENT COVER PAGE

For those documents not providing the **required** space on the first page, this cover page must be attached.

It must describe the document in sufficient detail to prohibit its transference to another document.

An additional recording fee for this page must be remitted.

(Space above this line reserved for recording office use)

**Document Title:** _Satisfaction of Mortgage_
(Mortgage, Deed, Construction Lien, Etc.)

**Executing Party:** _____

_____

**Legal Description:** _____
(If Applicable)

As more fully described in above described document.

**Return Document To / Prepared By:** _____

_____

_____

---

**F.S. 695.26 Requirements for recording instruments affecting real property—**

**(Relevant excerpts of statute)**

(1) No instrument by which the title to real property or any interest therein is conveyed, assigned, encumbered, or otherwise disposed of shall be recorded by the clerk of the circuit court unless:

(e) **A 3-inch by 3-inch space at the top right-hand corner on the first page** and a 1-inch by 3-inch space at the top right-hand corner on each subsequent page are reserved for use by the clerk of the court...



CLK/CT 166 Rev. 04/11

# EXHIBIT 8

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

NLG,LLC, a Delaware Limited
Liability Company
     Plaintiff,

CASE NO: 07-19532 CA(11)

Vs.

## SATISFACTION OF MORTGAGE

ELIZABETH HAZAN,
    Defendant.
_____/

## SATISFACTION OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that SELECTIVE ADVISORS GROUP, LLC, a Delaware Limited Liability Company, as Assignee of NLG, LLC's Judgment and All Rights, Claims and Benefits against Elizabeth Hazan in this action, pursuant to the Court Order dated August 20, 2014 in Case number 14-10475 CA(10) of the Circuit Court of the 11th Judicial Circuit in and For Miami-Dade County, Florida, and attached herein, said judicial judgment and All Rights, Claims and Benefits assignment being recorded on August 20, 2014 in Official Book 29277 Pages 3289-3292 Document number 2014R0583040 of the Public records of Miami-Dade County, Florida, the judgment and All Rights, Claims and Benefits Assignee, wherein a Promissory Note and Mortgage in the face amount of $1,275,000.00 were dated March 8, 2007, signed by ELIZABETH HAZAN in the Favor of NLG,LLC and being recorded in the minutes of said court and a copy thereof having been recorded on April 24, 2007 in Official Records Document number CFN2007R0410013 Books 25559 Page 4266-4272 of the public records of Miami-Dade County, Florida, of the public records of Miami-Dade County, Florida, does hereby acknowledge full payment of the Promissory Note and mortgage and satisfaction thereof and hereby consents that the same shall be satisfied of record.

**EXHIBIT 8**

Witness our hand and seal this 21th day of August 2014.

By: 

SELECTIVE ADVISORS GROUP, LLC
Judgment-All Rights, Claims and Benefits Assignee
Sean Neil Meehan, Manager

STATE OF FLORIDA
: SS
COUNTY OF ~~XXX~~ Miami-Dade

ON THIS DAY, before me, an officer duly authorized to administer oaths and take acknowledgments in the County and State aforesaid, personally appeared SEAN NEIL MEEHAN, a manager and duly authorized agent of SELECTIVE ADVISORS GROUP,LLC as PLAINTIFF NLG, LLC's Assignee who is personally known to me or who has produced his drivers' license as identification and who did take an oath.

WITNESS my hand and official seal at Miami , County of Dade , Florida, on this 21th day of August 2014.

NOTARY PUBLIC

My commission expires:

LINDA M. LALANI
Notary Public - State of Florida
My Comm. Expires Dec 2, 2016
Commission # EE 855056

EXHIBIT 8

██ ║█║█║█║█║█║█║█║█║█║█║█║█║█║█║█║██

CFN 2014R0626102
OR BK 29301 Pgs 4526 - 4532 (7pgs)
RECORDED 09/09/2014 11:30:08
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

# DOCUMENT COVER PAGE

For those documents not providing the **required**
space on the first page, this cover page must be attached.

It must describe the document in sufficient detail to
prohibit its transference to another document.

An additional recording fee for this page must be remitted.

(Space above this line reserved for recording office use)

**Document Title:** _Satisfaction of Mortgage_
(Mortgage, Deed, Construction Lien, Etc.)

**Executing Party:** _____

_____

**Legal Description:** _____
(If Applicable)

As more fully described in above described document.

**Return Document To / Prepared By:** _____

_____

_____

---

**F.S. 695.26 Requirements for recording instruments affecting real property—**

**(Relevant excerpts of statute)**

(1) No instrument by which the title to real property or any interest therein is
conveyed, assigned, encumbered, or otherwise disposed of shall be recorded by the
clerk of the circuit court unless:

(e) A 3-inch by 3-inch space at the top right-hand corner on the first page
and a 1-inch by 3-inch space at the top right-hand corner on each subsequent page
are reserved for use by the clerk of the court...

CLKCT/155 Rev. 04/11

# EXHIBIT 8

## SATISFACTION OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that SELECTIVE ADVISORS GROUP, LLC, a Delaware Limited Liability Company, as Assignee of NLG, LLC's Judgment, Mortgage, Promissory note and All Rights, Claims and Benefits against Elizabeth Hazan, pursuant to the Court Order dated August 20, 2014 in Case 14-10475 CA (10) of the Circuit Court of the 11th judicial Circuit in and and For Miami-Dade County, Florida, and attached herein, said judicial judgment, promissory note, mortgage and All Rights, Claims and Benefits assignment being recorded on August 20, 2014 in Official Book 2977 Pages 3289-3292 Document number 2014R0583040 of the Public records of Miami-Dade county, Florida, wherein a Promissory note and Mortgage in the face amount of $1,275,000 were dated March 8, 2007, signed by ELIZABETH HAZAN in the favor of NLG, LLC and being recorded in the minutes of said court and a copy thereof having been recorded in the minutes of said court and a copy of the said thereof having being recorded on April 24, 2007 in Official Records Document number CFN2007R0410013 Books 25559 Pages 4266-4272 of the public records of Miami-Dade County, Florida and satisfaction thereof and hereby consents shall be satisfied of record.

The undersigned owner(s) and holder(s) of a mortgage (and of the indebtedness secured by it) made by Elizabeth Hazan of 6913 Valencia Drive, Fisher Island, Florida 33109, to NLG, LLC, a Delaware Limited Liability Company with the address of 854 Pheasant Run Road, Westchester, PA 19382 securing the sum of **One million Two Hundred Seventy Five Thousand** ($1,275,000.00) Dollars on the 8th day of March 2007, which was recorded on April 24, 2007 in Official Records **Document number 2007R0410013 Books 25559 Pages 4266-4272** of the public records of Miami-Dade County, Florida, of the public records of Miami-Dade County, Florida, of the Public Records of Miami-Dade County, Florida, covering the real property described below:

**FOLIO NUMBER: 30-4209-016-0070, LOT 7, BLOCK 2, OF LINDISFARNE ON FISHER ISLAND     SECTION 10, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 157, AT PAGE 64 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.** which has the address of 6913 Valencia Drive, Fisher Island, Florida 33109.

The undersigned does hereby acknowledge full payment of the promissory Note and mortgage by Elizabeth Hazan of 6913 Valencia Drive, Miami FL 33109 and satisfaction thereof and hereby consents that the same shall be satisfied of record.

This document is being executed by Sean Neil Meehan as Manager of SELECTIVE ADVISORS GROUP, LLC Assignee and successor of interest of NLG,LLC's judgment, promissory note, mortgage and All NLG, LLC's rights, Benefits, Claims and rights against Elizabeth Hazan pursuant to the Court Order attached herein Court dated August 20, 2014.

The Undersigned acknowledges that the above-described indebtedness has been paid, and by this instrument cancel the above-described mortgage and the Promissory Note accompanying said Mortgage.

EXHIBIT 8

Witness our hand and seal this 21th day of August 2014.

By: _____

SELECTIVE ADVISORS GROUP, LLC
Judgment-All Rights,Claims and Benefits Assignee
Sean Neil Meehan, Manager

STATE OF FLORIDA _____ )
                              ) SS
COUNTY OF _____ )
              Miami Dade

ON THIS DAY, before me, an officer duly authorized to administer oaths and take acknowledgments in the County and State aforesaid, personally appeared SEAN NEIL MEEHAN, a manager and duly authorized agent of SELECTIVE ADVISORS GROUP,LLC as          NLG, LLC's Assignee who is personally known to me or who has produced his drivers' license as identification and who did take an oath.

WITNESS my hand and official seal at Miami , County of Dade , Florida, on this 21 th day of August 2014.



NOTARY PUBLIC

My commission expires.

LINDA M. LALANI
Notary Public - State of Florida
My Comm. Expires Dec 2, 2016
Commission # EE 855058

# EXHIBIT "13"

EXHIBIT 8

# FLORIDA DEPARTMENT OF STATE
# DIVISION OF CORPORATIONS

www.sunbiz.org


| Home | Contact Us | E-Filing Services | Document Searches | Forms | Help |
| --- | --- | --- | --- | --- | --- |

Previous on List   Next on List   Return to List        Debtor Name Search

Submit

## Judgment Lien Detail

**Processed Thru 01/06/2015**

To determine if a writ of execution on a final judgment was docketed with a sheriff prior to October 1, 2001, view the filing image.

### Filing Information

**Document Number**    J08000007653   View image in PDF format

| | |
| --- | --- |
| Status | TERMINATED |
| Case Number | 07-19532 CA 11 |
| Name of Court | 11 JUD CIR MIAMI DADE CTY |
| File Date | 05/27/2008 |
| Date of Entry | 04/28/2008 |
| Expiration Date | 05/27/2013 |
| Amount Due | $1618071.29 |
| Interest Rate | 11.00 % |

### Name And Address of Judgment Creditor (Plaintiff)

SELECTIVE ADVISORS GROUP, LLC
MARK D. COHEN
4000 HOLLYWOOD BLVD, SUITE 435 SO
HOLLYWOOD, FL 33021

### Name And Address of Judgment Debtor(s) (Defendant(s))

HAZAN , ELIZABETH
6913 VALENCIA DRIVE
FISHER ISLAND, FL 33109

### Events

| Document Number | Event Type | Date | |
| --- | --- | --- | --- |
| J14000285234 | Termination | 08/22/2014 | View image in PDF format |
| J14000285258 | Assignment | 08/22/2014 | View image in PDF format |

# EXHIBIT 8

EXHIBIT 8

## JUDGMENT LIEN CERTIFICATE

DO NOT PHOTOCOPY THIS FORM PRIOR TO USE.
BAR CODE MUST BE LEGIBLE.

FOR PURPOSES OF FILING A JUDGMENT LIEN, THE FOLLOWING INFORMATION
IS SUBMITTED IN ACCORDANCE WITH s. 55.203, FLORIDA STATUTES.

1. JUDGMENT DEBTOR (DEFENDANT) NAME AS SHOWN ON JUDGMENT, IF AN INDIVIDUAL, IS:

   HAZAN    ELIZABETH
   LAST NAME   FIRST NAME   M.I.

   6913 VALENCIA DRIVE
   MAILING ADDRESS

   FISHER ISLAND    FL    33109
   CITY    ST    ZIP

2. ADDITIONAL JUDGMENT DEBTOR, IF AN INDIVIDUAL, IS:

   LAST NAME    FIRST NAME    M.I.

   MAILING ADDRESS

   CITY    ST    ZIP

3. JUDGMENT DEBTOR (DEFENDANT) NAME AS SHOWN ON JUDGMENT, IF A BUSINESS ENTITY, IS:

   BUSINESS ENTITY NAME

   MAILING ADDRESS

   CITY    ST    ZIP

4. FEDERAL EMPLOYER IDENTIFICATION NUMBER:

5. DEPARTMENT OF STATE DOCUMENT FILE NUMBER:

   PLEASE CHECK BOX IF DOCUMENT NUMBER IS NOT APPLICABLE ☐

6. JUDGMENT CREDITOR (PLAINTIFF) NAME AS SHOWN ON JUDGMENT OR CURRENT OWNER OF JUDGMENT, IF ASSIGNED:

   NLG, LLC
   CREDITOR NAME(S)

   854 PHEASANT RUN RD
   MAILING ADDRESS

   WEST CHESTER    PA    19382
   CITY    ST    ZIP

7. DEPARTMENT OF STATE DOCUMENT FILE NUMBER:

   PLEASE CHECK BOX IF DOCUMENT NUMBER IS NOT APPLICABLE ☒

8. OWNER'S ATTORNEY OR AUTHORIZED REPRESENTATIVE (ACKNOWLEDGMENT OF FILING WILL BE SENT TO THIS ADDRESS):

   CHRISTOPHER DAVID OF DAVID & JOSEPH
   NAME

   1001 BRICKELL BAY DR SUITE 2002
   MAILING ADDRESS

   MIAMI    FL    33131
   CITY    ST    ZIP

9. AMOUNT DUE ON MONEY JUDGMENT:    $1,618,071.29

10. APPLICABLE STATUTORY INTEREST RATE:    11%

J08900007653
**FILED**
**May 27, 2008 8:00 am**
**Secretary of State**
05-01-2008 90160 031 ****40.00

THIS SPACE FOR USE BY FILING OFFICER

11. NAME OF COURT:    11TH JUDICIAL CIRCUIT    MIAMI DADE COUNTY

12. CASE NUMBER:    07-19532 CA11

13. DATE OF ENTRY:    04   28   2008
    MONTH   DAY   YEAR

UNDER PENALTY OF PERJURY, I hereby certify that: (1) The judgment above described has become final and there is no stay of the judgment or its enforcement in effect; (2) All of the information set forth above is true, correct, current and complete; (3) I have not previously filed a Judgment Lien Certificate regarding the above judgment with the Department of State; and, (4) I have complied with all applicable laws in submitting this Judgment Lien Certificate for filing.

_CHRIS KOSACHUK_

SIGNATURE OF CREDITOR OR AUTHORIZED REPRESENTATIVE    CHRIS KOSACHUK    PRINT NAME

**NON-REFUNDABLE PROCESSING FEE:**

JUDGMENT LIEN WITH ONE DEBTOR $20.00    EACH ADDITIONAL DEBTOR $5.00
EACH ATTACHED PAGE, IF NECESSARY $5.00    (NO CHARGE FOR CREDITOR AFFIDAVIT)

CERTIFIED COPY REQUESTED  $10.00  ☒

Division of Corporations • P.O. Box 6250 • Tallahassee, Fl 32314 • 850-656-7463

CR2E091 (04-08)

# EXHIBIT 8

# ELECTRONIC JUDGMENT LIEN AMENDMENT STATEMENT

FOR PURPOSES OF FILING AN AMENDMENT TO A FILED JUDGMENT LIEN, THE FOLLOWING INFORMATION IS SUBMITTED IN ACCORDANCE WITH s. 55.209, FLORIDA STATUTES.

JUDGMENT DEBTOR (DEFENDANT) NAME(S) AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

    HAZAN, ELIZABETH
    6913 VALENCIA DRIVE
    FISHER ISLAND, FL. 33109

**J14000885268**
**FILED**
**Aug 22, 2014 09:27 A.M.**
**Secretary of State**
MHCAIN

JUDGMENT CREDITOR (PLAINTIFF) NAME AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

    NLG, LLC
    854 PHEASANT RUN RD
    WEST CHESTER, PA 19382
    DOS DOCUMENT#: N/A

FILE NUMBER ASSIGNED TO ORIGINAL JUDGMENT LIEN BY DEPARTMENT OF STATE: J08900007653
DATE JUDGMENT LIEN FILED WITH DEPARTMENT OF STATE: 05/27/08

( ) AMENDMENT:  The judgment lien bearing the file number indicated above is amended as set forth below.

( ) PARTIAL RELEASE:  The judgment lien bearing the file number indicated above has been partially released and the value of the lien remaining unpaid as of the date of this statement is:

(X) ASSIGNMENT:  All of the judgment creditor's rights under the judgment lien certificate indicated above have been assigned to the new judgment lienowner whose name and address are listed below.

( ) CONTINUATION:  The judgment lien bearing the file number indicated above is for itemized property, a list of which was delivered prior to the lapse of the lien to the sheriff for levy in the county where the property is located. The lien is continued for 90 days after the lapse.

( ) TERMINATION:  The judgment creditor no longer claims a lien on the personal property under the judgment lien bearing the number indicated above.

NAME AND ADDRESS OF ASSIGNEE AND/OR AMENDMENT INFORMATION HERE:

SELECTIVE ADVISORS GROUP, LLC à.... MARK D COHEN    4000 HOLLYWOOD BLVD SUITE SUITE 435 SOUTH    HOLLYWOOD FL 33021

UNDER PENALTY OF PERJURY, I hereby certify that: (1) All of the information set forth above is true, correct, current and complete; and (2) I have complied with all applicable laws in submitting this Electronic Judgment Lien Amendment Statement for filing.

Electronic Signature of Creditor or Authorized Representative: SEAN NEIL MEEHAN

NAME AND ADDRESS TO WHOM ACKNOWLEDGMENT/CERTIFICATION IS TO BE MAILED:

    SEAN NEIL MEEHAN
    MRSEANMEEHAN@YAHOO.COM

# EXHIBIT 8

# ELECTRONIC JUDGMENT LIEN AMENDMENT STATEMENT

FOR PURPOSES OF FILING AN AMENDMENT TO A FILED JUDGMENT LIEN, THE FOLLOWING INFORMATION IS SUBMITTED IN ACCORDANCE WITH s. 55.206, FLORIDA STATUTES.

JUDGMENT DEBTOR (DEFENDANT) NAME(S) AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

    HAZAN, ELIZABETH
    6913 VALENCIA DRIVE
    FISHER ISLAND, FL. 33109

**J14000885284**
**FILED**
**Aug 22, 2014 09:39 A.M.**
**Secretary of State**
MHCAIN

JUDGMENT CREDITOR (PLAINTIFF) NAME AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

    NLG, LLC
    654 PHEASANT RUN RD
    WEST CHESTER, PA 19382
    DOS DOCUMENT#: N/A

FILE NUMBER ASSIGNED TO ORIGINAL JUDGMENT LIEN BY DEPARTMENT OF STATE: J08900007653
DATE JUDGMENT LIEN FILED WITH DEPARTMENT OF STATE: 05/27/08

( ) AMENDMENT:       The judgment lien bearing the file number indicated above is amended as set forth below.

( ) PARTIAL RELEASE:  The judgment lien bearing the file number indicated above has been partially released and the value of the lien remaining unpaid as of the date of this statement is:

( ) ASSIGNMENT:      All of the judgment creditor's rights under the judgment lien certificate indicated above have been assigned to the new judgment lienowner whose name and address are listed below.

( ) CONTINUATION:    The judgment lien bearing the file number indicated above is for itemized property, a list of which was delivered prior to the lapse of the lien to the sheriff for levy in the county where the property is located. The lien is continued for 90 days after the lapse.

(X) TERMINATION:     The judgment creditor no longer claims a lien on the personal property under the judgment lien bearing the number indicated above.

NAME AND ADDRESS OF ASSIGNEE AND/OR AMENDMENT INFORMATION HERE:

    SELECTIVE ADVISORS GROUP, LLC a... MARK D. COHEN, P.A.   PRESIDENTIAL CIRCLE 4000 HOLLYWOOD BLVD SUITE # 435 SOUTH HOLLYWOOD FL 33021

UNDER PENALTY OF PERJURY, I hereby certify that: (1) All of the information set forth above is true, correct, current and complete; and (2) I have complied with all applicable laws in submitting this Electronic Judgment Lien Amendment Statement for filing.

Electronic Signature of Creditor or Authorized Representative: SEAN NEIL MEEHAN

NAME AND ADDRESS TO WHOM ACKNOWLEDGMENT/CERTIFICATION IS TO BE MAILED:

    SEAN NEIL MEEHAN
    MRSEANMEEHAN@YAHOO.COM

# EXHIBIT 8



## FLORIDA DEPARTMENT OF STATE
## DIVISION OF CORPORATIONS

www.sunbiz.org

| Home | Contact Us | E-Filing Services | Document Searches | Forms | Help |

Previous on List    Next on List    Return to List                    Debtor Name Search

Submit

## Judgment Lien Detail

**Processed Thru 01/06/2015**

To determine if a writ of execution on a final judgment was docketed with a sheriff prior to October 1, 2001, view the filing image.

### Filing Information

| | |
|---|---|
| **Document Number** | J13001162651    View image in PDF format |
| **Status** | TERMINATED |
| **Case Number** | 07-19532 CA 11 |
| **Name of Court** | 11 JUD CIR MIAMI DADE CTY |
| **File Date** | 07/01/2013 |
| **Date of Entry** | 04/28/2008 |
| **Expiration Date** | 07/01/2018 |
| **Original Document** | J08900007653 |
| **Amount Remaining** | $5,843,709.54 |
| **Interest Rate** | 24.00 % |

### Name And Address of Judgment Creditor (Plaintiff)

SELECTIVE ADVISORS GROUP, LLC
MARK D. COHEN, PA
PRESIDENTIAL CIR, SUITE #4000
HOLLYWOOD, FL 33021

### Name And Address of Judgment Debtor(s) (Defendant(s))

HAZAN , ELIZABETH
6913 VALENCIA DRIVE
FISHER ISLAND, FL 33109

### Events

| Document Number | Event Type | Date | |
|---|---|---|---|
| J14000885318 | Termination | 08/22/2014 | View image in PDF format |
| J14000885250 | Assignment | 08/22/2014 | View image in PDF format |
| J14000863498 | Amendment | 08/19/2014 | View image in PDF format |

# EXHIBIT 8

Previous on List    Next on List    Return to List

Debtor Name Search

Submit

EXHIBIT 8

# ELECTRONIC SECOND JUDGMENT LIEN CERTIFICATE

FOR PURPOSES OF FILING A SECOND JUDGMENT LIEN, THE FOLLOWING INFORMATION IS SUBMITTED IN ACCORDANCE WITH s. 55.204, FLORIDA STATUTES. THIS SECOND JUDGMENT LIEN IS A NEW LIEN AND NOT A CONTINUATION OF THE ORIGINAL LIEN

FILE NUMBER ASSIGNED TO THE RECORD OF THE ORIGINAL JUDGMENT LIEN CERTIFICATE: J08900007653
DATE FILED WITH DEPARTMENT OF STATE: 05/27/08
JUDGMENT DEBTOR (DEFENDANT) NAME(S) AS SHOWN ON JUDGMENT LIEN:

    HAZAN, ELIZABETH
    6913 VALENCIA DRIVE
    FISHER ISLAND, FL, 33109

**J13001162651**
**FILED**
**Jul 01, 2013 10:29 A.M.**
**Secretary of State**
MHCAIN

JUDGMENT CREDITOR (PLAINTIFF) NAME AS SHOWN ON JUDGMENT LIEN OR CURRENT OWNER OF JUDGMENT IF ASSIGNED:

    NLG, LLC
    854 PHEASANT RUN ROAD
    WEST CHESTER, PA 19382
    DOS DOCUMENT#: N/A

NAME AND ADDRESS TO WHOM ACKNOWLEDGMENT/CERTIFICATION IS TO BE MAILED:

    CHRIS KOSACHUK
    CHRISKOSACHUK@GMAIL.COM

MONEY AMOUNT REMAINING UNPAID: 3,749,569.51
INTEREST RATE: 24.00%
INTEREST ACCRUED AMOUNT: 2,011,905.41
NAME OF COURT: 11 JUD CIR MIAMI DADE CTY
CASE NUMBER: 07-19532 CA 11
DATE OF ENTRY: 04/28/08

UNDER PENALTY OF PERJURY, I hereby certify that: (1) The judgment above described has become final and there is no stay of the judgment or its enforcement in effect; (2) All of the information set forth above is true, correct, current and complete; (3) I have complied with all applicable laws in submitting this Electronic Second Judgment Lien Certificate for filing.

Electronic Signature of Creditor or Authorized Representative: CHRIS KOSACHUK

# EXHIBIT 8

# ELECTRONIC JUDGMENT LIEN AMENDMENT STATEMENT

FOR PURPOSES OF FILING AN AMENDMENT TO A FILED JUDGMENT LIEN, THE FOLLOWING INFORMATION IS SUBMITTED IN ACCORDANCE WITH s. 55.206, FLORIDA STATUTES.

JUDGMENT DEBTOR (DEFENDANT) NAME(S) AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

    HAZAN, ELIZABETH
    6913 VALENCIA DRIVE
    FISHER ISLAND, FL. 33109

## J14000883396
### FILED
### Aug 19, 2014 11:01 A.M.
### Secretary of State
MHCAIN

JUDGMENT CREDITOR (PLAINTIFF) NAME AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

    NLG, LLC
    854 PHEASANT RUN ROAD
    WEST CHESTER, PA 19382
    DOS DOCUMENT#: N/A

FILE NUMBER ASSIGNED TO ORIGINAL JUDGMENT LIEN BY DEPARTMENT OF STATE: J13001162851
DATE JUDGMENT LIEN FILED WITH DEPARTMENT OF STATE: 07/01/13

(X) AMENDMENT:       The judgment lien bearing the file number indicated above is amended as set forth below.

( ) PARTIAL RELEASE:  The judgment lien bearing the file number indicated above has been partially released and the value of the lien remaining
                      unpaid as of the date of this statement is:

( ) ASSIGNMENT:       All of the judgment creditor's rights under the judgment lien certificate indicated above have been assigned to the new
                      judgment lienowner whose name and address are listed below.

( ) CONTINUATION:     The judgment lien bearing the file number indicated above is for itemized property, a list of which was delivered prior to the lapse
                      of the lien to the sheriff for levy in the county where the property is located. The lien is continued for 90 days after the lapse.

( ) TERMINATION:      The judgment creditor no longer claims a lien on the personal property under the judgment lien bearing the number indicated above.
                      NAME AND ADDRESS OF ASSIGNEE AND/OR AMENDMENT INFORMATION HERE:

    The judgment amount remaining as of July 1, 2013 is amended to $5,843,709.64.

UNDER PENALTY OF PERJURY, I hereby certify that: (1) All of the information set forth above is true, correct, current and complete; and (2) I have complied with all applicable laws in submitting this Electronic Judgment Lien Amendment Statement for filing.

Electronic Signature of Creditor or Authorized Representative: CHRIS KOSACHUK

NAME AND ADDRESS TO WHOM ACKNOWLEDGMENT/CERTIFICATION IS TO BE MAILED:

    CHRIS KOSACHUK
    CHRISKOSACHUK@GMAIL.COM

# EXHIBIT 8

# ELECTRONIC JUDGMENT LIEN AMENDMENT STATEMENT

FOR PURPOSES OF FILING AN AMENDMENT TO A FILED JUDGMENT LIEN, THE FOLLOWING INFORMATION IS SUBMITTED IN ACCORDANCE WITH s. 55.206, FLORIDA STATUTES.

JUDGMENT DEBTOR (DEFENDANT) NAME(S) AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

HAZAN, ELIZABETH
6913 VALENCIA DRIVE
FISHER ISLAND, FL. 33109

**J14000885250**
**FILED**
**Aug 22, 2014 09:14 A.M.**
**Secretary of State**
MHCAIN

JUDGMENT CREDITOR (PLAINTIFF) NAME AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:

NLG, LLC
854 PHEASANT RUN ROAD
WEST CHESTER, PA 19382
DOS DOCUMENT#. N/A

FILE NUMBER ASSIGNED TO ORIGINAL JUDGMENT LIEN BY DEPARTMENT OF STATE: J13001162651
DATE JUDGMENT LIEN FILED WITH DEPARTMENT OF STATE: 07/01/13

( ) AMENDMENT: The judgment lien bearing the file number indicated above is amended as set forth below.

( ) PARTIAL RELEASE: The judgment lien bearing the file number indicated above has been partially released and the value of the lien remaining unpaid as of the date of this statement is:

(X) ASSIGNMENT: All of the judgment creditor's rights under the judgment lien certificate indicated above have been assigned to the new judgment lienowner whose name and address are listed below.

( ) CONTINUATION: The judgment lien bearing the file number indicated above is for itemized property, a list of which was delivered prior to the lapse of the lien to the sheriff for levy in the county where the property is located. The lien is continued for 90 days after the lapse

( ) TERMINATION: The judgment creditor no longer claims a lien on the personal property under the judgment lien bearing the number indicated above.

NAME AND ADDRESS OF ASSIGNEE AND/OR AMENDMENT INFORMATION HERE:

SELECTIVE ADVISORS GROUP, LLC à,... MARK D COHEN, PA  PRESIDENTIAL CIRCLE SUITE # 4000  HOLLYWOOD FL 33021

UNDER PENALTY OF PERJURY, I hereby certify that: (1) All of the information set forth above is true, correct, current and complete; and (2) I have complied with all applicable laws in submitting this Electronic Judgment Lien Amendment Statement for filing.

Electronic Signature of Creditor or Authorized Representative: SEAN NEIL MEEHAN

NAME AND ADDRESS TO WHOM ACKNOWLEDGMENT/CERTIFICATION IS TO BE MAILED:

SEAN NEIL MEEHAN
MRSEANMEEHAN@YAHOO.COM

# EXHIBIT 8

# ELECTRONIC JUDGMENT LIEN AMENDMENT STATEMENT

FOR PURPOSES OF FILING AN AMENDMENT TO A FILED JUDGMENT LIEN, THE FOLLOWING INFORMATION IS SUBMITTED IN ACCORDANCE WITH s. 55.206, FLORIDA STATUTES

**JUDGMENT DEBTOR (DEFENDANT) NAME(S) AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:**

HAZAN, ELIZABETH
6913 VALENCIA DRIVE
FISHER ISLAND, FL. 33109

## J14000885318
**FILED**

**Aug 22, 2014 09:47 A.M.**
**Secretary of State**
MHCAIN

**JUDGMENT CREDITOR (PLAINTIFF) NAME AS SHOWN ON THE RECORDS OF THE DEPARTMENT OF STATE:**

NLG, LLC
854 PHEASANT RUN ROAD
WEST CHESTER, PA 19382
DOS DOCUMENT#. N/A

FILE NUMBER ASSIGNED TO ORIGINAL JUDGMENT LIEN BY DEPARTMENT OF STATE: J13001162651
DATE JUDGMENT LIEN FILED WITH DEPARTMENT OF STATE: 07/01/13

( ) AMENDMENT: The judgment lien bearing the file number indicated above is amended as set forth below.

( ) PARTIAL RELEASE: The judgment lien bearing the file number indicated above has been partially released and the value of the lien remaining unpaid as of the date of this statement is:

( ) ASSIGNMENT: All of the judgment creditor's rights under the judgment lien certificate indicated above have been assigned to the new judgment lienowner whose name and address are listed below.

( ) CONTINUATION: The judgment lien bearing the file number indicated above is for itemized property, a list of which was delivered prior to the lapse of the lien to the sheriff for levy in the county where the property is located. The lien is continued for 90 days after the lapse.

(X) TERMINATION: The judgment creditor no longer claims a lien on the personal property under the judgment lien bearing the number indicated above.

NAME AND ADDRESS OF ASSIGNEE AND/OR AMENDMENT INFORMATION HERE:

SELECTIVE ADVISORS GROUP, LLC C/MARK D. COHEN, P.A. PRESIDENTIAL CIRCLE 4000 HOLLYWOOD BLVD SUITE # 435 SOUTH HOLLYWOOD FL 33021

UNDER PENALTY OF PERJURY, I hereby certify that: (1) All of the information set forth above is true, correct, current and complete; and (2) I have complied with all applicable laws in submitting this Electronic Judgment Lien Amendment Statement for filing.

Electronic Signature of Creditor or Authorized Representative: SEAN NEIL MEEHAN

NAME AND ADDRESS TO WHOM ACKNOWLEDGMENT/CERTIFICATION IS TO BE MAILED.

SEAN NEIL MEEHAN
MRSEANMEEHAN@YAHOO.COM

# EXHIBIT 8

# EXHIBIT "14"

EXHIBIT 8

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION
CASE NO: 14-10475 CA 10

SELECTIVE ADVISORS GROUP LLC

AS ASSIGNEE OF 9197-5904

QUEBEC, INC

Plaintiff(s),

vs.

NLG, LLC, A DELAWARE
LTD. COMPANY

Defendant(s).

ORDER
GRANTING/DENYING
PLAINTIFF'S/DEFENDANT'S

MOTION FOR REHEARING

THIS CAUSE having come on to be heard on ___Sept 16, 2014___
on Plaintiff's/Defendant's Motion

FOR REHEARING PURSUANT TO FLORIDA RULES 1.530 & RELIEF FROM ORDER

1.540(B) FILED SEPT 5, 2014 & MY MOTION J SET ASIDE RESULT OF CONFESSION &
and the Court having heard argument of counsel, and being otherwise advised in the premises, it is
hereupon

ORDERED AND ADJUDGED that said Motion be, and the same is hereby OFF

ARE HEREBY DENIED.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida this 16th day of,

___Sept___, 2014.

& MOTION TO SET ASIDE RESULT FROM ORDER
GRANTING MOTION TO SET ASIDE & VACATING
ORDER GRANTING TRIAL AT RECHECKING OF AL
Copies furnished to Counsel of Record     DATED AUG 29, 2014
MELISSA ARFUN
MARIA WELLS

CIRCUIT COURT JUDGE
JUDGE PETER R. LOPEZ

**EXHIBIT 8**

**IN THE CIRCUIT COURT OF THE**
**11TH JUDICIAL CIRCUIT IN AND FOR**
**MIAMI-DADE COUNTY, FLORIDA**

**CIRCUIT CIVIL DIVISION**
**CASE NO:** 11-42770 CA 02

NLG, LLC
                        **Plaintiff(s),**

        **vs.**

HAZAN

                        **Defendant(s),**

_____/

**ORDER**
~~GRANTING~~/DENYING
~~PLAINTIFF'S~~/DEFENDANT'S
MOTION TO DISMISS

                    **THIS CAUSE** having come on to be heard on ___MARCH 3, 2015___
on ~~Plaintiff's~~/Defendant's Motion

to Dismiss
_____

and the Court having heard arguments of counsel, and being otherwise advised in the premises, it is hereupon

            **ORDERED AND ADJUDGED** that said Motion be, and the same is hereby

Denied without prejudice.
_____
_____
_____
_____

            **DONE AND ORDERED** in Chambers at Miami-Dade County, Florida this  3rd

day of

        March                    , 20 15 .

                        _____
                        CIRCUIT COURT JUDGE
                        MONICA GORDO
                        CIRCUIT COURT JUDGE

Copies furnished to: Counsel of Record

117_01-554  3/11

**EXHIBIT 9**

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY, FLORIDA

NLG (LLC)

        **Plaintiff,**

vs.                                    **CASE NO. 2011-CA-042770-CA-01**

**ELIZABETH HAZAN, et. al,**

        **Defendant (s)**

_____/

## DEFENDANT'S, ELIZABETH HAZAN MOTION FOR LEAVE TO FILE AMENDED ANSWER

COMES NOW the Defendant, **ELIZABETH HAZAN** by and through the undersigned counsel, and hereby respectfully requests this Honorable court to grant leave, thereby permitting Defendant **ELIZABETH HAZAN** to file the attached Amended Answer, and states as follows:

1. The Plaintiff has filed a lawsuit against the Defendant, **ELIZABETH HAZAN** for what purports to be a Mortgage Foreclosure action.

2. Defendant, **ELIZABETH HAZAN** filed an answer in the above-mentioned-mentioned matter that needs amending as a result of recent developments and new evidence that has materialized its way to the point that the Plaintiff's claim is eliminated. Subsequent to the answer being filed, the Mortgage and the judgment on the note that form the basis by which the Plaintiff has brought this action have been satisfied.

3. Defendant's counsel has been retained in this matter and on behalf of the Defendant requests leave to amend the Defendant's answer.

# EXHIBIT 10

4.   It is in the interest of justice to permit Defendant, **ELIZABETH HAZAN** to amend her Answer as it allows for the proper resolution of the dispute between all the parties.

5.   Attached to this Motion to Amend the Answer is Defendant's **ELIZABETH HAZAN** Amended Answer.

## MEMORANDUM IN SUPPORT FOR THE MOTION TO AMEND ANSWER

Rule 1.190, Fla. R. Civ. P., requires that "leave of court [to amend pleadings] shall be given freely when justice so requires," and that the court may permit a pleading to be amended "at any time in furtherance of justice." Fla. R. Civ. P. 1.190(a), (e) (emphasis added). Indeed, Florida's well reasoned public policy overwhelmingly favors the liberal amendment of pleadings so that cases may be decided on their merits. *Craig v. East Pasco Med. Ctr., Inc.,* 650 So. 2d 179 (Fla. 2d DCA 1995). All doubts must be resolved in favor of allowing amendment of pleadings. *Thompson v. Publix Supermarkets, Inc.,* 615 So. 2d 796 (Fla. 1st DCA 1993). The failure to permit an amendment constitutes an abuse of discretion unless it clearly appears that the amendment would prejudice the opposing party, the privilege to amend has been abused, or amendment would be futile. *Carter v. Ferrell,* 666 So. 2d 556 (Fla. 2d DCA 1995).

Leave to amend is especially appropriate when the amendment is based on the same conduct, transaction or occurrence as the original pleading the movant seeks to amend. *Dimick v. Ray,* 774 So. 2d 830 (Fla. 4th DCA 2000) (holding that proposed addition of claims not previously made would not prejudice Defendant since the proposed amendment was filed prior to trial); *Florida East Coast Railway Co. v. Ssanford Sshulman,* 481 So. 2d 965 (Fla. 3d DCA 1986) (holding that trial court did not abuse its discretion in permitting plaintiff to amend his complaint after he had rested his case at trial); *Passekoff v. Kaufman,* 392 So. 2d 971 (Fla. 3d DCA 1981)(finding no indication that privilege to amend was being

EXHIBIT 10

abused, where motion to amend was filed before case was set for trial); *Knipp v. Weinbaum,* 351 So. 2d 1081 (Fla. 3d DCA 1977)("liberal construction of [Rule 1.190(a)] is particularly applicable in a situation … where the amendment is based on the same conduct, transaction and occurrence upon which the plaintiff had brought his original claim"), *citing Turner v. Trade Mor Inc.,* 252 So. 2d 383 (Fla. 4th DCA 1971). Indeed, the true test for determining whether the proposed amendments should be allowed under Florida law is "whether the pleading as amended is based on the same specific conduct, transaction or occurrence between the parties upon which the plaintiff tried to enforce his original claim." *David Miller Distributing Company, Inc. v. Florida National Bank at Arlington,* 342 So. 2nd 856 (Fla. 1st DCA 1977).

For instance, in *Pasekoff,* 392 So. 2d 971, the Third District reversed the trial court's denial of the plaintiff's motion to amend the third amended complaint in an action to quiet title, where the proffered amendment involved the same transactions as the plaintiff's earlier pleadings, and the only amendment set forth an additional legal theory. *See id.* at 976. The Third District stated, in relevant part:

> Since all of the factual allegations had been revealed in earlier discovery, the [Defendant] could not have been, and, indeed make no claim that they were surprised by the contents of the amendment. Furthermore, when the motion was made, <u>the case had not yet been set for trial</u>… Finally, there was no indication that the "privilege to amend" had been or was being abused.

*Id.* (emphasis added). Given that the conduct, transactions and occurrences forming the basis of the original pleadings filed by Plaintiff are the same, the proposed amended pleadings, and the case is not set for trial an amendment is proper.

EXHIBIT 10

**Plaintiff Will Not Be "Prejudiced" by Defendant Filing of the <u>Proposed</u> <u>Amended Pleadings</u>**

Moreover, Florida courts will not find the existence of "prejudice," unless the amendment proposes new and different causes of action **either during trial or after the trial has been completed.** *Dimick v. Ray,* 774 So. 2d 830 (Fla. 4th DCA 2000). In *Dimick,* the court examined the definition of "prejudice" in light of a party's desire to amend a pleading, and stated:

> The cases have analyzed this prejudice element primarily in respect to the Defendant's ability to prepare for the new allegations prior to trial on the merits. For instance, in [numerous Florida cases] ...amendments were not allowed which proposed to add new and different causes of action either during trial or after the trial had been completed. The prejudice in adding new causes of action or claims in those cases was obvious since the Defendant had already fully prepared for, and in some instances, had actually completed the trial when the plaintiff's sought to add different claims.

6. Plaintiff will not be prejudiced by the amendment of the pleadings and said amendment is proper in the interest of justice.

WHEREFORE, the above-stated reasons the Defendant, **ELIZABETH HAZAN** respectfully requests this Honorable Court enter judgment and allow the Defendant **ELIZABETH HAZAN,** to serve the attached Answer upon Plaintiff

EXHIBIT 10

therefore amending Defendant' **ELIZABETH HAZAN** s, original Answer to reflect

the proper pleading and award such other additional relief as this Court deems just,

necessary and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was
sent via email to Juan Ramirez, Jr., Esq. at Diaz Reus & Targ, LLC,
jramirez@diazreus.com on this _____ day of April 2015.

The Law Office of Ray Garcia, P.A.
14850 SW 26 Street, Suite 204
Miami, Florida 33185
Telephone: (305) 227-4030
Facsimile: (305) 223-9811
service@raygarcialaw.com

By: _____
Ray Garcia, Esq.
FBN: 115850
Melanie Klaskala, Esq.
FBN: 109502

EXHIBIT 10

# PROPOSED ANSWER AND AFFIRMATIVE DEFENSES

EXHIBIT 10

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION
CASE NO.11-42770 CA 02

NLG, LLC a Delaware
Limited liability company,

        Plaintiff,

Vs.

ELIZABETH HAZAN,

        Defendant,

_____/

### DEFENDANT ELIZABETH HAZAN'S VERIFIED
### AMENDED ANSWER AND AFFIRMATIVE DEFENSES
### TO PLAINTIFF'S AMENDED COMPLAINT TO FORECLOSE MORTGAGE

    COMES NOW the Defendant, ELIZABETH HAZAN, by and through
undersigned counsel, and files this, her verified Answer and Affirmative Defenses to
Plaintiff's Amended Complaint to foreclose Mortgage and would state:

### ANSWER

    1. Admits the allegations contained in paragraph 3, and portions of paragraph
10 of Plaintiff's Amended Complaint.

    2. Denies the allegations in paragraphs 5, 8, 9, portions of 10, 12, 13, 14, 16,
17, 18 and 19(a) and (f) of Plaintiff's Amended Complaint. 3. Is without knowledge of
all other allegations of Plaintiff's Amended Complaint.

# EXHIBIT 10

3. Denies each and every matter not herein admitted, controverted, or specifically denied.

WHEREFORE, Defendant, ELIZABETH HAZAN, demands strict proof of all allegations contained in Plaintiff's Amended Complaint and, barring same, dismissal of the action, with prejudice, together with an award of costs and reasonable attorney's fees as permitted by applicable Florida Statutes and/or case law.

## AFFIRMATIVE DEFENSES

4. As a first, separate, and distinct defense, Plaintiff's action to foreclose a mortgage on real property is barred in that the Plaintiff lacks standing to pursue the instant foreclosure nor is the Plaintiff the rightful holder of the judgment, promissory note, or mortgage which are the subject of Plaintiff's Amended Complaint. As of August 20, 2014, Honorable Judge Lopez assigned rendered judgment assigning all NLG, LLC rights, judgment, claims and benefits against Defendant, Elizabeth Hazan to NLG, LLC's judgment creditor, SELECTIVE ADVISORS GROUP, LLC ("SELECTIVE"). Honorable Judge Peter Lopez thus terminated all NLG's rights against Defendant, Elizabeth Hazan. As such, the action should be dismissed, with prejudice.

5. As a second, separate, and distinct defense, based upon the matters set forth herein and in other motions filed by this Defendant as to Plaintiff's standing, the Plaintiff who is seeking equitable relief of this Court, may not obtain equitable relief from the Court in that he who seeks equity must do equity and the Plaintiff must come into Court with clean hands. If, in fact, the Plaintiff and/or its representatives have knowingly perjured themselves and made misrepresentations to this Court regarding standing and ownership of a final judgment, they should be appropriately sanctioned and

EXHIBIT 10

their equitable conduct precludes this Court from affording them equitable relief. Among other things Christopher Kosachuk is in violation of multiple Court Orders, his conduct has been called **unconscionable** by Judge Scola, and more recently, the Honorable Judge Barbara Jaffee in of the New York State Supreme Court, for and in the County of New York, ordered that NLG parties **lacked candor.** All representations are actionable and would preclude Plaintiff from seeking relief from this Court.

6. As a third, separate and distinct defense, there exists the Order to Show Cause /Motion filed by Defendant Elizabeth Hazan in the New York State Supreme Court, in and for New York County, with the same parties and in the same action where NLG, LLC domesticated the same judgment entered in April 28, 2008 in New York State. Judge Barbara Jaffee recognized Judge Peter Lopez's Orders, including subsequent satisfaction of judgment and satisfaction of mortgage, and ordered that the County Clerk for New York County, State of New York, change the case caption of the domesticated in New York April 28, 2008 money judgment from <u>NLG, LLC vs. ELIZABETH HAZAN</u> to SELECTIVE ADVISORS GROUP, LLC vs. <u>ELIZABETH HAZAN.</u> She recognized the Florida satisfaction of judgment filed by SELECTIVE on August 20, 2014 after Judge Lopez assigned all of NLG, LLC's judgment, rights, benefits, claims against Elizabeth Hazan to SELECTIVE ADVISORS GROUP. Accordingly, the Plaintiff's action is barred by the doctrine of collateral estoppel and res judicata given that the issues critical to this case and NLG, LLC's claims have been fully litigated and decided.

7. As a fourth, separate, and distinct defense, the action should be dismissed in that the Plaintiff has failed to comply with conditions precedent to the institution of this

EXHIBIT 10

action, i.e., vacating or setting aside of the satisfaction of Plaintiff's note and mortgage. According to the Public records, which this Court should take judicial notice of, the promissory note and mortgage referenced in plaintiff's Amended Complaint have been satisfied and which satisfaction has been recorded and re-recorded in the Public Records of Miami-Dade County, Florida. By virtue of the satisfaction of the promissory note and mortgage, Plaintiff's action is barred. The Public Records reflect, that, on the face of the pleadings, the action is presently barred, and in order to pursue the action, Plaintiff would be obligated to seek to judicially vacate and set aside the satisfaction of the note and mortgage which were duly and properly satisfied by or on behalf of NLG, LLC judgment-assignee, by those persons entitled to act for and on behalf of NLG, LLC's creditor SELECTIVE ADVISORS GROUP, LLC by Court Order of Honorable Judge Peter Lopez.

8. As a fifth, separate, and distinct defense, the action should be dismissed in that Defendant, Elizabeth Hazan never received any consideration for the Plaintiff, NLG, LLC promissory note as like other executory contracts, mortgages require consideration to be enforceable. *Kremser v. Tonokaboni*, 356 So.2d 1331 (Fla. 3d DCA 1978); *Uwanawich v. Gaudini*, 334 So.2d 116 (Fla. 3d DCA 1976); *Chaykin v. Kant*, 327 So.2d 793 (Fla. 3d DCA 1970). When a mortgagor shows that no funding was ever advanced, a mortgage given to secure that loan suffers a complete failure of consideration invalidating the mortgage in its entirety. Since no funds were advanced to Defendant, ELIZABETH HAZAN pursuant to purported mortgage loan, there are no sums to be reimbursed to them thereunder and there being no debt there can be no valid mortgage lien. *See Silver Waters Corp. v. Murphy*, 177 So.2d 897, 899 (Fla. 2d

EXHIBIT 10

DCA 1965). Attached as Exhibit "I" is a true copy of the Gift of Equity Letter and Closing statement (redacted).

9. As a sixth, separate, and distinct defense, the action should be dismissed in that the Plaintiff has failed to honor an obligation to release portions of mortgaged property from the mortgage lien.

10. As a Seventh, separate, and distinct defense, the action should be dismissed in that the Plaintiff has committed fraud against Defendant as the mortgage was procured by fraud, and the instruments of the fraud should be canceled and foreclosure denied. *Meyerson v. Boyce*, 97 So.2d 488 (Fla. 3d DCA 1957).

11. As an eighth, separate, and distinct defense, the action should be dismissed in that the Plaintiff has failed because mortgage foreclosures are equitable proceedings, and Plaintiff actively participated in illegal or fraudulent conduct.

12. As a ninth separate, and distinct defense, the action should be dismissed in that the Plaintiff has first breached the contract thus releasing Defendant from any obligation to perform the contract.

14. [5][6] "

13. As for a tenth, separate, and distinct defense, the action should be dismissed in that the Plaintiff is barred by the improper splitting of action and multiplicity of actions. Defendant set forth in her motion for summary judgment the basis for this affirmative defense and re-avers, re-alleges, and adopts as if set forth in full the allegations of that motion relating to this particular defense. According to the Plaintiff, on or about June 2007, over five years ago, the Plaintiff filed a separate action under a promissory note and obtained a final judgment which was then the subject of a

EXHIBIT 10

settlement agreement. The Plaintiff in obtaining an action on a promissory note was obligated to surrender the promissory note and the final judgment took the place of and effectively canceled the promissory note which effectively precludes Plaintiff from having a right to pursue a mortgage foreclosure. Based on the foregoing, the Plaintiff may not now pursue in a different division of the same count or continue the previously filed action. This amounts to "forum shopping". As such, Plaintiff's Amended Complaint should be dismissed with prejudice.

14. As a eleventh separate, and distinct defense, the Plaintiff is clearly forum shopping in that the Plaintiff obtained a judgment in Division 11 of this Court under case 07-19532 and has now elected to proceed with a new action based upon the same claim in a new division in derogation to applicable Florida Statutes and Rules of Procedure. The Plaintiff is not permitted to forum Shop and in the event of a final judgment and/or enforcement thereof, is obligated to file a "notice of prior filing", notify the Clerk of the prior action, and proceed only in the division that heard the original action. As such, the action should be dismissed.

15. As an twelfth, separate, and distinct defense, the action should be dismissed in that this Court in its discretion may refuse to grant prayer for foreclosure of mortgage for equitable reasons for **equitable reasons.** *Creamer v Aultman*, 445 So. 2d 383 (Fla. 1st DCA 1984) *Cross v. Federal Nat. Mortgage Ass'n*, 359 So.2d 464 (Fla. 4th DCA 1978) Mortgage foreclosure is an equitable action and thus equitable defenses are appropriate; *Marsh v. Marsh*, 72Fla. 142, 72, 72 So. 638 *(1916)* (courts of equity have supervision over judicial sales for cause, even after confirmation: *Maule Industries, Inc. v. Seminole rock & Sand Co.*, 91 So.2d 307 (1956) (circuit court judge exercises

EXHIBIT 10

discretion in deciding on rehearing whether the judicial sales should be set aside, and exercise of such discretion should not be interfered with by an appellate court in absence of abuse of such discretion; *Maniscalco v. Hollywood Fed. Sav. and loan Ass'n*, 397 So.2d 453 (Fla. 4th DCA 1981) right of a mortgagor to redeem as an incident of every mortgage cannot extinguished except by due process of law; *John Step, Inc. v. First federal Sav. And loan Ass'n of Miami*, 379 So.2d 384 (Fla. 4th DCA 1980)(same); *Licata v. De Corte*, 50 Fla. 563, 39 So.58 (1905) one who has in good faith brought and assumed possession of mortgaged property prior to the proceedings for foreclosure may be permitted to redeem the property may be permitted to redeem the property from sale under such foreclosure.

16. As a thirteenth separate, and distinct defense, the action should be dismissed in that Chris Kosachuk, NLG, LLC's principal and manager has unclean hands, and giving arrest warrants, is a wanted man. He is ordered to be placed under arrest by every Sheriff of the State of Florida and every Law Enforcement Officer. His conduct has been called "unconscionable" by Judge Scola and Judge Jaffe called NLG's behavior as lack of candor to the Court

17. As a fourteenth separate, and distinct defense, the action should be dismissed in that at least one other Judge has already agreed with Defendant, Elizabeth Hazan that NLG, LLC has no remaining rights against Elizabeth Hazan as SELECTIVE became the owner of these rights and benefits and settled with Elizabeth Hazan.

18. As a fifteenth separate, and distinct defense, the action should be dismissed in that the Plaintiff has no Financial interest in the Note and Mortgage.

19. As a sixteenth separate, and distinct defense, the action should be dismissed

EXHIBIT 10

in that the Plaintiff is barred from seeking any sought in the Complaint because it does not have capacity to sue as required by Florida Rule of Civil Procedure 1.120

20. As a seventeenth separate, and distinct defense, the action should be dismissed in that the New York Supreme Court Order, among other things, granted Elizabeth Hazan, the following:

a. Changing caption substituting Selective Advisors Group, LLC in place of NLG, LLC as plaintiff;

b. Directing the New York County Clerk to accept for filing this Court's August 20, 2014 order and recognizing the assignment;

c. Directing the New York County Clerk to reflect on the docket of the New York Case that the Florida judgment between plaintiff and me as domesticated was satisfied;

d. Directing the County Clerk to accept for filing the Florida satisfaction of Judgment, attached here as Exhibit B; and

e. Striking any judgments in the New York case and a prior filing under a different case number.

As Exhibit "2", see attached decision of Honorable judge Barbara Jaffee. NLG, LLC, thus, has no rights.


WHEREFORE, Defendant, ELIZABETH HAZAN, demands strict proof of all allegations contained in Plaintiff's Amended Complaint and, barring same, dismissal of the action, with prejudice, together with an award of costs and reasonable attorney's fees as permitted by applicable Florida Statutes and/or case law.


# EXHIBIT 10

Under penalties of perjury, I declare that I have read the foregoing Verified Answer and Affirmative Defenses and that the facts stated in it are true.

ELIZABETH HAZAN

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent via email to Juan Ramirez, Jr., Esq. at Diaz Reus & Targ, LLC, jramirez@diazreus.com on this ___ day of April 2015.

The Law Office of Ray Garcia, P.A.
14850 SW 26 Street, Suite 204
Miami, Florida 33185
Telephone: (305) 227-4030
Facsimile: (305) 223-9811
service@raygarcialaw.com

By: _____
Ray Garcia, Esq.
FBN: 115850
Melanie Klaskala, Esq.
FBN: 109502

EXHIBIT 10

# EXHIBIT "1"

EXHIBIT 10

## Gift of Equity Letter

As per our client explanation the seller and the buyer are cousins with a close relationship. The seller wants to give gift of equity to Elizabeth Hazan on the property at 6913 VALENCIA DR, Miami Beach, FL 33109 in the amount of $ 1275M which is 25% from the purchase price of $5.1M dollars.

He wants to do that because previously Elizabeth parents helped him in many other ways. Now he wants to sell the house and Elizabeth was looking to live in this area and he decided to help her by selling his property to her and giving a Gift of Equity as a gift. He doesn't expect this money to be paid back to him at any time.

Sincerely,

Chris Kosachuk

2/20/07

EXHIBIT 10

# EXHIBIT "2"

EXHIBIT 10

# Settlement Statement

**U.S. Department of Housing and Urban Development**

OMB No. 2502-0265

| B. Type of Loan | | | | |
|---|---|---|---|---|
| 1.☐ FHA  2.☐ FmHA  3.☒ Conv. Unins. | 4. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number | |
| 4.☐ VA  5.☐ Conv. Ins. | 3-0384 | 3012303314 | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME OF BORROWER:** Elizabeth Hazan

ADDRESS OF BORROWER: 6913 Valencia Drive, Fisher Island, FL

**E. NAME OF SELLER:** NLG, LLC

ADDRESS OF SELLER: 489 Broome Street #5W, New York, NY 10013

**F. NAME OF LENDER:** Washington Mutual Bank, F.A.

ADDRESS OF LENDER: 8880 Freedom Crossing Trail, Jacksonville, FL 33256

**G. PROPERTY LOCATION:** 6913 Valencia Drive, Fisher Island, FL 33109

**H. SETTLEMENT AGENT:** SIMON, SIGALOS & SPYREDES, P.A.
120 EAST PALMETTO PARK ROAD, SUITE 100, BOCA RATON, FL 33432

PLACE OF SETTLEMENT: 120 EAST PALMETTO PARK ROAD, SUITE 100, BOCA RATON, FL 33432

**I. SETTLEMENT DATE:** 3/1/2007

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 5,160,000.00 | 401. Contract sales price | 5,100,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 23,780.92 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes           to | | 406. City/town taxes           to | |
| 107. County taxes              to | | 407. County taxes              to | |
| 108. Assessments               to | | 408. Assessments               to | |
| 109. Quarterly Assess HOA  3/1/2007 to  3/31/2007 | 1,124.06 | 409. Quarterly Assess HOA  3/1/2007 to  3/31/2007 | 1,124.06 |
| 110. Valencia Estates  3/1/2007 to  3/31/2007 | 867.87 | 410. Valencia Estates  3/1/2007 to  3/31/2007 | 867.87 |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** ▶ | 5,183,780.92 | **420. GROSS AMOUNT DUE TO SELLER** ▶ | 5,101,991.93 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | 100,000.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 3,825,000.00 | 502. Settlement charges to seller (line 1400) | 347,711.55 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 3,028,435.00 |
| Lender Contribution | | Regions | |
| 205. | | 505. Payoff of second mortgage loan | 190,000.00 |
| | | Mateo | |
| 206. Principal amount of seller financing | | 506. Principal amount of seller financing | |
| 207. Equity Contribution from Seller | 1,375,000.00 | 507. Equity Contribution from Seller | 1,375,000.00 |
| 208. Prepaid deposit/rents | 60,000.00 | 508. Prepaid deposits/rents | 60,000.00 |
| 209. | | 509. | |
| 209A. | | 509A. | |
| 209B. | | 509B. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes           to | | 510. City/town taxes           to | |
| 211. County taxes  1/1/2007 to  3/1/2007 | 11,599.04 | 511. County taxes  1/1/2007 to  3/1/2007 | 11,599.04 |
| 212. Assessments               to | | 512. Assessments               to | |
| 213. | to | | 513. | to |
| 214. | to | | 514. | to |
| 215. | to | | 515. | to |
| 216. | to | | 516. | to |
| 217. | to | | 517. | to |
| 218. | to | | 518. | to |
| 219. | to | | 519. | to |
| **220. TOTAL AMOUNTS PAID BY OR IN BEHALF OF BORROWER** ▶ | 5,371,599.04 | **520. TOTAL REDUCTIONS IN AMOUNT DUE SELLER** ▶ | 5,004,846.19 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT TO/FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 5,183,780.92 | 601. Gross amount due to seller (line 420) | 5,101,991.93 |
| 302. Less amounts paid by/for borrower (line 220) | 5,371,599.04 | 602. Less reductions in amount due seller (line 520) | 5,004,846.19 |
| **303. CASH ☐ From ☒ To  BORROWER** ▶ | $8,319.02 | **603. CASH ☒ To ☐ From  SELLER** ▶ | 97,145.44 |

HUD-1 (3-86) RESPA, HB 4305.2

# EXHIBIT 10

| L. | Settlement Charges | | | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|---|---|---|
| 700. | TOTAL SALES/BROKER'S COM. based on price | $ | % = | 225,000.00 | | |
| | Division of Commission (line 700) as follows: | | | | | |
| 701. | $ 225,000.00 Commission | to Don Fingar $110000 | | | | |
| 702. | Commission | to Elizabeth Hogan Boyter $115000 | | | | |
| 703. | Commission paid at Settlement | to | | | | 225,000.00 |
| 704. | | to | | | | |
| 800. | Items Payable in Connection With Loan | | | | | |
| 801. | Loan Origination Fee | % to | | | | |
| 802. | Loan Discount | % to | | | | |
| 803. | Appraisal Fee | to Nemeth Appraisers $500.00 | | | *POC* | |
| 804. | Credit Report | to | | | | |
| 805. | Lender's Inspection Fee | to | | | | |
| 806. | Mortgage Insurance Application Fee | to | | | | |
| 807. | Broker Administration Fee | to Fortune MC | | | 750.00 | |
| 808. | Processing Fee | to Fortune MC | | | 395.00 | |
| 809. | Application Fee | to Fortune MC | | | 140.00 | |
| 810. | Tax Service | to Washington Mutual Bank, FA | | | 84.00 | |
| 811. | wire transfer fee | to Washington Mutual Bank, FA | | | 35.00 | |
| 812. | Flood Determination Fee | to LandAmerica Tax and Flood Services | | | 9.00 | |
| 813. | Funding and Review Fee | to Washington Mutual Bank, FA | | | 165.00 | |
| 814. | | to | | | | |
| 815. | Yield Premium Spread | to Fortune MC 3921196.75 POC | | | | |
| 900. | Items Required By Lender To Be Paid In Advance | | | | | |
| 901. | Interest from 3/7/2007 to 4/1/2007 @ | $84.53 /day | | | 12,161.75 | |
| 902. | Mortgage Insurance Premium for | months to Seven | | | | |
| 903. | Hazard Insurance Premium for | years to Seven 452 POC | | | 11,522.00 | |
| 904. | Flood | years to Seven 452 POC | | | | |
| 905. | | | | | | |
| 1000. | Reserves Deposited With Lender | | | | | |
| 1001. | Hazard insurance | months@ | per month | | | |
| 1002. | Mortgage insurance | months@ | per month | | | |
| 1003. | City property taxes | months@ | per month | | | |
| 1004. | County property taxes | months@ | per month | | | |
| 1005. | Annual assessments | months@ | per month | | | |
| 1006. | | months@ | per month | | | |
| 1007. | | months@ | per month | | | |
| 1008. | | months@ | per month | | | |
| 1009. | Title Charges | | | | 450.00 | |
| 1100. | Title Charges | | | | | |
| 1101. | Settlement or closing fee | to Simon, Sigalos & Spyredes, PA | | | 475.00 | |
| 1102. | Abstract or title search | to Simon, Sigalos & Spyredes, PA | | | | |
| 1103. | Title examination | to Simon, Sigalos & Spyredes, PA | | | | |
| 1104. | Title insurance binder | to | | | | |
| 1105. | Document preparation | to | | | | |
| 1106. | Notary fees | to | | | | |
| 1107. | Attorney's fees | to | | | | |
| | (includes above items numbers: | ) | | | | |
| 1108. | Title insurance | to Simon, Sigalos & Spyredes, PA | | | 15,325.00 | |
| | (includes above items numbers: | ) | | | | |
| 1109. | Lender's coverage: Risk Premium 35.00 | INS AMT $ 3,375,000.00 | | | | |
| 1110. | Owner's coverage: Risk Premium 15,350.00 | INS AMT $ 5,100,000.00 | | | | |
| 1111. | Endorsements: FL9-1337 50; ALTA 3.25.00; ALTA 8.1-75.00 | | | | 1,382.50 | |
| 1112. | | to | | | | |
| 1113. | | to | | | | |
| 1200. | Government Recording and Transfer Charges | **Includes Release $10.00 | | | | |
| 1201. | Recording Fees: Deed $18.50; Mortgage(s) $222.00; Release $10.00 | | | | 222.00 | 18.50 |
| 1202. | City/county tax/stamps: Deed ; Mortgage(s) $57,693.00; Release(s) | | | | 7,693.00 | |
| 1203. | State tax/stamps: Deed $30,600.00; Mortgage(s) $13,387.50; Mortgage(s) | | | | 13,387.50 | 30,600.00 |
| 1204. | Capital Contribution | to Waters Estates | | | 1,347.00 | |
| 1205. | Estoppel Letter | to Gables Property | | | | 173.00 |
| 1300. | Additional Settlement Charges | | | | | |
| 1301. | Survey | to LandTech Surveying and Mapping | | | 450.00 | |
| 1302. | HOA Assessments Past Due | to Waters Estates | | | | 6,976.00 |
| 1303. | | to | | | | |
| 1304. | Federal Express/handling | to Simon, Sigalos & Spyredes, PA | | | 60.00 | 60.00 |
| 1305. | Wire Fees | to Simon, Sigalos & Spyredes, PA | | | 20.00 | 20.00 |
| 1306. | Assessments Due | to Fisher Island Community Association | | | 5,911.33 | |
| 1307. | 2nd Quarter Assessments | to Fisher Island Community Association | | | 4,315.25 | |
| 1308. | City Lien Letter | to One Stop Lien Search | | | | 25.00 |
| 1309. | 2006 Taxes | to Miami-Dade County Tax Collector | | | | 62,852.50 |
| 1400. | Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | | 91,288.83 | 337,711.35 |

CERTIFICATION
I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

SIG, LLC

_____                                    _____          3/7/07
Borrower        By:                                          By:        Seller        DATE

_____                                    _____
Borrower        By:                                          By:        Seller

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

SIMON, SIGALOS & SPYREDES, P.A.

_____                                    3/7/2007   Date
Settlement Agent

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

549924

EXHIBIT 10

NLG, LLC

**Plaintiff(s),**

vs.

ELIZABETH HAZAN

**Defendant(s),**

_____,

**ORDER
GRANTING/DENYING
PLAINTIFF'S/DEFENDANT'S**

_____

MAY 1, 2015

**THIS CAUSE** having come on to be heard on _Plaintiff's Motion for Entry_
on Plaintiff's/Defendant's Motion _of Judgt and Defendant's_
_____ _Motion to Amend Answer_

and the Court having heard arguments of counsel, and being otherwise advised in the premises, it is hereupon

**ORDERED AND ADJUDGED** that said Motion be, and the same is hereby

_The Motion for Judgment is deferred until after_
_the hearing in NY on the Consent Judgment,_
_and the Motion to Amend is Denied_

_____

_____

_____

**DONE AND ORDERED** in Chambers at Miami-Dade County, Florida this_____

day of

_May_ , _2015_ .

**Conformed Copy**

MAY 0 1 2015

Monica Gordo
**Circuit Court Judge**

CIRCUIT COURT JUDGE

ORIGINAL
~~JUDGE SAMANTHA RUIZ COHEN~~

**MONICA GORDO
CIRCUIT COURT JUDGE**

Copies furnished to: Counsel of Record

117_01-554  3/11

1 C......

EXHIBIT 11

B1 (Official Form 1)(04/13)

| United States Bankruptcy Court<br>Eastern District of New York | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Selective Advisors Group LLC** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all)<br>**47-4020670** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>**148 E. Montauk Hwy<br>Hampton Bays, NY**<br><div align="right">ZIP Code **11946**</div> | Street Address of Joint Debtor (No. and Street, City, and State):<br><div align="right">ZIP Code</div> |
| County of Residence or of the Principal Place of Business:<br>**Suffolk** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br><div align="right">ZIP Code</div> | Mailing Address of Joint Debtor (if different from street address):<br><div align="right">ZIP Code</div> |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

| **Type of Debtor**<br>(Form of Organization) (Check one box)<br><br>☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>■ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities,<br>check this box and state type of entity below.) | **Nature of Business**<br>(Check one box)<br><br>☐ Health Care Business<br>☐ Single Asset Real Estate as defined<br>in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>■ Other | **Chapter of Bankruptcy Code Under Which**<br>**the Petition is Filed** (Check one box)<br><br>■ Chapter 7<br>☐ Chapter 9     ☐ Chapter 15 Petition for Recognition<br>☐ Chapter 11        of a Foreign Main Proceeding<br>☐ Chapter 12     ☐ Chapter 15 Petition for Recognition<br>☐ Chapter 13        of a Foreign Nonmain Proceeding |
|---|---|---|
| **Chapter 15 Debtors**<br>Country of debtor's center of main interests:<br><br>Each country in which a foreign proceeding<br>by, regarding, or against debtor is pending: | **Tax-Exempt Entity**<br>(Check box, if applicable)<br><br>☐ Debtor is a tax-exempt organization<br>under Title 26 of the United States<br>Code (the Internal Revenue Code). | **Nature of Debts**<br>(Check one box)<br><br>☐ Debts are primarily consumer debts,     ■ Debts are primarily<br>defined in 11 U.S.C. § 101(8) as        business debts.<br>"incurred by an individual primarily for<br>a personal, family, or household purpose." |

| **Filing Fee** (Check one box)<br><br>■ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must<br>attach signed application for the court's consideration certifying that the<br>debtor is unable to pay fee except in installments. Rule 1006(b). See Official<br>Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must<br>attach signed application for the court's consideration. See Official Form 3B. | **Chapter 11 Debtors**<br>Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates)<br>are less than $2,490,925 *(amount subject to adjustment on 4/01/16 and every three years thereafter).*<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors,<br>in accordance with 11 U.S.C. § 1126(b). |
|---|---|

| **Statistical/Administrative Information**<br>☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>■ Debtor estimates that, after any exempt property is excluded and administrative expenses paid,<br>there will be no funds available for distribution to unsecured creditors. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|

Estimated Number of Creditors

| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-<br>49 | 50-<br>99 | 100-<br>199 | 200-<br>999 | 1,000-<br>5,000 | 5,001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 50,001-<br>100,000 | OVER<br>100,000 |

Estimated Assets

| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

Estimated Liabilities

| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

EXHIBIT 12

B1 (Official Form 1)(04/13)                                                                                                     Page 2

| **Voluntary Petition** | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | **Selective Advisors Group LLC** |

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet) | | |
|---|---|---|
| Location<br>Where Filed:  **- None -** | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br>**- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| | (To be completed if debtor is an individual whose debts are primarily consumer debts.) |
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) | I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b). |
| ☐ Exhibit A is attached and made a part of this petition. | **X** _____<br>    Signature of Attorney for Debtor(s)              (Date) |

| **Exhibit C** |
|---|
| Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety? |
| ☐ Yes, and Exhibit C is attached and made a part of this petition. |
| ■ No. |

| **Exhibit D** |
|---|
| (To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.) |
| ☐ Exhibit D completed and signed by the debtor is attached and made a part of this petition. |
| If this is a joint petition: |
| ☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition. |

| **Information Regarding the Debtor - Venue** |
|---|
| (Check any applicable box) |
| ■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District. |
| ☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District. |
| ☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District. |

| **Certification by a Debtor Who Resides as a Tenant of Residential Property** |
|---|
| (Check all applicable boxes) |
| ☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.) |
| _____<br>(Name of landlord that obtained judgment) |
| _____<br>(Address of landlord) |
| ☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and |
| ☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition. |
| ☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)). |

# EXHIBIT 12

B1 (Official Form 1)(04/13)                                                                                           **Page 3**

## Voluntary Petition

*(This page must be completed and filed in every case)*

Name of Debtor(s):

**Selective Advisors Group LLC**

### Signatures

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

_____
Date

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11. United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

**Signature of Attorney***

X **/s/ Evans M. Hillen**
Signature of Attorney for Debtor(s)

**Evans M. Hillen**
Printed Name of Attorney for Debtor(s)

**Vlahadamis & Hillen LLP**
Firm Name

**148 E Montauk Hwy
STE 3
Hampton Bays, NY 11946**

Address

**Email: evans@vhlawny.com**
**631-594-5400  Fax: 631-594-5401**
Telephone Number

**May 18, 2015**
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankrtpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of bankruptcy petition preparer or officer, principal, responsible person,or partner whose Social Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X **/s/ SEAN N MEEHAN**
Signature of Authorized Individual

**SEAN N MEEHAN**
Printed Name of Authorized Individual

**MANAGER**
Title of Authorized Individual

**May 18, 2015**
Date

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. §110; 18 U.S.C. §156.*

## EXHIBIT 12

LawOfficeofJ.HenryNierman
352 Seventh Ave
STE 714
New York, NY 10001


Mark D Cohen, PA
4000 Hollywood Blvd
STE 435 South
Hollywood, FL 33021

EXHIBIT 12

# United States Bankruptcy Court
## Eastern District of New York

In re    **Selective Advisors Group LLC**

Debtor(s)

Case No.

Chapter    **7**

## CORPORATE OWNERSHIP STATEMENT (RULE 7007.1)

Pursuant to Federal Rule of Bankruptcy Procedure 7007.1 and to enable the Judges to evaluate possible disqualification or recusal, the undersigned counsel for ___**Selective Advisors Group LLC**___ in the above captioned action, certifies that the following is a (are) corporation(s), other than the debtor or a governmental unit, that directly or indirectly own(s) 10% or more of any class of the corporation's(s') equity interests, or states that there are no entities to report under FRBP 7007.1:

■ None [*Check if applicable*]

**May 18, 2015**

Date

**/s/ Evans M. Hillen**

**Evans M. Hillen**

Signature of Attorney or Litigant

Counsel for    **Selective Advisors Group LLC**

**Vlahadamis & Hillen LLP**

**148 E Montauk Hwy**
**STE 3**
**Hampton Bays, NY 11946**
**631-594-5400 Fax:631-594-5401**
**evans@vhlawny.com**

EXHIBIT 12

1  UNITED STATES BANKRUPTCY COURT

2  EASTERN DISTRICT OF NEW YORK

3  CASE NO. 15-72153-reg

4  - - - - - - - - - - - - - - - - - x

5  In the Matter of:

6

7  SELECTIVE ADVISORS GROUP, LLC,

8

9          Debtor.

10 - - - - - - - - - - - - - - - - - x

11

12

13                      341 HEARING

14           CONDUCTED BY MARC A. PERGAMENT

15

16                    JULY 1, 2015

17

18

19

20

21

22

23

24

25

EXHIBIT 13

```
1   A P P E A R A N C E S :

2   VLAHDAMIS & HILLEN, LLP

3         Attorney for Debtor

4         148 East Montauk Highway

5         Suite 3

6         Hampton Bays, New York 11946

7

8   BY:  EVANS M. HILLEN, ESQ.

9

10  ALSO PRESENT:

11  SEAN NEAL MEEHAN

12  CHRISTOPHER KOSACHUK

13  ELIZABETH HAZAN

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 13

```
1                    P R O C E E D I N G S
2                    MR. PERGAMENT:  Selective Advisors
3          Group, LLC.  Creditors being present, do
4          creditors wish to elect a trustee?
5                    None being heard.  (Indiscernible)
6          qualifies.
7                    Sir, identify yourself, please.
8                    Excuse me.  What's your name, sir?
9                    MR. MEEHAN:  Sean.
10                   MR. PERGAMENT:  What's your last name,
11         sir?
12                   MR. MEEHAN:  Meehan.
13                   MR. PERGAMENT:  Okay.  Sean, S-E-A-N?
14                   MR. MEEHAN:  Uh-huh.
15                   MR. PERGAMENT:  Is that a yes?
16                   MR. MEEHAN:  Yes, it is.
17                   MR. PERGAMENT:  Okay.  And, Mr. Meehan,
18         what's your add -- your business and home
19         address?
20                   MR. MEEHAN:  Well --
21                   MR. PERGAMENT:  I want both.
22                   MR. HILLEN:  What's your home address?
23                   MR. MEEHAN:  My home address, 6913 --
24                   MR. PERGAMENT:  6913 --
25                   MR. MEEHAN:  -- Valencia --
```

EXHIBIT 13

1              MR. PERGAMENT:  Valencia?

2              MR. MEEHAN:  Yeah.  Drive.

3              MR. PERGAMENT:  What town?

4              MR. MEEHAN:  Miami, Florida 33109.

5              MR. PERGAMENT:  Whoa.  Whoa.  Slow

6       down.  33 --

7              MR. MEEHAN:  109.

8              MR. PERGAMENT:  Okay.  And what is your

9       relationship to this debtor?

10              MR. MEEHAN:  I'm not sure I understand

11       the question.

12              MR. PERGAMENT:  Okay.  Are you a member

13       of Selective Advisors Group?

14              MR. MEEHAN:  Yes.  I'm the manager.

15              MR. PERGAMENT:  Are you a member as

16       well?

17              MR. MEEHAN:  Uh-huh.

18              MR. PERGAMENT:  Yes?  I need verbal

19       responses.

20              MR. MEEHAN:  Yes.

21              MR. PERGAMENT:  Not hmms.  So you're a

22       member and a manager.  Is that correct?

23              MR. MEEHAN:  That's correct.

24              MR. PERGAMENT:  Okay.  Raise your right

25       hand, please.

EXHIBIT 13

```
 1                    SEAN MEEHAN SWORN

 2               MR. PERGAMENT:  Mr. Meehan, I want

 3      verbal answers.

 4               MR. MEEHAN:  Sure.

 5               MR. PERGAMENT:  Counsel, your

 6      appearance.

 7               MR. HILLEN:  Evans Hillen on behalf of

 8      the debtor, Selective Advisors Group, admitted in

 9      the Eastern District.

10               MR. PERGAMENT:  Okay.  I was provided

11      with bankruptcy papers by hand that was

12      delivered, I believe, on the 29th or 30th, this

13      week.  It is  -- I'm looking for something with

14      Mr. Meehan's signature.  Did he sign any of these

15      papers, Counsel?

16               MR. HILLEN:  Yes, sir.  It should be on

17      the second page -- the page on the lower-right

18      hand box, page 3.

19               MR. PERGAMENT:  Page -- there it is.

20               MR. HILLEN:  One more.

21               MR. PERGAMENT:  Is this your signature

22      on the bottom of the bankruptcy papers?

23               MR. MEEHAN:  Yes.

24               MR. PERGAMENT:  Is everything correct?

25               MR. MEEHAN:  Yes.
```

EXHIBIT 13

1                    MR. PERGAMENT:  Any changes you want to
2          make?
3                    MR. MEEHAN:  No.
4                    MR. PERGAMENT:  Okay.  I have your
5          driver's license that indicates an address of 103
6          West Tiana Road in Hampton Bays.  Is that your
7          address?
8                    MR. MEEHAN:  Yes.
9                    MR. PERGAMENT:  Is that still your
10         address?
11                   MR. MEEHAN:  Yes.
12                   MR. PERGAMENT:  Which is your permanent
13         -- your residence, sir, the one in Miami or the
14         one in Hampton Bays?
15                   MR. MEEHAN:  Permanent, what's that
16         mean?  What's the definition of permanent?
17                   MR. PERGAMENT:  Okay.  We'll do it a
18         different way.  Where do you spend -- out of 30
19         days of the month, where do you spend your
20         nights?
21                   MR. MEEHAN:  Miami, Florida.
22                   MR. PERGAMENT:  And how much time do
23         you spend in Hampton Bays?
24                   MR. MEEHAN:  Summer months, two, three.
25                   MR. PERGAMENT:  Okay.  And who owns 103

EXHIBIT 13

1        West Tiana?

2                  MR. MEEHAN:  It's a rental.

3                  MR. PERGAMENT:  Okay.  Are you there

4        now?

5                  MR. MEEHAN:  No.

6                  MR. PERGAMENT:  Who is in that house

7        now?

8                  MR. MEEHAN:  My parents.

9                  MR. PERGAMENT:  Okay.  Is everything

10       correct in your bankruptcy papers that you

11       signed?

12                 MR. MEEHAN:  Yeah.

13                 MR. PERGAMENT:  Are there any changes

14       that you want to make?  You have to keep your

15       voice up, please, sir.

16                 MR. MEEHAN:  I said no.

17                 MR. HILLEN:  Yes or no.

18                 MR. PERGAMENT:  Thank you.

19                 Who were the other members of Selective

20       Advisors Group, if any?

21                 MR. MEEHAN:  Just me.

22                 MR. PERGAMENT:  So you're the sole

23       member?

24                 MR. MEEHAN:  Yes.

25                 MR. PERGAMENT:  And are there any other

EXHIBIT 13

```
 1        managers?
 2                    MR. MEEHAN:  No.
 3                    MR. PERGAMENT:  Okay.  What assets does
 4        Selective Group Advise -- excuse me -- what
 5        assets does Selective Advisers Group own?
 6                    MR. MEEHAN:  You know, what page are we
 7        on?
 8                    MR. PERGAMENT:  No.  I'm not asking you
 9        about pages, sir.  I'm asking you what assets it
10        owns.
11                    MR. MEEHAN:  Well, I'm going to
12        according to what I --
13                    MR. PERGAMENT:  No.  You --
14                    MR. MEEHAN:  -- wrote down.
15                    MR. PERGAMENT:  You don't -- you put
16        that aside.  I'm here to ask -- ask questions.
17        I'm not asking you to repeat what's in a piece of
18        writing.  I want to know what assets the company
19        owns.
20                    MR. HILLEN:  What are the assets of the
21        company?
22                    MR. MEEHAN:  Well, I see here there's
23        none.  So it's --
24                    MR. PERGAMENT:  I'm asking you, sir.  I
25        don't care what your attorney put down.
```

```
 1                    MR. MEEHAN:  Okay.
 2                    MR. PERGAMENT:  I want to know what
 3       assets you own.
 4                    Thank you, Counsel.  Hold that.  Thank
 5       you.
 6                    I just think this is --
 7                    MR. MEEHAN:  We have a judgment.
 8                    MR. PERGAMENT:  Who has a judgment?
 9                    MR. MEEHAN:  That's an asset.
10                    MR. PERGAMENT:  Who has a judgment?
11                    MR. MEEHAN:  Selective Advisors.
12                    MR. PERGAMENT:  Against who?
13                    MR. MEEHAN:  NLG.
14                    MR. PERGAMENT:  And who is NLG?
15                    MR. MEEHAN:  I couldn't tell you that.
16                    MR. PERGAMENT:  Well, who obtained this
17       judgment on behalf of Selective Advisors Group
18       against NLG?
19                    MR. MEEHAN:  Who --
20                    MR. PERGAMENT:  Yeah.
21                    MR. MEEHAN:  -- obtained --
22                    MR. PERGAMENT:  Obtained the judgment.
23       Yes.
24                    MR. MEEHAN:  -- a judgment.
25                    MR. PERGAMENT:  Did you have a lawyer
```

EXHIBIT 13

```
 1         do this?
 2                   MR. MEEHAN:  Did I have a lawyer do
 3         this?  I don't understand your question.
 4                   MR. PERGAMENT:  What don't you
 5         understand?
 6                   MR. MEEHAN:  It's very forthcoming of
 7         you and you're --
 8                   MR. PERGAMENT:  What don't you -- you
 9         know what, Mr. Meehan?  I'm trying to keep my
10         patience here.  You filed --
11                   MR. MEEHAN:  So just go slowly with me.
12         That's all I'm asking.
13                   MR. PERGAMENT:  Go slowly?  I asked you
14         which attorney assisted you in obtaining a
15         judgment against NLG?
16                   MR. MEEHAN:  Which attorney?
17                   MR. PERGAMENT:  Excuse me.  If you want
18         to speak, do so outside.  You understand?
19                   UNIDENTIFIED SPEAKER:  Yes.
20                   MR. PERGAMENT:  Good.
21                   MR. HILLEN:  I can't answer the
22         question.  As I understand the question --
23                   MR. PERGAMENT:  No.  No.  No.
24                   MR. MEEHAN:  I don't understand --
25                   MR. PERGAMENT:  No.
```

EXHIBIT 13

1            MR. MEEHAN:  -- the question.

2            MR. PERGAMENT:  What don't you

3    understand?  Which words don't you understand to

4    my question?

5            MR. MEEHAN:  What are -- which state

6    are you talking about?  That's --

7            MR. PERGAMENT:  Anywhere.  You listed

8    in your bankruptcy your only asset being this

9    judgment against NLG.

10           MR. MEEHAN:  Sure.

11           MR. PERGAMENT:   Okay.  Did you have

12   NLG agree to pay you money?

13           MR. MEEHAN:  Did I have NLG agree to

14   pay me money?

15           MR. PERGAMENT:  Yeah.

16           Please

17           MR. MEEHAN:  I don't understand how

18   that --

19           MR. PERGAMENT:  Please -- please --

20           MR. MEEHAN:  -- question is -- is

21   relevant.

22           MR. PERGAMENT:  -- please leave the

23   room.  Excuse me.  Hold on.  Your name, please.

24           UNIDENTIFIED SPEAKER:  (Indiscernible).

25           MR. PERGAMENT:  What's your name?

EXHIBIT 13

```
1                    MS. HAZAN:  Elizabeth Hazan.

2                    MR. PERGAMENT:  Please leave the room

3           because you're interrupting my examination and

4           it's unacceptable.

5                    MR. HILLEN:  Sit up straight.

6                    MR. MEEHAN:  I'm just not understanding

7           what -- what you're asking me.

8                    MR. PERGAMENT:  You're not

9           understanding?  Okay.  You said that Selective

10          Advisors Group has a judgment against NLG.  Is

11          that correct?

12                   MR. MEEHAN:  That is correct.

13                   MR. PERGAMENT:  How did that come

14          about?

15                   MR. MEEHAN:  How did it come about?

16                   MR. PERGAMENT:  Yeah.

17                   MR. MEEHAN:  It was given to me.

18                   MR. PERGAMENT:  Who gave it to you?

19                   MR. MEEHAN:  Another company.

20                   MR. PERGAMENT:  Who gave it to you?

21                   MR. MEEHAN:  Quebec.

22                   MR. PERGAMENT:  Quebec?

23                   MR. MEEHAN:  Quebec.

24                   MR. PERGAMENT:  Is that the full name

25          of the company?
```

EXHIBIT 13

1                    MR. MEEHAN:  Quebec, Inc., LLC?

2                    MR. PERGAMENT:  I'm asking you, sir.

3                    MR. MEEHAN:  I'm telling you.

4                    MR. PERGAMENT:  Okay.  So Quebec, it

5         assigned the judgment --

6                    MR. MEEHAN:  Correct.

7                    MR. PERGAMENT:  -- to Selective?  Okay.

8         And what did you pay for that assignment?

9                    MR. MEEHAN:  I didn't pay for it.  It

10        was given to me.

11                   MR. PERGAMENT:  It was a gift?

12                   MR. MEEHAN:  Yes.

13                   MR. PERGAMENT:  Okay.  And who at

14        Quebec agreed to give you the assignment?

15                   MR. MEEHAN:  Raymond Houle.

16                   MR. PERGAMENT:  Raymond, how do you

17        spell his last name?

18                   MR. MEEHAN:  H-O-U-L-E.

19                   MR. PERGAMENT:  And where does Mr.

20        Houle reside?

21                   MR. MEEHAN:  Canada.

22                   MR. PERGAMENT:  In Canada.  Okay.  Do

23        you know where in Canada?  It's a big country.

24                   MR. MEEHAN:  Montreal.

25                   MR. PERGAMENT:  In Montreal.  Okay.

EXHIBIT 13

```
 1           How did it come about that Mr. Houle assigned

 2           Quebec's judgment to Selective Advisors Group?

 3                   MR. MEEHAN:  Well, Mr. Houle, his

 4           health, he's not well and he tried to get the

 5           money from the judgment unsuccessfully due to his

 6           health, being a Canadian citizen, his age.  We

 7           agreed that I would pursue it.  And if we

 8           actually obtained anything we would work it out

 9           at that point.

10                   MR. PERGAMENT:  Is that in writing?  Is

11           that agreement in writing?  No?  Is your answer

12           no?

13                   MR. MEEHAN:  My answer is no.

14                   MR. PERGAMENT:  Okay.  And who is NLG?

15                   MR. MEEHAN:  We don't know.

16                   MR. PERGAMENT:  Did Mr. Houle tell you

17           who it was?

18                   MR. MEEHAN:  Well, we tried to figure

19           out who NLG is.

20                   MR. PERGAMENT:  Well, wait a second.

21           Quebec got a judgment against NLG.  Is that

22           correct?

23                   MR. MEEHAN:  Yeah.  It's a company.

24                   MR. PERGAMENT:  It's a company.

25                   MR. MEEHAN:  Supposedly in Nevis.
```

1                    MR. PERGAMENT:  What -- excuse me?

2                    MR. MEEHAN:  It's a company.

3                    MR. PERGAMENT:  Supposedly in what?

4                    MR. MEEHAN:  Nevis or some -- some

5          offshore company.

6                    MR. PERGAMENT:  Offshore company.

7          Okay.  Did Quebec lend money to NLG?

8                    MR. MEEHAN:  Did Quebec lend money to

9          NLG?  I'm not sure.

10                    MR. PERGAMENT:  Well, how did it come

11          about that NLG owed money to Quebec?

12                    MR. MEEHAN:  Some kind of debt.

13                    MR. PERGAMENT:  I -- I understand that.

14          I'm asking what kind of debt.  You know nothing

15          about it?

16                    MR. MEEHAN:  That's all I know.

17                    MR. PERGAMENT:  That's all you know.

18          And do you have the exact address of Mr. Houle?

19                    MR. MEEHAN:  No.

20                    MR. PERGAMENT:  Do you have his phone

21          number?

22                    MR. MEEHAN:  No.

23                    MR. PERGAMENT:  Well, how did he

24          communicate with you?

25                    MR. MEEHAN:  Email.

EXHIBIT 13

1          MR. PERGAMENT:  Email.  What's his

2     email address?

3          MR. MEEHAN:  I'm not sure which one

4     he's using right now.

5          MR. PERGAMENT:  Counsel --

6          MR. HILLEN:  Yes, sir.

7          MR. PERGAMENT:  -- you have 48 hours to

8     provide me with Mr. Houle's address, phone

9     numbers, email addresses, any other way of

10    contact.

11         How did you know Mr. Houle?  How did

12    you hook up with him?  Are you friends?

13         MR. MEEHAN:  I guess you could say

14    we're friends.

15         MR. PERGAMENT:  You're friends.  How

16    long do you know him?

17         MR. MEEHAN:  Three years.

18         MR. PERGAMENT:  Three years.  How do

19    you know him, as a friend, as a business

20    associate?

21         MR. MEEHAN:  A friend.

22         MR. PERGAMENT:  And he didn't tell you

23    why NLG owed money to Quebec?

24         MR. MEEHAN:  No.

25         MR. PERGAMENT:  No?  How much is that

EXHIBIT 13

1       judgment?

2                   MR. MEEHAN:  Which judgment?

3                   MR. PERGAMENT:  The judgment that was

4       assigned to Selective Advisors --

5                   MR. MEEHAN:  Are you asking at the time

6       or are you asking now?

7                   MR. PERGAMENT:  At the time.

8                   MR. MEEHAN:  $5 million.

9                   MR. PERGAMENT:  $5 million.  So that's

10      a lot of money, right?

11                  MR. MEEHAN:  To some.

12                  MR. PERGAMENT:  It's not to you, I take

13      it?

14                  MR. MEEHAN:  If you can actually

15      collect on it, it would be, yeah.

16                  MR. PERGAMENT:  Right.  I'm trying to

17      understand this judgment.

18                  Now what debts does Selective Advisors

19      have?

20                  MR. MEEHAN:  We have --

21                  MR. PERGAMENT:  Who does it owe money

22      to?

23                  MR. MEEHAN:  We have a lawyer we owe

24      money to.

25                  MR. PERGAMENT:  Selective owes money to

EXHIBIT 13

1           a lawyer?

2                        MR. MEEHAN:  Yeah.

3                        MR. PERGAMENT:  Okay.  And who is that

4           lawyer?

5                        MR. MEEHAN:  Joseph Nierman (ph).

6                        MR. PERGAMENT:  And that's in New York

7           City.  Is that right?

8                        MR. MEEHAN:  Yes.

9                        MR. PERGAMENT:  But do you agree you

10          owe him the money?

11                       MR. MEEHAN:  Do I agree that I owe him

12          money?

13                       MR. PERGAMENT:  Yeah, because your

14          bankruptcy papers say you dispute that you owe

15          him any money.

16                       MR. MEEHAN:  It's not disputed whether

17          we owe money or not.

18                       MR. PERGAMENT:  What's disputed?

19                       MR. MEEHAN:  It's what the amount is.

20                       MR. PERGAMENT:  Well, what does he

21          claim you owe him?

22                       MR. MEEHAN:  $3,500.

23                       MR. PERGAMENT:  Okay.  And what do you

24          think you owe him?

25                       MR. MEEHAN:  It could be a little -- a

EXHIBIT 13

1          little -- 3,500.

2                    MR. PERGAMENT:  So he's -- now what

3          services did he provide that you owe him money?

4                    MR. MEEHAN:  What services?  Legal

5          counsel.

6                    MR. PERGAMENT:  What did he provide?

7          What kind of legal counsel did he provide?

8                    MR. MEEHAN:  He appeared in front of

9          Judge Hagler (ph).

10                   MR. PERGAMENT:  Judge Hagler.  Well,

11         who is Judge Hagler?

12                   MR. MEEHAN:  He's a judge in New York

13         City.

14                   MR. PERGAMENT:  And what was his

15         purpose of appearing before Judge Hagler in New

16         York City?

17                   MR. MEEHAN:  His purpose was to

18         maintain the judgment --

19                   MR. PERGAMENT:  To maintain or --

20                   MR. MEEHAN:  -- from someone trying to

21         dismiss the judgment.

22                   MR. PERGAMENT:  And who was trying to

23         dismiss the judgment?

24                   MR. MEEHAN:  NLG.

25                   MR. PERGAMENT:  And when you say

EXHIBIT 13

1          Quebec, Inc., are you referring to 9197-5904

2          Quebec, Inc.?

3                    MR. MEEHAN:  Yes.

4                    MR. PERGAMENT:  That's the company.

5          Now you list here that you have a garnishment

6          against a Christopher Kosachuk.  Is that right?

7                    MR. MEEHAN:  I don't know if that's how

8          you pronounce his name.  Yeah --

9                    MR. PERGAMENT:  Well, that's what's --

10                   MR. MEEHAN:  -- that's correct.

11                   MR. PERGAMENT:  -- written here.

12                   MR. MEEHAN:  That's correct.

13                   MR. PERGAMENT:  So you have a

14         garnishment pending.  Why do you have that

15         pending against -- why is that listed in your

16         bankruptcy case?

17                   MR. MEEHAN:  Why is it listed?

18                   MR. PERGAMENT:  Yeah.

19                   MR. MEEHAN:  Because you want to know

20         what Selective Advisors has as far as court

21         cases.  Is that correct?  So we listed it.

22                   MR. PERGAMENT:  Well, did -- did Quebec

23         -- 9197-5904 Quebec, Inc. assign a judgment that

24         it had against Mr. Kosachuk to Selective

25         Advisors?

EXHIBIT 13

1                    MR. MEEHAN:  Yes.

2                    MR. PERGAMENT:  That as well?  So there

3      -- so Quebec -- the Quebec company assigned the

4      judgment it has against NLG, the judgment it has

5      against Mr. Kosachuk --

6                    MR. MEEHAN:  Correct.

7                    MR. PERGAMENT:  -- and also the

8      judgment against Continental Casualty?

9                    MR. MEEHAN:  Yeah.

10                    MR. PERGAMENT:  All those got assigned

11      to Selective.  Is that right?

12                    MR. MEEHAN:  That's correct.

13                    MR. PERGAMENT:  And all those

14      assignments were for no money being paid?

15                    MR. MEEHAN:  If we collected --

16                    MR. PERGAMENT:  Right.

17                    MR. MEEHAN:  -- that would have been

18      money --

19                    MR. PERGAMENT:  Is that in writing,

20      this arrangement?

21                    MR. MEEHAN:  Does it have to be?

22                    MR. PERGAMENT:  I -- excuse me.  You

23      don't ask me questions.  You answer mine.

24                    MR. MEEHAN:  Well, tell me --

25                    MR. PERGAMENT:  I don't like --

EXHIBIT 13

1              MR. MEEHAN:  (Indiscernible).

2              MR. PERGAMENT:  -- your attitude.

3              MR. MEEHAN:  I'm just trying to

4         understand the question.

5              MR. PERGAMENT:  What didn't you

6         understand about my questions?

7              MR. MEEHAN:  I just told you.

8              MR. PERGAMENT:  You don't understand.

9         Why don't we start from the beginning.  Are you a

10        high school graduate, sir?

11             MR. MEEHAN:  I'm a college graduate.

12             MR. PERGAMENT:  What high school did

13        you graduate from, sir?

14             MR. MEEHAN:  Hampton Bays.

15             MR. PERGAMENT:  Hampton Bays.  What

16        year did you graduate from Hampton --

17             MR. MEEHAN:  Why is --

18             MR. PERGAMENT:  -- Bays?

19             MR. MEEHAN:  -- this relevant?

20             MR. PERGAMENT:  I -- because I want to

21        know your background, sir.

22             MR. MEEHAN:  2002.

23             MR. PERGAMENT:  Thank you.  What

24        college did you attend?

25             MR. MEEHAN:  Franklin Pierce

EXHIBIT 13

```
 1          University, 2006.

 2               MR. HILLEN:  Answer the question.

 3               MR. PERGAMENT:  2006.  And you

 4     graduated with a BA or a BS?

 5               MR. MEEHAN:  Double major, BA.

 6               MR. PERGAMENT:  Did you attend any

 7     post-undergraduate education?  What were your

 8     majors in college?

 9               MR. MEEHAN:  Criminal justice.

10               MR. PERGAMENT:  You said double major.

11     What was --

12               MR. MEEHAN:  Mass communication.

13               MR. PERGAMENT:  -- the other major?

14     Excuse me?

15               MR. MEEHAN:  Mass comm.

16               MR. PERGAMENT:  Mass communication.

17     And what is your date of birth?

18               MR. MEEHAN:  4/3/84.

19               MR. PERGAMENT:  Did you meet with Mr.

20     Nierman before he saw Judge Hagler?

21               MR. MEEHAN:  Yeah.

22               MR. PERGAMENT:  And what did you

23     discuss with Mr. Hagler?

24               MR. MEEHAN:  What did I -- I don't talk

25     to the judge.  I talked to my lawyer.
```

EXHIBIT 13

1                    MR. PERGAMENT:  What did you discuss

2         with Mr. Nierman before he appeared before Judge

3         Hagler?

4                    MR. MEEHAN:  How are we going to get

5         this to go away.

6                    MR. PERGAMENT:  How he's going to get

7         it to go away?

8                    MR. MEEHAN:  Yeah, the pests who were

9         trying to dismiss our judgment.

10                    MR. PERGAMENT:  And that was NLG trying

11        to do that?

12                    MR. MEEHAN:  Yeah.

13                    MR. PERGAMENT:  Was Mr. Kosachuk trying

14        to do that as well?

15                    MR. MEEHAN:  I guess.  He claims that

16        he's supposedly in charge.  But --

17                    MR. PERGAMENT:  Who claims that he's in

18        charge of what?

19                    MR. MEEHAN:  He does.

20                    MR. PERGAMENT:  Who's he?

21                    MR. MEEHAN:  This gentleman right here.

22                    MR. PERGAMENT:  Mr. Kosachuk.  You

23        pointed to Mr. Kosachuk.  Is that correct?

24                    MR. MEEHAN:  I -- I guess so.  I don't

25        see his ID.  I don't know.  I've never met him in

EXHIBIT 13

 1      person.

 2              MR. PERGAMENT:  Oh, so you're just --

 3      but how do you know the gentleman, then?

 4              MR. MEEHAN:  Well, you know, there's

 5      pictures and social media.

 6              MR. PERGAMENT:  Social media.  What

 7      social media are we talking about?

 8              MR. MEEHAN:  Google.

 9              MR. PERGAMENT:  Google.  So you googled

10      Mr. Kosachuk.  Is that right?

11              MR. MEEHAN:  No.  I didn't.

12              MR. PERGAMENT:  Oh, so how did you see

13      his picture?

14              MR. MEEHAN:  Someone else did it for

15      me.

16              MR. PERGAMENT:  Who did that?

17              MR. MEEHAN:  I don't know.

18              MR. PERGAMENT:  You don't remember?

19              MR. MEEHAN:  I don't remember.

20              MR. PERGAMENT:  Was it done a week ago,

21      a month ago or six years ago?

22              MR. MEEHAN:  Years ago.

23              MR. PERGAMENT:  Years ago.  What was

24      the reason why Selective Advisors Group filed

25      bankruptcy?

EXHIBIT 13

1                  MR. MEEHAN:  Because I want to try to

2       bring my attorney back.

3                  MR. PERGAMENT:  I don't understand.

4       What does that mean?

5                  MR. MEEHAN:  I want to bring Joseph

6       Nierman back --

7                  MR. PERGAMENT:  Back --

8                  MR. MEEHAN:  -- to settle the debt into

9       the case that we're talking about.

10                MR. PERGAMENT:  So you filed bankruptcy

11      holding a $5 million judgment to discharge a

12      $3,500 bill.  Is that correct?

13                MR. MEEHAN:  No.

14                MR. PERGAMENT:  Then why did you file

15      bankruptcy?

16                MR. MEEHAN:  Because there's no money

17      in that $5 million judgment.  It's uncollectable.

18                MR. PERGAMENT:  It's uncollectable.

19      Okay.

20                Now so I understand, is there any other

21      proceedings in any other state involving

22      Selective Advisors Group?

23                MR. MEEHAN:  Yes.

24                MR. PERGAMENT:  And where are those

25      proceedings pending?

EXHIBIT 13

1                    MR. MEEHAN:  Pennsylvania.

2                    MR. PERGAMENT:  What's pending in

3          Pennsylvania?

4                    MR. MEEHAN:  Garnishments.

5                    MR. PERGAMENT:  What else is pending?

6                    MR. MEEHAN:  Just two garnishments.

7                    MR. PERGAMENT:  Uh-huh.  Is there

8          anything pending in Florida?

9                    MR. MEEHAN:  Yes, there is.

10                    MR. PERGAMENT:  What's pending in

11          Florida?

12                    MR. MEEHAN:  Well, pending -- Mr. --

13                    MR. HILLEN:  Your Honor, are you making

14          reference to the --

15                    MR. MEEHAN:  I don't think I have

16          anything pending.

17                    MR. PERGAMENT:  Yeah.  You can show him

18          the papers.

19                    MR. MEEHAN:  Sure.

20                    MR. HILLEN:  These are the list of

21          suits that were included on the petition.  The

22          thing he's referring to is the suit.

23                    MR. MEEHAN:  Yeah.

24                    MR. HILLEN:  Okay.

25                    MR. MEEHAN:  That -- we spoke about

EXHIBIT 13

1           that one.
2                   MR. HILLEN:  Yeah, but he's asking you
3           again.
4                   MR. MEEHAN:  Okay.  So, yes.
5                   MR. HILLEN:  You need to --
6                   MR. PERGAMENT:  What is the lawsuit in
7           Florida?  What are you trying to do in Florida?
8                   MR. MEEHAN:  This says this, though.
9           All these pages look the same.  Oh, now I see the
10          pending.  There's a writ of bodily attachment
11          against the individual, Chris Kosachuk,
12          Christopher.  That's what's pending.
13                  MR. PERGAMENT:  Do you know a Darius
14          Marzec?
15                  MR. MEEHAN:  Yeah.
16                  MR. PERGAMENT:  Who is he?
17                  MR. MEEHAN:  He's a lawyer.
18                  MR. PERGAMENT:  How do you know him?
19                  MR. MEEHAN:  How do I know him?  I know
20          him as a lawyer.
21                  MR. PERGAMENT:  Okay.  Now I'm a little
22          bit confused, and maybe you could help me.
23                  MR. MEEHAN:  Maybe.
24                  MR. PERGAMENT:  And maybe not.  You
25          told me Mr. Houle is the -- was the owner of

EXHIBIT 13

1          9197-5904 Quebec, Inc.  Is that right?

2                    MR. MEEHAN:  Is that -- I'm not sure

3          about the numbers you said.

4                    MR. PERGAMENT:  Well, it's the name of

5          the company.  Here, you see the assignment of

6          judgment?

7                    MR. MEEHAN:  Sure.

8                    MR. PERGAMENT:  So that says 9197-5904

9          Quebec, Inc.  That's his company, right?

10                    MR. MEEHAN:  Yeah.

11                    MR. PERGAMENT:  Okay.  Who owned NLG,

12          do you know?

13                    MR. MEEHAN:  Do I know who owns it?

14                    MR. PERGAMENT:  Yeah.

15                    MR. MEEHAN:  I don't know.

16                    MR. PERGAMENT:  Do you know if Mr.

17          Houle owns it?

18                    MR. MEEHAN:  He doesn't own it.

19                    MR. PERGAMENT:  Do you know if Mr.

20          Houle was its manager?

21                    MR. MEEHAN:  Well --

22                    MR. PERGAMENT:  Is it --

23                    MR. MEEHAN:  -- we did step in their

24          shoes --

25                    MR. PERGAMENT:  Is Mr. --

```
 1                     MR. MEEHAN:  -- for a period --
 2                     MR. PERGAMENT:  No.  That's not my
 3          question.  Is Mr. Houle the --
 4                     MR. MEEHAN:  Well, I'm --
 5                     MR. PERGAMENT:  -- manager of --
 6                     MR. MEEHAN:  -- you want --
 7                     MR. PERGAMENT:  -- NLG?
 8                     MR. MEEHAN:  Currently today?
 9                     MR. PERGAMENT:  At any time in the last
10          five years?
11                     MR. MEEHAN:  Yes, he was.
12                     MR. PERGAMENT:  So he was --
13                     MR. MEEHAN:  You heard me.  Yes.
14                     MR. PERGAMENT:  He -- excuse me.
15                     MR. MEEHAN:  I just want to be clear.
16                     MR. PERGAMENT:  You're not being clear.
17          Your testimony is Mr. Houle was both the manager
18          of 9197-5904 Quebec, Inc. and the manager of NLG,
19          LLC.  Is that right?
20                     MR. MEEHAN:  Is that right?
21                     MR. PERGAMENT:  Yes.  That's my
22          question.
23                     MR. MEEHAN:  Can you repeat the
24          question?
25                     MR. PERGAMENT:  Was Mr. Houle the
```

1          manager of both companies in the last five years?

2                    MR. MEEHAN:  At the same time?

3                    MR. PERGAMENT:  At any time.

4                    MR. MEEHAN:  Yeah.  He was.

5                    MR. PERGAMENT:  So he confessed

6          judgment on behalf of NLG to 9197-5904 Quebec.

7          Is that right?

8                    MR. MEEHAN:  Yeah.

9                    MR. PERGAMENT:  He did that.  Why did

10         he do that?

11                   MR. MEEHAN:  Because they owed him

12         money.

13                   MR. PERGAMENT:  Oh.  His own company

14         owed him money so he confessed judgment?

15                   MR. MEEHAN:  Well, those -- the -- all

16         this was already argued.

17                   MR. PERGAMENT:  I --

18                   MR. MEEHAN:  So --

19                   MR. PERGAMENT:  Excuse me.  You're in

20         front of me.  You are to answer my questions.  If

21         you don't want to answer my questions, we'll go

22         see Judge -- who has this case?  Judge Grossman

23         and you can explain to Judge Grossman under oath.

24         Tell me what you would rather do.

25                   MR. MEEHAN:  I would rather stay here.

EXHIBIT 13

1            MR. PERGAMENT:  Then you answer my

2      question and don't -- don't have attitude with me

3      and don't ask me questions.  Is that clear?

4            MR. MEEHAN:  Yes.

5            MR. PERGAMENT:  Good.

6            Counsel, is that clear?

7            MR. HILLEN:  Yes, sir.

8            MR. PERGAMENT:  Good.  Back to my

9      question, you're testifying that Mr. Houle

10     confessed judgment from one of his companies to

11     another one of his companies.  Is that right?

12           MR. MEEHAN:  It's a confusing question.

13           MR. PERGAMENT:  What's confusing about

14     it?

15           MR. MEEHAN:  Just the way you word it.

16           MR. PERGAMENT:  I'm sorry.  Do you

17     understand it?

18           MR. MEEHAN:  Can you repeat it, please?

19           MR. PERGAMENT:  Why did Mr. Houle

20     confess judgment on behalf of NLG for the benefit

21     of 9197-5904 Quebec, Inc.?

22           MR. MEEHAN:  Because they were owed

23     money.

24           MR. PERGAMENT:  How much money was

25     owed?

EXHIBIT 13

Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400

1               MR. MEEHAN:  $5 million.

2               MR. PERGAMENT:  And do you know the

3      basis of the $5 million debt?  Was that a loan?

4               MR. MEEHAN:  Was it a loan?

5               MR. PERGAMENT:  How -- how did it come

6      about that he owed $5 million?

7               MR. MEEHAN:  I wasn't involved.

8               MR. PERGAMENT:  Did you ask him?

9               MR. MEEHAN:  No, I didn't.

10              MR. PERGAMENT:  And Mr. Houle just

11     called you up and said, do me a favor, Sean.  I

12     want to assign this $5 million judgment that I

13     have to your company, Selective, and you'll pay

14     me down the road.  Is that right?  Is that what

15     you want me to believe?

16              MR. MEEHAN:  It's not about what you

17     want to believe.

18              MR. PERGAMENT:  Is that what you're

19     asking us to believe?

20              MR. MEEHAN:  I'm not asking you to

21     believe.  It's the facts.

22              MR. PERGAMENT:  It's the facts.

23         (Pause)

24              MR. PERGAMENT:  Who is Evguenia,

25     E-V-G-U-E-N-I-A Lorret, L-O-R-R-E-T?

1              MR. MEEHAN:  She was one of the owners

2       of 6913 Valencia where her home was

3       (indiscernible).

4              MR. PERGAMENT:  And who is Nina Gog --

5       G-O-G-I-T-I-D-Z-E?

6              MR. MEEHAN:  I don't know who that is.

7              MR. PERGAMENT:  Okay.  Was Mr. Nierman

8       trying to enforce his claim against Selective

9       Advisor Group?

10             MR. MEEHAN:  He was trying to enforce

11      his claim?

12             MR. PERGAMENT:  Yeah.  You filed

13      bankruptcy, so there had to be a reason why

14      you're filing bankruptcy.

15             MR. MEEHAN:  Yeah.  Of course.

16             MR. PERGAMENT:  What was he doing to

17      try to enforce it?

18             MR. MEEHAN:  What was he doing?

19             MR. PERGAMENT:  Yeah.

20             MR. MEEHAN:  Withholding documents.

21             MR. PERGAMENT:  What documents?

22             MR. MEEHAN:  Like the case file.

23             MR. PERGAMENT:  Why do you need the

24      case file?

25             MR. MEEHAN:  To give to the new lawyer.

EXHIBIT 13

1          MR. PERGAMENT:  Who's the new lawyer?

2          MR. MEEHAN:  The new lawyer on record

3     is James Vlahdamis.

4          MR. PERGAMENT:  Well, right now there's

5     a bankruptcy so I'm the new -- I'm the trustee.

6     So everything is turned over to me.  Did Mr.

7     Nierman turn things over to you?

8          MR. MEEHAN:  Me personally?

9          MR. PERGAMENT:  Yeah.

10          MR. MEEHAN:  No.  He gave it to my

11     lawyer at the time.

12          MR. PERGAMENT:  Who did he give it to?

13          MR. MEEHAN:  James Vlahdamis.

14          MR. PERGAMENT:  Is that an attorney in

15     your firm?

16          MR. HILLEN:  Yes.

17          MR. PERGAMENT:  Oh, and what documents

18     did he turn over to your firm?

19          MR. HILLEN:  That I know of, none.  I

20     don't believe he released the file.

21          MR. PERGAMENT:  Now wait a second.

22     Your -- the debtor, his representative, has told

23     you that the papers were turned over to your law

24     firm.

25          MR. HILLEN:  I'm unaware of that.

EXHIBIT 13

1                MR. PERGAMENT:  Well, who's aware?

2                MR. HILLEN:  My -- I can inquire with

3      Mr. Vlahdamis what Mr. Nierman gave him or did

4      not give him, but I'm unaware of what he may have

5      or may not have given him.

6                MR. PERGAMENT:  I just get this

7      impression that this Court is being played, so

8      you understand.

9                MR. HILLEN:  No, I understand.

10               MR. PERGAMENT:  I expect an answer to

11     that from him, not from you.  I want a letter

12     from that attorney in your firm by Monday --

13               MR. HILLEN:  Absolutely.

14               MR. PERGAMENT:  -- explaining what

15     documents he has and if he has any documents

16     related to the debtor, turn them over to me.  He

17     has no right to hold those documents.

18               MR. HILLEN:  (Indiscernible).

19               MR. PERGAMENT:  Mr. Kosachuk, you're

20     here today.  Do you have questions you want to

21     ask Mr. Meehan?

22               MR. HILLEN:  Mr. Pergament, if I may --

23               MR. PERGAMENT:  Yeah.

24               MR. HILLEN:  The standing of Mr.

25     Kosachuk to ask questions?  He's not a creditor

```
1           of the estate.

2                    MR. PERGAMENT:  He's a party in

3           interest, sir.

4                    MR. HILLEN:   Okay.

5                    MR. PERGAMENT:  Mr. Kosachuk, you have

6           any questions?  If you don't have any, you don't

7           have to.  But you have an opportunity to ask him

8           questions if you would like.  Do you have any

9           questions?

10                   MR. KOSACHUK:  No.

11                   MR. PERGAMENT:  Okay.  Is there a

12          foreclosure action pending in Florida, Mr.

13          Meehan?

14                   MR. MEEHAN:  Is there a foreclosure

15          action pending?

16                   MR. PERGAMENT:  Yeah.

17                   MR. MEEHAN:  Yeah.

18                   MR. PERGAMENT:  Excuse me.

19                   MR. MEEHAN:  Yeah.

20                   MR. PERGAMENT:  Yes?  Okay.  And what

21          property is the subject of that foreclosure

22          action?

23                   MR. MEEHAN:  What property?  6913.

24                   MR. PERGAMENT:  Oh, the one that you

25          live in?
```

EXHIBIT 13

1                    MR. MEEHAN:  Yeah.

2                    MR. PERGAMENT:  Is that correct?

3                    MR. MEEHAN:  Yeah.

4                    MR. PERGAMENT:  And who is titled to

5          that house, 6913 Valencia Drive?

6                    MR. MEEHAN:  Elizabeth Hazan.

7                    MR. PERGAMENT:  And who is she?

8                    MR. MEEHAN:  Who is she?

9                    MR. PERGAMENT:  Yeah.  How's she

10         related to you?  Is she your girlfriend?  Is she

11         your wife?  Is she a friend?

12                   MR. MEEHAN:  She's my wife.

13                   MR. PERGAMENT:  So when I ask who she

14         is, and who -- what her relation is, my question

15         was a tricky question, right?

16                   MR. MEEHAN:  Some of them were today.

17                   MR. PERGAMENT:  That question was

18         tricky?

19                   MR. MEEHAN:  I was making sure.

20                   MR. PERGAMENT:  You were making sure?

21                   MR. MEEHAN:  I have a right to make

22         sure I understand the question.

23                   MR. PERGAMENT:  Yes, you do, sir.

24         Definitely.  So who is foreclosing on 6913

25         Valencia Drive, what lender or what entity?

EXHIBIT 13

1                    MR. MEEHAN:  What entity?

2                    MR. PERGAMENT:  Yeah.  Who was doing a

3          foreclosure?

4                    MR. MEEHAN:  NLG.

5                    MR. PERGAMENT:  NLG.  So NLG is trying

6          to foreclose on the house in Florida that your

7          wife owns.  Are you on that deed to that house?

8                    MR. MEEHAN:  No.

9                    MR. PERGAMENT:  Who came up with this

10         idea of filing the bankruptcy in this court on

11         behalf of Selective Advisors Group?

12                    MR. MEEHAN:  Myself.

13                    MR. PERGAMENT:  Oh, you're an expert in

14         bankruptcy matters?

15                    MR. MEEHAN:  Well, when I know that we

16         owe money and I want to bring my lawyer back,

17         like I told you.

18                    MR. PERGAMENT:  Right.  And which

19         lawyer did you speak to to do that?

20                    MR. MEEHAN:  Which lawyer?

21                    MR. PERGAMENT:  Yeah, to file this

22         bankruptcy?  Did you meet Mr. Hillen?

23                    MR. MEEHAN:  Yeah.  His law firm.

24                    MR. PERGAMENT:  No.  No.  Did you meet

25         Mr. Hillen?  Not his law firm, did you meet him?

EXHIBIT 13

1          I want to know who you met with and who gave you

2          the advice?

3                    MR. MEEHAN:  Yes.

4                    MR. PERGAMENT:  You met with Mr.

5          Hillen?

6                    MR. MEEHAN:  Yes.

7                    MR. PERGAMENT:  He gave you the advice

8          to file this bankruptcy?

9                    MR. MEEHAN:  Yes.  That's why I'm here.

10                   MR. PERGAMENT:  That's why you're here.

11         And he explained to you the value of filing

12         bankruptcy.  Is that correct?

13                   MR. MEEHAN:  Yeah.

14                   MR. PERGAMENT:  And you told him that

15         you were filing bankruptcy because you wanted to

16         get the file from Mr. Nierman.  Is that right?

17                   MR. MEEHAN:  No.

18                   MR. PERGAMENT:  Then why did you file -

19         - did you have your attorney file the bankruptcy?

20                   MR. MEEHAN:  So I could bring my old

21         lawyer back.

22                   MR. PERGAMENT:  I don't understand.

23         How do you bring him back?

24                   MR. MEEHAN:  To settle the debt and I

25         can bring him back.  He doesn't want to work for

EXHIBIT 13

1          free.

2                    MR. PERGAMENT:  But your -- have you

3          paid him any money?

4                    MR. MEEHAN:  Originally, yeah.

5                    MR. PERGAMENT:  How much did you pay

6          him?

7                    MR. MEEHAN:  $1,200.

8                    MR. PERGAMENT:  To enforce a $5 million

9          judgment.  Is that correct?

10                   MR. MEEHAN:  That's correct.

11                   MR. PERGAMENT:  Okay.  Counsel, I'll

12         expect the information I requested.  As of now, I

13         expect the debtor to come back.  As of now we

14         have it on for July 15th at 10:30.  You and I

15         will speak before then if it's required, but as

16         of now I expect him to be here for further

17         questions, and I will send you a letter asking

18         for more documents because there -- there are

19         issues that I have with this case that need to be

20         further developed for the Court.

21                   MR. HILLEN:  Understood.

22                   MR. PERGAMENT:  Okay.  Thank you, sir.

23         (341 hearing concluded)

24

25

EXHIBIT 13

1                          CERTIFICATION

2

3       I, Sherri L. Breach, certify that the foregoing transcript

4       is a true and accurate record of the proceedings.

5

6       Sherri        Digitally signed by Sherri Breach
                       DN: cn=Sherri Breach, o=Veritext,
                       ou, email=digital@veritext.com,
        Breach         c=US
                       Date: 2015.10.09 16:02:44 -04'00'
7       _____

8       Sherri L. Breach

9       AAERT Certified Electronic Reporter & Transcriber CERT*D-397

10

11

12      DATE:   September 24, 2015

13

14

15

16

17

18

19

20

21

22       Veritext Legal Solutions

23       330 Old Country Road

24       Suite 300

25       Mineola, NY 11501

EXHIBIT 13

| & |
|---|
| **&** 2:2 42:9 |

| 1 |
|---|
| **1** 1:16 |
| **1,200** 41:7 |
| **103** 6:5,25 |
| **109** 4:7 |
| **10:30** 41:14 |
| **11501** 42:25 |
| **11946** 2:6 |
| **148** 2:4 |
| **15-72153** 1:3 |
| **15th** 41:14 |

| 2 |
|---|
| **2002** 22:22 |
| **2006** 23:1,3 |
| **2015** 1:16 42:12 |
| **24** 42:12 |
| **29th** 5:12 |

| 3 |
|---|
| **3** 2:5 5:18 |
| **3,500** 18:22 19:1 |
| 26:12 |
| **30** 6:18 |
| **300** 42:24 |
| **30th** 5:12 |
| **33** 4:6 |
| **330** 42:23 |
| **33109** 4:4 |
| **341** 1:13 41:23 |
| **397** 42:9 |

| 4 |
|---|
| **4/3/84** 23:18 |
| **48** 16:7 |

| 5 |
|---|
| **5** 17:8,9 26:11,17 |
| 33:1,3,6,12 41:8 |

| 6 |
|---|
| **6913** 3:23,24 34:2 |
| 37:23 38:5,24 |

| 9 |
|---|
| **9197-5904** 20:1,23 |
| 29:1,8 30:18 31:6 |
| 32:21 |

| a |
|---|
| **aaert** 42:9 |
| **absolutely** 36:13 |
| **accurate** 42:4 |
| **action** 37:12,15,22 |
| **add** 3:18 |
| **address** 3:19,22,23 |
| 6:5,7,10 15:18 16:2 |
| 16:8 |
| **addresses** 16:9 |
| **admitted** 5:8 |
| **advice** 40:2,7 |
| **advise** 8:4 |
| **advisers** 8:5 |
| **advisor** 34:9 |
| **advisors** 1:7 3:2 |
| 4:13 5:8 7:20 9:11 |
| 9:17 12:10 14:2 |
| 17:4,18 20:20,25 |
| 25:24 26:22 39:11 |
| **age** 14:6 |
| **ago** 25:20,21,21,22 |
| 25:23 |
| **agree** 11:12,13 18:9 |
| 18:11 |
| **agreed** 13:14 14:7 |
| **agreement** 14:11 |
| **amount** 18:19 |
| **answer** 10:21 14:11 |
| 14:13 21:23 23:2 |
| 31:20,21 32:1 36:10 |
| **answers** 5:3 |
| **appearance** 5:6 |
| **appeared** 19:8 24:2 |
| **appearing** 19:15 |
| **argued** 31:16 |
| **arrangement** 21:20 |
| **aside** 8:16 |
| **asked** 10:13 |
| **asking** 8:8,9,17,24 |
| 10:12 12:7 13:2 |
| 15:14 17:5,6 28:2 |
| 33:19,20 41:17 |
| **asset** 9:9 11:8 |
| **assets** 8:3,5,9,18,20 |
| 9:3 |

| (continued) |
|---|
| **assign** 20:23 33:12 |
| **assigned** 13:5 14:1 |
| 17:4 21:3,10 |
| **assignment** 13:8,14 |
| 29:5 |
| **assignments** 21:14 |
| **assisted** 10:14 |
| **associate** 16:20 |
| **attachment** 28:10 |
| **attend** 22:24 23:6 |
| **attitude** 22:2 32:2 |
| **attorney** 2:3 8:25 |
| 10:14,16 26:2 35:14 |
| 36:12 40:19 |
| **aware** 36:1 |

| b |
|---|
| **ba** 23:4,5 |
| **back** 26:2,6,7 32:8 |
| 39:16 40:21,23,25 |
| 41:13 |
| **background** 22:21 |
| **bankruptcy** 1:1 |
| 5:11,22 7:10 11:8 |
| 18:14 20:16 25:25 |
| 26:10,15 34:13,14 |
| 35:5 39:10,14,22 |
| 40:8,12,15,19 |
| **basis** 33:3 |
| **bays** 2:6 6:6,14,23 |
| 22:14,15,18 |
| **beginning** 22:9 |
| **behalf** 5:7 9:17 31:6 |
| 32:20 39:11 |
| **believe** 5:12 33:15 |
| 33:17,19,21 35:20 |
| **benefit** 32:20 |
| **big** 13:23 |
| **bill** 26:12 |
| **birth** 23:17 |
| **bit** 28:22 |
| **bodily** 28:10 |
| **bottom** 5:22 |
| **box** 5:18 |
| **breach** 42:3,8 |
| **bring** 26:2,5 39:16 |
| 40:20,23,25 |

| (continued) |
|---|
| **bs** 23:4 |
| **business** 3:18 16:19 |

| c |
|---|
| **c** 2:1 3:1 |
| **called** 33:11 |
| **canada** 13:21,22,23 |
| **canadian** 14:6 |
| **care** 8:25 |
| **case** 1:3 20:16 26:9 |
| 31:22 34:22,24 |
| 41:19 |
| **cases** 20:21 |
| **casualty** 21:8 |
| **cert** 42:9 |
| **certification** 42:1 |
| **certified** 42:9 |
| **certify** 42:3 |
| **changes** 6:1 7:13 |
| **charge** 24:16,18 |
| **chris** 28:11 |
| **christopher** 2:12 |
| 20:6 28:12 |
| **citizen** 14:6 |
| **city** 18:7 19:13,16 |
| **claim** 18:21 34:8,11 |
| **claims** 24:15,17 |
| **clear** 30:15,16 32:3 |
| 32:6 |
| **collect** 17:15 |
| **collected** 21:15 |
| **college** 22:11,24 |
| 23:8 |
| **come** 12:13,15 14:1 |
| 15:10 33:5 41:13 |
| **comm** 23:15 |
| **communicate** 15:24 |
| **communication** |
| 23:12,16 |
| **companies** 31:1 |
| 32:10,11 |
| **company** 8:18,21 |
| 12:19,25 14:23,24 |
| 15:2,5,6 20:4 21:3 |
| 29:5,9 31:13 33:13 |
| **concluded** 41:23 |
| **conducted** 1:14 |

EXHIBIT 13

**confess** 32:20
**confessed** 31:5,14 32:10
**confused** 28:22
**confusing** 32:12,13
**contact** 16:10
**continental** 21:8
**correct** 4:22,23 5:24 7:10 12:11,12 13:6 14:22 20:10,12,21 21:6,12 24:23 26:12 38:2 40:12 41:9,10
**counsel** 5:5,15 9:4 16:5 19:5,7 32:6 41:11
**country** 13:23 42:23
**course** 34:15
**court** 1:1 20:20 36:7 39:10 41:20
**creditor** 36:25
**creditors** 3:3,4
**criminal** 23:9
**currently** 30:8

**d**

**d** 3:1 34:5 42:9
**darius** 28:13
**date** 23:17 42:12
**days** 6:19
**debt** 15:12,14 26:8 33:3 40:24
**debtor** 1:9 2:3 4:9 5:8 35:22 36:16 41:13
**debts** 17:18
**deed** 39:7
**definitely** 38:24
**definition** 6:16
**delivered** 5:12
**developed** 41:20
**different** 6:18
**discharge** 26:11
**discuss** 23:23 24:1
**dismiss** 19:21,23 24:9
**dispute** 18:14

**disputed** 18:16,18
**district** 1:2 5:9
**documents** 34:20 34:21 35:17 36:15 36:15,17 41:18
**doing** 34:16,18 39:2
**double** 23:5,10
**drive** 4:2 38:5,25
**driver's** 6:5
**due** 14:5

**e**

**e** 2:1,1 3:1,1,13 13:18 33:25,25,25 34:5
**east** 2:4
**eastern** 1:2 5:9
**education** 23:7
**elect** 3:4
**electronic** 42:9
**elizabeth** 2:13 12:1 38:6
**email** 15:25 16:1,2 16:9
**enforce** 34:8,10,17 41:8
**entity** 38:25 39:1
**esq** 2:8
**estate** 37:1
**evans** 2:8 5:7
**evguenia** 33:24
**exact** 15:18
**examination** 12:3
**excuse** 3:8 8:4 10:17 11:23 15:1 21:22 23:14 30:14 31:19 37:18
**expect** 36:10 41:12 41:13,16
**expert** 39:13
**explain** 31:23
**explained** 40:11
**explaining** 36:14

**f**

**facts** 33:21,22
**far** 20:20

**favor** 33:11
**figure** 14:18
**file** 26:14 34:22,24 35:20 39:21 40:8,16 40:18,19
**filed** 10:10 25:24 26:10 34:12
**filing** 34:14 39:10 40:11,15
**firm** 35:15,18,24 36:12 39:23,25
**five** 30:10 31:1
**florida** 4:4 6:21 27:8,11 28:7,7 37:12 39:6
**foreclose** 39:6
**foreclosing** 38:24
**foreclosure** 37:12 37:14,21 39:3
**foregoing** 42:3
**forthcoming** 10:6
**franklin** 22:25
**free** 41:1
**friend** 16:19,21 38:11
**friends** 16:12,14,15
**front** 19:8 31:20
**full** 12:24
**further** 41:16,20

**g**

**g** 3:1 33:25 34:5,5
**garnishment** 20:5 20:14
**garnishments** 27:4 27:6
**gentleman** 24:21 25:3
**gift** 13:11
**girlfriend** 38:10
**give** 13:14 34:25 35:12 36:4
**given** 12:17 13:10 36:5
**go** 10:11,13 24:5,7 31:21
**gog** 34:4

**going** 8:11 24:4,6
**good** 10:20 32:5,8
**google** 25:8,9
**googled** 25:9
**graduate** 22:10,11 22:13,16
**graduated** 23:4
**grossman** 31:22,23
**group** 1:7 3:3 4:13 5:8 7:20 8:4,5 9:17 12:10 14:2 25:24 26:22 34:9 39:11
**guess** 16:13 24:15 24:24

**h**

**h** 13:18
**hagler** 19:9,10,11 19:15 23:20,23 24:3
**hampton** 2:6 6:6,14 6:23 22:14,15,16
**hand** 4:25 5:11,18
**hazan** 2:13 12:1,1 38:6
**health** 14:4,6
**heard** 3:5 30:13
**hearing** 1:13 41:23
**help** 28:22
**high** 22:10,12
**highway** 2:4
**hillen** 2:2,8 3:22 5:7 5:7,16,20 7:17 8:20 10:21 12:5 16:6 23:2 27:13,20,24 28:2,5 32:7 35:16 35:19,25 36:2,9,13 36:18,22,24 37:4 39:22,25 40:5 41:21
**hmms** 4:21
**hold** 9:4 11:23 36:17
**holding** 26:11
**home** 3:18,22,23 34:2
**honor** 27:13
**hook** 16:12
**houle** 13:15,20 14:1 14:3,16 15:18 16:11

EXHIBIT 13

28:25 29:17,20 30:3
30:17,25 32:9,19
33:10
**houle's** 16:8
**hours** 16:7
**house** 7:6 38:5 39:6
39:7
**how's** 38:9
**huh** 3:14 4:17 27:7

**i**

**idea** 39:10
**identify** 3:7
**impression** 36:7
**included** 27:21
**indicates** 6:5
**indiscernible** 3:5
11:24 22:1 34:3
36:18
**individual** 28:11
**information** 41:12
**inquire** 36:2
**interest** 37:3
**interrupting** 12:3
**involved** 33:7
**involving** 26:21
**issues** 41:19

**j**

**james** 35:3,13
**joseph** 18:5 26:5
**judge** 19:9,10,11,12
19:15 23:20,25 24:2
31:22,22,23
**judgment** 9:7,8,10
9:17,22,24 10:15
11:9 12:10 13:5
14:2,5,21 17:1,2,3
17:17 19:18,21,23
20:23 21:4,4,8 24:9
26:11,17 29:6 31:6
31:14 32:10,20
33:12 41:9
**july** 1:16 41:14
**justice** 23:9

**k**

**keep** 7:14 10:9
**kind** 15:12,14 19:7
**know** 8:6,18 9:2
10:9 13:23 14:15
15:14,16,17 16:11
16:16,19 20:7,19
22:21 24:25 25:3,4
25:17 28:13,18,19
28:19 29:12,13,15
29:16,19 33:2 34:6
35:19 39:15 40:1
**kosachuk** 2:12 20:6
20:24 21:5 24:13,22
24:23 25:10 28:11
36:19,25 37:5,10

**l**

**l** 13:18 33:25 42:3,8
**law** 35:23 39:23,25
**lawsuit** 28:6
**lawyer** 9:25 10:2
17:23 18:1,4 23:25
28:17,20 34:25 35:1
35:2,11 39:16,19,20
40:21
**leave** 11:22 12:2
**legal** 19:4,7 42:22
**lend** 15:7,8
**lender** 38:25
**letter** 36:11 41:17
**license** 6:5
**list** 20:5 27:20
**listed** 11:7 20:15,17
20:21
**little** 18:25 19:1
28:21
**live** 37:25
**llc** 1:7 3:3 13:1
30:19
**llp** 2:2
**loan** 33:3,4
**long** 16:16
**look** 28:9
**looking** 5:13
**lorret** 33:25

**lot** 17:10
**lower** 5:17

**m**

**m** 2:8
**maintain** 19:18,19
**major** 23:5,10,13
**majors** 23:8
**making** 27:13 38:19
38:20
**manager** 4:14,22
29:20 30:5,17,18
31:1
**managers** 8:1
**marc** 1:14
**marzec** 28:14
**mass** 23:12,15,16
**matter** 1:5
**matters** 39:14
**mean** 6:16 26:4
**media** 25:5,6,7
**meehan** 2:11 3:9,12
3:12,14,16,17,20,23
3:25 4:2,4,7,10,14
4:17,20,23 5:1,2,4
5:23,25 6:3,8,11,15
6:21,24 7:2,5,8,12
7:16,21,24 8:2,6,11
8:14,22 9:1,7,9,11
9:13,15,19,21,24
10:2,6,9,11,16,24
11:1,5,10,13,17,20
12:6,12,15,17,19,21
12:23 13:1,3,6,9,12
13:15,18,21,24 14:3
14:13,15,18,23,25
15:2,4,8,12,16,19
15:22,25 16:3,13,17
16:21,24 17:2,5,8
17:11,14,20,23 18:2
18:5,8,11,16,19,22
18:25 19:4,8,12,17
19:20,24 20:3,7,10
20:12,17,19 21:1,6
21:9,12,15,17,21,24
22:1,3,7,11,14,17
22:19,22,25 23:5,9
23:12,15,18,21,24

24:4,8,12,15,19,21
24:24 25:4,8,11,14
25:17,19,22 26:1,5
26:8,13,16,23 27:1
27:4,6,9,12,15,19
27:23,25 28:4,8,15
28:17,19,23 29:2,7
29:10,13,15,18,21
29:23 30:1,4,6,8,11
30:13,15,20,23 31:2
31:4,8,11,15,18,25
32:4,12,15,18,22
33:1,4,7,9,16,20
34:1,6,10,15,18,20
34:22,25 35:2,8,10
35:13 36:21 37:13
37:14,17,19,23 38:1
38:3,6,8,12,16,19
38:21 39:1,4,8,12
39:15,20,23 40:3,6
40:9,13,17,20,24
41:4,7,10
**meehan's** 5:14
**meet** 23:19 39:22,24
39:25
**member** 4:12,15,22
7:23
**members** 7:19
**met** 24:25 40:1,4
**miami** 4:4 6:13,21
**million** 17:8,9 26:11
26:17 33:1,3,6,12
41:8
**mine** 21:23
**mineola** 42:25
**monday** 36:12
**money** 11:12,14
14:5 15:7,8,11
16:23 17:10,21,24
17:25 18:10,12,15
18:17 19:3 21:14,18
26:16 31:12,14
32:23,24 39:16 41:3
**montauk** 2:4
**month** 6:19 25:21
**months** 6:24

EXHIBIT 13

montreal 13:24,25

**n**

n 2:1 3:1,13 33:25
name 3:8,10 11:23
11:25 12:24 13:17
20:8 29:4
neal 2:11
need 4:18 28:5
34:23 41:19
never 24:25
nevis 14:25 15:4
new 1:2 2:6 18:6
19:12,15 34:25 35:1
35:2,5
nierman 18:5 23:20
24:2 26:6 34:7 35:7
36:3 40:16
nights 6:20
nina 34:4
nlg 9:13,14,18
10:15 11:9,12,13
12:10 14:14,19,21
15:7,9,11 16:23
19:24 21:4 24:10
29:11 30:7,18 31:6
32:20 39:4,5,5
number 15:21
numbers 16:9 29:3
ny 42:25

**o**

o 3:1 13:18 33:25
34:5
oath 31:23
obtained 9:16,21,22
14:8
obtaining 10:14
offshore 15:5,6
oh 25:2,12 28:9
31:13 35:17 37:24
39:13
okay 3:13,17 4:8,12
4:24 5:10 6:4,17,25
7:3,9 8:3 9:1 11:11
12:9 13:4,7,13,22
13:25 14:14 15:7
18:3,23 26:19 27:24

28:4,21 29:11 34:7
37:4,11,20 41:11,22
old 40:20 42:23
opportunity 37:7
originally 41:4
outside 10:18
owe 17:21,23 18:10
18:11,14,17,21,24
19:3 39:16
owed 15:11 16:23
31:11,14 32:22,25
33:6
owes 17:25
owned 29:11
owner 28:25
owners 34:1
owns 6:25 8:10,19
29:13,17 39:7

**p**

p 2:1,1 3:1
page 5:17,17,18,19
8:6
pages 8:9 28:9
paid 21:14 41:3
papers 5:11,15,22
7:10 18:14 27:18
35:23
parents 7:8
party 37:2
patience 10:10
pause 33:23
pay 11:12,14 13:8,9
33:13 41:5
pending 20:14,15
26:25 27:2,5,8,10
27:12,16 28:10,12
37:12,15
pennsylvania 27:1
27:3
pergament 1:14 3:2
3:10,13,15,17,21,24
4:1,3,5,8,12,15,18
4:21,24 5:2,5,10,19
5:21,24 6:1,4,9,12
6:17,22,25 7:3,6,9
7:13,18,22,25 8:3,8
8:13,15,24 9:2,8,10

9:12,14,16,20,22,25
10:4,8,13,17,20,23
10:25 11:2,7,11,15
11:19,22,25 12:2,8
12:13,16,18,20,22
12:24 13:2,4,7,11
13:13,16,19,22,25
14:10,14,16,20,24
15:1,3,6,10,13,17
15:20,23 16:1,5,7
16:15,18,22,25 17:3
17:7,9,12,16,21,25
18:3,6,9,13,18,20
18:23 19:2,6,10,14
19:19,22,25 20:4,9
20:11,13,18,22 21:2
21:7,10,13,16,19,22
21:25 22:2,5,8,12
22:15,18,20,23 23:3
23:6,10,13,16,19,22
24:1,6,10,13,17,20
24:22 25:2,6,9,12
25:16,18,20,23 26:3
26:7,10,14,18,24
27:2,5,7,10,17 28:6
28:13,16,18,21,24
29:4,8,11,14,16,19
29:22,25 30:2,5,7,9
30:12,14,16,21,25
31:3,5,9,13,17,19
32:1,5,8,13,16,19
32:24 33:2,5,8,10
33:18,22,24 34:4,7
34:12,16,19,21,23
35:1,4,9,12,14,17
35:21 36:1,6,10,14
36:19,22,23 37:2,5
37:11,16,18,20,24
38:2,4,7,9,13,17,20
38:23 39:2,5,9,13
39:18,21,24 40:4,7
40:10,14,18,22 41:2
41:5,8,11,22
period 30:1
permanent 6:12,15
6:16

person 25:1
personally 35:8
pests 24:8
petition 27:21
ph 18:5 19:9
phone 15:20 16:8
picture 25:13
pictures 25:5
piece 8:17
pierce 22:25
played 36:7
please 3:7 4:25 7:15
11:16,19,19,22,23
12:2 32:18
point 14:9
pointed 24:23
post 23:7
present 2:10 3:3
proceedings 26:21
26:25 42:4
pronounce 20:8
property 37:21,23
provide 16:8 19:3,6
19:7
provided 5:10
purpose 19:15,17
pursue 14:7
put 8:15,25

**q**

qualifies 3:6
quebec 12:21,22,23
13:1,4,14 14:21
15:7,8,11 16:23
20:1,2,22,23 21:3,3
29:1,9 30:18 31:6
32:21
quebec's 14:2
question 4:11 10:3
10:22,22 11:1,4,20
22:4 23:2 30:3,22
30:24 32:2,9,12
38:14,15,17,22
questions 8:16
21:23 22:6 31:20,21
32:3 36:20,25 37:6
37:8,9 41:17

**r**

**r** 2:1 3:1 33:25,25
**raise** 4:24
**raymond** 13:15,16
**reason** 25:24 34:13
**record** 35:2 42:4
**reference** 27:14
**referring** 20:1
  27:22
**reg** 1:3
**related** 36:16 38:10
**relation** 38:14
**relationship** 4:9
**released** 35:20
**relevant** 11:21
  22:19
**remember** 25:18,19
**rental** 7:2
**repeat** 8:17 30:23
  32:18
**reporter** 42:9
**representative**
  35:22
**requested** 41:12
**required** 41:15
**reside** 13:20
**residence** 6:13
**responses** 4:19
**right** 4:24 5:17 16:4
  17:10,16 18:7 20:6
  21:11,16 24:21
  25:10 29:1,9 30:19
  30:20 31:7 32:11
  33:14 35:4 36:17
  38:15,21 39:18
  40:16
**road** 6:6 33:14
  42:23
**room** 11:23 12:2

**s**

**s** 2:1 3:1,13
**saw** 23:20
**says** 28:8 29:8
**school** 22:10,12
**sean** 2:11 3:9,13 5:1
  33:11

**second** 5:17 14:20
  35:21
**see** 8:22 24:25
  25:12 28:9 29:5
  31:22
**selective** 1:7 3:2
  4:13 5:8 7:19 8:4,5
  9:11,17 12:9 13:7
  14:2 17:4,18,25
  20:20,24 21:11
  25:24 26:22 33:13
  34:8 39:11
**send** 41:17
**september** 42:12
**services** 19:3,4
**settle** 26:8 40:24
**sherri** 42:3,8
**shoes** 29:24
**show** 27:17
**sign** 5:14
**signature** 5:14,21
**signed** 7:11
**sir** 3:7,8,11 5:16
  6:13 7:15 8:9,24
  13:2 16:6 22:10,13
  22:21 32:7 37:3
  38:23 41:22
**sit** 12:5
**six** 25:21
**slow** 4:5
**slowly** 10:11,13
**social** 25:5,6,7
**sole** 7:22
**solutions** 42:22
**sorry** 32:16
**speak** 10:18 39:19
  41:15
**speaker** 10:19
  11:24
**spell** 13:17
**spend** 6:18,19,23
**spoke** 27:25
**standing** 36:24
**start** 22:9
**state** 11:5 26:21
**states** 1:1

**stay** 31:25
**step** 29:23
**straight** 12:5
**subject** 37:21
**suit** 27:22
**suite** 2:5 42:24
**suits** 27:21
**summer** 6:24
**supposedly** 14:25
  15:3 24:16
**sure** 4:10 5:4 11:10
  15:9 16:3 27:19
  29:2,7 38:19,20,22
**sworn** 5:1

**t**

**t** 33:25 34:5
**take** 17:12
**talk** 23:24
**talked** 23:25
**talking** 11:6 25:7
  26:9
**tell** 9:15 14:16
  16:22 21:24 31:24
**telling** 13:3
**testifying** 32:9
**testimony** 30:17
**thank** 7:18 9:4,4
  22:23 41:22
**thing** 27:22
**things** 35:7
**think** 9:6 18:24
  27:15
**three** 6:24 16:17,18
**tiana** 6:6 7:1
**time** 6:22 17:5,7
  30:9 31:2,3 35:11
**titled** 38:4
**today** 30:8 36:20
  38:16
**told** 22:7 28:25
  35:22 39:17 40:14
**town** 4:3
**transcriber** 42:9
**transcript** 42:3
**tricky** 38:15,18
**tried** 14:4,18

**true** 42:4
**trustee** 3:4 35:5
**try** 26:1 34:17
**trying** 10:9 17:16
  19:20,22 22:3 24:9
  24:10,13 28:7 34:8
  34:10 39:5
**turn** 35:7,18 36:16
**turned** 35:6,23
**two** 6:24 27:6

**u**

**u** 13:18 33:25
**uh** 3:14 4:17 27:7
**unacceptable** 12:4
**unaware** 35:25 36:4
**uncollectable** 26:17
  26:18
**undergraduate**
  23:7
**understand** 4:10
  10:3,5,18,22,24
  11:3,3,17 15:13
  17:17 22:4,6,8 26:3
  26:20 32:17 36:8,9
  38:22 40:22
**understanding** 12:6
  12:9
**understood** 41:21
**unidentified** 10:19
  11:24
**united** 1:1
**university** 23:1
**unsuccessfully** 14:5

**v**

**v** 33:25
**valencia** 3:25 4:1
  34:2 38:5,25
**value** 40:11
**verbal** 4:18 5:3
**veritext** 42:22
**vlahdamis** 2:2 35:3
  35:13 36:3
**voice** 7:15

EXHIBIT 13

| w | z |
|---|---|
| **wait**   14:20 35:21 | **z**   34:5 |
| **want**   3:21 5:2 6:1 | |
|   7:14 8:18 9:2 10:17 | |
|   20:19 22:20 26:1,5 | |
|   30:6,15 31:21 33:12 | |
|   33:15,17 36:11,20 | |
|   39:16 40:1,25 | |
| **wanted**   40:15 | |
| **way**   6:18 16:9 32:15 | |
| **week**   5:13 25:20 | |
| **west**   6:6 7:1 | |
| **whoa**   4:5,5 | |
| **wife**   38:11,12 39:7 | |
| **wish**   3:4 | |
| **withholding**   34:20 | |
| **word**   32:15 | |
| **words**   11:3 | |
| **work**   14:8 40:25 | |
| **writ**   28:10 | |
| **writing**   8:18 14:10 | |
|   14:11 21:19 | |
| **written**   20:11 | |
| **wrote**   8:14 | |

| x |
|---|
| **x**   1:4,10 |

| y |
|---|
| **yeah**   4:2 7:12 9:20 |
|   11:15 12:16 14:23 |
|   17:15 18:2,13 20:8 |
|   20:18 21:9 23:21 |
|   24:8,12 27:17,23 |
|   28:2,15 29:10,14 |
|   31:4,8 34:12,15,19 |
|   35:9 36:23 37:16,17 |
|   37:19 38:1,3,9 39:2 |
|   39:21,23 40:13 41:4 |
| **year**   22:16 |
| **years**   16:17,18 |
|   25:21,22,23 30:10 |
|   31:1 |
| **york**   1:2 2:6 18:6 |
|   19:12,16 |

EXHIBIT 13

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In Re:                                              Chapter 7

Selective Advisors Group LLC,                       Case No. 815-72153-A736

       Debtor.                                  Affirmation in Support

---------------------------------------------------------X

       Marc A. Pergament, duly affirms under the penalties of perjury as follows:

       1.     I am an attorney admitted to practice law in the United States Court of Appeals for the Second Circuit and the United States District Court for the Eastern and Southern Districts of New York and am a member of Weinberg, Gross & Pergament LLP, attorneys for the Trustee.

       2.     I am also the Trustee of this Estate and am familiar with the facts and circumstances set forth herein.

       3.     This Affirmation is submitted in support of my request that the Court scheduling a hearing on shortened notice: (a) approving the dismissal of this bankruptcy case with prejudice; (b) authorizing the Debtor to pay Weinberg, Gross & Pergament LLP the sum of $6,500.00 for services rendered; and (c) such other and further relief that this Court deems just and proper.

       4.     On May 18, 2015, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The initial bankruptcy filing was a bare bones petition filed by the Debtor. The manager who signed the petition was Sean N. Meehan. Mr. Meehan failed to appear at the § 341(a) meeting scheduled for June 24, 2015. The Debtor's counsel appeared on that date and requested an adjournment of the 341(a) meeting.

# EXHIBIT 14

5.    I directed the Debtor to file all necessary schedules and a Statement of Financial Affairs by June 30, 2015 and appear for an examination pursuant to § 341(a) on July 1, 2015. A further request for an adjournment of the § 341(a) meeting was declined.

6.    On July 1, 2015, Mr. Meehan appeared for an examination with Debtor's counsel after the Debtor had filed the schedules and Statement of Financial Affairs, which were filed on June 30, 2015.

7.    My review of the file, schedules and documents that had been previously provided to me indicated that there are many facts that questioned the good faith filing by the Debtor in this Chapter 7 case.

8.    Specifically, the schedules revealed that the sole creditor of the Debtor was its former attorney, Joseph Nierman, and he was alleged to be owed the sum of $3,500.00. The Debtor's Schedule F indicated that it was a disputed claim.

9.    The Debtor's counsel disclosed that the Debtor was formed in August 2014 and its sole asset was a Judgment that it held by way of Affidavit of Confession of Judgment against NLG LLC in the sum of $5,000,000.00, plus interest. The Judgment, however, was based on an Assignment by 9197-5904 Quebec Inc. to the Debtor of a Judgment that it had obtained against NLG LLC, which had been filed in the New York County Clerk's office on February 22, 2012. A copy of the Assignment of Judgment is annexed hereto as Exhibit "A." However, that Judgment was premised on an Affidavit signed by Raymond Houle who claimed to be the president of 9197-5904 Quebec, Inc., and was also the manager of NLG LLC. The Affidavit of Confession did not provide any additional information to substantiate the basis for the Judgment. A copy of the Affidavit of Confession of Judgment of NLG LLC and Affidavit of Raymond Houle is annexed hereto as Exhibit "B."

2

# EXHIBIT 14

10.    After applying the oath, I questioned Mr. Meehan at his § 341(a) meeting concerning the Judgment and he advised me that he had no knowledge as to the underlying basis for the Judgment and that he claimed that no money was paid by the Debtor to 9197-5904 Quebec, Inc. for the Assignment of the Judgment, except that there was an unspecified "deal" whereby the Debtor would pay a certain amount to the Assignor upon collection of the Judgment.

11.    As I questioned Mr. Meehan in depth at the § 341(a) meeting, it became apparent that the Judgment was the subject of a contentious dispute with NLG LLC. I reviewed certain public records and certain information which indicated that there is a pending foreclosure lawsuit in the State of Florida with respect to the real property known as 6913 Valencia Drive, Miami, Florida ("Miami Residence") and the Miami Residence was also Mr. Meehan's residence. Mr. Meehan disclosed that title to the Miami Residence was held by his wife, Elizabeth Hazan, and that she was in a dispute with NLG LLC concerning foreclosure of the Miami Residence.

12.    Mr. Meehan testified that he filed bankruptcy in the United States Bankruptcy Court for the Eastern District of New York because the place of business of this Debtor was 103 West Tano Road, Hampton Bays, New York ("Hampton Bays Residence"), which is the residence of Mr. Meehan's parents and he claims that he sometimes spends the summers at the Hampton Bays Residence, although he does not presently reside there.

13.    Thus, there is a question as to the validity of the venue selected by Mr. Meehan for this bankruptcy case.

14.    I was in communication with NLG LLC's counsel and he provided me with substantial information and documents, including documentation indicating that the United

3

EXHIBIT 14

States Bankruptcy Court for the Eastern District of Pennsylvania had previously determined that an involuntary bankruptcy proceeding that had been filed against Christopher Kosachuk was a bad faith filing and that Court determined that an award of monetary sanctions of $190,173.71 in favor of Mr. Kosachuk and against 9197-5904 Quebec, Inc. was warranted. A copy of that Order and Judgment of the Honorable Jean K. FitzSimon is annexed hereto as Exhibit "C."

15.     Judge FitzSimon's Judgment also awarded sanctions against 9197-5904 Quebec, Inc. in the sum of $960,968.55.

16.     The dispute with respect to the Judgment is evident.

17.     As Mr. Meehan's testimony was not plausible with respect to the entry of the Order and Judgment nor with respect to the underlying Judgment, I believe that dismissal of this case with prejudice is appropriate so the Debtor and NLG LLC can continue their litigation in other forums.

18.     NLG LLC had moved by order to show cause to vacate the Judgment that had been filed by 9197-5904 Quebec, Inc. and the bankruptcy was filed a couple of hours before the hearing to be heard by the Supreme Court of the State of New York, County of New York, on May 18, 2015 for the vacating of the Judgment as NLG LLC had not learned of that Judgment until 2015.

19.     I inquired of Mr. Meehan as to the claim of Mr. Nierman and he explained that there was a dispute as to the amount owed and that reason for the bankruptcy filing was that Mr. Nierman was refusing to turnover his litigation file concerning the dispute with NLG LLC. I found that claim to be suspicious as the Debtor already had obtained an Assignment of Judgment of 9197-5904 Quebec, Inc. against NLG LLC and thus, the litigation file was of no import. Mr. Meehan was unable to provide any explanation.

4

# EXHIBIT 14

20.     For these reasons, I negotiated a resolution whereby this case is dismissed with prejudice and my firm is paid for services rendered. A copy of the Stipulation is annexed hereto as Exhibit "D."

21.     I have requested a hearing on shortened notice as the Debtor would be benefited by a lengthy delay.

22.     It is also requested that this Court waive the requirement of the filing of a memorandum of law as no novel issue of law is present with respect to the issues herein.

23.     No prior application has been made to this or any other Court for the relief requested herein.

WHEREFORE, it is respectfully requested that this Honorable Court grant the Trustee's motion in its entirety and such other and further relief that this Court deems just and proper.

Dated:  Garden City, New York
        August 6, 2015

_____
Marc A. Pergament

# EXHIBIT 14

EXHIBIT A

EXHIBIT 14

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 101875/2012

----------------------------------------------------------------x

9197-5904 QUEBEC INC
Plaintiff,

-against-

NLG LLC
                              Defendant.

----------------------------------------------------------------

## ASSIGNMENT OF JUDGMENT

This indenture made the 30th day of April 2014, between 9197-5904 Quebec inc a Canadian Corporation located at 5552 Queen Mary Road Suite #4, City of Hampstead, State of Quebec, Canada H3X 1V9 party of the first part, and Selective Advisors Group, LLC, located at 16192 Coastal Highway Lewes. Delaware 19958 County of Sussex, party of the second part,

WHEREAS, on the 22nd day of February,2012 a judgment was entered in the Supreme Court, County of NY, in favor of 9197-5904 Quebec inc , and against NLG LLC, a Delaware Limited Liability Company located at 854 Pheasant Run Road, West Chester, PA in the sum of $5,000,000.00 plus interest from February 22nd 2012 plus costs of $225.00, and said judgment was duly entered in the office of the Clerk of the County of New York State, NY on the 22nd day of February 2012.

NOW THIS INDENTURE WITNESSETH, that the said party of the first part, in consideration of $10 and other valuable consideration to them duly paid has sold, and by these presents does assign, transfer and set over, unto the said party of the second part, Selective Advisors Group, LLC, its executors, administrators, and assigns, the said judgment and all sum or sums of money that may be had or obtained by means thereof, or on any proceedings to be had thereupon.

Also, the said party of the first part does hereby constitute and appoint the said party of the second part, its executors, administrators, and assigns, their true and lawful attorney irrevocable, with power of substitution and revocation, for the use and at the proper costs and charges of the said party of the second part, to ask, demand, and receive, and to obtain executions, and take all lawful ways for the recovery of the money due or to become due on said judgment and on payment to acknowledge satisfaction, or to discharge the same; and attorneys one or more under them for the purpose aforesaid, to make and substitute, and at pleasure to revoke; hereby ratifying and confirming all that their said attorney or substitute shall lawfully do in the premises. Also, the said party of the first part does covenant, that that they will not collect or receive the full payment of the judgment, or any part thereof, nor release or discharge the said judgment but will allow all lawful proceedings therein to be taken by the said party of the second part, saving the said party of the fist part harmless of and from any costs in the premises.. This assignment is made without recourse to the party of the first part in any event whatsoever.

EXHIBIT 14

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the day and year first above written.

On behalf of 9197-5904 QUEBEC INC :

RAYMOND HOULE, president

## ACKNOWLEGEMENT

State of _____ Quebec _____

County of _____ D'Arcy McGee _____ **ss.:**

On the ___3___ day of ___June___ in the year 20/4, before me, Raymond Houle, personally appeared, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

_____
Raymond Houle

## CERTIFICATE OF CONFORMITY

I, Pierrette Tardif, a duly licensed notary public in the Province of Quebec, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Raymond Houle as applied to the document annexed to this certificate, which was signed and dated on June 3, 2014. The matter in which was signed was, and is, in accordance with, and conforms to, the laws for taking oaths at acknowledgments, in the Province of Quebec, Canada.

Dated: June 3/2014

_____
NOTARY PUBLIC
NAME:



PIERRETTE
TARDIF
# 198836

# EXHIBIT 14

# EXHIBIT B

EXHIBIT 14

# SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

**Address of Plaintiff:**
3765 Saint-Kevin, Ste 9
Montreal, Quebec H3T 1H8
Canada

9197-5904 Quebec, Inc.

**Plaintiff,**

Index No.:

against

**JUDGMENT BY CONFESSION**

NLG, LLC, a Delaware Limited Liability Company,

**Defendant.**

12101875

| | | |
|---|---|---|
| Amount Confessed | $5,000,000.00 | |
| Interest | $0.00 | $ 5,000,000.00 |
| Costs by Statute | $15.00 | |
| Transcript | | |
| Fees on Execution | | |
| Satisfaction | | |
| Filing Fee | $210.00 | $ 5,000,225.00 |

The undersigned, Attorney at Law of the State of New York, affirms that he is the attorney of record for the Plaintiff herein and states that the disbursements specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: February 16, 2012

I HEREBY CERTIFY THAT I HAVE ADJUSTED THIS BILL OF COSTS AT
$ 225.00

FEB 2 2 2012

Norman Goodman
CLERK

**MARZEC LAW FIRM, PC**

Darius A. Marzec, Esq.
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

**FILED**

FEB 2 2 2012

COUNTY CLERKS OFFICE
NEW YORK

EXHIBIT A

EXHIBIT 14

JUDGMENT entered the __22nd__ day of __February__, 2012

On the foregoing affidavit of Confession of Judgment made by the defendant herein, sworn to the on the 16th day of February 2012,

**NOW, ON MOTION OF MARZEC LAW FIRM, PC**, attorney for plaintiff, it is

**ADJUDGED** that 9197-5904 Quebec, Inc. Plaintiff, with the address of 3765 Saint-Kevin, Suite 9, Monteal, Quebec H3T 1H8, Canada, do recover of **NLG**, LLC, Defendant, with the address of 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309, the sum of $5,000,000.00 with interest of $0.00, making a total sum of $5,000,000.00 together with $225.00 costs and disbursements, as taxed by the clerk    amounting in all to the sum of $5,000,225.00 and that the plaintiff have execution therefor.

_Norman Goodman_
CLERK

**FILED**

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

* Defendant's full Name is:
NLG, LLC, a Delaware Limited
Liability Company

EXHIBIT 14

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 10187/12

9197-5904 Quebec, Inc.,

**Plaintiff,**

against

**AFFIDAVIT OF
CONFESSION OF
JUDGMENT**

NLG, LLC, A DELAWARE LIMITED
LIABILITY COMPANY,

**Defendant.**

**FILED**

FEB 22 2012

STATE OF NEW YORK

COUNTY OF NEW YORK          ss.:

COUNTY CLERK'S OFFICE
NEW YORK

    Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

    The defendant hereby confesses judgment herein and authorizes entry thereof against defendant in the sum of $5,000,000.00.

    Defendant's address is 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309; Defendant authorizes entry of judgment in New York County, New York, if said residence address is not in New York State.

    This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Fraud and Abuse of Process.

    **This affidavit, if made in connection with an agreement for the purchase for $1,500.00 or less of any commodities for any use other than a commercial or business use upon any plan of deferred payments whereby the price or cost is payable in two or more installments, was executed, subsequent to the time a default occurred in the payment of an installment thereunder.**

Sworn to before me this
16 day of Felony, 2012

9197-5904 Quebec, Inc. by Raymond Houle, Manager
MEMBER, NLG LLC

NOTARY PUBLIC

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/2012

**EXHIBIT 14**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 10 875/12

9197-5904 Quebec, Inc.,

Plaintiff,

against

NLG, LLC,

Defendant.

**AFFIDAVIT OF
RAYMOND HOULE**
REGARDING FACTS
SUPPORTING
JUDGMENT

STATE OF NEW YORK

COUNTY OF NEW YORK    ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Defendant has consistently abused its legal position by filing frivolous litigation documents, affidavits, pleadings, and motions, in and without the state, misrepresenting the truth concerning key facts regarding the mode of operation, personnel, employees, corporate documents and status of defendant; Defendant has failed to abide by rules of court with respect to discovery, disclosures and subpoena power of the court and counsel, and has made litigation process difficult, wasteful, and expensive to adversary/ies. All actions of Defendant constitute abuse of process and fraud upon the court and parties involved, who were unduly damaged by such fraudulent conduct and abuse of process by Defendant. The conduct of Defendant was intentional and malicious and calculated to cause additional expense, delay and harassment to defendant's adversaries; such conduct was illegal, improper, unethical and unnecessary to the administration of justice and process in these matters, giving Plaintiff a cause of action.

EXHIBIT A

RAYMOND HOULE

Sworn to before me on the 21 day of February, 20 12.

Notary Public

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20 12

**FILED**

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

EXHIBIT A
EXHIBIT 14

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**                                    Index No.

9197-5904 Quebec, Inc.,

                                        **Plaintiff,**

        **against**

NLG, LLC., *A DELAWARE LIMITED LIABILITY COMPANY,*

                                        **Defendant.**

---

### JUDGMENT BY CONFESSION
### AFFIDAVIT OF JUDGMENT BY CONFESSION

---

**ATTORNEYS FOR PLAINTIFF**
**Marzec Law Firm, P.C.**
**Darius A. Marzec, Esq.**
**225 Broadway, Suite 3000**
**New York, NY 10007**
**212-267-0200**

**FILED AND DOCKETED**
FEB 2 2 2012
AT   10:25 A M
N.Y., CO. CLK'S OFFICE

---

### CERTIFICATION

Pursuant to Section 130-1.1, the following documents are hereby certified:

By: Darius A. Marzec, Esq.
MARZEC LAW FIRM PC
Attorneys for Plaintiff
225 Broadway, Ste. 3000
New York, NY 10007
(212) 267-0200

DOCKETED BY

EXHIBIT 14

EXHIBIT C

EXHIBIT 14

## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : DISMISSED CHAPTER 7 INVOLUNTARY |
| | : |
| | : CASE NO. 12-16438(JKF) **\*SEALED\*** |
| CHRISTOPHER   KOSACHUK,   a.k.a. | : |
| CHRIS KOSACHUK | : |
| | : |
| | : |

### ORDER AND FINAL JUDGMENT

Upon consideration of the Motion of Christopher Kosachuk to Declare this Involuntary Bankruptcy Petition a Bad Faith Filing, for Costs, Compensatory and Punitive Damages, to Seal the Records and Sanctions (the "Motion") with respect to 9197-5904 Quebec, Inc. and the arguments of counsel and evidence admitted at the trial conducted before this Court on March 18, 2015, it is **ORDERED, ADJUDGED AND DECREED**:

1.      The Motion is **GRANTED** as to 9197-5904 Quebec, Inc. without effect on the Motion as to the claims asserted and relief sought in the Motion against Darius A. Marzec, Esq.

2.      Final Judgment for monetary sanctions in the amount of $192,173.71 pursuant to 11 U.S.C. §§ 105(a) and 303(i)(1), representing the reasonable costs and attorneys' fees incurred by Mr. Kosachuk in this matter, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post judgment interest at the federal judgment rate of interest.

3.      Final Judgment for monetary sanctions in the amount of $_960,968.55_ pursuant to 11 U.S.C. § 303(i)(2)(B) and this Court's inherent powers, representing punitive damages, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post judgment interest at the federal judgment rate.

118113055_1

# EXHIBIT 14

4.    Final Judgment pursuant to 11 U.S.C. § 105(a) and this Court's inherent powers, is awarded to Chris Kosachuk that the indebtedness of Chris Kosachuk with respect to that certain judgment issued by the Supreme Court, County of New York, under Index No. 103896/2004 in favor of Eugenia Lorret and against Chris Kosachuk in the sum of $150,732.45 accounting for $108,293.54, plus interest of $41,388.91 from November 25, 2002, plus costs of $1,050, and which judgment was thereafter modified and reduced on May 12, 2008 to the sum amount of $48,293.54, plus costs of $1,050, plus interest from November 25, 2002, and which judgment was assigned to 9197-5904 Quebec, Inc. on December 15, 2009 by Assignment of Judgment, and which judgment was further assigned to SRS Techonologies Professionals, LLC by Assignment of Judgment, dated February 10, 2014, Index No. 103896/2004, and Corrected Assignment of Judgment, dated February 10, 2014, is hereby cancelled nunc pro tunc to July 6, 2012.

5.    This Final Judgment may be recorded as a matter of public record.

6.    This Final Judgment is effective immediately upon entry and this Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and Final Judgment.

7.    Chris Kosachuk shall be entitled to writs of execution and all other legal process to enforce this Final Judgment permitted by Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and applicable law.

March 24th 2015

BY THE COURT:

The Honorable Jean K. FitzSimon
United States Bankruptcy Judge

118113055_1

# EXHIBIT 14

# EXHIBIT D

EXHIBIT 14

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In Re:                                          Chapter 7

Selective Advisors Group LLC,                   Case No. 815-72153-A736

        Debtor.                                Stipulation of Settlement

-------------------------------------------------------------X

        Whereas, the Debtor having filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code,

        Whereas, the Debtor having appeared for examination pursuant to § 341(a) of the Bankruptcy Code,

        Whereas, the Trustee having raised issues as to whether this filing was a good faith bankruptcy filing by the Debtor,

        Whereas, there is an issue concerning whether the Debtor has any creditors in this bankruptcy case,

        Whereas, the Trustee's attorneys, Weinberg, Gross & Pergament LLP having expended substantial time and effort in trying to understand this bankruptcy case and all of the related litigation between the Debtor and NLG LLC,

        It is hereby Stipulated and Agreed as follows:

        1.      This bankruptcy case is dismissed with prejudice.

        2.      The Debtor shall pay the sum of $6,500.00 to Weinberg, Gross & Pergament LLP for the attorneys' fees and costs incurred in investigating the claims asserted by the Debtor in the bankruptcy petition and related State Court lawsuits.

# EXHIBIT 14

3.    This Stipulation represents the entire agreement between the parties and may not be modified unless in writing signed by the parties and is subject to approval by the Bankruptcy Court.

4.    The parties acknowledge that the United States Bankruptcy Court for the Eastern District of New York shall retain jurisdiction with respect to the interpretation and enforcement of this Stipulation of Settlement and the terms herein.

Dated: Garden City, New York
July 23, 2015

Weinberg, Gross & Pergament LLP
Attorneys for Trustee

By:    _____
Marc A. Pergament
400 Garden City Plaza, Suite 403
Garden City, New York  11530
(516) 877-2424

Vlahadamis & Hillen, LLP
Attorneys for Debtor

By:    _____
Evans M. Hillen
148 East Montauk Highway, Suite 3
Hampton Bays, New York  11946
(631) 655-4115

"So Ordered"

2

# EXHIBIT 14

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In Re:                                                    Chapter 7

Selective Advisors Group LLC,                             Case No. 815-72153-A736

        Debtor.                                         Order

-----------------------------------------------------------X

        WHEREAS, Marc A. Pergament, Chapter 7 Trustee ("Trustee") of the Estate of Selective Advisors Group LLC ("Debtor"), having applied for an Order: (a) approving the dismissal of this bankruptcy case with prejudice; (b) authorizing the Debtor to pay Weinberg, Gross & Pergament LLP the sum of $6,500.00 for services rendered; and (c) such other and further relief that this Court deems just and proper, and the Order Scheduling a Hearing on Shortened Notice and Affirmation in Support having been served upon the Office of the United States Trustee, the Debtor, Debtor's counsel, J. Henry Nierman, Esq. and all parties who filed notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, and

        WHEREAS, a hearing having been conducted before the Honorable Robert E. Grossman, United States Bankruptcy Judge, United States Bankruptcy Court, Alfonse M. D'Amato U.S. Courthouse, 290 Federal Plaza, Room 860, Central Islip, New York on August 24, 2015 and the Trustee appeared by Weinberg, Gross & Pergament LLP, by Nicholas Tuffarelli, Esq. and the Debtor appeared by Vlahadamis & Hillen, LLP by Evans M. Hillen, Esq. and Chris Kosachuk appeared *pro se*, and no opposition to the Trustee's application having been submitted or served and after due deliberation and consideration, and on the record before the Court, it is hereby

        ORDERED, that the Motion is granted, and it is further

# EXHIBIT 15

ORDERED, that the Debtor's case is dismissed with prejudice, and it is further

ORDERED, that Debtor shall pay Weinberg, Gross & Pergament LLP the sum of $6,500.00 for services rendered in connection with the Debtor's bankruptcy filing.



**Dated: Central Islip, New York**
**August 28, 2015**

**Robert E. Grossman**
**United States Bankruptcy Judge**

EXHIBIT 15

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL ACTION

NLG, LLC,

Case No. 11-42770-CA-01

Plaintiff,

vs.

ELIZABETH HAZAN,

Defendant(s).

_____/

### NOTICE OF APPEARANCE

**NOTICE IS HEREBY GIVEN** that Daniel A Milian, Esq., of the law firm of Law Office of Daniel A. Milian, P.A., enters his appearance as counsel on behalf of **SELECTIVE ADVISORS GROUP, LLC**, in this action. All pleadings and papers should be served on the undersigned.

### CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of this document has been furnished via email to Juan Ramirez, Jr., Esq. (Info@attainJustice.com), Diaz Reus Targ, LLP, 3400 Miami Tower 100 SE 2nd St. Miami, Florida 33130, this 2nd day of October, 2015.

Law Office of Daniel A. Milian.

**s/Daniel A. Milian, Esq.**
Daniel A. Milian, Esq.
Florida Bar No.: 74803
2025 SW 32nd Ave, Suite 130
Miami, FL 33145
Telephone: 305.588.4319
Fax: 305.441.0688
Email: damilian@danielmilianlaw.com
Counsel For: Selective Advisors Group, LLC

EXHIBIT 16

EXHIBIT 16

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 11-42770 CA 02


NLG, LLC.,

                Plaintiff,

      vs.

ELIZABETH HAZAN,

                Defendant.

_____/


                Dade County Courthouse
                73 West Flagler Street
                Miami, Florida 33130

                Wednesday, October 14, 2015


      PLAINTIFF'S MOTION TO STRIKE SHAM SATISFACTION
        OF NLG'S MORTGAGE NUNC PRO TUNC


      The above-entitled cause came on for hearing before
the Honorable Monica Gordo, Circuit Court Judge.

# EXHIBIT 17

APPEARANCES

For the Plaintiff:          DIAZ, REUS, TARG, LLP.
                            By:  Juan Ramirez, Jr., Esq.
                            3400 Miami Tower
                            100 S.E. 2nd Street
                            Miami, Florida 33131


For Select Advisors:        MARK D. COHEN, P.A.
                            By:  Mark D. Cohen, Esquire
                            Suite 435S
                            4000 Hollywood Boulevard
                            Hollywood, Florida 33021


For Select Advisors         JACOBS KEELEY, P.A.
  and Ms. Hazan:            By:  Bruce Jacobs, Esquire
                            Suite 1620
                            169 East Flagler Street
                            Miami, Flroida 33131


For Ms. Hazan:              GLACHMAN & BRILL, P.A.
                            By:  Jordan Marcus Brill, Esq.
                            3731 FAU Boulevard
                            Boca Raton, Florida 33431


For Fisher Island HOA:      PEYTON BOLIN, P.L.
                            By:  Melissa O'Conner, Esquire
                            Suite 100
                            3343 W. Commercial Blvd.
                            Ft. Lauderdale, Florida 33309


For Valencia                HABER SLADE, P.A.
  Estates HOA:              By:  Jonathan Goldstein, Esq.
                            Suite 1205
                            201 South Biscayne Blvd.
                            Miami, Florida 33131


Also Present:               Chris Kosachuk


REPORTER:                   CATHY J. RUNDELL MURPHY

EXHIBIT 17

3

1    (Thereupon, the following proceedings were had:)

2        THE COURT:  All right, NLG versus Elizabeth

3    Hazan.  Please state your appearances.

4        MR. RAMIREZ:  Juan Ramirez on behalf of NLG,

5    plaintiff.

6        MS. CASTELL:  Melanie Castell (phonetic) on

7    behalf of Ms. Hazan.  We're here to withdraw --

8        MR. COHEN:  -- she is --

9        MS. CASTELL:  -- I am.  Sorry.

10       THE COURT:  I'm going to hear your motion to

11   withdraw at the end.  Why don't you stick around.

12       Where's your co-counsel who's been appearing

13   on this case the whole time?

14       MR. JACOBS:  Your Honor, there's a whole lot

15   of lawyers at this --

16       THE COURT:  -- yeah, I know there's a whole

17   lot of lawyers here but I remember --

18       MR. RAMIREZ:  -- Mr. Nathan and Mr. Cohen were

19   representing --

20       MS. CASTELL:  Mr. Garcia?

21       THE COURT:  Mr. Garcia?

22       MS. CASTELL:  He's at the office and I'm here

23   on his behalf.

24       MR. JACOBS:  Your Honor, Bruce Jacobs on

25   behalf of Ms. Hazan and also Select Advisors.  All

EXHIBIT 17

1  of these lawyers are here because they're all

2  involved in some why, shape, or form.  I was the

3  trial lawyer in the case that went up on appeal.

4       THE COURT:  Yeah, the one that the Third said

5  there was absolutely no basis for the ruling that

6  occurred, right?

7       MR. JACOBS:  Well Judge Eig clearly disagreed,

8  so.

9       THE COURT:  Well, the only things before me

10 properly today are the Motion to Withdraw, the

11 Plaintiff's Motion to Strike and the Second Amended

12 Motion for Entry of Judgment of Foreclosure.

13      MR. RAMIREZ:  We would prefer to just go on

14 the Amended Motion for Judgment of Foreclosure.

15      THE COURT:  Okay.

16      MR. RAMIREZ:  And then leave the other, if we

17 have time.  Judge, very succinctly, the Court is

18 aware that this case was tried, and was appealed

19 and the Court issued a five-page opinion and then

20 issued a mandate back in November.  So we're almost

21 on the one-year anniversary of that mandate.

22      We came before you on May 1st, and at that

23 time the Court rightfully deferred ruling, pending

24 what was happening in New York.  So let me bring

25 you up to date on what happened in New York.  We

EXHIBIT 17

1    set it for hearing, they managed to get a

2    continuance, then two hours before the hearing they

3    file for bankruptcy.  Now here's the judgment

4    creditor filing for bankruptcy, a little bit

5    unusual.

6         If you want to know the fraudulent nature of

7    this case, you should read the trustee's report.

8    It's a neutral observer that took testimony, and

9    issued a report to the bankruptcy judge, urging

10   that the case be dismissed.  So the bankruptcy was

11   dismissed.  Then going back to the state court

12   judge, and in September they got the bright idea

13   that they would tell the Judge that the judgment

14   had been satisfied.  So they were arguing to the

15   judge there that there's nothing pending, the case

16   is moot, you know, you close it out.

17        So we took that dismissal to Judge Lopez, who

18   had domesticated the judgment from New York.  Judge

19   Lopez heard argument, Mr. Cohen was there, and

20   issued an order dismissing the domestication saying

21   the cause was dismissed, no further proceedings to

22   be taken --

23        MR. COHEN:  -- no, it was satisfied your

24   Honor, no, no --

25        THE COURT:  -- no, no, no.  You'll have a

EXHIBIT 17

6

1    chance to respond --

2         MR. RAMIREZ:  -- you can read it yourself,

3    Judge.

4         MR. COHEN:  I have the transcript.

5         MR. RAMIREZ:  I have the transcript too,

6    Judge, if you want it.

7         THE COURT:  Please don't interrupt.

8         MR. COHEN:  I apologize, your Honor.

9         MR. RAMIREZ:  He repeatedly says at the end,

10   case is dismissed, no further action will be taken.

11   In fact I basically dictated the order that we

12   entered.

13        THE COURT:  Okay.

14        MR. RAMIREZ:  So now, I also remind the court

15   back on May 1st, Mr. Garcia, while still the

16   attorney of record, moved to amend the answer and

17   assert new affirmative defenses.  The Court said

18   that's denied, this case has been tried, I'm not

19   going to reopen this thing.

20        In fact they had filed, basically, the same

21   thing they're going to attempt to do today, Ms.

22   Hazan is trying to assert all kinds of things that

23   happened while this appeal was pending, before

24   trial took place.  All of these things could have

25   been brought, never were brought, they want a

EXHIBIT 17

1    second and third bite of the apple.  This Court has

2    already denied the motion to amend.

3         Now they're trying to do it backwards through

4    Selective Advisors, who basically is Ms. Hazan's

5    husband.  Mr. Milian, contrary to Mr. Cohen who

6    says, I don't know what his relationship is, he is

7    the husband of Ms. Elizabeth Hazan.  He is the

8    managing member of the LLC Selective Advisors.  He

9    is the one that got lambasted by the trustee.  He

10   is the one that now wants to intervene to assert

11   the very same arguments that you denied Ms. Hazan

12   to assert.

13        I have them all here in the motion that was

14   filed back in January, where it says all the same

15   representations; the judgment has been satisfied.

16   Well we never got a judgment because we lost.  The

17   judgment was for Ms. Hazan.  So there's no judgment

18   and the way we proceed in a civil proceeding is we

19   do things by pleadings.  We had a complaint, they

20   asserted their defenses, all the answers and the

21   case was tried.  Now they're trying to, again,

22   reopen the whole thing.

23        And believe me, if you've read any of the

24   emails that they've been sending and all the

25   attachments and the tabs and everything.  They want

EXHIBIT 17

1    to open up a whole can of worms, and I can go into

2    it if you want, but it's really not relevant

3    because the pleadings in this case have been

4    closed.  There's nothing pending, except to enforce

5    the mandate from the Third District.  And it's not

6    going to now be in conflict with any other judgment

7    or any other Judge here, like Judge Lopez'

8    division.  That's it.

9         MR. JACOBS:  Good morning, your Honor.  On

10   behalf of Ms. Hazan, let me start off by saying

11   that yesterday, last night, we got this affidavit

12   in support of the motion for final judgment of

13   foreclosure that was signed by Chris Kosachuk, who

14   is the original managing member of NLG and it

15   starts off, I am the manager of plaintiff, NLG, in

16   the above decided cause and authorized to make this

17   affidavit on behalf of the NLG.

18        This was signed -- it was filed last night and

19   was signed yesterday and what it doesn't address is

20   Judge Lopez' order, which is recorded, which was in

21   the domestication of the New York judgment, which

22   came out of the charging lien from Pennsylvania,

23   which came out of the judgment against Mr. Kosachuk

24   for stealing $150,000 worth of checks from some

25   third party, that my clients purchased.  They

EXHIBIT 17

1   purchased the judgment.

2        So Mr. Kosachuk, he had a $150,000 judgment,

3   that he used NLG as an instrumentality of fraud to

4   steal these checks and cash them, and I think the

5   Court can understand -- I tried the case.  I came

6   in, I just did my trial and at the time the issues

7   in trial were there had already been a judgment.

8   There had already been settlement negotiations.

9   There had already been decisions about what

10  remedies we were entitled to, and when we were

11  making the arguments, the arguments we were making

12  where the Florida Supreme Court says, once you've

13  elected your remedy, you can't come back and seek a

14  different remedy.  The Third DCA disagreed.  So be

15  it.

16       What I want the Court to understand is, Judge

17  Lopez' order, which has never been appealed, which

18  is good law, which is controlling in this situation

19  says that the court, Judge Lopez, judicially

20  assigned all of the rights that NLG had in any

21  judgment, to Select Advisors, and Select Advisors,

22  using those rights appropriately, issued a

23  satisfaction of judgment, issued a satisfaction of

24  mortgage, satisfied the New York judgment they had

25  against NLG, and it's checkmate.

EXHIBIT 17

1        And I want the Court to understand, when I say

2    it's checkmate, the Court needs to, I mean,

3    particularly because there's been so many courts

4    involved, and everyone, every judge has heard from

5    Mr. Kosachuk and their lawyers that my client is

6    the worst person in the word, the biggest thief

7    goniff, you could ever meet, and when I looked at

8    what I've seen in this case -- you know, I gave

9    your Honor -- I don't know if you got the binder

10   that I sent you.  I sent a binder over yesterday--

11        THE COURT:  -- it's always great when I'm in a

12   12-hour jury selection to receive a binder the day

13   before.

14        MR. JACOBS:  Well, I'm -- what I can tell you

15   is in the first section of the binder, I gave you

16   the complaint that you have against NLG by Oxana

17   Agappo (phonetic) who is in the prior --

18        MR. RAMIREZ:  -- can I launch an objection?

19        THE COURT:  No, let me just say, you all

20   noticed this for a five-minute motion calendar on

21   the amended motion.  So I just want you to respond

22   to what he argued, procedurally --

23        MR. JACOBS:  -- well I'm trying to explain the

24   procedures.

25        THE COURT:  Okay.

EXHIBIT 17

1    MR. JACOBS:  So the procedure of this is, and

2    just so we can start from the beginning --

3    THE COURT:  -- no, you're not going to take me

4    back from the beginning of the trial.  I'm well

5    aware of all of that.

6    MR. JACOBS:  -- well, respectfully --

7    THE COURT:  -- while you've not been here, I

8    have.  We could have missed each other, but I've

9    been here for some period of time with an

10   understanding of where we're at --

11   MR. JACOBS:  -- well, respectfully, your Honor

12   procedurally this case comes out of -- there was an

13   allegation that Mr. Kosachuk stole the house --

14   MR. RAMIREZ:  -- none of that is in this

15   record, in this case.

16   THE COURT:  None of that is relevant.

17   MR. JACOBS:  Well I think the Court -- I think

18   it's important for the Court to at least allow me

19   to --

20   THE COURT:  -- no, what I'm interested in

21   knowing is, procedurally, why it is that he's not

22   entitled to foreclosure.

23   MR. JACOBS:  So they get a judgment against my

24   client for this $1.27 million which was a note and

25   mortgage that was given in addition to a gift

EXHIBIT 17

1  letter --

2       MR. RAMIREZ:  -- that's not in this case --

3       MR. JACOBS:  -- it's in this case --

4       MR. RAMIREZ:  -- no, it's not in this case--

5       THE COURT:  -- hold on.  Don't speak over him.

6       MR. JACOBS:  Sure.

7       THE COURT:  Let me ask you this.  Talk to me

8  since the Third DCA mandate, why it is that now, if

9  we are where we're at, why he's not entitled to

10  foreclosure?

11      MR. JACOBS:  Well in order to do that I have

12  to explain the --

13      THE COURT:  -- I don't need you to explain the

14  procedural history before that.  I'm aware of that.

15      MR. JACOBS:  Are you aware about the process

16  through Pennsylvania into New York, back and forth,

17  because that is --

18      THE COURT:  -- not all of that is relevant to

19  this case --

20      MR. JACOBS:  -- but, Judge --

21      THE COURT:  -- the only thing that's relevant

22  about this case, about those judgments, has to do

23  with the domestication with Judge Lopez, that's it.

24      MR. JACOBS:  Right --

25      THE COURT:  -- so why don't you tailor your

EXHIBIT 17

1    arguments --

2        MR. JACOBS:  -- so let's back up from the

3    domestication of Judge Lopez.  They were there last

4    week making the same argument; Judge, it's all

5    fraud here, Mr. Kosachuk should be allowed to get

6    this final judgment, can you please vacate the

7    judgment, don't satisfy it, vacate the judgment

8    because it's been vacated up in New York, or

9    because we believe that it shouldn't be where it is

10   if it hadn't been vacated in New York.  They were

11   asking for it to be vacated in New York.

12       And what you have is Judge Lopez in his order,

13   and in the transcript says, I'm not satisfying --

14   I'm not vacating anything.  That's a good judgment.

15   It stands.  I'm going to satisfy the judgment.  I'm

16   going to close the case out, procedurally, but I'm

17   not in any way, shape, or form, vacating or undoing

18   or saying anything and read the transcript, he

19   makes it very clear, I'm not going to let you do

20   that.

21       Now let's back up to New York.  They were just

22   in New York making the same argument.  Judge, they

23   shouldn't be allowed allow to do this because

24   there's all these procedural infirmaties about how

25   it was done, it was all fraud, and this and that.

EXHIBIT 17

1    The New York court was asked to issue a stay,

2    saying you cannot impose -- you cannot proceed in

3    collecting on this judgment, from the New York

4    court.  The New York judge said, no, I'm not

5    issuing a stay, if Florida wants to say that they

6    can execute, Florida says they can execute.

7        So now you back that out from New York, they

8    were coming out of the Pennsylvania court, and what

9    you have in the Pennsylvania court was a charging

10   order that was entered after much litigation

11   between NLG and this Quebec corporation and what

12   you have in that situations was, the Quebec

13   corporation had bought that judgment for $150,000,

14   went to Pennsylvania where NLG was created, and

15   started litigating with them to collect that

16   judgment --

17       MR. RAMIREZ:  -- Judge, I want to object.

18   None of this is in the record of this case.

19       THE COURT:  It's not relevant to this case.

20       MR. JACOBS:  Well, respectfully, your Honor.

21   If your Honor is going to say that Mr. Kosachuk's

22   affidavit is correct, then he's --

23       THE COURT:  -- don't put words in my mouth.

24       MR. JACOBS:  I'm not putting -- their

25   saying -- they're asking you to --

# EXHIBIT 17

1      THE COURT:  -- no, we're here on the motion

2  for foreclosure.

3      MR. JACOBS:  Sure.

4      THE COURT:  We're here on a foreclosure of a

5  residential property.

6      MR. JACOBS:  Right, but who --

7      THE COURT:  -- and it went up, and the Third

8  said that they were entitled to judgment.  I'm

9  interested in the procedural argument.  You've now

10  talked to me for ten minutes about a bunch of

11  things not related, and a bunch of other litigation

12  between separate parties, and some of the same

13  parties, not dealing with this --

14      MR. JACOBS:  -- respectfully, your Honor --

15      THE COURT:  -- this is your opportunity.  You

16  have two minutes to make your argument with regard

17  to this foreclosure.

18      MR. JACOBS:  Respectfully, your Honor, Judge

19  Lopez --

20      THE COURT:  -- just in the future, because

21  that's like the sixth "respectfully" and I'm

22  assuming you always approach a court of law

23  respectfully.

24      MR. JACOBS:  Always.

25      THE COURT:  So you can take that out of your

EXHIBIT 17

1  vocabulary with me.

2       MR. JACOBS:  When Judge Lopez issued his order

3  on August 20, 2014 saying NLG is now -- the right

4  that NLG has in the particular judgment has been

5  assigned to Select Advisors, that is where I think

6  that whole case falls and either your Honor is

7  going to ignore that order and say it's not

8  relevant to the issues here, because this was

9  before even the mandate came down.  This was before

10  even the decision came down.

11       There was an order from Judge Lopez, before

12  the decision came down in this case saying NLG is

13  now controlled by Select Advisors and that order

14  stands.  It's never been appealed.  It's never been

15  overturned.  They were all saying, well go back to

16  New York, if you can get the New York court to undo

17  this then we'll talk to you, but until then, I have

18  a final judgment from New York that says that

19  Select Advisors has a judgment against NLG and I'm

20  going to judicially assign this asset to NLG.

21       That is where we stand right now and what's

22  happening is there's a satisfaction of this

23  judgment.  There's been a satisfaction of the

24  mortgage underlying this judgment, was done the

25  next day by NLG, as controlled, pursuant to Judge

EXHIBIT 17

1  Lopez' in order in this case.  So now they're

2  coming back and saying forget all that, forget

3  about Judge Lopez' order, forget about the

4  satisfaction of judgment, forget about the

5  satisfaction of mortgage, because we've claimed

6  fraud, which is not before this Court, and they're

7  saying, you should ignore everything and give them

8  a final judgment because Mr. Kosachuk says, I'm the

9  manager of plaintiff, NLG, and I'm authorized to

10 make this affidavit on behalf of NLG.  If you ask

11 my client Select Advisors, he's not the manager.

12 He's not authorized.  And Judge Lopez makes that

13 clear.

14     So I'm respectfully -- sorry.  I'm submitting

15 to the Court that the Court at the last hearing

16 says, I don't want to enter an illegal order.  And

17 that is respectfully what I think they're asking

18 you to do is to enter an order that says, someone

19 who's been told by Judge Lopez has no rights to the

20 company, is going to ask you to enter a judgment

21 that -- enter a final judgment of foreclosure on a

22 mortgage and judgment that have already been

23 satisfied, and they're in the wrong court to do

24 that.  They would need to go elsewhere, before they

25 can come back and seek that relief.

EXHIBIT 17

 1      THE COURT:  Before I get a response.  Let me
 2   just ask you.  Where did Judge Lopez say anything
 3   in that order about Mr. Kosachuk, because I have it
 4   in front of me and I don't see anything about --
 5      MR. JACOBS:  -- what you look at your Honor is
 6   the --
 7      MR. COHEN:  -- prior order.
 8      MR. JACOBS:  The prior order.
 9      THE COURT:  The prior order was just a
10   domestication of the judgment.
11      MR. JACOBS:  No.  There was an order granting
12   plaintiff's motion for proceedings supplementary
13   and for an order impleading a third party, and in
14   this order the Judge says that the Court orders
15   that the Hazan final judgment entered by NLG, have
16   been judicially assigned to Select Advisors, and
17   they having gone back to him multiple times --
18      THE COURT:  -- I thought you had mentioned
19   Judge Lopez making a finding about Mr. Kosachuk?
20      MR. JACOBS:  Well, respectfully, Mr. Kosachuk
21   was, at all times until that order, acting on
22   behalf of NLG as the managing member, for all these
23   years.  It's the one asset that he has.  So that
24   order says that NLG, the entity, no longer belongs
25   to Mr. Kosachuk.  It belongs to Select Advisors,

EXHIBIT 17

1    and that is the problem and they have now been to

2    the Pennsylvania courts, the New York courts, and

3    to Judge Lopez asking them all to undo this, or

4    make it all undone nunc pro tunc --

5         THE COURT:  -- and who's representing on

6    behalf of the New York company?  Who's the other

7    side that shows up when he's asking for the

8    continuance?  Are any of you involved in that?

9         MR. RAMIREZ:  No, no, it's one of the

10   lawyers --

11        MR. COHEN:  -- in New York, you're talking

12   about?

13        THE COURT:  Yeah.

14        MR. COHEN:  Those judges are New York

15   licensed--

16        THE COURT:  -- no, no, I appreciate that

17   there's a judge from New York.  I just know that

18   counsel has been trying to get a hearing and --

19        MR. COHEN:  -- there's nothing pending.

20        MR. RAMIREZ:  -- but Mr. Kosachuk's counsel

21   has been trying and they've continued like ten

22   times, Judge.

23        MR. COHEN:  -- there's nothing pending out

24   there at this stage from what I understand.

25        MR. RAMIREZ:  Because they satisfied it to

EXHIBIT 17

1  prevent us from vacating a judgment.  Judge, let me
2  just respond because they keep sayin that Judge
3  Lopez assigned the judgment.  Judge, the only
4  assignment that he could have made was in another
5  case because this only judgment was for Ms. Hazan.
6  That's the only thing that was pending at the time
7  that Judge Lopez issued that order.
8         THE COURT:  Let me see.
9         MR. RAMIREZ:  She won.  So how can they
10  assign--
11         THE COURT:  -- because the Third DCA mandate
12  hadn't come back.
13         MR. RAMIREZ:  Exactly but that was done while
14  the case was pending in the appellate court.
15         MR. JACOBS:  Well why would that matter?  What
16  I'm going to ask the Court to understand is, just
17  assume that with respect to foreign litigation, and
18  you have excellent lawyering on both sides and what
19  Ms. Hazan's side did was acquire a judgment against
20  NLG, with the intention of blowing it up and
21  stopping it from ever being able to harm her.
22  That's exactly what happened here.  They went in,
23  they got the judgment.  They used that judgment to
24  take control of the corporation that Mr. Kosachuk
25  had been using and that is fair game and --

EXHIBIT 17

1      THE COURT:  -- I'm still at a loss right now.

2    Right now I didn't follow your conversation at all

3    and the reason I didn't is because we're here on a

4    foreclosure for a residential property.  So --

5      MR. JACOBS:  -- but who controls the entity is

6    the question?  That's the whole issue, Judge, who

7    controls the --

8      THE COURT:  -- who controls the judgment --

9      MR. JACOBS:  -- the judgment, which is

10   controlled by the entity.  The judgment is --

11     THE COURT:  -- okay, but if you got a judgment

12   from Judge Lopez before the mandate took effect,

13   then what he was considering was against -- what he

14   was considering was a judgment that wasn't proper,

15   to begin with.

16     MR. JACOBS:  No, respectfully, your Honor.

17   The fact that all these judgments and issues and

18   law suits going around, and around, doesn't change

19   the fact that the Third DCA was considering an

20   appeal by NLG against Elizabeth Hazan.

21     During the course of that appeal, NLG got

22   taken over, judicially assigned to Select Advisors,

23   because of a judgment that was outstanding against

24   NLG, from this woman in New York who lost $150,000

25   and got a money judgment in New York, which was

EXHIBIT 17

1    properly domesticated here in Florida, which Judge

2    Lopez said is a good order, which lead to the New

3    York -- another, different New York judgment being

4    entered, which is what was domesticated here in

5    Florida, which is what Judge Lopez says, okay, it's

6    domesticated -- a good judgment.

7         No one has ever told you it was not a good

8    judgment.  No one has ever gone back and said --

9    there was an effort to say, Judge, we should be

10   allowed to -- let's go to New York and see what we

11   can do, but they haven't done anything yet, and

12   they're asking you to ignore a valid, today

13   facially valid, New York judgment that has been

14   satisfied that was used to take a judicial

15   assignment of this judgment which would then -- the

16   parties that were in control, legally and

17   appropriately satisfied --

18        MR. RAMIREZ:  -- Judge --

19        MR. JACOBS:  -- and they're asking you to

20   ignore all of that because there's a mandate from

21   the Third DCA that says issue an opinion or

22   whatever.  Right now they have no standing in the

23   case is our point.  They lost their standing by

24   virtue of the judgment assignment.

25        THE COURT:  All right.  I'm indulging all of

EXHIBIT 17

1    you because this is a five-minute motion calendar

2    and I'm indulging you because my trial doesn't

3    resume until tomorrow.  I'm going to hear

4    argument --

5         MR. RAMIREZ:  -- I want to go back to this

6    case, Judge.  We're trying this case and this case

7    only.  In this case, there was an appeal pending.

8    If they had all this stuff, they could have asked

9    the court to relinquish jurisdiction.

10        THE COURT:  I get all of that.  My concern is

11   issuing a final judgment of foreclosure that would

12   be illegal because of what occurred in Judge Lopez'

13   case.  I'm not interested in all the other stuff.

14        MR. RAMIREZ:  But Judge Lopez never -- he had

15   no jurisdiction to decide this case because it was

16   pending in front of you and it was pending on

17   appeal and he was not taking up anything about this

18   foreclosure --

19        THE COURT:  -- my concern is.  I'm Judge

20   Lopez' colleague --

21        MR. RAMIREZ:  -- I know --

22        THE COURT:  -- I'm not the Third District

23   Court of Appeals --

24        MR. RAMIREZ:  -- if you read the order.  It's

25   dismissed, no more collection efforts can go

# EXHIBIT 17

1    forward because it's been satisfied.  That's all

2    you need to be concerned with.  If you want to get

3    into all this stuff, Judge Lopez couldn't assign a

4    judgment in favor of NLG because NLG had lost.  If

5    he assigned anything, it was another case, but not

6    this case.  In this case, we have the pleadings.  I

7    can only respond to pleadings and the issues as

8    framed by those pleadings --

9         THE COURT:  -- so your point is because NLG

10   satisfied the judgment to Select then they still

11   have the right to enforce that?

12        MR. RAMIREZ:  No, I'm saying that their

13   shenanigans that prevented us from here the

14   vacation in New York, they told the New York court

15   this has been satisfied and they filed the

16   satisfaction, and they don't say how or anything.

17   And, you, in front of you, don't have any reason to

18   get into why, how, who, by -- it's been satisfied.

19   So they can't collect on that judgment because it's

20   been satisfied.

21        Now, we are here before you, because this case

22   had been pending now on a mandate for almost a year

23   and they have not been allowed to amend to assert

24   all of these things, and now they're trying to

25   assert orally, where I'm not in a position to

EXHIBIT 17

1    respond.  But if you me want to go into all that

2    history --

3        THE COURT:  -- no, I don't.  I want to make

4    sure that what you're asking me to do is legally

5    appropriate and they took me back to the place that

6    I was the day that we first addressed this, that I

7    kept asking why didn't you all seek enforcement of

8    the mandate sooner, I guess.  It came out in

9    December, right?

10       MR. RAMIREZ:  It came out in November and we

11   tried to get a hearing in New York and we kept

12   getting delayed --

13       THE COURT:  -- because the domestication has

14   already happened --

15       MR. RAMIREZ:  -- the domestication happened

16   in, I guess 2014 while the appeal was pending.

17       THE COURT:  Why does satisfaction of the

18   judgment in Lopez' case make the domestication null

19   and void for purposes of this case?

20       MR. JACOBS:  -- the satisfaction --

21       MR. RAMIREZ:  -- their domestication efforts,

22   by statute, they're given the right to collect on

23   the New York judgment --

24       THE COURT:  -- I understand that --

25       MR. RAMIREZ:  -- but that case has been

EXHIBIT 17

1  satisfied, according to them.  So there's no more

2  collection efforts that can go forward --

3       THE COURT:  -- okay, but the way I look at it

4  is a chain of events, right.  So the chain of

5  events is you have your case up on appeal because

6  the court ruled the way that the court ruled.

7  While your case is on appeal, there's a

8  domestication of a judgment in front of Judge

9  Lopez.  If he assigned all of NLG's rights at that

10  time, even if there's a satisfaction of judgment in

11  that case, what allows you to then continue to

12  enforce this --

13       MR. JACOBS:  -- that's the --

14       THE COURT:  -- do not interrupt.  Let him

15  answer the question.

16       MR. RAMIREZ:  If the Judge assigned to them

17  the right to manage NLG, was only for the purpose

18  of collecting the New York judgment.  Once that

19  judgment has been satisfied, they can no longer be

20  the manager of NLG because that was just a

21  collection effort, not because they're really the

22  manager.

23       We have paid nothing, Judge.  So they haven't

24  satisfied one penny of our mortgage and we have the

25  mortgage and the original note, and that's still

EXHIBIT 17

1  why we're proceeding here.  This case, on the

2  pleadings, have not deviated from that.  If they

3  want to reopen all these arguments, they would have

4  to do that through a new answer, a new amended

5  affirmative defenses which was denied.  And now

6  they're trying to do it through the husband, and

7  Selective Advisors.

8       Which by the way they were thrown out of

9  bankruptcy court.  You should read what the trustee

10  said.  Mr. Milian went in there and he didn't know

11  anything.  The only debt he had was $300 and they

12  supposedly had this judgment against -- this

13  judgment that they had bought and they never

14  disclosed that to the bankruptcy judge --

15       THE COURT:  -- well it's apparent to me, no

16  doubt, since I've been sitting here and hearing

17  about the case that some level of chicanery has

18  occurred in this case, and I don't know on which

19  side it is.  I can glean certain things, and I can

20  certainly glean that the Third District had a full

21  hearing and reviewed the transcript, with regard to

22  the underlying trial transcript, but my concern is

23  making sure that, of course, if the mandate is

24  properly to be complied with by this Court that I

25  do enforce it, but at the same time that I don't

# EXHIBIT 17

1  disregard a sister court's domestication of the

2  judgment.  I think I understand the arguments very

3  well.  I understand --

4        MR. RAMIREZ:  -- one more thing --

5        MR. COHEN:  -- Judge --

6        THE COURT:  -- let him finish.

7        MR. RAMIREZ:  Judge, none of Judge Lopez'

8  orders were final orders.  They were collection

9  orders.  So they are -- you know, they could have

10 been revisited by Judge Lopez.  They never reduced

11 it to a final order that could be appealed.  So

12 they say, we've never taken a appeal.  Well, you

13 know, we don't have to take an appeal.  The case

14 has been dismissed.  How you can you appeal a case

15 that's been dismissed?

16       MR. JACOBS:  Respectfully, your Honor, what I

17 think is missing from the final analysis is, the

18 day after Judge Lopez' order, there was

19 satisfactions recorded, multiple satisfactions

20 attaching Judge Lopez' order.  And what counsel

21 thinks -- there's a second motion there which is to

22 strike those and that is, I think, where the whole

23 procedural fallacy of the argument falls, because

24 if your Honor accepts Judge Lopez' order as good

25 law, and then the next result is the judgment in

# EXHIBIT 17

1   this case has been satisfied, and the mortgage in

2   this case has been satisfied.  Now you have counsel

3   come back after all of a that and saying, wait a

4   second, there's a mandate from the third DCA, in a

5   case where the parties have settled, he might not

6   have been part of that and your Honor described

7   that as chicanery.  I describe it as bet-the-farm

8   litigation and excellent lawyering --

9         MR. RAMIREZ:  -- Judge, that is --

10        MR. JACOBS:  -- if I can finish my point.

11        MR. RAMIREZ:  I can save some time by saying

12  that those motions to strike will probably need

13  evidence.  So we can set that for an evidentiary

14  hearing at a later date.

15        MR. JACOBS:  But at this point now, you're

16  still having someone who's saying that you should

17  do that, because NLG wants to act on this judgment,

18  which has been satisfied in this case.  The Court

19  doesn't have jurisdiction to do anything --

20        MR. RAMIREZ:  -- he keeps saying judgment has

21  been satisfied.  He's never gotten a judgment,

22  Judge.  The judgment was for --

23        MR. JACOBS:  -- excuse me there was an

24  original judgment --

25        THE COURT:  -- no, no, but he's correct.

EXHIBIT 17

1    There was a money judgment to your client and that

2    money judgment was improperly entered by Judge Eig.

3    That's what the Third District has said.

4        MR. JACOBS:  No, that's not true, your Honor.

5    What happen was there was a money judgment entered

6    before Judge Eig.

7        THE COURT:  You're talking about the money

8    judgment out of Judge Lopez' case?

9        MR. JACOBS:  I'm talking about the original

10   judgment in this case for one point whatever

11   million that was out there that then it became the

12   foreclosure action that Judge Eig tried, and what

13   happened was they said in the Third DCA that Judge

14   Eig should have given the foreclosure.

15       THE COURT:  Right.

16       MR. JACOBS:  Fine, but now you're still

17   dealing with the fact that the party who is here

18   before you, has been told by Judge Lopez, you are

19   not the ones -- you people cannot make any

20   statements on behalf of NLG anymore, it's Select

21   Advisors, that from August 20th forward, owns,

22   controls NLG, and it relates to this judgment and

23   the first thing they did was satisfy --

24       THE COURT:  -- okay but that was based on his

25   judgment.  So if they satisfied the judgment, why

# EXHIBIT 17

1  does Select Advisors still get to represent NLG?

2      MR. JACOBS:  Right, now what I think everyone

3  is missing is, NLG, once the judicial assignment

4  was done, the first thing NLG did was close the

5  case, satisfaction.  It's over.  And what's

6  happened is, we then went to New York afterwards

7  and said, well okay, we've satisfied the judgment

8  in Florida, and we're using that as the credit to

9  satisfy the judgment in New York.  So now both the

10  judgments are satisfied --

11      THE COURT:  -- and so now you're moving to

12  strike the sham pleadings because you do not

13  believe there was a valid satisfaction --

14      MR. JACOBS:  -- well that is not before you --

15      MR. RAMIREZ:  -- they filed the satisfaction

16  after they lost in the bankruptcy court, they were

17  thrown out of bankruptcy court.  If they had the

18  satisfaction, why didn't they bring it up while the

19  case was still pending in the Third District and

20  say, you know, we have this additional evidence,

21  this whole thing is moot, because we have satisfied

22  the judgment.  They know that this is sort of the

23  ace in the hole if they had lost the appeal.

24  Apparently, the oral arguments must have got pretty

25  badly because they got a win but they were going to

EXHIBIT 17

1    lose in the appellate court and then they started

2    all this stuff in front of Judge Lopez.

3         There is nothing to collect upon because it's

4    been satisfied.  So you have no problem with a

5    contradictory order from Judge Lopez.  He had

6    issued an assignment of the judgment at the time

7    that he did that, Hazan had won.  I showed you the

8    judgment in favor of Hazan.  How would he assign a

9    judgment in favor of Hazan to NLG, when NLG had

10   lost?

11        MR. JACOBS:  Well respectfully, your Honor--

12        THE COURT:  -- I understand the argument.  Go

13   ahead and submit proposed orders.

14        MR. COHEN:  May I say something, your Honor?

15        THE COURT:  Mr. Cohen, are you a party to this

16   litigation?

17        MR. COHEN:  I am --

18        THE COURT:  -- I know that you're a part of

19   the condominium --

20        MR. COHEN:  -- I am part -- because, Judge, I

21   was before Judge Lopez.

22        THE COURT:  I have the transcripts in front of

23   me and I don't need addition argument --

24        MR. COHEN:  -- but what I have a problem with

25   is the monetary judgment, now when you go to

# EXHIBIT 17

1  foreclosure, if you were even to consider something

2  like that, you'd have to enter a monetary amount to

3  satisfy to prevent the foreclosure from happening.

4  That monetary amount has already been satisfied.

5  So there is nothing owed.  There is nothing owed on

6  that mortgage.  There is nothing owed.  So what are

7  you going to foreclose.  The concept is that the

8  mortgage follows the note, all right.  The mortgage

9  follows the note all the time.  You can't just

10  foreclose a mortgage without an obligation.

11        THE COURT:  I get that and --

12        MR. COHEN:  -- and so the monetary -- they had

13  the judgment.  There's no question that everybody

14  agreed there is a monetary judgment, all right.

15  They bifurcated the case, all right --

16        THE COURT:  -- but there wasn't a monetary

17  judgment in favor of NLG --

18        MR. COHEN:  Yes, there was --

19        MR. JACOBS:  -- that's how it started --

20        MR. COHEN:  -- that's what we're trying to

21  tell you --

22        THE COURT:  -- the monetary judgment prior to

23  the foreclosure?

24        MR. COHEN:  Prior to the foreclosure.  Judge

25  Eig say, you can't bifurcate or you can't pick your

EXHIBIT 17

1   remedies, you've got to bring them all at once.

2   The Appellate court correctly, I guess said, you

3   can bifurcate and I found subsequent that you can.

4   So what they did is they collected on the

5   judgment -- if they try to collect on the judgment

6   and you couldn't, you can use that collateral.

7           THE COURT:  Right.

8           MR. COHEN:  The judgment during that time, was

9   usurped by a satisfaction.  Judge Lopez satisfied

10  it.  Judge, so therefore, in theory, they don't

11  have anything to enforce.  So they're stuck with

12  that and they're trying to enforce something --

13  it's moot.  The mandate from the appellate court is

14  moot.  Bottom line it's moot because it's

15  satisfied.

16          They keep on using the word dismissed.  If you

17  look before Judge Lopez was using the word

18  dismissed and closing the case, as the same.  You

19  can't dismiss the case like nothing happened

20  because there were many orders and there were

21  things and he's incorrect; there was a final

22  determination, that the Judge said we stand in the

23  shoes.  They filed a motion for rehearing and it

24  was denied.  They then had 30 days to appeal, they

25  chose not to.

EXHIBIT 17

1        And from my understanding there's nothing in

2   New York.  If the Court remembers, you said, I'm

3   not going to do anything until -- because there's

4   something pending in New York.  My understanding is

5   that there's nothing at all now pending.  They're

6   not objecting to the confession of judgment --

7        MR. RAMIREZ:  -- I don't know who he's

8   representing but --

9        MR. COHEN:  -- I'm trying to set the record

10  straight --

11       THE COURT:  -- Mr. Cohen are you an attorney

12  of record for anybody, or do you work for

13  condominium?

14       MR. COHEN:  Yes.

15       MR. RAMIREZ:  -- your Honor --

16       THE COURT:  -- who are you attorney of record

17  forth.

18       MR. COHEN:  Selective.

19       THE COURT:  I'm not going rehear argument.

20  Tell me who you're here for.

21       MR. GOLDSTEIN:  Your Honor, Jonathan Goldstein

22  on behalf of Valencia Estates Homeowners

23  Association.  Extensive argument was in June --

24       THE COURT:  -- I remember --

25       MR. GOLDSTEIN:  -- on our priority.  We

# EXHIBIT 17

1   submitted a proposed order as to Valencia Estates

2   because our argument is that Valencia Estates' lien

3   is superior to NLG's second mortgage --

4        THE COURT:  -- I remember all of that --

5        MR. GOLDSTEIN:  -- I'm not going to re-argue

6   it but I just want to restate our objections to a

7   judgment being entered against our client, which

8   purports to say that NLG mortgage is superior,

9   either to the lien or to our declaration which was

10   recorded prior to NLG's second mortgage.  Thank

11   you, your Honor.

12        MR. RAMIREZ:  So to clear up the record.  At

13   the time Judge Lopez assigned the judgment.  There

14   was a judgment in favor of Hazan in this case.  He

15   could not assign any judgment in this case because

16   we lost at the trial.  Now they want to make this

17   look like we won at the trial.  We lost.  I showed

18   you the final judgment in favor of Hazan.  We got

19   nothing and she won and then if she assigned that

20   judgment -- I don't know, it doesn't make sense.

21        THE COURT:  Speak to me about they're trying

22   to say that outside of this foreclosure, there was

23   previously, in this case, a monetary judgment

24   issued by Judge Eig.  Is that true or not true?

25        MR. RAMIREZ:  I don't believe it's true.  It

EXHIBIT 17

1    was a default judgment.  It was set aside and then
2    they had the trial.  I don't know of any judgment
3    that was final, and appealable in terms of this
4    case.
5         MR. JACOBS:  Judge, there was absolutely -- I
6    was the trial counsel --
7         MR. RAMIREZ:  -- can he show it to you, Judge?
8         MR. JACOBS:  It's in the court file.  You can
9    look in the court file --
10        THE COURT:  -- obviously, I don't have the
11   court file before me --
12        MR. JACOBS:  -- well respectfully, your Honor,
13   I don't have the judgment --
14        MR. COHEN:  -- I'll provide it, your Honor.
15   Give me one second.
16        MR. JACOBS:  That was the basis of what the
17   foreclosure count was; we had tried to collect on
18   the judgment, we couldn't, we now want to foreclose
19   on the mortgage and that was our whole argument
20   was, you had already elected to go for a money
21   judgment and you got it and I think the Court needs
22   to recognize, we haven't dealt with the motion to
23   strike for satisfaction of judgment and mortgage
24   that we're talking about, and for the Court to
25   enter a final judgment of foreclosure and say the

# EXHIBIT 17

1    association is going to get wiped out too --

2         THE COURT:  -- I already heard argument on

3    that--

4         MR. JACOBS:  -- all I'm saying is because

5    there's been a satisfaction of record in this

6    case--

7         THE COURT:  -- you've already made that

8    argument.

9         MR. COHEN:  Your Honor, if I may?  Is this the

10   '07 case?

11        MR. RAMIREZ:  No this is 2011.

12        MR. COHEN:  I'm sorry, right.  This is the

13   default final judgment.

14        MR. RAMIREZ:  That's another case, Judge.  It

15   wasn't this case.

16        MR. JACOBS:  That was attached to the

17   complaint in this case.  They filed a new action--

18        MR. RAMIREZ:  -- foreclosing on the

19   mortgage -- we're foreclosing on the mortgage, not

20   on the judgment.  I don't know what this has to do

21   with --

22        MR. GOLDSTEIN:  -- no, in the complaint he

23   says that there's is a judgment entered of a

24   million so.  That they're entitled to foreclose --

25        THE COURT:  -- does anybody have the complaint

EXHIBIT 17

1    in this case, by any chance.  And I'm not going to

2    read the --

3          MR. GOLDSTEIN:  -- yeah, with that final

4    judgment which Judge Lopez satisfied -- I'm sorry,

5    not Judge Lopez satisfied, he assigned it to

6    Selective.

7          THE COURT:  I still, I guess, go back to the

8    issue of how can Judge Lopez have assigned that if

9    Judge Eig entered final judgment for Ms. Hazan

10   because you're telling me there's a monetary

11   judgment --

12         MR. COHEN:  -- because he chose the picking of

13   remedies.  Judge Eig said you can't -- you should

14   have brought the foreclosure in that case.

15         THE COURT:  In which case?

16         MR. COHEN:  In the case that I'm showing you

17   where the default final judgment was.  That was

18   Judge Eig's position.  There was a --

19         MR. RAMIREZ:  -- then they could have raised

20   that issue with the Third District --

21         MR. JACOBS:  -- your Honor, none of them

22   stated that judgment wasn't good at the time.  The

23   Third DCA was not arguing about this judgment which

24   is now satisfied, of record.  The Third DCA was

25   never addressing whether this was a good judgment

EXHIBIT 17

1   or not.  It was, we all agreed.  The only question
2   was what remedy do you get when you come back to
3   court in a new action on the judgment.
4        So what I want the court to understand is, if
5   this judgment has been satisfied pursuant to Judge
6   Lopez' order, that was perfectly appropriate.
7   There's nothing that says he can't do that.  That's
8   what happens when you have a different judgment
9   that gets enforced against an entity that has an
10  action against somebody else.  That was the
11  excellent lawyering that resulted in --
12       MR. COHEN:  -- Judge Lopez' order, referring
13  back to this judgment, which refers back to the
14  original note and mortgage.
15       MR. JACOBS:  Which all have been satisfied of
16  record --
17       MR. COHEN:  -- right.
18       MR. JACOBS:  -- as of today.
19       MR. RAMIREZ:  Judge, none of that is part of
20  the pleading in this case --
21       MR. JACOBS:  -- it's all part of the record.
22       MR. RAMIREZ:  This is an '07 case.  If they
23  had that issue, they could have raised it with the
24  Third District and they didn't.  At the end of the
25  opinion the Third District says, all other

# EXHIBIT 17

41

1    arguments are rejected, entering a judgment for the

2    plaintiff.  And that's what we're here for, Judge.

3        MS. O'CONNOR:  If I may before we close?  I'm

4    also from Fisher Island Community Association, and

5    likewise we just want clarity as to who has the

6    priority so we can properly --

7        THE COURT:  -- I appreciate that.  With regard

8    to this issue before me today, go ahead and submit

9    proposed orders.

10       MR. RAMIREZ:  Thank you, your Honor.

11       MR. JACOBS:  Thank you.

12       (Thereupon, the hearing was concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 17

42

1                        COURT CERTIFICATE

2

3    STATE OF FLORIDA          )

4                             ) SS:

5    COUNTY OF MIAMI-DADE      )

6

7              I, CATHY J. RUNDELL MURPHY, Reporter and

8        Notary Public for the State of Florida at Large,

9        certify that I was authorized to and did

10       stenographically report the foregoing proceedings

11       and that the transcript is a true and complete

12       record of my stenographic notes.

13             DATED this 24th day of October, 2015.

14

15

16             _____

17             CATHY J. RUNDELL MURPHY
               Notary Public, Florida
               Commission #FF034363
18             Expires:  October 31, 2017

19

20

21

22

23

24

25

EXHIBIT 17

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2014-10475-CA

SELECTIVE ADVISORS GROUP, LLC,
as ASSIGNEE of 9197-5904 QUEBEC,
INC.,

        Plaintiff,

vs.

NLG, LLC, a Delaware limited liability
company, and ELIZABETH HAZAN, *et al.*,

        Defendants.

_____/

        Proceedings had and taken place before the Honorable

PETER LOPEZ, one of the Judges of said Court, at the

Miami-Dade County Courthouse, Courtroom 525, 73 West

Flagler, Miami, Florida 33131, on Monday, the 11th day of

January, 2016, commencing at the hour of 10:07 a.m., and

being a Hearing.

EXHIBIT 18

1    APPEARANCES:

2        Appearing on behalf of the Plaintiff:

3        JACOBS KEELEY, PLLC
         Alfred I. Dupont Building
4        169 East Flagler Street, Suite 1620
         Miami, Florida 33131
5        305-358-7991
6        efile@jakelegal.com
         BY: BRUCE JACOBS, ESQUIRE
7
         ROBERT P. LITHMAN, P.A.
8        150 Alhambra Circle, Suite 1150
         Coral Gables, Florida 33134
9        305-858-0220
10       RPL@LithmanLaw.com
         BY:  ROBERT LIGTHMAN
11
         MARK D. COHEN, P.A.
12       4000 Hollywood Boulevard, Suite 435S
         Hollywood, Florida 33021
13       954-462-1166
         mdcohenpa@yahoo.com
14       BY:  MARK COHEN, ESQUIRE

15       Appearing on behalf of Defendants:

16       DIAZ REUS & TARG, LLP
17       100 Southeast 2nd Street, Suite 3400
         Miami, Florida 33131
18       305-375-9220
         jramirez@diazreus.com
19       BY:  JUAN RAMIREZ, ESQUIRE

20       Also Present:

21       Elizabeth Hazan, Defendant
22       Sean Meehan

23

24

25

EXHIBIT 18

```
 1            (Thereupon, the following proceedings were had:)
 2            THE COURT:  Select Advisor v. NLG; I've got a
 3     whole host of people in here; so, counselor?
 4            MR. RAMIREZ:  Juan Ramirez for the
 5     Defendant, NLG and my client Chris Kosachuk.
 6            THE COURT:  Okay.
 7            MR. COHEN:  Mark Cohen on behalf of
 8     Selective.
 9            MR. MEEHAN:  Sean Meehan, Selective
10     Advisors.
11            MS. HAZAN:  Elizabeth Hazan.
12            THE COURT:  Okay.  Moving around the table.
13            MR. LITHMAN:  Robert Lithman, Your Honor; I
14     entered the Motion on behalf of Selective.
15            THE COURT:  Okay.  CA 91; Mr. Lithman, it's
16     Division Ten, but that's okay.  Look, there's 91, I
17     didn't know we had so many judges.
18            MR. JACOBS:  A lot of judges.
19            MR. COHEN:  Wishful thinking.
20            THE COURT:  The Legislature agreed to the
21     Supreme Court's finding, but anyway, go ahead folks.
22            We are back again; this case just doesn't seem
23     to want to go away.
24            MR. JACOBS:  It doesn't seem to want to go
25     away.
```

EXHIBIT 18

1    MR. COHEN: Your Honor, before we start, the

2    problem I have is -- you hit it right on the head; it

3    seems like it won't go away, because if the Court

4    remembers--

5    THE COURT: I remember this case completely.

6    MR. COHEN: -- you specifically advised Mr.

7    Ramirez--

8    THE COURT: But you didn't even file this

9    Motion.

10   MR. COHEN: No, no, no.

11   THE COURT: So are you opposing it?

12   MR. COHEN: No.

13   THE COURT: Okay. Let them have their say; I

14   have a very good recollection of what went on in this

15   case.

16   MR. COHEN: The only thing I want to say is

17   that as soon you ruled and said that basically they

18   don't really have any more say in it--

19   THE COURT: Right.

20   MR. COHEN: -- they immediately filed motions

21   taking the position that they did.

22   THE COURT: Okay.

23   MR. COHEN: And then advising the Court that

24   you dismissed the case and that all prior orders have

25   no force or effect.

EXHIBIT 18

1  THE COURT: I never said that, but that's a

2 different story.

3  MR. COHEN: Well, I'm just saying that they

4 are making that representation to all these judges.

5  THE COURT: Well, we'll get around to what's

6 happening; hold on, hold on.

7  MR. RAMIREZ: I wish we could start with the

8 question that the Court asked the last time, which was

9 what jurisdiction do I have?

10  The case is closed here--

11  THE COURT: I got it. You guys stop;

12 everybody. It's their Motion, go ahead.

13  Mr. Jacobs, you didn't sign it, but that's okay.

14 You're here--

15  MR. JACOBS: I'm part of it, Your Honor.

16  Just so that the Court is aware, myself and Mr.

17 Lithman are the actual lawyers that tried the case

18 before it went up to the Third DCA.

19  THE COURT: Which case?

20  MR. JACOBS: The Hazan--

21  THE COURT: The NLG matter? The original

22 case before Judge Eig?

23  MR. JACOBS: The foreclosure.

24  THE COURT: The foreclosure with Judge Eig?

25  MR. JACOBS: Yes, before Judge Eig. We were

EXHIBIT 18

1    the trial lawyers and we are back.

2         THE COURT:  Okay.

3         MR. JACOBS:  What's happening here, Your

4    Honor is, right now I understand--

5         THE COURT:  You are NLG's counsel?  You are

6    Hazan's counsel?

7         MR. JACOBS:  I'm Hazan and Selective -- they

8    are all -- what I am trying to do is bring some clarity

9    to what is going on here.

10        THE COURT:  I don't need clarity; just tell me

11   why I should be reopening a matter that is done and

12   closed as far as I'm concerned?

13        MR. JACOBS:  The problem is that -- as far as

14   you are concerned, you instructed that NLG and Mr.

15   Kosachuk had no further rights at all to the judgment

16   that was--

17        THE COURT:  I didn't say that; I said I granted

18   an assignment of the rights, my judicial labor was

19   over--

20        MR. JACOBS:  Right.

21        THE COURT:  -- as far as I was done, I'm

22   finished.

23        MR. JACOBS:  Right.

24        THE COURT:  Any enforcement of those orders

25   belong in another jurisdiction, that I understand there

# EXHIBIT 18

1   were some problems with another judge.

2         Then they came to me and claimed that the

3   Judgment had been satisfied subsequent to that.  I

4   went through that issue as well.

5         I don't think the satisfaction affected my prior

6   order of any transfer that I made subject to whatever

7   rights were given, and deductions, and all of that.

8         So I'm very familiar with what happened; so

9   now why is the position -- what am I going to be

10  doing here?

11        MR. JACOBS:  Because what happened after that

12  is, Mr. Ramirez went into Judge Gordo and told her

13  you dismissed your case and therefore, none of the

14  satisfactions of judgment or mortgage that were done

15  to the Judgment in that case, which were then the

16  basis of the Satisfaction of Judgment in this case--

17        THE COURT:  I don't know what one had to do

18  with the other.

19        MR. JACOBS:  After Your Honor entered the

20  order saying we were to do that; I am judicially

21  assigning all the rights to Selective--

22        THE COURT:  In that particular mortgage we

23  gave them a credit of about 2.7 -- whatever number it

24  was.

25        MR. JACOBS:  As soon as that was done,

EXHIBIT 18

1   Selective then filed a Satisfaction of the Judgment

2   against Ms. Hazan.

3       THE COURT: I don't know if that's what

4   happened.

5       MR. JACOBS: That's what happened.

6       THE COURT: I thought they negotiated it up in

7   New York and tendered a different amount, but I have

8   no idea.

9       MR. JACOBS: Just so Your Honor is clear,

10  there was a satisfaction of judgment of the Hazan

11  Judgment, it was recorded of record; there was a

12  satisfaction of the underlying mortgage, recorded of

13  record; and there was a satisfaction of the judgement

14  in your case, recorded of record.

15      THE COURT: Okay.

16      MR. JACOBS: Then, at that point, the case

17  should have died; it should have been over.

18      THE COURT: Well, first of all, remember

19  something, I have a Judgment that is recorded and

20  enforced under Florida Statute 55 or whatever the

21  number is.

22      MR. JACOBS: Once you assigned--

23      THE COURT: I don't have a Judgment to

24  vacate, which is what they wanted to come in and

25  take care of.

EXHIBIT 18

1    MR. JACOBS:  I just want -- I think the clarity

2    issue is, what is the Court -- the Court made an order

3    that said their client has no more rights in this

4    Judgement, and that any rights in this Judgment are

5    now given to Selective; Selective then used those

6    rights to satisfy the Judgment and the underlying

7    mortgage which they had--

8    THE COURT:  I transferred any interest this

9    Judgment had into a particular note and mortgage that

10   was ongoing somewhere else under execution

11   principles, which I did, and then they came in and

12   said our Judgment is satisfied; that's it.

13   MR. JACOBS:  Right, but between that, what's

14   missing here, Your Honor, is once you gave them the

15   right to do what they wanted to do with the judgment-

16   -

17   THE COURT:  Right.

18   MR. JACOBS:  -- they satisfied it, which was

19   their right; they did it, no problem.

20   You gave them the right to do it.  They could

21   have enforced it or satisfied it at their leisure,

22   because now Selective has the judicial assignment of

23   it.

24   THE COURT:  My understanding is they went to

25   enforce it in Judge Gordo's case, but whatever

EXHIBIT 18

1    happens there I have no idea.

2         MR. JACOBS:  Let me make sure it is clear;

3    Selective has not gone to do anything in front of

4    Judge Gordo, except for to satisfy the Judgment.

5         THE COURT:  Okay.

6         MR. JACOBS:  What's happened since is, Mr.

7    Ramirez has filed a slew of motions and pleadings

8    that basically are saying the effect of you going back

9    the last time and saying there is a satisfaction,

10   therefore, the case is dismissed, means that his client

11   now has the right to ask for a foreclosure on that

12   Judgment again.

13        That's where we are today, and there is a sale

14   set for tomorrow.

15        THE COURT:  Who is his client, Selective?

16        MR. JACOBS:  His client is not Selective--

17        THE COURT:  Right.

18        MR. JACOBS:  -- it's NLG.

19        THE COURT:  It's NLG.  Okay.

20        MR. JACOBS:  So, he's coming back -- so we

21   have a sale date set for tomorrow of the property,

22   pursuant to the Judgment that was entered by Judge

23   Eig -- I'm sorry, by Judge Scola--

24        THE COURT:  Okay.

25        MR. JACOBS:  And the people who are asking

EXHIBIT 18

1    for that -- Judge Eig was the one who denied the

2    foreclosure--

3        THE COURT: Oh, okay; then it got reversed.

4        MR. JACOBS: Then it got reversed.

5        THE COURT: And the mandate said

6    enforcement.

7        MR. JACOBS: And you said, whatever happens

8    in the mandate, that's for Selective to decide what to

9    do with it, not for them.

10       THE COURT: That's for Judge Gordo, not me.

11       MR. JACOBS: That's for Selective to decide

12    what to do with it, not for them.

13       THE COURT: That's not my call.

14       MR. JACOBS: But what you did call, was that

15    they have no further rights in that Judgment that is in

16    front of Judge Gordo; do you understand where I'm

17    going with this?

18       THE COURT: I entered an order saying that any

19    rights in that mortgage belonged to them; Selective.

20       MR. JACOBS: It belongs to Selective, exactly.

21       THE COURT: Relax; one at a time.

22       MR. JACOBS: So that is where we were.

23       THE COURT: Okay.

24       MR. JACOBS: We satisfied the Judgment; we

25    did everything we did to end this; Selective.

EXHIBIT 18

1        THE COURT: You are?

2        MR. JACOBS: Selective.

3        THE COURT: Okay.

4        MR. JACOBS: Selective satisfies the Judgment-

5        -

6        THE COURT: Okay.

7        MR. JACOBS: -- and irrespective of all of that,

8        Mr. Ramirez and his client keep coming back to Judge

9        Gordo, and they've convinced her that none of that

10       matters, that they still have the right to ask for a sale

11       of the property pursuant to the Judgment that you

12       have already judicially assigned to Selective.

13       THE COURT: My only concerning question;

14       didn't the mandate require from the Third District

15       that the foreclosure go forward?

16       MR. JACOBS: The mandate reversed Judge

17       Eig's decision--

18       THE COURT: And said?

19       MR. JACOBS: -- and said that--

20       THE COURT: Foreclose it.

21       MR. JACOBS: --that says that NLG had the

22       right to foreclose.

23       THE COURT: That's what the Third District

24       commanded my colleague to do.

25       MR. JACOBS: Exactly, but--

EXHIBIT 18

1       THE COURT:  But, she did that.

2       MR. JACOBS:  Well, the question is, doesn't the

3  plaintiff always have the right to say I'm not going to

4  foreclose?

5       THE COURT:  They can do whatever they want

6  to.

7       MR. JACOBS:  If a mandate comes down from

8  the Third DCA and says you have the right to

9  foreclose, and the Plaintiff says I want to cancel the

10  sale, vacate the Judgment, and give you a loan mod,

11  that's certainly within their rights.

12       THE COURT:  Did they do that?

13       MR. JACOBS:  In this case, Selective did

14  exactly--

15       THE COURT:  Was Selective ever a party to

16  Judge Gordo's case?

17       MR. JACOBS:  Selective wasn't -- didn't -- once

18  you did -- if you--

19       THE COURT:  Answer my question, which was

20  did they--

21       MR. JACOBS:  They did seek to intervene--

22       THE COURT:  And what happened with that?

23       MR. JACOBS:  -- and Mr. Ramirez objected and

24  gave this whole very complicated story about how the

25  case has been dismissed and they didn't any right to

EXHIBIT 18

1    get in.

2          So we are in this position now where Selective

3    owns this Judgment, has the right to enforce it or

4    satisfy it in their sole discretion--

5          THE COURT:  Right.

6          MR. JACOBS:  -- and that is not being honored,

7    because Mr. Ramirez keeps going to Judge Gordo

8    saying what you did was dismissed and therefore,

9    they still have the right to ask for the Judgment to be

10   enforced.

11         THE COURT:  Okay.  But my Order didn't say

12   dismissed.

13         MR. JACOBS:  Your Order said the Judgment

14   has been satisfied.

15         THE COURT:  Right.

16         MR. JACOBS:  Right.  I understand that; we

17   made that point to Judge Gordo--

18         THE COURT:  Okay.

19         MR. JACOBS:  -- but for whatever reason, Judge

20   Gordo -- when you look at what's going on here, we

21   had one hearing; it was not an evidentiary hearing.

22         A month later, Mr. Ramirez submits an affidavit

23   from some lawyer in New York, we don't object to it-

24   -

25         THE COURT:  But you guys are arguing stuff

EXHIBIT 18

1    that -- what do you want me -- you want me to tell
2    Judge Gordo that she got it wrong?
3        MR. JACOBS:  What I want you to do is to
4    enforce your Order that says Selective Advisors can
5    decide what happens with this Judgment--
6        THE COURT:  And how do I do that?  By telling
7    Judge Gordo she got it wrong?
8        MR. JACOBS:  No.  By telling Judge Gordo that
9    she is not listening to your Order.
10        THE COURT:  But that's -- I don't think that's--
11        MR. JACOBS:  But your Order was not appealed.
12        MR. COHEN:  Your Honor, if I may, though.
13        THE COURT:  No, you may not; let him finish
14    his argument.
15        MR. JACOBS:  Your Order has never been
16    appealed; it is law.
17        THE COURT:  Okay.
18        MR. JACOBS:  Now that you have said Selective
19    Advisors controls this Judgment, then Judge Gordo
20    should be respecting that.
21        THE COURT:  Well, but that's not my call.
22    There are three people above us that tell us how to
23    respect other colleague's orders, and that's not my
24    call.
25        MR. JACOBS:  But Your Honor does have the--

EXHIBIT 18

1          THE COURT: Okay. Go ahead.

2          MR. COHEN: Your Honor?

3          THE COURT: Yes?

4          MR. COHEN: Can I say something?

5          THE COURT: I'm sorry, finish up.

6          MR. COHEN: What the Court should do in this

7  case, is enjoin NLG from taking any actions

8  whatsoever on that Judgment, because you have

9  already determined that they've lost all rights, title

10  and interest in that Judgment.

11         THE COURT: Okay.

12         MR. COHEN: But what's happening is, your

13  ruling one way; Mr. Ramirez is saying I don't care

14  what he ruled, I am not going to abide by your ruling.

15       You've already made a determination that they

16  have no interest in this Judgment; regardless that

17  you've made a determination five times in this case,

18  as soon as we get out of here, he says I'm not

19  listening -- and he has already said it to one of the

20  judges; we don't have to listen to Judge Lopez. All

21  right? I don't care what Judge Lopez says.

22         THE COURT: Well, I don't think he said that.

23         MR. COHEN: Yes he did.

24         MS. HAZAN: Last week.

25         MR. COHEN: Yes he did. And the more

EXHIBIT 18

1     important factor is he is disregarding -- that's like

2     saying I own something and I am claiming someone

3     else is just filing another lawsuit and going in, and

4     going in.

5          What he has done is, he's taken -- you've

6     already made a determination that this Judgment,

7     that's the bottom line for everything--

8          THE COURT:  Mm-hmm.

9          MR. COHEN:  -- he has no more -- they have no

10    more interest in it, and as soon as they get out of

11    this--

12         THE COURT:  No.  I made a determination that

13    they had an interest in 2.7 worth of a note and

14    mortgage somewhere else; that's all I did.

15         MR. COHEN:  That who had?

16         THE COURT:  Somebody -- Selective had an

17    interest--

18         MR. COHEN:  Selective, right.  But NLG is

19    taking the position that they still own that right.

20         THE COURT:  But that has to be fought in the

21    other jurisdiction, not--

22         MR. COHEN:  No.  It should be in here, because

23    you ruled it and we are asking for an injunction from

24    them taking any position in that.

25         MR. JACOBS:  Tomorrow the sale is going to

EXHIBIT 18

1    happen--

2          THE COURT: Okay.

3          MR. JACOBS: -- and then all of this will

4    become a big problem, because there will be a third

5    party involved.

6          THE COURT: Okay.

7          MR. JACOBS: And what I think is really the

8    question, Your Honor, is we've never had an

9    evidentiary hearing--

10         THE COURT: In which case?

11         MR. JACOBS: In either case.

12         THE COURT: Go ahead -- you never brought it

13    up anyway -- go ahead, sir.

14         MR. RAMIREZ: Judge, I don't know where to

15    begin, but let me start with the Motion, because--

16         THE COURT: Have you gone into Judge

17    Gordo's and told her my Judgment is ineffective?

18    Have you really done that?

19         MR. RAMIREZ: No. Of course not.

20         THE COURT: Oh.

21         MR. RAMIREZ: I said your case was dismissed,

22    because-

23         THE COURT: But it wasn't dismissed.

24         MS. HAZAN: That's right.

25         THE COURT: Shush.

EXHIBIT 18

1        MR. RAMIREZ: You dismissed the case back

2    when I first came to you, I think it was in October,

3    because the Judgment had been satisfied.

4        THE COURT: I didn't dismiss it, I said it's

5    closed, I have nothing else to doing with that; I

6    remember that vividly.

7        MR. RAMIREZ: You used both words, Judge.

8        THE COURT: You wanted me to dismiss it, and

9    I said no.

10        MR. RAMIREZ: I think the Order says both, but

11   it doesn't matter, your case is closed; we agree on

12   that.

13        THE COURT: Do you have the Order?

14        MR. JACOBS: Do you want the Order?

15        THE COURT: Nothing has been satisfied, there

16   is nothing else for me to do.

17        MR. RAMIREZ: Exactly.

18        MR. JACOBS: Here's the Order.

19        THE COURT: Did I ever vacate my prior Order?

20        MR. RAMIREZ: No. I didn't say you did.

21        THE COURT: You didn't say I did?

22        MR. RAMIREZ: No.

23        THE COURT: All right.

24        MR. RAMIREZ: Your Honor transferred or

25   assigned the Judgment -- never assigned the

EXHIBIT 18

1     mortgage.

2          The Order that you entered in August of 2014,

3     assigned the Judgment.

4          THE COURT:  I did put this case is dismissed;

5     okay.

6          MR. RAMIREZ:  During that time--

7          MR. COHEN:  The reason Your Honor--

8          THE COURT:  Shush.  Stop interrupting, for the

9     love of God, or you are out of here.  Enough of this

10    nonsense; all of you, please.

11         Yes, sir, finish.

12         MR. JACOBS:  Last time we were here, I tried

13    to reopen this case--

14         THE COURT:  Correct.

15         MR. RAMIREZ:  -- and the Court told me you

16    had no jurisdiction.

17         Thirty days for appeal have gone; 15 days for

18    rehearing have gone.  I tried to piggyback on their

19    Motion for Rehearing, which they withdrew that day;

20    you said, I can't do that, because this is closed--

21         THE COURT:  Okay.

22         MR. RAMIREZ:  -- I have no jurisdiction.

23         Today, they are coming back and saying that you

24    have jurisdiction, apparently.

25         And they are citing to a rule that has a stay,

EXHIBIT 18

1    nothing about reopening a case. It's a rule that talks
2    about a stay, and the other two rules are on appellate
3    stays.
4         I don't know what they are talking about,
5    because none of those are in this jurisdiction.
6         THE COURT: Right.
7         MR. RAMIREZ: In their wherefore clause, they
8    want you to reopen the case, confirm jurisdiction, and
9    then correct numerous facts; I don't know what they
10   are talking about, Judge -- correcting those facts; you
11   have no jurisdiction.
12        I highlighted here all the times you told me the
13   case is closed, I can't do anything; the case is closed,
14   I can't do anything; I did what did; the record is for
15   this, I can't do anything more; the case is gone.
16        THE COURT: All right.
17        MR. RAMIREZ: Now, they are saying the
18   opposite.
19        Respectfully, you are not an appellate judge,
20   and they do have a remedy.
21        This case in Judge Gordo is back from remand
22   and a mandate. If they are not satisfied with the way
23   Judge Gordo is enforcing the mandate, they can go
24   back to the Third District and say judge, Judge Gordo
25   disregarded your Order, she didn't do this, she didn't

EXHIBIT 18

1    do that.

2         They haven't done that and they still can do

3    that, I suppose, but they are trying to get you to act

4    on this as an appellate judge, which respectfully, you

5    just can't do.

6         THE COURT: Okay.

7         MR. JACOBS: Your Honor--

8         MR. COHEN: Your Honor--

9         THE COURT: Yes.

10        MR. COHEN: -- the reason we used the word

11    dismissed, is you said it was going to be dismissed

12    and closed, and instead of--

13        THE COURT: All right, but the point is he

14    didn't misrepresent the language--

15        MR. COHEN: Yes, he did.

16        THE COURT: No he didn't; I said dismissed.

17        MR. JACOBS: Your Honor-

18        MR. COHEN: Your Honor, if I may--

19        THE COURT: Okay. Which of you two wants to

20    argue, because all three of you -- Mr. Lithman has

21    been--

22        MR. LITHMAN: I'm trying to be very nice--

23        THE COURT: -- very quiet today--

24        MR. LITHMAN: No, no, I'm being -- I didn't

25    want to interrupt anybody.

EXHIBIT 18

1           THE COURT: Good, that's a good thing.

2           MR. COHEN: Your Honor, If I may just make

3 one other -- right after this Court's ruling, Mr.

4 Ramirez -- the judge says, is that the Judgment by

5 Judge Lopez, is that the one that Judge Lopez allowed

6 Selective to become successor in interest to?

7           Mr. Ramirez says, your honor, I don't know

8 which Judgment it was. So when he says that it

9 wasn't -- that's what threw everything into a

10 quandary, because at the hearing, he says, I don't

11 know which judgment this court took from NLG and

12 placed into Selective.

13           The bottom line is that Selective owns that

14 Judgment, it's very clear, so whatever actions they

15 are taking, you have the authority and the power,

16 because this is the court that ruled that way.

17           THE COURT: Okay.

18           MR. RAMIREZ: Can I just respond to that,

19 because--

20           THE COURT: Okay. Go ahead.

21           MR. RAMIREZ: I don't want to get into all this

22 stuff that has gone on in front of Judge Gordo,

23 because I don't think that's properly before you.

24           THE COURT: It's not my division; right.

25           MR. RAMIREZ: But I have responses to all that

EXHIBIT 18

1       stuff that they say.

2           The only thing I told Judge Gordo is that your

3       case was dismissed.  I showed her the Order; case

4       closed, and that's all that I did.

5           I didn't make any representations, because I

6       really don't understand very well what happened,

7       because I wasn't the lawyer at the time.

8           So I just said the case is dismissed, the

9       Judgment in New York has been satisfied, and that is

10      all I said.

11          MS. HAZAN:  No.

12          MR. RAMIREZ:  I told Judge Gordo, we are here

13      on a mandate and the Court said enforce the

14      mortgage; and you have to enforce the mortgage when

15      the judge granted my Motion to Enforce the

16      Mortgage.

17          THE COURT:  Okay.

18          MR. JACOBS:  Your Honor, something that I

19      think is fair to point out.

20          If counsel really just said it was dismissed

21      without trying to do anything about -- I keep hearing

22      you saying well, Judge Gordo, I have no jurisdiction

23      over Judge Gordo.

24          Yet, counsel prepared an order which Judge

25      Gordo amended but signed, that says that you lacked

EXHIBIT 18

1   jurisdiction to do anything that you did, because the
2   appeal was pending, and talks about the fact that you-
3   -
4           THE COURT:  But that's a--
5           MR. RAMIREZ:  That was here.
6           MR. JACOBS:  That was Judge Gordo--
7           MR. RAMIREZ:  I argued that here; I didn't
8   argue that--
9           MS. HAZAN:  Yes, you did.
10          THE COURT:  You argued that to me, but--
11          MR. RAMIREZ:  Yes.  I want them to show you
12  all these things that they are saying I did in front of
13  Judge Gordo.
14          THE COURT:  Where is Judge Gordo's order
15  that says I had no authority?
16          MS. HAZAN:  Yes, I have it.
17          MR. JACOBS:  We will pull it out for Your
18  Honor, but that was her finding; that was part of her
19  findings--
20          THE COURT:  And does she--
21          MR. JACOBS:  It doesn't talk about Judge--
22          THE COURT:  Shush.  Stop interrupting, please.
23  That will be the last time.
24          The next person that interrupts, leaves; I don't
25  care who it is -- other than me.  Okay?  Fair enough?

EXHIBIT 18

1    Mr. Jacobs, where is something written by Judge

2    Gordo that said I had no jurisdiction--

3    MS. HAZAN: Here, Your Honor.

4    MR. JACOBS: Coming right up.

5    MS. HAZAN: Hold on, I'm making sure of

6    something.

7    He said all the orders are extinguished, because

8    the case is dismissed; this here was written by him,

9    and she signed it.

10    THE COURT: Is that the order on the mandate?

11    MR. JACOBS: This is her Order after we had a

12    hearing about what the status was.

13    THE COURT: On what to do next.

14    MR. JACOBS: Right.

15    THE COURT: The status of the case; okay.

16    MS. HAZAN: The final foreclosure--

17    THE COURT: Let me take a look at it.

18    MR. RAMIREZ: May I have a copy?

19    MR. JACOBS: I don't have one with me.

20    So, if you look at page seven--

21    THE COURT: Let me read; I'm reading all of it.

22    MR. RAMIREZ: Oh, okay.

23    THE COURT: Calm down.

24    Okay, so you said page seven?

25    MR. JACOBS: Your Honor, let me just start off

EXHIBIT 18

1     by saying that I want to take you back to November

2     10, 2015.

3           MR. RAMIREZ: Can we stay on topic, Judge?

4           MR. JACOBS: Page 26 of--

5           THE COURT: I read her Order; there are a lot

6     of findings here against Selective on due diligence

7     and timeliness which I am not going to get involved

8     in.

9           MR. JACOBS: That's not what--

10          THE COURT: That's not my concern.

11          MR. JACOBS: What I am looking at, Your

12     Honor, page 26 of your transcript from November

13     12th, you said, the Judgment that I assigned to them

14     or the interest in that Judgment was up on appeal; I

15     didn't affect the validity of what was up on appeal, I

16     just said if you win or lose, whatever happens, now

17     these people own it instead of you; the Third came

18     back and said, too bad, you get to foreclose, now they

19     own that Judgment or note, if that's what is merged

20     into it, they get to go and foreclose.

21          What you have here, Your Honor, is page seven

22     of the Order.

23          THE COURT: That's what I said.

24          MR. JACOBS: That's what you said--

25          THE COURT: In my case.

EXHIBIT 18

1        MR. JACOBS: -- to Mr. Ramirez.

2        THE COURT: Judge Gordo says something

3  different.

4        MR. JACOBS: No. What Judge Gordo did was

5  to enter an order that Mr. Ramirez prepared which

6  says it is undisputed the underlying judgment has

7  been satisfied. The Florida case Judgment has been

8  dismissed. Selective's right to stand in the shoes of

9  NLG has likewise been extinguished.

10       THE COURT: Okay. You are arguing, again,

11  Judge Gordo's order.

12       MR. JACOBS: No. I am arguing your order.

13       THE COURT: No. You are arguing what she

14  signed.

15       Now talk to me about what authority I have to

16  reopen this case, under what procedural rule.

17       MR. JACOBS: I think 1.450(b) certainly is

18  procedural basis--

19       MR. RAMIREZ: Your Honor--

20       THE COURT: Shush.

21       MR. JACOBS: Because at this point now, your

22  Order--

23       MR. RAMIREZ: Objection.

24       THE COURT: Overruled.

25       MR. JACOBS: At this point now, your Order

EXHIBIT 18

1   was very clear; when the Third comes back and says

2   you get to foreclose, it goes to Selective.

3        Now Selective has said I want to cancel this sale

4   that is set for tomorrow.  As a matter of fact, I never

5   wanted to set the sale that is set for tomorrow.

6        As a matter of fact, you told us that we have the

7   rights to do whatever we want to do with the

8   Judgment, and we have already satisfied this

9   Judgment of record.

10        Yet, Mr. Ramirez keeps coming to you -- came

11   to you multiple times saying can you please change

12   your opinion, and you said no, Selective owns this.

13        Now, where we are, is that Judge Gordo has

14   listened to Mr. Ramirez tell her repeatedly -- even if

15   you go to page ten of the Order, what he wrote

16   originally was that this Court lacked any jurisdiction

17   to do any of the things that they did.

18        I took the proposed order and the order that was

19   entered, and put them side by side to check line by

20   line what was missing, and he represented in the

21   proposed order that you never had jurisdiction to do

22   anything with this, and what she puts into her order

23   is that the -- hold on one second here, I'll find it

24   again -- what she puts into her order at page ten, is

25   that it's axiomatic that this court remove provisions

EXHIBIT 18

1    that foreclosure has been filed since 2011, had no

2    jurisdiction to judicially assign the Default Judgment

3    during the appeal, as the validity and the

4    enforceability of the Judgment was pending before

5    the Third District.  Thus, while the foreclosure suit

6    was pending before the Third District, the only

7    remedy was for Selective to pursue, would have been

8    to seek leave from the Appellate Court to relinquish

9    jurisdiction for the purpose of judicially assigning

10   this Judgment, which we didn't choose.

11        But the reality is that what he is telling her

12   isn't exactly fair; we didn't elect our remedy to

13   enforce the Judgment, we filed a domestication action

14   which ended up in your Division, and Your Honor

15   said, I am not doing anything to affect the Judgment -

16   - what's up on appeal, and you didn't.

17        My whole problem is that if Your Honor simply

18   says this is up to Judge Gordo, it's not up to me, well

19   then, whey did Judge Gordo say, this is up to me and

20   not up to Judge Lopez?  Especially, when she is

21   acknowledging she doesn't have--

22        THE COURT:  But again, you all are talking to

23   me about what Judge Gordo did.

24        MR. JACOBS:  Well, I'm--

25        MS. HAZAN:  No--

EXHIBIT 18

1        THE COURT: Ma'am, please leave.

2        MS. HAZAN: Sorry.

3        THE COURT: Out. Right now.

4        Now, Mr. Jacobs.

5        MR. JACOBS: Yes. What we are talking about

6        is your Order; you made an order and it should be

7        enforced, and it should be listened to.

8        Mr. Ramirez has gone ahead ignoring your order

9        and has convinced another judge that you didn't --

10      tried to convince you didn't even have jurisdiction to

11      enter it, and then convinced her to say that you--

12      THE COURT: What does 1.540(b) say?

13      MR. JACOBS: It says you can reopen the case

14      for mistake; there is clearly a mistake here. If

15      everything is made clear to Judge Gordo--

16      THE COURT: I didn't make a mistake.

17      MR. JACOBS: They are representing that; (a)

18      you didn't have jurisdiction to do what you did; (b)

19      that once -- that because you satisfied the Judgment,

20      Selective's rights have been extinguished; that's what

21      they represented to another judge.

22      I think that you can certainly reopen the case to

23      correct that mistake.

24      THE COURT: To correct my judgment to say

25      Judge Gordo, this is really what I meant, you got it

EXHIBIT 18

1    wrong?

2        MR. JACOBS:  No.  I think -- what I want is an

3    order that says that Selective can control the sale.

4        THE COURT:  I'm not doing that; I didn't set

5    the sale.

6        MR. JACOBS:  Right.  But if Selective controls

7    the Judgment, and we are not being -- but we are not

8    getting any rights to do that; what are we doing?

9        THE COURT:  All right, gentlemen; let me bring

10   this to a conclusion really quick.

11       MR. LITHMAN:  Your Honor?

12       THE COURT:  I'm sorry.  Mr. Lithman, did you

13   want to say something?

14       MR. LITHMAN:  I just wanted to--

15       THE COURT:  Because I have read your Motion

16   and I--

17       MR. LITHMAN:  No, no; I understand.

18       THE COURT:  I understand what is happening

19   here.

20       MR. LITHMAN:  There were a couple of minor

21   facts, because I filed, for example, a Motion to

22   Cancel the Judicial sale on an emergency basis.

23       I attempted to have that heard by Judge Gordo;

24   she wouldn't do it.

25       THE COURT:  Okay.

# EXHIBIT 18

1    MR. LITHMAN:  And I understand what she was

2  doing.

3    We are at a hearing the other day -- well we

4  have to be at a hearing in front of Judge Rodriguez --

5  Jose Rodriguez, because he handles the emergencies.

6    At that particular emergency, I presented my --

7  you know -- recitation of the cases, and there are

8  cases that clearly indicate that while there are

9  pending rehearings, you can't have a judicial sale.

10    And Mr. Rodriguez--

11    MR. RAMIREZ:  Ramirez.

12    THE COURT:  Ramirez.

13    MR. LITHMAN:  Excuse me, Ramirez; I

14  apologize.

15    Mr. Ramirez specifically said to the Court that

16  Judge Lopez' orders are irrelevant; the court need not

17  consider those orders while coming to a decision.

18    Now, of course I find that really inappropriate,

19  because I think the Court had to consider all of the

20  orders under this case.

21    But, most importantly, Your Honor did

22  genuinely, clearly indicate as to the foreclosure, in

23  your own words, on November 10th, and in your

24  orders, very clearly, that they stand in the shoes of

25  the Plaintiff and have all the rights of NLG in this

EXHIBIT 18

particular matter, and you refer to all the rights, Your Honor.

THE COURT: You ask a silly question counsel; this all falls on something very simple in my eyes.

When I entered my Order, nobody ran to Judge Eig, or nobody ran to Judge Gordo to seek to intervene as she finds, which is wholly without explanation.

What took you a year to come to me to ask me to intervene and forestall all of this? She made her findings, she made her representations in her order, she denied a Motion to Intervene; whether that is proper or not, that is for someone else to say.

I am not getting there; the Motion to Reopen is denied.

MR. JACOBS: Judge, just to make one --

The first thing they did the next day was to file a Satisfaction of Judgment.

THE COURT: Great. Again, if anything has been done improperly or properly, it is within a different division than mine.

I am not interfering with what my colleague decided. Good luck folks. Have a nice day, good bye.

MR. COHEN: Your Honor, may I just say

EXHIBIT 18

        1       something?

        2              THE COURT:  Talk to the court reporter, I'm

        3       done.

        4              MR. COHEN:  No, no, no; with all of the

        5       attorneys here, Your Honor, if I may.

        6              THE COURT:  Do whatever you wish--

        7              MR. COHEN:  The issue here is a contempt

        8       hearing--

        9              THE COURT:  Say what?

       10              MR. COHEN:  The issue here is contempt of

       11       your Order.

       12              THE COURT:  I'm not -- no there's not.

       13              MR. COHEN:  They are disregarding your Order

       14       by saying

       15              THE COURT:  Counselor.  She made a finding

       16       and it took you a year to intervene.

       17              MR. COHEN:  There was no reason to go back

       18       in.

       19              THE COURT:  Counselor--

       20              MR. COHEN:  No, no.  It was the satisfaction.

       21              THE COURT:  Good.

       22              MR. COHEN:  So then what happened is when

       23       you said--

       24              THE COURT:  Gentlemen.  Bye-bye.  It's not in

       25       front of me.  It's up to you guys and the Third

EXHIBIT 18

1    District.  Have a good day.  Not my problem.  Bye-
2    bye.
3          MR. RAMIREZ:  I was going to say denied--
4          THE COURT:  Denied.  We have had ample
5    discussions.  Goodbye folks; denied.  Nothing to
6    reopen in my case.
7    (The proceedings were concluded at 10:45 a.m.)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT 18

1        C E R T I F I C A T E

2

STATE OF FLORIDA
3
COUNTY OF BROWARD
4

5

6        I, Patreeze Pearce, Reporter, certify

7    that I was authorized to and did report the

8    foregoing proceedings, and that the

9    transcript is a true and correct transcription

10    of my notes to the proceedings.

11

12        Signed this 2nd day of February, 2016.

13

14        _____
         Patreeze Pearce, Reporter
15       Notary Public - State of Florida
         Commission No: FF 76886
16       Commission Expires: 12/16/17

17

18

19

20

21

22

23

24

25

EXHIBIT 18

Case 1:16-cv-00695-CM   Document 14   Filed 08/04/16   Page 1 of 2

## JAMES COSTO, ATTORNEY AT LAW
11 Park Place, Suite 600
New York, New York 10007

(646) 543-0406
(646) 619-4144 (fax)

Email: costolaw@gmail.com

MEMO ENDORSED

Hon Colleen McMahon
Chief Judge, United States District Court
Southern District of New York
New York, New York 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/4/16

August 3, 2016

*[handwritten endorsement]*

Re:    9197-5904 Quebec, Inc. v. NLG, LLC
16 CV 695 (CM)(JCF)

Honorable Chief Judge McMahon:

Please accept this as my opposition to the Order to Show Cause. I respectfully request that Your Honor, in your discretion, not impose sanctions upon me personally, for filing the Notice of Removal of the New York State Supreme Court under Index No.: 101875/2012.

Beginning in or about 2011, I have represented NLG, LLC ("NLG") in a few civil actions in the New York State Supreme Court. NLG is a Delaware limited liability company formed by Mr. Christopher Kosachuk on or about November 19, 2002.

NLG initially retained me to assist in domesticating an out of state judgment against an individual named Elizabeth Hazan. Defendant NLG and Elizabeth Hazan have been in litigation regarding a judgment entered in Florida in or about 2008, and a Final Judgment of Foreclosure awarded to NLG against Hazan in 2015. The parties continue to actively litigate their disputes.

In or about 2014, Defendant NLG learned that Plaintiff 9197-5904 Quebec, Inc., a "foreign" entity, believed to be an "alter ego" of Elizabeth Hazan, or an entity formed by her brother or family friend, had fraudulently filed a Confession of Judgment in the New York State Court in the amount of $5,000,255, plus interest and cost (the "Confessed Judgment" based upon an insufficient affidavit of confession).   See Docket Entry #1, Confession of Judgment, Attachment A.

# EXHIBIT 19

As indicated in the January 29, 2016 Notice of Removal, GROUNDS FOR REMOVAL at pg. 3, NLG had filed a motion to the New York State Supreme Court to vacate the Confessed Judgment, but NLG was unable to have the motion adjudicated because of various legal and bankruptcy proceedings involving the parties in New York and Florida.

In or about April 2014, Plaintiff 9197-5904 Quebec, Inc. assigned its interest in the confession of judgment to another entity controlled by Elizabeth Hazan, or her husband, Sean Neil Meehan, Selective Advisors Group, LLC ("Selective").

In or about 2015, 9197-5904 Quebec, Inc. filed a bankruptcy petition in the Eastern District of New York, and abandoned same, resulting in its dismissal. Also in or about 2015, Selective filed for bankruptcy protection the Eastern District of New York, the Chapter 7 filing was assigned Case Number 815-72153-A736.

Selective's bankruptcy action was dismissed with prejudice due to its bad faith filing, determined by the appointed trustee. Shortly thereafter, on or about September 4, 2015, Selective voluntarily filed a satisfaction of the Confessed Judgment with the New York County Clerk.

On or about January 11, 2016, Elizabeth Hazan filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the Southern District of Florida, Miami Division, under case number 16-10389-AJC, which was pending before the Hon. A. Jay Cristol. See Docket Entry #1, Hazan Bankrupty documents, Attachment B.

Removal of the State Court action was filed because it was believed that the Confessed Judgment is subject to the original jurisdiction of this Court pursuant to 28 U.S.C. §1334 because it is related to a core matter arising under 11 U.S.C. §303(i) and the issues raised in the Confessed Judgment overlap and are intertwined with the core bankruptcy proceeding, which is pending before the Bankruptcy Court in Florida. Specifically, the purpose of removal was to then transfer the case to the bankruptcy court in the State of Florida, not to have this Court vacate the Confessed Judgment. NLG's Florida counsel failed to timely file the request to transfer the action to Florida.

I, by no means, acted, or meant to act, in any frivolous manner. Based upon the research conducted, I believed that this action could be removed to this Court to expeditiously resolve the parties' disputes.

Respectfully submitted,

James Costo, Esq. (JC 3308)

cc:

Todd M. Mosser, Esq, (via ECF)

# EXHIBIT 19


CFN 2012R0117830
OR Bk 28002 Pss 4715 - 4720; (6pss)
RECORDED 02/21/2012 11:12:01
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Return to:

Arthur R.Rosenberg, Esquire
6499 N. Powerline Road
Suite 304
Fort Lauderdale, FL 33309

------------------------------------------------------------------

**COVER PAGE TO SATISFACTION OF MORTGAGE**

EXHIBIT 20

6

Book28002/Page4715    CFN#20120117830                    Page 1 of 6

Document Prepared and Returned by:
Arthur Rosenberg
Rosenberg & Pinsky
6499 North Powerline Road
Suite 304
Fort Lauderdale, Florida 33309
954-772-5151

## SATISFACTION OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS: The undersigned owner(s) and holder(s) of a mortgage (and of the indebtedness secured by it) made by Elizabeth Hazan of 6913 Valencia Drive, Fisher Island, Florida 33109, to NLG, LLC., a Delaware limited liability company with the address of 6499 N. Powerline Road, Suite 304, Fort Lauderdale, Florida 33309 securing the sum of **One Million Two Hundred Seventy Five Thousand and ($1,275,000.00) Dollars** on the 8th day of March 2007, which was recorded on April 24, 2007, in Official Records Book 25559, Page 4226 - 4272, Instrument Number 2007R410013, of the Public Records of Miami-Dade County, Florida, covering the real property described below:

**LOT 7, BLOCK 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 157, AT PAGE 640 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.**

which has the address of 6913 Valencia Drive, Fisher Island, Florida 33109.

This document is being executed by Raymond Houle as Manager of 9197-5904 Quebec, Inc., pursuant to the attached Charging Order.

The Undersigned acknowledge that the above-described indebtedness has been paid, and by this instrument cancel the above-described mortgage and the Promissory Note accompanying said Mortgage.

**IN WITNESS THEREOF**, I have hereunto set my hand and seal, the 20th day of February 2011.

Signed, sealed and delivered
in presence of:

NLG, LLC
By:9197-5904 Quebec, Inc.

_____

_____

by: _____
Raymond Houle, Manager

STATE OF FLORIDA     )
                      ) : SS
COUNTY OF *Broward*   )

      ON THIS DAY, before me, an officer duly authorized to administer oaths and take acknowledgments in the County and State aforesaid, personally appeared RAYMOND HOULE, a manager of 9197-5904 Quebec Inc., as duly authorized agent of NLG, LLC., who is personally known to me or who has produced his passport as identification and who did take an oath.

      WITNESS my hand and official seal at *Fort Lauderdale* County of *Broward*, Florida, on this 20 th day of February 2012.

                                NOTARY PUBLIC

My commission expires:



EXHIBIT 20

IN THE COURT OF THE COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL DIVISION

EVGUENIA LORRET and NINA :   COURT OF COMMON PLEAS
GOGITIDZE, :   Civil Division
          Plaintiffs, :   Chester County
           :
           :   No.: ~~00057-2012-JD~~
           :
           :   2012-00057
           :
CHRISTOPHER KOSACHUK and NLG LLC, :
          Defendants. :

## CHARGING ORDER

AND NOW, to wit, this 15 day of _Sept_ , 2012, on Motion of the Plaintiff-Assignee, 9197-5904 Quebec, Inc. it is hereby **ORDERED**:

1.     A Charging Order is hereby entered against Defendant Christopher Kosachuk's interest in NLG, LLC, a sole-member Limited Liability Company, pursuant to the Charging Order entered by the Florida Circuit Court on April 5, 2010, with a duly certified copy having been filed with the Prothonotary, and pursuant to 15 Pa. C.S.A. § 8345.

2.     Pursuant to 15 Pa. C.S.A. § 8924, Christopher Kosachuk's entire interest in sole-member NLG, LLC shall be assigned to Plaintiff –Assignee per the Charging Order, and Plaintiff-Assignee shall stand in the shoes of Christopher Kosachuk with respect to both economic and management rights in NLG, LLC.

3.     In accordance with the provisions of Rule 3118 of the Pennsylvania Rules of Civil Procedure, Christopher Kosachuk, and his agents and assigns, are hereby enjoined from

**CERTIFIED
FROM THE RECORD**

1

ATTEST _Marlen C. Shire_
    DEPUTY PROTHONOTARY
    2-17-12

EXHIBIT 20

transferring, removing, encumbering, hypothecating, conveying, assigning or otherwise disposing of Christopher Kosachuk's member and property interest in NLG, LLC.

4.    In accordance with the provisions of Rule 3118 of the Pennsylvania Rules of Civil Procedure, Christopher Kosachuk, and his agents and assigns, are hereby enjoined from acting on behalf of NLG, LLC in any capacity whatsoever, and from exercising any management or governance rights over NLG, LLC.

5.    Should Christopher Kosachuk fail to abide by this Order, he may be punished for Contempt of Court.

BY THE COURT



J.

2

IN THE COURT OF THE COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| EVGUENIA LORRET and NINA GOGITIDZE, | : | COURT OF COMMON PLEAS |
| | : | Civil Division |
| Plaintiffs, | : | Chester County |
| | : | |
| | : | No.: ~~00057-2012-JD~~ |
| | : | |
| | : | 2012 - 00057 |
| CHRISTOPHER KOSACHUK and NLG LLC, | : | |
| | : | |
| Defendants. | : | |

**ORDER PEMITTING CAPTION CHANGE**

AND NOW, to wit, this 15th day of ____, 2012, on Motion of the Plaintiff, the

Prothonotary is hereby **ORDERED** to amend case caption from: EVGUENIA LORRET and

NINA GOGITIDZE, Plaintiffs, vs. CHRISTOPHER KOSACHUK and NLG LLC, Defendants,

to:                    9197-5904 QUEBEC, INC.

Plaintiff,

Vs.

CHRISTOPHER KOSACHUK and NLG LLC,
Defendants.

**CERTIFIED
FROM THE RECORD**
ATTEST _____
~~DEPUTY PROTHONOTARY~~
2-17-12

BY THE COURT

_Jacqueline C – Cody_
J.

1

EXHIBIT 20
Book28002/Page4720          CFN#20120117830          Page 6 of 6

CFN 2012R0117831 OR BK 28002 Pgs 4721 - 4725; (5pgs)
RECORDED 02/21/2012 11:12:01
HARVEY RUVIN, CLERK OF COURT, MIAMI-DADE COUNTY, FLORIDA

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO: 07-19532 CA (11)

NLG, LLC, a Delaware Limited
Liability Company,
  Plaintiff,
vs.

ELIZABETH HAZAN,
  Defendant.

_____/

### SATISFACTION OF JUDGMENT

KNOW ALL MEN BY THESE PRESENTS that NLG, LLC, the Plaintiff in the above action,

wherein a judgment was entered in the original amount of **$1,618,071.29** against the Defendant,

ELIZABETH HAZAN, said judgment being recorded in the minutes of said court and a copy thereof

having been recorded on May 2, 2007 in Official Records **Books 26357 Page 3948 -3949** of the public

records of Miami-Dade **County, Florida**, does hereby acknowledge full payment and satisfaction thereof

and hereby consents that the same shall be satisfied of record.

This Satisfaction is being executed pursuant to the authority of the Charging Order attached

hereto as exhibit "A"

Witness our hand and seal this 𝒟th day of February 2012.

NLG, LLC.
BY:9197-5904 QUEBEC, INC.


By:_____
  Raymond Houle, Manager


STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original on file in this office. FEB 21 AD 20 12
HARVEY RUVIN, Clerk of Circuit and County Courts
Deputy Clerk _____



EXHIBIT 22

5

STATE OF FLORIDA      )
                      ) : SS
COUNTY OF _Brevard_   )

ON THIS DAY, before me, an officer duly authorized to administer oaths and take acknowledgments in the County and State aforesaid, personally appeared RAYMOND HOULE, a manager of 9197-5904 Quebec, Inc., and duly authorized agent of NLG, LLC., who is personally known to me or who has produced his passport as identification and who did take an oath.

WITNESS my hand and official seal at _Ft Lauderdale_ County of _Brevard_, Florida, on this 20th day of February 2012.

_____
NOTARY PUBLIC

My commission expires:





EXHIBIT 22

Book28002/Page4722      CFN#20120117831      Page 2 of 5

EVGUENIA LORRET and NINA
GOGITIDZE,

                   Plaintiffs,

CHRISTOPHER KOSACHUK and NLG LLC,

                   Defendants.

:    COURT OF COMMON PLEAS
:    Civil Division
:    Chester County
:
:    No.: ~~00057-2012-JD~~
:
:    2012-0087
:
:
:

**CHARGING ORDER**

AND NOW, to wit, this 15th day of _____, 2012, on Motion of the Plaintiff-Assignee, 9197-5904 Quebec, Inc. it is hereby **ORDERED**:

1.    A Charging Order is hereby entered against Defendant Christopher Kosachuk's interest in NLG, LLC, a sole-member Limited Liability Company, pursuant to the Charging Order entered by the Florida Circuit Court on April 5, 2010, with a duly certified copy having been filed with the Prothonotary, and pursuant to 15 Pa. C.S.A. § 8345.

2.    Pursuant to 15 Pa. C.S.A. § 8924, Christopher Kosachuk's entire interest in sole-member NLG, LLC shall be assigned to Plaintiff –Assignee per the Charging Order, and Plaintiff-Assignee shall stand in the shoes of Christopher Kosachuk with respect to both economic and management rights in NLG, LLC.

3.    In accordance with the provisions of Rule 3118 of the Pennsylvania Rules of Civil Procedure, Christopher Kosachuk, and his agents and assigns, are hereby enjoined from

**CERTIFIED
FROM THE RECORD**
ATTEST _____
~~DEPUTY PROTHONOTARY~~
2-17-12

1

transferring, removing, encumbering, hypothecating, conveying, assigning or otherwise disposing of Christopher Kosachuk's member and property interest in NLG, LLC.

4.     In accordance with the provisions of Rule 3118 of the Pennsylvania Rules of Civil Procedure, Christopher Kosachuk, and his agents and assigns, are hereby enjoined from acting on behalf of NLG, LLC in any capacity whatsoever, and from exercising any management or governance rights over NLG, LLC.

5.     Should Christopher Kosachuk fail to abide by this Order, he may be punished for Contempt of Court.

BY THE COURT

_Jacqueline C. Cody_
J.



2

EXHIBIT 22

IN THE COURT OF THE COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| EVGUENIA LORRET and NINA GOGITIDZE, | : | COURT OF COMMON PLEAS |
| | : | Civil Division |
| Plaintiffs, | : | Chester County |
| | : | |
| | : | No.: ~~00057-2012-JD~~ |
| | : | *2012 - 00057* |
| CHRISTOPHER KOSACHUK and NLG LLC, | : | |
| | : | |
| Defendants. | : | |

## ORDER PEMITTING CAPTION CHANGE

AND NOW, to wit, this 15th day of _____, 2012, on Motion of the Plaintiff, the

Prothonotary is hereby **ORDERED** to amend case caption from: EVGUENIA LORRET and

NINA GOGITIDZE, Plaintiffs, vs. CHRISTOPHER KOSACHUK and NLG LLC, Defendants,

to:                    9197-5904 QUEBEC, INC.

Plaintiff,

Vs.

CHRISTOPHER KOSACHUK and NLG LLC,
Defendants.

**CERTIFIED
FROM THE RECORD**
ATTEST _____
~~DEPUTY PROTHONOTARY~~
2-17-12

BY THE COURT

_____
J.

1

EXHIBIT 22

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

NLG, LLC,

     Plaintiff

v.

ELIZABETH HAZAN, et al.

     Defendant

_____/

GENERAL JURISDICTION DIVISION

CASE NO.: 2011-42770-CA-02

~~AGREED~~ ORDER

THIS CAUSE, having come before this Court upon ~~agreement of the parties~~, *ore tenus motion at the trial* it is hereby ORDERED as follows:

1. The Satisfaction of mortgage recorded on February 21, 2012 in Miami-Dade Public Records Book 28002, Page4715-4720, with Clerk's File Number 2012R0117830, is hereby stricken nunc pro tunc the date of such recording.

2. The Corrected satisfaction mortgage recorded on February 27, 2012 in Miami-Dade Public Records Book 28010, Page 517-518, with Clerk's File Number 2012R0133712 is hereby stricken nunc pro tunc the date of such recording.

3. The satisfactions that are hereby stricken shall be disregarded as though same have never been recorded.

Done and Ordered in Miami-Dade County, Florida this 2nd day of January, 2013.

The Honorable Spencer Eig
Circuit Court Judge

SPENCER EIG
CIRCUIT COURT JUDGE

Copies furnished:
Parties of record

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original on file in this office. Jan. 2 AD 20 13
HARVEY RUVIN, Clerk of Circuit and County Courts
Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

NLG, LLC,

      Plaintiff

v.

ELIZABETH HAZAN, et al.

      Defendant

GENERAL JURISDICTION DIVISION

CASE NO.: 2007-19532-CA-11

~~AGREED~~ ORDER *Defense motion se*

THIS CAUSE, having come before this Court upon ~~agreement of the parties~~, it is

hereby ORDERED as follows:

1. The Satisfactions of Judgment filed in the instant action and recorded on February 21, 2012 in Miami-Dade Public Records Book 28002, Page 4721-4725, with Clerk's File Number 20120117831, is hereby stricken nunc pro tunc the date of such filing and recording.

2. The Corrected Satisfaction Judgment filed in the instant action and recorded on February 27, 2012 in Miami-Dade Public Records Book 28009, Page 4228-4232, with Clerk's File Number 20120133151, is hereby stricken nunc pro tunc the date of such filing and recording.

3. The Corrected Satisfaction of Judgment filed in the instant action and recorded on February 27, 2012 in Miami-Dade Public Records Book 28010, Page 519-520, with Clerk's File Number 2012R0133713, is hereby stricken nunc pro tunc the date of such filing and recording.

Done and Ordered in Miami-Dade County, Florida this 2nd day of January, 2013.

The Honorable Spencer Eig
Circuit Court Judge

SPENCER EIG
CIRCUIT COURT JUDGE

Copies furnished:
Parties of record

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original on file in this office. Jan. 2 AD 20 13
HARVEY RUVIN, Clerk of Circuit and County Court.
Deputy Clerk

EXHIBIT 23

Book28425/Page901    CFN#20130001326    Page 1 of 1