

ORDERED in the Southern District of Florida on October 31, 2017.

A. Jay Cristol, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:

LIZA HAZAN,                                       CASE NO. 16-10389-BKC-AJC
a/k/a ELIZABETH HAZAN

    Debtor.                                    CHAPTER 11
_____/
LIZA HAZAN a/k/a ELIZABETH HAZAN
and SELECTIVE ADVISORS GROUP, LLC,   ADV. NO. 16-1439-BKC-AJC-A

    Plaintiffs,

vs.

NLG, LLC

    Defendant.
_____/

**FINAL JUDGMENT ON COUNTS I, II AND III OF PLAINTIFFS' THIRD AMENDED COMPLAINT DETERMINING VALIDITY, PRIORITY AND EXTENT OF LIENS AND SETTING TRIAL ON COUNTS IV THROUGH IX**

    **THIS CAUSE** came before the Court for trial on July 13, 2017 at 10:00 a.m., upon

Plaintiffs, Selective Advisors Group, LLC ("Selective") and Liza Hazan a/k/a Elizabeth Hazan's Third Amended Complaint and Defendant, NLG, LLC's Counterclaim. Selective commenced this Adversary Proceeding against NLG, LLC ("NLG") on August 21, 2016, seeking a determination of the nature and extent of its claimed lien, if any. Debtor joined the adversary proceeding against NLG on October 21, 2016. The Third Amended Complaint was deemed the operative Complaint by Order entered January 23, 2017, and NLG filed an Amended Answer and Counterclaim on May 17, 2017. In its Counterclaim, NLG also seeks a determination of the nature and extent of its claimed lien and that its late filed claim be allowed as a timely filed claim. Plaintiffs seek a determination that NLG has no remaining claim against this Debtor and no standing to participate in this case.

The Court having reviewed the file, the documentary evidence and exhibits, having heard the testimony of witnesses and argument of counsel, finds and concludes as follows.

### A. Background

Ms. Hazan is the owner of her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property"). She purchased the Property on March 7, 2007 from NLG. Chris Kosachuk is the manager and representative of NLG. For nearly a decade, Kosachuk and NLG have litigated with Debtor in multiple courts and in several jurisdictions. The various courts have entered final orders setting forth the rights and obligations of Ms. Hazan, NLG, and Selective.

All interested parties to the various controversies are now before this Court and subject to its jurisdiction. This Court is not an appellate court for any of the other courts; thus, full faith and credit must be given to all of the final judgments and orders entered in the other courts as those judgments have become final and not subject to appeal.

There have been claims or assertions that some of these other court decisions are erroneous.

However, when the decisions or judgments of those courts became final and not subject to further appeal, those decisions or judgments became the law of the respective case and not subject to further review by this Court. While arguments have been made to accept one or more of the prior judgments and ignore others, those arguments are not persuasive and this Court will attempt to determine the rights of the parties by giving full faith and credit to all of the final orders and judgments.

**State Court Proceedings**

NLG's claim against Debtor arises from a promissory note (the "Note") (Exhibit 1) and mortgage (the "Mortgage") (Exhibit 2) on the Property, recorded in April 2007 in the original amount of $1,275,000.00. In June 2007, NLG sued Debtor for an alleged breach of the Note, in Miami-Dade Circuit Court, Case No. 07-19532 CA 11 (Exhibit 3). On April 28, 2008, Circuit Judge Robert N. Scola Jr. entered a Default Final Judgment on the Note (the "Scola Judgment") against Ms. Hazan in the amount of $1,618,071.29 with 11% interest per annum (Exhibit 4). NLG moved to domesticate the Scola Judgment in New York and litigation followed in the New York Supreme Court.

In December 2011, NLG filed a second lawsuit, Case No. 11-42770 CA (01), in Miami–Dade Circuit Court seeking to foreclose on the Mortgage (Exhibit 5). On February 8, 2013, the trial court judge, Judge Spencer Eig, ruled that NLG had made an election of remedies by first suing on the alleged breach of the Note, and obtaining a judgment thereon. As such, Judge Eig precluded NLG from foreclosing on the Mortgage (Exhibit 6). NLG appealed that decision to the Third District Court of Appeal.

On April 30, 2014, while the Eig Order was on appeal to the Third District Court of Appeal, Plaintiff Selective acquired a 2012 New York judgment against NLG [and in favor of 9197-5904 Quebec, Inc.] and recorded the foreign judgment in Miami-Dade County, Florida in Case No.14-10475 CA (10) assigned to Circuit Court Judge Peter Lopez (the "Quebec Judgment"). NLG filed a

Motion to Quash the recording of the New York judgment against it in Florida. However, after NLG failed to post a bond as ordered, Judge Lopez denied NLG's motion to quash on June 16, 2014, finding that Plaintiff Selective has the right to enforce and collect on their foreign judgment, the $5,000,225.00 Quebec Judgment.

Thereafter, on July 2, 2014, Selective, as owner of the then-domesticated foreign judgment, the Quebec Judgment, brought proceedings supplementary in Case No.14-10475 CA (10) specifically to seize and attach NLG's judgment against Hazan (the Scola Judgment) for the purpose of partially satisfying the Quebec Judgment. Circuit Judge Lopez heard the Proceedings Supplementary Motion on August 12, 2014 and August 15, 2014, and entered an Order on August 20, 2014, judicially assigning to Selective the Scola Judgment against Debtor (the "Lopez Assignment Order"). The Lopez Assignment Order states in pertinent part:

> 1. The Court orders that the Hazan Final Judgment held by NLG, LLC, against Elizabeth Hazan, ("Hazan Final Judgment") and all of NLG, LLC's rights, claims and benefits held against Elizabeth Hazan are hereby judicially assigned to the Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC, a Delaware Limited Liability Company.
>
> 2. Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC shall stand in the shoes of NLG, LLC with respect to all claims, rights, and benefits held by NLG, LLC so as to entitle it to recover all proceeds attributable to said judgment against additional Defendant, Elizabeth Hazan, with NLG, LLC receiving credit for all sums so received.
>
> 3. Plaintiff, SELECTIVE ADVISORS GROUP, LLC shall give a credit to Defendant NLG, LLC in the sum of $2,746,953.34 which amount includes principal and interest through August 31, 2014 at the 11% judgment amount **without prejudice to Defendant establishing at further hearing why the credited amount should be greater**.

Exhibit 8 (emphasis added).

At trial, NLG argued that the Scola Judgment was the subject of an appeal at the time of the assignment, and therefore could not have been judicially assigned by Judge Lopez. However, Judge

Lopez actually addressed and dismissed that argument when he denied NLG's motion to reconsider the Order of assignment of the Scola Judgment to Selective:

> Okay, so I assigned your interest in it to them (Selective), which had nothing to do with what's going on up on appeal. . . .
>
> That judgment that I assigned to them (Selective) or that interest in that judgment was up on appeal. I didn't affect the validity of what's up on appeal. I just said, if you win or lose, whatever happens, now, these people own it instead of you. The Third came back and said, too bad, you get to foreclose, they now own that judgment or note if that's what merged into it, they (Selective) get to go and foreclose.

Exhibit 22, Tr page 24 lines 3-5; Tr page 26 Lines 3-12. Judge Lopez's Orders are final.

**Satisfaction and Payment of the Scola Judgment**

On August 20 and 21, 2014, Selective filed a satisfaction of the Scola Judgment and the Mortgage (Exhibit 9). Selective gave credit to NLG towards the Quebec Judgment. According to the Electronic Judgment Lien Amendment Statement filed on September 5, 2014 with the Florida Secretary of State (Exhibit 14), it appears NLG was given credit in the amount of the Scola Judgment, or $1,618,071.29, without credit for interest thereon. The Lopez Assignment Order specifically determined that $2,746,953.34 was the correct sum to be credited to NLG for the Scola Judgment, as that amount includes interest from April 28, 2008 through August 31, 2014. **The Lopez Assignment Order also left open the possibility of an increase in that amount, should same be proven at a further hearing**.

The Lopez Assignment Order was never vacated or set aside, and the decision remains the law of the case.

In the New York lawsuit by NLG against the Debtor, Selective proceeded to intervene. Judge Barbara Jaffe of the New York Supreme Court entered a Decision and Order on October 30, 2014 recognizing Selective's assignment of the Scola Judgment pursuant to the Lopez Assignment Order. In that case, the court ordered the caption of the New York case be changed to reflect the substitution

of Selective Advisors Group, LLC as the proper party, in place of NLG, LLC (Exhibit 18). The court also directed the Clerk to accept for filing the Order of assignment "judicially assigning the underlying Florida judgment from plaintiff to Selective", and strike all NLG's judgments of record against Ms. Hazan. On November 13, 2014, Judge Jaffe dismissed NLG's lawsuit against Elizabeth Hazan, ruling as follows:

> Given the satisfaction of Judgment in the underlying action under index #101288/2013, as reflected in my Decision and Order dated October 30, 2014, defendant's motion to dismiss the proceeding is granted and the proceeding is dismissed. The clerk is directed to enter judgment accordingly.

Exhibit 19.

**The Third District Court of Appeal Opinion and the Gordo Foreclosure Judgment**

On September 3, 2014, the Third District Court of Appeal reversed Judge Eig on the issue of election of remedies and held that foreclosure could proceed on the Mortgage (Exhibit 12). Circuit Judge Monica Gordo, by that time having replaced Judge Eig in the division, then entered a foreclosure judgment in favor of NLG, despite the judicial assignment of NLG's interests in the Note and Mortgage to Selective (the "Gordo Foreclosure Judgment"). Notwithstanding the various court rulings recognizing the judicial assignment of the Scola Judgment to Selective, Judge Gordo entered a Final Judgment of Foreclosure in favor of NLG on December 4, 2015 (Exhibit 21). The Gordo Foreclosure Judgment determined NLG, LLC was entitled to the grand total sum of $4,876,654.29 and set a sale for January 12, 2016.

However, on January 11, 2016, the Debtor filed for Chapter 11 bankruptcy protection and the sale was stayed.

    B. **Legal Analysis**

Plaintiffs contend that Judge Lopez judicially assigned to Selective the Scola Judgment, together with all the rights and claims thereunder, which includes the right to enforce the Mortgage,

leaving NLG with no enforceable mortgage, lien, or claim in this bankruptcy case.  NLG takes the position that, notwithstanding the judicial assignment of the Scola Judgment on the Note, NLG retained the right to foreclose on the Mortgage. NLG asks the Court to limit its review to only one out of the many rulings entered in the ten-year history of litigation between the parties.  It asks the Court to look only to the Gordo Foreclosure Judgment, contending that Judge Gordo resolved all issues in NLG's favor.

After reviewing the history of the proceedings between the parties, it is evident the Gordo Foreclosure Judgment does not resolve all issues in NLG's favor. The Scola Judgment, the Lopez Assignment Order, and the Gordo Foreclosure Judgment all control this Court's decision going forward.  The Scola Judgment established Debtor's liability to NLG on the Note.  The Scola Judgment, and consequently the Mortgage, were assigned to Selective by the Lopez Assignment Order, and were thereafter satisfied.  Finally, by the Gordo Foreclosure Judgment, NLG, LLC established its entitlement to a greater credit for the judicial assignment of the Note and Mortgage. Moreover, any interest NLG may have had in the Mortgage by virtue of the Gordo Foreclosure Judgment is/was extinguished upon redemption by the Debtor and satisfaction.

The Scola Judgment awarded NLG, LLC $1,618,071.29 against the Debtor for Debtor's breach of the Note.

In 2014, after entry of the Scola Judgment, Selective acquired a $5,000,225 judgment against NLG, LLC, the Quebec Judgment. (Although NLG argued that the Quebec Judgment was erroneous or invalid, it is a final judgment not subject to appeal.)  Selective domesticated the Quebec Judgment in state court, before Judge Lopez, and the order domesticating the judgment has become final and non-appealable.  Thereafter, the Lopez Assignment Order was entered, judicially assigning the Scola Judgment to Selective [in partial satisfaction of the Quebec

Judgment] and determining the value of the Scola Judgment to be $2,746,953.34, inclusive of interest. The Lopez Assignment Order judicially assigns the Scola Judgment to Selective, together with all the rights and claims thereunder.

Because ownership of the Mortgage follows the Note, in the absence of a contrary intention, Selective, who owns and holds the Note, therefore has standing to foreclose the Mortgage.

> It has frequently been held that a mortgage is but an incident to the debt, the payments of which it secures, and its ownership follows the assignment of the debt. If the note or other debt secured by the mortgage be transferred without any formal assignment of the mortgage, or even a delivery of it, the mortgage in equity passes as an incident to the debt, unless there be some plain and clear agreement to the contrary, if that be the intention of the parties.

*Taylor v. Bayview Loan Servicing, LLC*, 74 So.3d 1115, 1117-18 (Fla. 2d DCA 2011). Under Florida law, "[a] crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose" [the subject note and subject mortgage when the complaint is filed]. *McLean v. JPMorgan Chase Bank Nat'l Ass'n*, 79 So.3d 170, 173 (Fla. 4th DCA 2012). "Standing may be established by either an assignment or an equitable transfer of the mortgage prior to the filing of the complaint." *Id.* NLG has not demonstrated that it owns and holds the Note and Mortgage in question. *Verizzo v. Bank of N.Y.*, 28 So.3d 976, 978 (Fla. 2d DCA 2010). Here, NLG's interest in the Note, as evidenced by the Scola Judgment, was assigned by Judge Lopez to Selective. NLG no longer holds the right to enforce the Note or the Scola Judgment entered on the Note. See, Trial Transcript Page 27 lines 3-11. There being no evidence presented to support the position that the parties did not intend for the Mortgage to follow the Note, the Mortgage did indeed follow the assignment of the Note in this case. The Note having been judicially assigned to Selective, Selective has standing to foreclose the Mortgage and, upon assignment, NLG had no further right to foreclose the Mortgage. When Judge Lopez assigned the Scola Judgment to

8

Selective, Selective stepped into the shoes of NLG, acquiring standing to foreclose on the Note and Mortgage.

The public records for Miami-Dade County, Florida reflect that the Scola Judgment and the Mortgage were both satisfied in August 2014. NLG was given credit by Selective for the debt remaining under the Scola Judgment and Mortgage, in partial satisfaction of the domesticated Quebec Judgment. It appears that credit may not have been finally determined, as discussed further herein.

Notwithstanding the judicial assignment to Selective and subsequent satisfactions, in November 2014, the Third District Court of Appeal, presumably unaware of the assignment and satisfactions, entered an opinion reversing the Eig Order and permitting foreclosure of the Mortgage. Following the mandate, Judge Gordo entered the Gordo Foreclosure Judgment in December 2015. The Gordo Foreclosure Judgment determined NLG is entitled to $4,876,654.29 under the Note and Mortgage. The Court is advised Selective tried to intervene in the case but Judge Gordo did not allow intervention. This Court was not informed as to why Selective did not otherwise intervene in the appeal of the Eig Order and advise the Third District Court of Appeal that Selective was assigned the Note and Mortgage and that the Note and Mortgage were satisfied months before the Third District Court Appeal issued its opinion reversing the Eig Order.

Thus, it initially appears there may be a conflict between the Lopez Assignment Order, assigning ownership of the Note and Mortgage on the Property to Selective, and the Gordo Foreclosure Judgment, granting foreclosure of the Property in favor of NLG as Plaintiff instead of in favor of Selective. However, this conflict has been overcome by events.

Giving full faith and credit to the Lopez Assignment Order, NLG's rights in the Scola Judgment were assigned to Selective, after Judge Lopez concluded that the assignment of the Scola

9

Judgment to Selective had no relevance to the issues on appeal. (Exhibit 22, Tr. 26:3-11). The Lopez Assignment Order establishes that NLG, LLC is entitled to $2,746,953.34 for the assignment, "which amount includes principal and interest [on the Note] through August 31, 2014 at the 11% judgment amount ***without prejudice to [NLG] establishing at further hearing why the credited amount should be greater***." (Emphasis added.) Giving full faith and credit to the Gordo Foreclosure Judgment, NLG established its entitlement to a greater credit than that in the Lopez Assignment Order, in the grand total sum of $4,876,654.29. The Gordo Foreclosure Judgment also granted NLG the right to foreclose, but allowed the Debtor to redeem the Property up until the time of the sale. Thus, notwithstanding the right to foreclose, no sale took place, and the Debtor's right to redeem remains alive and well.

NLG argued at trial that Selective is collaterally estopped from asserting its interest in the Mortgage. "However, in collateral estoppel the 'precise fact' or 'every point and question' on the issue must have been decided". *Chandler v. Chandler,* 226 So.2d 697 (Fla. 4th DCA 1969) citing *Gordon v. Gordon*, 59 So.2d at 45 (Fla.1952). Here, Selective sought to intervene in the Gordo foreclosure lawsuit to raise its unique issues of law and fact relative to the assignment of the Mortgage rights and the right to intervene was denied to Selective. "[I]f there is any doubt as to whether a litigant has had his day in court such doubt must be resolved in favor of the full consideration of the substantive issues of the litigation". *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324 (11th Cir. 2010). The evidence and testimony presented at trial demonstrate that Selective was not a party to the Gordo case and therefore is not barred by res judicata or collateral estoppel from asserting its rights under the Note and Mortgage.

However, even assuming that the Gordo Foreclosure Judgment authorized NLG, *and not Selective*, to foreclose the Mortgage, the foreclosure sale never took place because Debtor filed

10

this bankruptcy case, staying the sale pursuant to 11 U.S.C. §362.  The Debtor redeemed the Property prior to a foreclosure sale being conducted and certificate of sale being issued, thereby satisfying the Gordo Foreclosure Judgment. In paragraph 4 of the Gordo Foreclosure Judgment, the state court judge set a foreclosure sale date, subject to paragraph 6 therein.  Paragraph 6 of the Gordo Foreclosure Judgment states:

> **Right of Redemption.**  On filing of the Certificate of Sale, defendant's right of redemption as proscribed by Florida Statute, Section 45.0315 shall be terminated.

Section 45.0135, Fla. Stats., provides:

> At any time before the later of the filing of a certificate of sale by the clerk of the court or the time specified in the judgment, order, or decree of foreclosure, the mortgagor or the holder of any subordinate interest may cure the mortgagor's indebtedness and prevent a foreclosure sale by paying the amount of moneys specified in the judgment, order, or decree of foreclosure, or if no judgment, order, or decree of foreclosure has been rendered, by tendering the performance due under the security agreement, including any amounts due because of the exercise of a right to accelerate, plus the reasonable expenses of proceeding to foreclosure incurred to the time of tender, including reasonable attorney's fees of the creditor. Otherwise, there is no right of redemption.

Until the certificate of sale issued, the Debtor retained her right of redemption, regardless of the identity of the mortgagee.  Consistent with her rights under the Gordo Foreclosure Judgment and as provided by statute, the Debtor in fact redeemed the Property prior to a foreclosure sale, by satisfying the Note and Mortgage, and by Selective providing NLG credit for payment of the Note and Mortgage to partially satisfy NLG's debt to Selective by virtue of the Quebec Judgment.

The amount of the credit provided to NLG should be the greater amount established by the Gordo Foreclosure Judgment.  Although the Scola Judgment determined the debt on the Note to be $1,618,071.29, the Lopez Assignment Order increased the amount owed to NLG by the Debtor to $2,746,953.34.  The Gordo Foreclosure Judgment ultimately established that NLG was entitled to $4,876,654.29 for the Note and Mortgage.  While the $4,876,654.29 amount may be disputed, the

Court must give full faith and credit to the Gordo Foreclosure Judgment and will therefore view the amount determined in that judgment to be the greater amount NLG established it was owed on account of the Note and Mortgage, *as the Lopez Assignment Order allowed*.

It appears from the Electronic Judgment Lien Amendment Statement (Exhibit 14) that NLG was given credit only for the amount indicated in the Scola Judgment, or $1,618,071.29. It was not credited with the amount indicated in the Lopez Assignment Order of $2,746,953.34 (which included interest on the Scola Judgment), nor was it credited with the amount indicated in the Gordo Foreclosure Judgment, $4,876,654.29. However, at the time of trial, the parties' rights were already determined by all those orders. Before any credits, Selective was owed $5,000,225.00 from NLG on account of the Quebec Judgment, and NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage pursuant to the Gordo Final Judgment. Honoring the Gordo Foreclosure Judgment, NLG must be credited for the full amount of the judgment, $4,876,654.29, whether that amount is lesser or not, for the assignment of the Note and Mortgage and satisfactions, leaving the Mortgage redeemed and Selective with a judgment against NLG in the remaining amount of $123,570.71. Whether the various satisfactions and other documents filed by Selective waive Selective's right to collect any further balance is an issue between Selective and NLG.

**Conclusion**

The Scola Judgment obtained by NLG against the Debtor, and all rights, claims and benefits held by NLG against Debtor related to said judgment, were judicially assigned to Selective pursuant to the Lopez Assignment Order, and the right to foreclose the Mortgage securing the debt traveled to the assignee Selective. Although NLG's right to foreclose against Hazan, as established by the Third District Court of Appeal, had been assigned to Selective, the Gordo Foreclosure Judgment granted NLG the right to foreclose. Assuming the validity of the Gordo Foreclosure

Judgment, the Debtor exercised her right to redeem the Property by satisfying said judgment prior to the foreclosure sale.  Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtor's debt to NLG has been paid, including the New York State Supreme Court, wherein Judge Jaffe found that NLG's judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied.  Upon satisfaction, NLG was credited by Selective for the Scola Judgment and Mortgage to partially satisfy NLG's debt to Selective under the domesticated Quebec Judgment.

The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and owing by the Gordo Foreclosure Judgment. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment.  Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,876,654.29, which credit will leave the Mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the Property fully redeemed prior to foreclosure sale, as provided in the Gordo Foreclosure Judgment.  NLG's Proof of Claim #17, having been filed after the bar date, it is disallowed and the Court finds that NLG has no standing in this case based upon the Note, Mortgage, claim or lien emanating therefrom.  Accordingly, it is

ORDERED and ADJUDGED that Counts I, II and III of Plaintiffs' Third Amended Complaint and NLG's Amended Counterclaim are **GRANTED IN PART** and **DENIED IN PART**

as follows:

1. NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami, Florida 33109 with the following legal description:

> LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157, Page 64, of the Public Records of Miami-Dade County, Florida

have been satisfied and paid, and are deemed **SATISFIED OF RECORD**, and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the Property is forever quieted as to all claims of NLG, LLC.

2. Selective shall give credit to NLG, LLC in the amount of $4,876,654.29 toward NLG's outstanding debt due to Selective pursuant to the Quebec Judgment.

3. NLG's Proof of Claim #17 is disallowed and NLG, LLC has no claim against the Debtor, Liza Hazan a/k/a Elizabeth Hazan, under the Note, Mortgage or any court order.

4. Counts IV, V, VI, VII, VIII, and IX of Plaintiff's Third Amended Complaint are set for trial by separate order.

# # #

Copy to:
DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone: 954-356-0450
Facsimile: 954-356-0451

Email: dave@flalawyer.com
Florida Bar No. 348279

Attorney Langley is directed to serve a copy of this Final Judgment on all interested parties and to file a Certificate of Service with the Court.